Name _Robert V. Gonzales_

Address _PO BOX 7804_

City, State, Zip _SLT, CA 96158_

Phone _530-523-3822_

Fax _____

E-Mail _____

☐ FPD   ☐ Appointed   ☐ CJA   ☒ Pro Per   ☐ Retained

**F I L E D**
CLERK, U.S. DISTRICT COURT

**07/05/2024**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

IFP Submitted

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Robert V. Gonzales

PLAINTIFF(S),

v.

The Regents of the University of California, Et. Al.

DEFENDANT(S).

CASE NUMBER:

8:23-cv-01788-JVS(KESx)

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that _____ Robert V. Gonzales _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☒ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
Denied Forma Pauperis Application

☒ Judgment (specify):
Granted Motion to Dismiss, Denid TRO Ap

☒ Other (specify):
Denied Cease & Desist, Protected Trial Prep

Imposed or Filed on ___4/10/24, 4/26/24___. Entered on the docket in this action on ___5/7/24___.

A copy of said judgment or order is attached hereto.

___July 5th, 2024___

Date

*Bobby Gonzales*

Signature

☒ Appellant/ProSe   ☐ Counsel for Appellant   ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

**NOTICE OF APPEAL**

Robert V. Gonzales
PO BOX 7804
SLT, CA 96158
Telephone:    530-523-3822

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT V. GONZALES, | **CASE NO.  8:23-CV-01788-JVS(KESx)** |
| Plaintiff, | |
| v. | GROUNDS OF APPEAL OF GRANTING OF DEFENSE MOTION TO DISMISS |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Et. Al. | |
| Defendants. | |

**TABLE OF CONTENTS**

| | |
|---|---|
| Appeal Forms A-02, A-13, A-18 Packet | Pg. 1-6 |
| Notice, Declaration, and Motion for Grounds of Appeal | Pg. 6-14 |
| CV-60(1) w/ Confirmation Emails | Pg. 15-23 |
| First Denied CV-60 Motion | Pg. 24 |
| CV-60(2) | Pg. 25-31 |
| Second Denied CV-60 Motion | Pg. 32 |
| Deadline to Finalize Pleadings | Pg. 33-34 |
| Impeding and Impairing of Meet and Confer Efforts | Pg. 35-45 |
| 8:23-cv-01788-JVS(KESx) Docket | Pg. 46-55 |
| First Granted Dismissal | Pg. 56-59 |

- 1 -

Order to Show Cause                                                  Pg. 60

Description for Assessment of Protected Trial-Prep Materials         Pg. 61-62

Second Granted Dismissal                                            Pg. 63-69

Revival of Named Defendants CV-66                                   Pg. 70-88

Would-Be Doc. #98 Motions                                          Pg. 89-94

Civil Intake Department Confirmation Emails 5/7/24-6/20/24          Pg. 95-99

Steffel v. Thompson (415 U.S. 454, 1974)                           Pg. 100-120

Doc. #96 Pg. 37-44                                                 Pg. 121-128

Doc. #16 Pg. 1-3                                                   Pg. 129-131

Order for March 11th Scheduling Conference                         Pg. 132-139

Defense Motion of "Unquestionable" Authority                       Pg. 140-142

Second Attempt to File Doc. #98                                    Pg. 143-144

**FORMA PAUPERIS APPLICATIONS**

On the date I originally filed my case, September 25th, 2023, I submitted a CV-60 form (pg. 15-16 below), and then I submitted a financial statement on the next day (pg. 21-22 below).  My first application was denied (pg. 24 below).  In Doc. #28, I described my finances but forgot a key detail added thereto in a second CV-60 form I filed on November 20th, 2023 (pg. 25-31 below) that was denied (pg. 32 below).  I even tried on June 20th, 2024 to submit all the confirmation

DEFENDANTS RULE 26 DISCLOSURES

emails for job applications I have sent out since 2020 in a non-existing Doc. #98 to demonstrate among other exhibits irreparable damage to my young-adult life opportunities and outcomes in part.  However, the court did not accept this filing after the Doc. #95 order, and it was never filed after it was submitted before June 26th, 2024 in accordance with the deadline given in Doc. #94 (pg. 33-34 below).  If the option to waive court costs is available, I am having a very hard time understanding what better circumstances exemplify its purpose than mine.  My case includes the claim that the "education" section on my resume has played a damaging role in my extremely prolonged job search with all substantial certainty.  Especially if my costs are not waived, I am not at liberty to serve documents like normal as demonstrated by the financial statements below, nor am I very capable to spend $600 to travel to southern California many times every time there may be a hearing.  My limited ability to serve volumes of initially disorganized and redundant by law documents except by email was accepted by the defense attorney (pg. 36 below).

**DENIED MOTIONS FOR AVOIDANT DEFENSE ATTORNEY**

Throughout too many declarations which directly demonstrate my meet and confer efforts with the defense counsel over email, I requested several motions to oppose their efforts to project their own refusal to engage with case materials back at me (pg. 35-45 below).  In Doc. #69 text-only entry, and during the scheduling conference on April 29th, 2024, I was given official warnings for Mr. Gherini, the defense counsel's, dirty tricks to impede and impair my meet and confer efforts, the contents of my pleadings, and the damage to my right to life (pg. 46-55 below).  I successfully moved to overturn a motion to dismiss that was previously granted between Docs. 70-80 (pg 56-60 below).  The documents for my complex case I am representing myself in began quite disorganized until I filed Docs 70 & 96, but the issue of my objections to Mr. Gherini's dirty-trick strategies were never visited by the court alongside many others below.  These requests include a cease and desist order against Mr. Gherini for his projections that successfully impeded and impaired a threat of disciplinary action by the court, motions for court-monitored meet and confer efforts to establish the dispute Mr. Gherini projects not to have enough information to

"understand," and my requests to protect extremely sensitive pleadings described for assessment in the first pages of Doc. #50 (pg. 61-62 below).  Mr. Gherini's factual contentions do not fairly deny the substance of the allegations (**Fed. R. 8(b)(2)**) because they are exclusively, admittingly based on a lack of information (**Fed. R. 8(b)(5)**).  I tried to organize my many requests relevant to Mr. Gherini's impeding and impairment of my focus and motivation, ultimately, but the court did not accept it after the Doc. #95 order, and it was never filed as Doc. #98 after it was submitted before June 26th, 2024 in accordance with the deadline given in Doc. #94 (pg. 33-34 below).  Doc. #94 includes an order to finalize my pleadings by June 26th, 2024, without the court ever visiting the content of any of these several motions related to protected trial prep materials.  I was not granted the opportunity to finalize my pleadings by this deadline as demonstrated by the lack of Doc. #98 on the docket until after July 2nd (pg. 54 below), as a result of the Doc. #95 order.  I am also appealing the deadline in Doc. #94 which I should have been allowed to meet, if I did not forget anything as a student whose focus and motivation is damaged by spending my entire young-adult life working towards.  Nothing.  According to the defendants and the court.

**GRANTED DEFENSE MOTION OF DISMISSAL & DENIAL OF TRO APPLICATIONS**

On May 7th, 2024, the court granted the second dismissal motion made by the defense in Doc. #95.  The four grounds on which this motion were granted are on a presumed technicality based on the named defendants, "lack of clarity," judicial exhaustion, and Amd. XI immunity.  On March 7th, 2024, the first dismissal of defendants named in the "Procedural Grounds for Dismissal" section in Doc. #95 was issued (pg. 63-69 below).  However, on April 26th, 2024, I filed a new CV-66 form to restore all of those named individuals as defendants (pg. 70-88 below).  The first ground in the May 7th order in Doc. #95 was written as if the April 26th filing did not exist.  The total omission of case documents by the court has occurred many times throughout my case, including with Doc. #16 as described below.  Presumably, something like this projects to makes a plaintiff look completely incompetent without the inclusion of enough detail.  I can agree with the second ground at the time the ruling was issued, in correspondence with the level of

- 4 -

detailed citations in Docs. 70 & 96, because Doc. #95 came before the final corrections, even though the first defense motion to dismiss appears to have been reversed with an order to show cause in Doc. #79 (pg. 60 below).  However, I have since filed Doc. #96 exactly 14 days after the Doc. #95 order, and I compiled and added evidence of the irreparable injuries before the deadline to amend the pleadings in Doc. #94, after repeatedly moving for this evidence to be a protected trial prep material and being ignored.  The court ruled that the third ground to dismiss my case, judicial exhaustion, removes the redressability of my case in federal courts, but the court did not even visit the law as it relates to judicial exhaustion (pg. 67-69 below).  In Doc. #56 (pg. 100-120 below), I first raised *Steffel v. Thompson*, where the federal exhaustion requirement was waived for an exceptional case involving wrongful use of a State criminal statute where there was no pending State litigation (*415 U.S. 454, 1974*).  My case involves intimidation, coercion, and invoked wrongful use of a State criminal statute by means of a university proceeding and without pending litigation, and it involves irreparable injury(s), injunctive relief, and declaratory relief on the liberty to prove possible or actual injuries to life or property.  Instead of addressing the merits of the third ground in the granted defense motion to dismiss, the court simply states that exhaustion of judicial remedies has not been achieved, and there is no discussion on injunctive relief, declaratory relief, or the case I raised.  I organized my exhaustion argument in Doc. #96 right on the two-week deadline (pg. 89-94 below), but neither of these corrections with more detailed citations were addressed by the court before July 2nd (pg. 54 below).  There is, however, mention of [no] irreparable injury, as if I had not been moving to protect what I initially thought should be included with more sensitive trial prep materials.  Likewise to the third ground of the granted defense motion to dismiss, the fourth ground involves complete omission of the legal questions I raised, except maybe not to the same extent as the third ground.  In Docs. 65 & 96, I organize my argument about the balance of administrative prerogatives when it comes to technical rules that remove jurisdiction from a court over an otherwise redressable case (pg. 121-128 below).  Basically, nothing in the language of Amd. XI specifically gives State bodies the absolute immunity in the federal courts requested by the defense that has become precedent over

time, and it is not supposed to be constitutional for procedural substitutions to remove federal redressability of a case that substantively meets those generally-difficult criteria to achieve.  In Docs. 70 & 96, I demonstrated the defects in two of the defense's arguments which have the effect of rendering 28 U.S.C. 1983 to the likeness of a nonbinding symbolic resolution, including the Amd. XI argument (pg. 122-123 below).  I even cited a landmark case where Justice Marshall discusses the topic of redressability in these terms mentioned above specifically (*Osborn v. Bank of the United States, 22 U.S. 738 at 818-821 (1824)*)!  The court ruled my two TRO applications filed before Doc. #95 as "moot" on these same grounds (pg. 69 below), and my preliminary TRO for irreparable injury in Doc. #97 was never addressed (pg. 54 below).  I must illustrate that instead of expanding the sciences of precious metals by refusing to visit the actual foundations of a precedent that may be perpetuating in error, Judge Selna stuck to what he knew and fell behind China by doing just that.

**REVIEW OF OTHER CASE DECISIONS FOR ABUSIVENESS UNDER F. RULE 62**

The major premise on which the first dismissal in Doc. #67 was granted seems to be my lack of ability to precisely summarize a great volume of well-supported claims at a professional level (pg. 56-59 below), while under the duress of trying to put the future I spent my entire young-adult life working towards back on course after it was taken away by discrimination against a perceived protected class, lies, and obstruction of due process (pg. 70-73 below).  The first dismissal was primarily based on the "effective expulsion" line of inquiry in part (pg. 56-59 below), but Doc. #16 should have removed this line of inquiry from my case altogether very early on (pg. 130-132 below), so this dismissal was practically "a ghost" when issued.  The first dismissal also omitted almost all lines of inquiry of my case, except the one I removed coincidentally enough.  I demonstrated several times how the defense's replies follow a pattern of responses by someone who is not familiar with important case facts and has not looked at important case documents, in Doc. #65.  I submitted Doc. #65 on February 15th: more than 21 days before the scheduling hearing previously scheduled for March 11th (pg. 133-140 below), but I was punished by the

striking of this document for apparently not filing it "timely" in Doc. #67 (pg. 58 below).  What

troubles me about the granting of these motions the most is the representation that my case is "a

threadbare recital of the elements of a cause supported by conclusory statements" or "a mere

possibility of wrongdoing."  This is absolutely false, as is demonstrated between the many filed

exhibits which sometimes demonstrate direct communications with the wrongdoers about their

wrongdoing in real time.  These are years of real, well-documented events in my life that are

absolutely more than "the mere possibility of wrongdoing," they have already cost me life

opportunity and a great deal of stress, and the tediously exceptional and irreparable subject

matters meet the difficult criteria for federal subject matter jurisdiction.  I can probably try and

miss 1000 times for the precise language summarizing all of the actual support showing each

individual, complex claim which the court is harassing me for, from in my position as a lay

person with compounding, crippling stress.  In *Osborn v. Bank*, Justice Marshal remarks on how

"there is scarcely any case every part of which depends on the Constitution, laws, or treaties of

the United States (at 820).  I do not understand what I have failed to demonstrate in regard to the

due process issue specifically, because the defense is acknowledging the elements of that line of

inquiry and then simply denying that the university is engaging in any wrongdoing outside of an

"unquestionable" scope of duties (pg. 142 below).  Extra leniency for normal pro se parties is not

the law, but what leniency of expectations should reasonably be held to a pro se party subdued by

an unusually complex case and years of compounding stress that is damaging to their focus and

motivation, which is critical for professional work like litigation?  I simply cannot be expected to

fully articulate an excellent case or even a very good one if my first try is one of such great

complexity, magnitude, and damage.  The causes have been too much pressure building up on me

for years, where focusing enough to complete everyday tasks, communicate like normal, and even

just successfully proofread has become difficult for me.  On June 20th, 2024, I received a message

from the court's civil intake department stating that my attempted Doc. #98 filing does not

contain a case number (pg. 99 below).  The document does contain the case number many times,

but not where it says supplied by the clerk, and this was the grounds to deny my submission

within the deadline.  Presumably, for the court clerk to initially pretend that not supplying a case number where they are supposed to supply it until I noticed the mistake was an issue is probably a willful, knowing attempt to run me up to the deadline and suspend my case in a state of "purgatory" under **Fed. R. 62(a)**.  The volume of complicating details relevant to this appeal due to *professionally-simple* errors is probably overwhelming for anyone, let alone someone who is having a hard time restoring their young-adult life's work and even just ability to focus.

Robert V. Gonzales
PO BOX 7804
SLT, CA 96158
530-523-3822



**FILED**
CLERK, U.S. DISTRICT COURT

**9/25/23**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ EB _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| Robert V. Gonzales | CASE NUMBER |
|---|---|
| PLAINTIFF/PETITIONER, | 8:23-cv-01788-JVS(KESx) |
| v. | |
| University of California, Irvine; Et. Al. | **REQUEST TO PROCEED IN FORMA PAUPERIS WITH DECLARATION IN SUPPORT** |
| DEFENDANT/RESPONDENT. | |

I, Robert V. Gonzales _____, declare under penalty of perjury, that the foregoing is true and correct; that I am the petitioner/plaintiff in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefore, I state that because of my poverty I am unable to pay the costs of said proceedings or to give security therefore and that I am entitled to redress.

I further declare under penalty of perjury that the responses which I have made to the questions and instructions below are true, correct and complete.

1. Are you presently employed? ☐ Yes ☑ No

   a. If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer. _____

   _____

   b. If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received. 11/1/22, 35% Commission Per Job

2. Have you received, *within the past twelve months*, any money from any of the following sources?

   a. Business, profession or form of self-employment? ☐ Yes ☑ No

   b. Rent payments, interest or dividends? ☐ Yes ☑ No

   c. Pensions, annuities or life insurance payments? ☐ Yes ☑ No

   d. Gifts or inheritances? ☐ Yes ☑ No

   e. Any other income (other than listed above)? ☐ Yes ☑ No

   f. Loans? ☐ Yes ☑ No

   If the answer to any of the above is yes, describe such source of money and state the amount received from each source during the past twelve (12) months: _____

   _____

---

3. Do you own any cash, or do you have money in a checking or savings account?  (Include any funds in prison accounts, if applicable.) ☑Yes  ☐No

   If the answer is yes, identify each account and separately state the amount of money held in **each** account for each of the *six (6) months prior* to the date of this declaration.
   $3900 Savings, $650 Checking

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? ☑Yes  ☐No

   If the answer is yes, describe the property and state its approximate value: 2003 Subaru bought at $2400

   1988 GMC bought at $800

5. In what year did you last file an Income Tax return? 2022

   Approximately how much income did your last tax return reflect? +- $5000

6. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support:

7. Estimate your average monthly expenses below:

   Housing $800

   Food $

   Medical $

   Utilities $

   Credit Cards $

   Vehicle $40

   Child Care $

   Insurance $60

   Loans $

   Other $

I understand that a false statement or answer to any question in this declaration will subject me to penalties for perjury.  I further understand that perjury is punishable by a term of imprisonment of up to five (5) years and/or a fine of $250,000 (18 U.S.C.  Sections 1621, 3571).

CA

State

El Dorado

County (or City)

I, Robert V. Gonzales , declare under penalty of perjury that the foregoing is true and correct.

Date: Sep 24, 2023

*Bobby Gonzales*

Plaintiff/Petitioner (Signature)



**bobby gonzales <bgfarcenter@gmail.com>**

---

## Submission Confirmation
1 message

---

Civil Intake <do-not-reply@cacd.uscourts.gov>                    Sun, Sep 24, 2023 at 11:13 PM
To: bgfarcenter@gmail.com

**Dear Robert Gonzales:**

This email confirms that the document(s) listed below were received by the United States District Court for the Central
District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-230924-000-9162
**Date:** 9/24/2023 11:13:42 PM

Uploaded files:

- **CV-005.pdf**
- **CV-71.pdf**
- **CV-126.pdf**
- **CV-60.pdf**
- **CV-30.pdf**

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received
through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded
them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS
should be processed within 1-2 business days of receipt. However, the date of EDSS submission will be considered the
filing date for any documents received through EDSS and later filed into CM/ECF.

If you have registered for electronic service of documents in previous cases, you may receive a Notice of Electronic Filing
("NEF") from the CM/ECF System when the documents listed above are filed. If you have not previously registered for e-
service, or if court staff cannot quickly identify your previous e-service registration record when processing your current
submission, you will receive notice of this filing, with your new case number, by U.S. Mail. Once you receive your case
number, you may register to receive electronic service of future documents filed in this case. (Click here for information
about registering for e-service.)

If you are an attorney required by the local rules to file your documents electronically using the Court's CM/ECF System,
your document(s) will not be filed if submitted through EDSS, and you will not receive any further communication from the
Court about your EDSS submission.

Please include the tracking number listed above as your reference on any communications with the Court about this
submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535

 Gmail

**bobby gonzales <bgfarcenter@gmail.com>**

---

# Submission Confirmation
1 message

---

**Civil Intake** <do-not-reply@cacd.uscourts.gov>                                    Mon, Sep 25, 2023 at 11:16 AM
To: bgfarcenter@gmail.com

### Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-230925-000-9174
**Date:** 9/25/2023 11:16:47 AM

Uploaded files:

- **CV-71 (1).pdf**
  *Corrected & Resubmitted*

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS should be processed within 1-2 business days of receipt. However, the date of EDSS submission will be considered the filing date for any documents received through EDSS and later filed into CM/ECF.

If you have registered for electronic service of documents in previous cases, you may receive a Notice of Electronic Filing ("NEF") from the CM/ECF System when the documents listed above are filed. If you have not previously registered for e-service, or if court staff cannot quickly identify your previous e-service registration record when processing your current submission, you will receive notice of this filing, with your new case number, by U.S. Mail. Once you receive your case number, you may register to receive electronic service of future documents filed in this case. (Click here for information about registering for e-service.)

If you are an attorney required by the local rules to file your documents electronically using the Court's CM/ECF System, your document(s) will not be filed if submitted through EDSS, and you will not receive any further communication from the Court about your EDSS submission.

Please include the tracking number listed above as your reference on any communications with the Court about this submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535

---

 Gmail

**bobby gonzales <bgfarcenter@gmail.com>**

---

# Submission Confirmation
2 messages

---

**Civil Intake** <do-not-reply@cacd.uscourts.gov>                                    Tue, Sep 26, 2023 at 12:04 PM
To: bgfarcenter@gmail.com

### Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-230926-000-9192
**Date:** 9/26/2023 12:04:54 PM

Uploaded files:

- **CV-127 A3.pdf**
- **CV-66.pdf**
- **CV-127 B.pdf**
- **CV-127 A.pdf**

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS should be processed within 1-2 business days of receipt. However, the date of EDSS submission will be considered the filing date for any documents received through EDSS and later filed into CM/ECF.

If you are registered for electronic service of documents and receiving e-service in this case, you will receive a Notice of Electronic Filing ("NEF") from the CM/ECF System as soon as each document listed above has been filed. (Click here for information about registering for electronic service or to add e-service in this case.) If you are not registered for electronic service, you may check the status of your documents by checking the docket for your case on PACER (https://pacer.uscourts.gov). Please wait at least two business days after receiving this email and check the docket for your case on PACER before contacting the Court regarding the status of documents submitted through EDSS.

If you are trying to file a document in a case pending before the United States Bankruptcy Court, or in any case pending in any court other than the United States District Court for the Central District of California, your document will not be filed and you will not receive any response to your EDSS submission. Likewise, if you are an attorney required by the local rules to file your documents electronically using the Court's CM/ECF System, your document(s) will not be filed if submitted through EDSS, and you will not receive any further communication from the Court about your EDSS submission.

Please include the tracking number listed above as your reference on any communications with the Court about this submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535

---

**Civil Intake** <do-not-reply@cacd.uscourts.gov>                                    Tue, Sep 26, 2023 at 3:54 PM
To: bgfarcenter@gmail.com

### Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-230926-000-9200
**Date:** 9/26/2023 3:54:23 PM

Uploaded files:

- **A(3).pdf**
- **CV-127 B(3-6).pdf**
- **A(2).pdf**
- **B(7).pdf**
- **A(1).pdf**
- **B(2).pdf**
- **B(1).pdf**

[Quoted text hidden]

| Date | Check/ID | Amount | Description | Status | Balance | Effective Date |
|---|---|---|---|---|---|---|
| 06/30/2023 | | 20.40 | Pos purchase | | 533.40 | 06/30/2023 |
| 06/30/2023 | | 10.01 | Pos purchase | | 553.80 | 06/30/2023 |
| 06/30/2023 | | 210.00 | Atm deposit | | 563.81 | 06/30/2023 |
| 06/29/2023 | | 7.55 | Pos purchase | | 353.81 | 06/29/2023 |
| 06/28/2023 | | 40.00 | Pos purchase | | 361.36 | 06/28/2023 |
| 06/27/2023 | | 19.75 | Pos purchase | | 401.36 | 06/27/2023 |
| 06/27/2023 | | 15.40 | Pos purchase | | 421.11 | 06/27/2023 |
| 06/26/2023 | | 4.79 | Pos purchase | | 436.51 | 06/26/2023 |
| 06/26/2023 | | 26.63 | Pos purchase | | 441.30 | 06/26/2023 |
| 06/26/2023 | | 46.16 | Pos refund | | 467.93 | 06/26/2023 |
| 06/23/2023 | | 4.79 | Pos purchase | | 421.77 | 06/23/2023 |
| 06/21/2023 | | 2.18 | Pos purchase | | 426.56 | 06/21/2023 |
| 06/21/2023 | | 23.37 | Pos purchase | | 428.74 | 06/21/2023 |
| 06/21/2023 | | 46.16 | Pos purchase | | 452.11 | 06/21/2023 |
| 06/20/2023 | | 30.97 | Pos purchase | | 498.27 | 06/20/2023 |
| 06/20/2023 | | 38.10 | Pos purchase | | 529.24 | 06/20/2023 |
| 06/20/2023 | | 22.57 | Pos purchase | | 567.34 | 06/20/2023 |
| 06/16/2023 | | 7.98 | Pos purchase | | 589.91 | 06/16/2023 |
| 06/16/2023 | | 2.00 | Pos purchase | | 597.89 | 06/16/2023 |
| 06/16/2023 | | 17.95 | Pos purchase | | 599.89 | 06/16/2023 |
| 06/16/2023 | | 300.00 | Deposit | | 617.84 | 06/16/2023 |
| 06/14/2023 | | 4.79 | Pos purchase | | 317.84 | 06/14/2023 |
| 06/12/2023 | 7 | 144.00 | Check | | 322.63 | 06/12/2023 |
| 06/12/2023 | | 4.79 | Pos purchase | | 466.63 | 06/12/2023 |
| 06/12/2023 | | 10.01 | Pos purchase | | 471.42 | 06/12/2023 |
| 06/08/2023 | | 2.18 | Pos purchase | | 481.43 | 06/08/2023 |
| 06/08/2023 | | 19.56 | Pos purchase | | 483.61 | 06/08/2023 |
| 06/07/2023 | | 1.09 | Pos purchase | | 503.17 | 06/07/2023 |
| 06/07/2023 | | 17.85 | Pos purchase | | 504.26 | 06/07/2023 |
| 06/05/2023 | | 15.21 | Pos purchase | | 522.11 | 06/05/2023 |
| 06/05/2023 | | 5.00 | Atm surcharge | | 537.32 | 06/05/2023 |
| 06/05/2023 | | 2.00 | Service charge | | 542.32 | 06/05/2023 |
| 06/05/2023 | | 40.00 | Atm withdrawal | | 544.32 | 06/05/2023 |
| 06/05/2023 | | 4.79 | Pos purchase | | 584.32 | 06/05/2023 |
| 06/05/2023 | | 68.95 | Pos purchase | | 589.11 | 06/05/2023 |

Transaction History for Account 14002327 as of 09/06/2023

| Date | Check/tp Amount | Description | Status | Balance | Effective Date |
|---|---|---|---|---|---|
| 08/31/2023 | 1,000.00 | Withdrawal | Intraday | | |
| 07/31/2023 | .12 | Interest credit | | 4,503.79 | 08/31/2023 |
| 07/06/2023 | .12 | Interest credit | | 4,503.67 | 07/31/2023 |
| 06/30/2023 | 700.00 | Withdrawal | | 4,503.55 | 07/06/2023 |
| 06/30/2023 | .12 | Interest credit | | 5,203.55 | 06/30/2023 |
| 06/16/2023 | 300.00 | Withdrawal | | 5,203.43 | 06/30/2023 |
| 06/12/2023 | 300.00 | Withdrawal | | 5,503.43 | 06/16/2023 |
| 06/02/2023 | 1,500.00 | Deposit | | 5,803.43 | 06/12/2023 |
| 05/31/2023 | 4,003.06 | Deposit | | 4,303.43 | 06/02/2023 |
| 03/31/2023 | .01 | Interest credit | | 300.37 | 05/31/2023 |
| 03/08/2023 | .01 | Interest credit | | 300.36 | 03/31/2023 |
| 02/28/2023 | 300.00 | Withdrawal | | 300.35 | 03/08/2023 |
| 02/10/2023 | .02 | Interest credit | | 600.35 | 02/28/2023 |
| 01/31/2023 | 100.00 | Withdrawal | | 600.33 | 02/10/2023 |
| 12/31/2022 | .01 | Interest credit | | 700.33 | 01/31/2023 |
| 12/19/2022 | .03 | Interest credit | | 700.32 | 12/31/2022 |
| 11/30/2022 | 600.00 | Withdrawal | | 700.29 | 12/19/2022 |
| 11/09/2022 | .03 | Interest credit | | 1,300.29 | 11/30/2022 |
| 10/31/2022 | 300.00 | Deposit | | 1,300.26 | 11/09/2022 |
| 09/30/2022 | .03 | Interest credit | | 1,000.26 | 10/31/2022 |
| 08/31/2022 | .02 | Interest credit | | 1,000.23 | 09/30/2022 |
| 07/31/2022 | .03 | Interest credit | | 1,000.21 | 08/31/2022 |
| 06/30/2022 | .02 | Interest credit | | 1,000.18 | 07/31/2022 |
| | .03 | Interest credit | | 1,000.16 | 06/30/2022 |

CS CamScanner



**bobby gonzales <bgfarcenter@gmail.com>**

## Submission Confirmation
1 message

**Civil Intake** <do-not-reply@cacd.uscourts.gov>                                                         Wed, Sep 27, 2023 at 12:26 PM
To: bgfarcenter@gmail.com

Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-230927-000-9209
**Date:** 9/27/2023 12:26:36 PM

Uploaded files:

- **CamScanner 09-26-2023 22.22.pdf**

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS should be processed within 1-2 business days of receipt. However, the date of EDSS submission will be considered the filing date for any documents received through EDSS and later filed into CM/ECF.

If you are registered for electronic service of documents and receiving e-service in this case, you will receive a Notice of Electronic Filing ("NEF") from the CM/ECF System as soon as each document listed above has been filed. (Click here for information about registering for electronic service or to add e-service in this case.) If you are not registered for electronic service, you may check the status of your documents by checking the docket for your case on PACER (https://pacer.uscourts.gov). Please wait at least two business days after receiving this email and check the docket for your case on PACER before contacting the Court regarding the status of documents submitted through EDSS.

If you are trying to file a document in a case pending before the United States Bankruptcy Court, or in any case pending in any court other than the United States District Court for the Central District of California, your document will not be filed and you will not receive any response to your EDSS submission. Likewise, if you are an attorney required by the local rules to file your documents electronically using the Court's CM/ECF System, your document(s) will not be filed if submitted through EDSS, and you will not receive any further communication from the Court about your EDSS submission.

Please include the tracking number listed above as your reference on any communications with the Court about this submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | CASE NUMBER |
|---|---|
| Robert V. Gonzales, | 8:23-cv-01788-JVS-KES |
| **PLAINTIFF(S)** v. | |
| University of California, Irvine, et al., | **ORDER ON REQUEST TO PROCEED** *IN FORMA PAUPERIS* **(NON-PRISONER CASE)** |
| **DEFENDANT(S)** | |

The Court has reviewed the Request to Proceed *In Forma Pauperis* (the "Request") and the documents submitted with it. On the question of indigency, the Court finds that the party who filed the Request:

☐ is not able to pay the filing fees.   ☒ is able to pay the filing fees.

☐ has not submitted enough information for the Court to tell if the filer is able to pay the filing fees. This is what is missing:

**IT IS THEREFORE ORDERED** that:

☐ The Request is GRANTED.

☐ Ruling on the Request is POSTPONED for 30 days so that the filer may provide additional information.

☒ The Request is DENIED because the filer has the ability to pay. in part.

☐ As explained in the attached statement, the Request is DENIED because:

   ☐ The District Court lacks ☐ subject matter jurisdiction ☐ removal jurisdiction.
   ☐ The action is frivolous or malicious.
   ☐ The action fails to state a claim upon which relief may be granted.
   ☐ The action seeks monetary relief against defendant(s) immune from such relief.

**IT IS FURTHER ORDERED** that:

☒ Within 30 days of the date of this Order, the filer must do the following:

   Plaintiff must pay the full filing fee of $ 200.00

   If the filer does not comply with these instructions within 30 days, this case will be DISMISSED without prejudice.

☐ As explained in the attached statement, because it is absolutely clear that the deficiencies in the complaint cannot be cured by amendment, this case is hereby DISMISSED ☐ WITHOUT PREJUDICE ☐ WITH PREJUDICE.

☐ This case is REMANDED to state court as explained in the attached statement.

| October 3, 2023 | |
|---|---|
| Date | United States District Judge |

1  Name: Robert V. Gonzales

2  Address: PO BOX 7804

3  SLT, CA 96158

4  Phone: 530-523-3822

5  Fax: _____

6  In Pro Per

**FILED**
CLERK, U.S. DISTRICT COURT

**11-20-2023**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ts _____ DEPUTY

7

8  ## UNITED STATES DISTRICT COURT
   ## CENTRAL DISTRICT OF CALIFORNIA

9  Robert V. Gonzales

10

11                                    Plaintiff

12                    v.

13  The Regents of the University of California

14

15                                    Defendant(s).

| | |
|---|---|
| CASE NUMBER: | |
| | 8:23-cv-01788-JVS(KESx) |
| | **UP-TO-DATE FINANCIAL STATEMENT** |

16  I cannot begin to estimate how the costs outlined in the CV-59 can add up in a complex

17  administrative case, as the defense counsel is far more apt at maneuvering the process and less

18  prone to mistakes than I, so I am unable to spend possibly all of my money on court costs. When I

19  previously submitted a financial statement with my CV-60, it was from September 6th, which was

20  out of date at the time of that filing. I had those statements printed at the bank on that day after

21  realizing that a $400 deposit I made on August 4th (highlighted) was mistakenly transferred to

22  another person's account, shown on the third page of the 10/5 document (ending in 2397 instead of

23  2327). The September 6th records were easily available to me at the time, and I thought they would

24  be acceptable. The $4,000 deposit in my savings account on June 2nd is from when I closed my

25  "money market savings account" when I withdrew below the $5000 minimum balance. The $1,500

26  deposit in my savings account ten days later is the cash I had left over after closing my other

27  savings account and repairing my car hood and fender. The first three $300 withdrawals have to

28  do with housing expenses. The $700 withdrawal on 7/6 was to repair my car bumper, completing

1    the needed repairs.  The $1000 withdrawal afterwards was spent on housing expenses in advance.

2    The two following transfers from my savings to my checking were related to paying the process

3    server and the court fee.  I had to make a second transfer to pay the court fee because my account

4    was overdrawn a second time after the costs of process service, insurance, and gas.

5

6

7

8

9

10

11

12

13    I was not focused enough to highlight how a bank error occurred at the time I gathered
      the included bank statements, when a bank teller typed my account number wrong and
14    accidentally deposited my money in someone else's account shown on pg. 5 below.
      I included this information at my own detriment and forgot to explain its purpose.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gonzales Robert Vincent

14002327 Statement Savings

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Ledger balance: | | 3,903.89 | Today's activity: | | | | 0.00 |
| Current balance: | | 3,903.89 | Total Holds: | | | | 0.00 |
| Account available balance: | | 3,903.89 | Float: | | | | 0.00 |
| Total accessible balance: | | 3,903.89 | Unused PRA: | | | | |
| Closing balance: | | 3,903.90 | Related available balance: | | | | 0.00 |
| Last statement: | | 09/30/2023 | | | | | |

25 All transactions, 07/31/2022 to 09/30/2023

| Date | Check | Debit | Credit | Other | Description | Status | Balance |
|---|---|---|---|---|---|---|---|
| 09/30/2023 | | | | 3,903.89 | Daily balance | | |
| 09/30/2023 | | | 0.10 | | 761 - Interest Credit | | 3,903.89 |
| 09/06/2023 | | | | 3,903.79 | Daily balance | | |
| 09/06/2023 | | 1,000.00 | | | 950 - Withdrawal | | 3,903.79 |
| 09/06/2023 | | | 400.00 | | 786 - Credit Memo Savings | | 4,903.79 |
| 08/31/2023 | | | | 4,503.79 | Daily balance | | |
| 08/31/2023 | | | 0.12 | | 761 - Interest Credit | | 4,503.79 |
| 07/31/2023 | | | | 4,503.67 | Daily balance | | |
| 07/31/2023 | | | 0.12 | | 761 - Interest Credit | | 4,503.67 |
| 07/06/2023 | | | | 4,503.55 | Daily balance | | |
| 07/06/2023 | | 700.00 | | | 950 - Withdrawal | | 4,503.55 |
| 06/30/2023 | | | | 5,203.55 | Daily balance | | |
| 06/30/2023 | | | 0.12 | | 761 - Interest Credit | | 5,203.55 |
| 06/30/2023 | | 300.00 | | | 950 - Withdrawal | | 5,203.43 |
| 06/16/2023 | | | | 5,503.43 | Daily balance | | |
| 06/16/2023 | | 300.00 | | | 950 - Withdrawal | | 5,503.43 |
| 06/12/2023 | | | | 5,803.43 | Daily balance | | |
| 06/12/2023 | | | 1,500.00 | | 750 - Deposit | | 5,803.43 |
| 06/02/2023 | | | | 4,303.43 | Daily balance | | |
| 06/02/2023 | | | 4,003.06 | | 750 - Deposit | | 4,303.43 |
| 05/31/2023 | | | | 300.37 | Daily balance | | |
| 05/31/2023 | | | 0.01 | | 761 - Interest Credit | | 300.37 |
| 03/31/2023 | | | | 300.36 | Daily balance | | |
| 03/31/2023 | | | 0.01 | | 761 - Interest Credit | | 300.36 |
| 03/08/2023 | | | | 300.35 | Daily balance | | |
| 03/08/2023 | | 300.00 | | | 950 - Withdrawal | | 300.35 |

Gonzales Robert Vincent
183010198 Value Checking - (Original - NLO)

| | | | |
|---|---|---|---|
| Ledger balance: | 567.90 | Today's activity: | 0.00 |
| Current balance: | 567.90 | Total Holds: | 0.00 |
| Account available balance: | 567.90 | Float: | 0.00 |
| Total accessible balance: | 567.90 | Unused PRA: | |
| Closing balance: | 567.90 | Related available balance: | 0.00 |
| Last statement: | 09/16/2023 | | |

< Prev  1 - 151  Next >  All transactions, 11/21/2022 to 10/05/2023

| Date | Check | Debit | Credit | Other Description | Status | Balance |
|---|---|---|---|---|---|---|
| 10/04/2023 | | 7.55 | | VISA Authorization | Pending | |
| 10/04/2023 | | | | 567.90 Daily balance | | |
| 10/04/2023 | | 47.81 | | 235 - Pos Purchase | | 567.90 |
| 10/03/2023 | | | | 615.51 Daily balance | | |
| 10/03/2023 | | 6.38 | | 227 - Pos Purchase | | 615.51 |
| 10/03/2023 | | 4.41 | | 235 - Pos Purchase | | 621.89 |
| 10/02/2023 | | | | 626.30 Daily balance | | |
| 10/02/2023 | | 12.80 | | 235 - Pos Purchase | | 626.30 |
| 09/25/2023 | | | | 639.10 Daily balance | | |
| 09/25/2023 | | 4.79 | | 227 - Pos Purchase | | 639.10 |
| 09/21/2023 | | | | 643.89 Daily balance | | |
| 09/21/2023 | | 11.45 | | 235 - Pos Purchase | | 643.89 |
| 09/11/2023 | | | | 655.34 Daily balance | | |
| 09/11/2023 | | 7.45 | | 227 - Pos Purchase | | 655.34 |
| 09/07/2023 | | | | 662.79 Daily balance | | |
| 09/07/2023 | | 57.97 | | 235 - Pos Purchase | | 662.79 |
| 09/05/2023 | | | | 720.76 Daily balance | | |
| 09/05/2023 | | 4.99 | | 235 - Pos Purchase | | 720.76 |
| 09/05/2023 | | | 85.00 | 705 - ATM Deposit | | 725.75 |
| 09/01/2023 | | | | 640.75 Daily balance | | |
| 09/01/2023 | | 11.00 | | 235 - Pos Purchase | | 640.75 |
| 09/01/2023 | | 40.00 | | 235 - Pos Purchase | | 651.75 |



Tr. #90: 14-11   08/04/23   11:52 AM
XXXXX2X7   Sav Dep   $400.00
Current balance: $10,402.31
Available balance: $10,402.31
Thank you for banking with us.

Transaction History for Account 14002327 as of  11/20/2023

| Date | Check/ID | Amount | Description | Status | Balance | Effective Date |
|------|----------|--------|-------------|--------|---------|----------------|
| 11/06/2023 | | 300.00 | Withdrawal | | 3,203.98 | 11/06/2023 |
| 10/31/2023 | | .09 | Interest credit | | 3,503.98 | 10/31/2023 |
| 10/30/2023 | | 400.00 | Withdrawal | | 3,503.89 | 10/30/2023 |
| 09/30/2023 | | .10 | Interest credit | | 3,903.89 | 09/30/2023 |
| 09/06/2023 | | 1,000.00 | Withdrawal | | 3,903.79 | 09/06/2023 |
| 09/06/2023 | | 400.00 | Credit memo savings | | 4,903.79 | 09/06/2023 |
| 08/31/2023 | | .12 | Interest credit | | 4,503.79 | 08/31/2023 |
| 07/31/2023 | | .12 | Interest credit | | 4,503.67 | 07/31/2023 |
| 07/06/2023 | | 700.00 | Withdrawal | | 4,503.55 | 07/06/2023 |
| 06/30/2023 | | .12 | Interest credit | | 5,203.55 | 06/30/2023 |
| 06/30/2023 | | 300.00 | Withdrawal | | 5,203.43 | 06/30/2023 |
| 06/16/2023 | | 300.00 | Withdrawal | | 5,503.43 | 06/16/2023 |
| 06/12/2023 | | 1,500.00 | Deposit | | 5,803.43 | 06/12/2023 |
| 06/02/2023 | | 4,003.06 | Deposit | | 4,303.43 | 06/02/2023 |
| 05/31/2023 | | .01 | Interest credit | | 300.37 | 05/31/2023 |
| 03/31/2023 | | .01 | Interest credit | | 300.36 | 03/31/2023 |
| 03/08/2023 | | 300.00 | Withdrawal | | 300.35 | 03/08/2023 |
| 02/28/2023 | | .02 | Interest credit | | 600.35 | 02/28/2023 |

Transaction History for Account 183010198 as of 11/20/2023

| Date | Check/ID | Amount | Description | Status | Balance | Effective Date |
|------|----------|--------|-------------|--------|---------|----------------|
| 11/10/2023 | | 23.94 | Pos purchase | | 524.15 | 11/10/2023 |
| 11/09/2023 | | 6.72 | Pos purchase | | 543.27 | 11/09/2023 |
| 11/08/2023 | | 7.98 | Pos purchase | | 554.54 | 11/08/2023 |
| 11/08/2023 | | 4.34 | Pos purchase | | 562.77 | 11/08/2023 |
| 11/07/2023 | | 57.97 | Pos purchase | | 572.11 | 11/07/2023 |
| 11/06/2023 | | 402.00 | Pos purchase | | 432.26 | 11/06/2023 |
| 11/06/2023 | | 6.38 | Pos purchase | | 832.26 | 11/06/2023 |
| 11/06/2023 | | 300.00 | Deposit | | 838.48 | 11/06/2023 |
| 11/03/2023 | | 14.23 | Pos purchase | | 538.48 | 11/03/2023 |
| 11/02/2023 | | 6.38 | Pos purchase | | 552.64 | 11/02/2023 |
| 11/01/2023 | | 4.70 | Pos purchase | | 559.07 | 11/01/2023 |
| 10/30/2023 | | 5.30 | Pos purchase | | 563.77 | 10/30/2023 |
| 10/30/2023 | | 84.49 | Pos purchase | | 569.07 | 10/30/2023 |
| 10/30/2023 | | 400.00 | Deposit | | 653.56 | 10/30/2023 |
| 10/26/2023 | | 9.57 | Pos purchase | | 253.56 | 10/26/2023 |
| 10/24/2023 | | 17.57 | Pos purchase | | 263.13 | 10/24/2023 |
| 10/23/2023 | | 6.38 | Pos purchase | | 280.70 | 10/23/2023 |
| 10/18/2023 | 4 | 75.00 | Check | | 287.08 | 10/18/2023 |
| 10/16/2023 | | 75.65 | Pos purchase | | 362.08 | 10/16/2023 |
| 10/13/2023 | | 34.62 | Pos purchase | | 437.73 | 10/13/2023 |
| 10/11/2023 | | 7.59 | Pos purchase | | 472.35 | 10/11/2023 |
| 10/10/2023 | | 17.65 | Pos purchase | | 479.94 | 10/10/2023 |
| 10/09/2023 | | 4.79 | Pos purchase | | 497.59 | 10/09/2023 |
| 10/09/2023 | | 57.97 | Pos purchase | | 502.38 | 10/09/2023 |
| 10/06/2023 | | 7.55 | Pos purchase | | 560.35 | 10/06/2023 |
| 10/04/2023 | | 47.61 | Pos purchase | | 567.90 | 10/04/2023 |
| 10/03/2023 | | 6.38 | Pos purchase | | 615.51 | 10/03/2023 |
| 10/03/2023 | | 4.41 | Pos purchase | | 621.89 | 10/03/2023 |
| 10/02/2023 | | 12.80 | Pos purchase | | 626.30 | 10/02/2023 |
| 09/25/2023 | | 4.79 | Pos purchase | | 639.10 | 09/25/2023 |
| 09/21/2023 | | 11.45 | Pos purchase | | 643.89 | 09/21/2023 |
| 09/11/2023 | | 7.45 | Pos purchase | | 655.34 | 09/11/2023 |
| 09/07/2023 | | 57.97 | Pos purchase | | 662.79 | 09/07/2023 |
| 09/05/2023 | | 4.99 | Pos purchase | | 720.76 | 09/05/2023 |
| 09/05/2023 | | 85.00 | Atm deposit | | 725.75 | 09/05/2023 |
| 09/01/2023 | | 11.00 | Pos purchase | | 640.75 | 09/01/2023 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.   SACV 23-1788 JVS (KESx)                           Date: November 29, 2023

Title   Robert V. Gonzales v. University of California Irvine, et al.

Present: The Honorable:   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Petitioner: | Attorneys Present for Respondent: |
|---|---|
| N/A | N/A |

**Proceedings (In Chambers):  Order Re: Request to Proceed In Forma Pauperis (ECF No. 27)**

On September 25, 2023, Plaintiff filed a Complaint and a Request to Proceed In Forma Pauperis ("IFP").  (ECF No. 1, 3.)  On October 3, 2023, the Court denied the Request in part and ordered Plaintiff to pay a filing fee of $200.  (ECF No. 18.)  On November 15, 2023, the Court received a financial entry of $402 from Plaintiff.  (ECF No. 26.)

Now pending is Plaintiff's second IFP Request, filed on November 20, 2023.  (ECF No. 27.) The Request is accompanied by an up-to-date financial statement.  (ECF No. 28.)

Because Plaintiff has paid the full filing fee, his request to proceed in forma pauperis is **denied as moot.**  (ECF No. 27.)  The denial is without prejudice to Plaintiff requesting a partial refund of filing fees that may have been overpaid.  *See Arena v. Cervantes*, 2021 WL 5139499, at *1 (E.D. Cal. Nov. 4, 2021) (granting refund of overpayment of filing fee).

|  |  :  |
|---|---|
| **Initials of Preparer** | eva |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

ROBERT V. GONZALES

Plaintiff(s),

v.

UNIVERSITY OF CALIFORNIA, IRVINE , et al.

Defendant(s).

CASE NO:
8:23−cv−01788−JVS−KES

I.  ORDER FOR JURY TRIAL
    SETTING DATES FOR:

    Pre-Trial Conference:
    October 6, 2025
    at  11:00 AM

    JURY TRIAL:
    October 28, 2025
    at  08:30 AM

II. Order for Preparation
    for JURY TRIAL

III. Order Governing Attorney &
     Party Conduct at Trial.

**I.**

**SCHEDULING:**

1.  <u>In General</u>: All motions to join other parties or to amend the

pleadings shall be filed and served within sixty (60) days of the date of this order

and noticed for hearing within ninety (90) days hereof. All unserved parties shall be dismissed no later than the date set for the Final Pre-Trial Conference.

2. <u>Motions for Summary Judgment or Partial Summary Judgment</u>: Motions for summary judgment or partial summary judgment shall be heard no later than the last day for hearing motions, as set forth in the accompanying minute order.

3. <u>Motions Index</u>: If any motion or set of motions concurrently noticed involves more than three pleadings, the moving party shall file within three days of filing an index of the moving papers (<u>e.g.</u>, notice, memorandum of points and authorities, declaration) with the names of each pleading and the docket number. Within three days of filing reply papers, the moving party shall file an updated index of all moving papers, all opposition papers, and all reply papers with the name of each pleading and the docket number. Where redacted pleadings have been filed, the index should refer to the <u>undredacted</u> version.

4. <u>Discovery Cut-Off</u>: The Court has established a cut-off date for discovery in this action. All discovery is to be completed on, or prior to, the cut-off date. Accordingly, the following discovery schedule shall apply to this case:

A. <u>Depositions</u>: All depositions shall be scheduled to commence at least five (5) working days prior to the discovery cut-off date. All original depositions to be used in trial shall be lodged with the Courtroom deputy on the first day of trial or such earlier date as the Court may order.

B. <u>Interrogatories</u>: All interrogatories must be served at least forty-five (45) days prior to the discovery cut-off date. The Court will not approve

Alright, I can extend the deadline.  Sorry if the time of day of my responses hasn't been helpful.

I have the understanding that the service process outlined on the UCOP website requires service be made on the UC headquarters because service on campus officials would not be "proper."  And I did name individuals, but in their official capacity.

If individuals in their official capacity are supposed to be served personally, and the document on the website is misleading or I am not understanding something else, I would appreciate that the university accepts the service on their behalf.

I also have the understanding that any entity generally accepts service on behalf of its officials without agreement, unless the entity is claiming that the acts by the individuals in question were not official duties for example.  If I am misunderstanding these two main characteristics of the service, I would appreciate if you could show me what other policies relevant to the double-negative in the service process document I am missing.

Thank you.

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                    Fri, Dec 15, 2023 at 2:22 PM
To: John Gherini <John.Gherini@ucop.edu>

Hi John,

Is there any time in late December or any other time this month you could meet again to start putting together a discovery plan?

[Quoted text hidden]

---

**John Gherini** <John.Gherini@ucop.edu>                                          Mon, Dec 18, 2023 at 3:03 PM
To: Robert Vincent Gonzales <rvgonza1@uci.edu>

Robert,


We can schedule a discovery meeting in late December.  For now, please consider the attached stipulation based on what we discussed.  If you agree, I can add you signature, or you can add it as well.


Let me know if you have any questions.

[Quoted text hidden]

---

 **Gonzales Stipulation to Extend Time (4853-9932-7127.1).pdf**
142K

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                    Tue, Dec 19, 2023 at 4:27 PM
To: John Gherini <John.Gherini@ucop.edu>

Hi,

You seemed to indicate on Friday that I can start moving forward with discovery now that we've held an initial conference, so I've already submitted a proposal for a two phase discovery plan including initial requests for disclosure, as well as a request for the original 1/26/24 extension date and an extension for the final discovery plan.

As for the service process, you vaguely indicated that the procedure published on the website is misleading when I asked you directly on Friday.  The document you sent does not indicate what other policy is the correct service procedure if the UCOP website has the wrong one posted.  On the day before our conference, Judge Selna made an order acknowledging an extension to receive the signed CV-108 waiver back as moot.  I'm not so sure it is the published service procedure that is misleading.

University of California, Irvine Mail - Gonzales v. UC

Case 8:23-cv-01788-JVS-KES   Document 100   Filed 07/05/24   Page 31 of 139   Page ID
#:1311

Would you be available this Friday or early next week to go over things more thoroughly and try to finalize a discovery plan?   And have you had a chance to look over my request for a stipulation?

[Quoted text hidden]

---

**John Gherini** <John.Gherini@ucop.edu>                                              Tue, Dec 19, 2023 at 5:46 PM
To: Robert Vincent Gonzales <rvgonza1@uci.edu>

Robert,

Before we do discovery, we need to get the pleadings sorted out and the parties into the case that you want in.  Please sign the attached stipulation, or you can simply respond to me that the stipulation is acceptable to you so I can get this filed.

[Quoted text hidden]

 **Gonzales Stipulation to Extend Time (4853-9932-7127.1).pdf**
142K

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                    Tue, Dec 19, 2023 at 7:38 PM
To: John Gherini <John.Gherini@ucop.edu>

Alright.  I can't figure out what the real concern is if the last paragraph about accepting service is included.  It seems to work out despite the document on the UCOP website.

[Quoted text hidden]

 **Gonzales Stipulation to Extend Time (4853-9932-7127.1).pdf**
172K

---

**John Gherini** <John.Gherini@ucop.edu>                                            Wed, Dec 20, 2023 at 2:36 PM
To: Robert Vincent Gonzales <rvgonza1@uci.edu>

Robert,

The purpose of this email is to clear up a couple things.

First, I said it would be fine to schedule a discovery conference during which we could discuss what types of discovery and information you would like the University to search for.  However, I did not say it was appropriate to immediately proceed with discovery when the pleadings are still not resolved.  It is also unclear to me what you mean when you indicate below that you submitted discovery requests, as I do not believe those were served on me.

Second, on the service of process issue, I think that matter is resolved.  I can accept by email service, any documents that you would like to serve on the individual named defendants.

I would be happy to set up a time to speak with you next week.  Please let me know if there is a date and time that works on your end.

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                   Wed, Dec 20, 2023 at 6:17 PM
To: John Gherini <John.Gherini@ucop.edu>

Anytime before 4 that works for you.  I think I can speak from thr top of my head, but I'd like a little time to prepare.

[Quoted text hidden]

---

**John Gherini** <John.Gherini@ucop.edu>                                                       Fri, Jan 5, 2024 at 10:04 AM
To: Robert Vincent Gonzales <rvgonza1@uci.edu>

We can do it Monday as well if that is more helpful to you.

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                       Fri, Jan 5, 2024 at 11:01 AM
To: John Gherini <John.Gherini@ucop.edu>

That could work better.  I'm up for whatever works best for you.

Most of the points you raised are simple enough to speak about from the top of my head.  One is more significant.  Can you guess which is which?

[Quoted text hidden]

---

**John Gherini** <John.Gherini@ucop.edu>                                                       Sat, Jan 6, 2024 at 9:50 AM
To: Robert Vincent Gonzales <rvgonza1@uci.edu>

Robert,

I have a 30 min block available at 10 on Monday.  I will send you a zoom link for that.

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                       Sun, Jan 7, 2024 at 11:59 PM
To: John Gherini <John.Gherini@ucop.edu>

Alright, thank you.  I will be there.

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                       Mon, Jan 8, 2024 at 10:42 AM
To: John Gherini <John.Gherini@ucop.edu>

This outline of claims is also included in my documents already submitted to the court, just so you know.

My clarified areas of concern are 2023 administrative complications (Exhibits A), 2020 cryptic retaliatory scandal (Exhibits B), Las Lomas apartments planning (Exhibits C), and direct threat of retaliation by a university employee (Exhibits D). Not including discovery exhibits, Exhibits A are broken up into student conduct issues (A1, 3-5, 9-12) and whistleblower issues (A2, 6-8, 11-14).  The student conduct issues are i) undue denial of my academic liberties during the entire remainder of my enrollment, ii) failure to investigate the unknown bias or otherwise retaliatory behavior of Mr. Coronel, and iii) failure to move forward with the academic hold procedure except as an exchange in litigation.  The whistleblower issues are i) defective procedure for the OAISC to investigate complaints about itself, ii) failure to investigate unconscionable 2020 student conduct issues, iii) failure to investigate extra-conduct matters with faint relevance to conduct matters, and iv) failure to investigate significant matters on campus overlooked by police discretion.  Exhibits B are broken up into i) cryptic campus housing maintenance, ii) housing food safety negligence, iii) retaliatory or discriminatory harassment using conduct and quarantine policy (B1-7, 9-10), iv) equal protections issue, v) undue third-party denial of an employment opportunity (B8), vi) destruction of financial aid qualifications by means of a prejudicial, unauthorized medical diagnosis, and vii) pattern of confidentiality issues.  Exhibits C and D are not further broken up into areas of concern.

I hope it helps.  Thank you.

[Quoted text hidden]

7/1/24, 8:59 Gmail Case 8:23-cv-01788-JVS-KES    Document 100  Filed 07/05/24   Page 33 of 139   Page ID
University of California, Irvine Mail - Roberts Gonzales v. UC
#:1313

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                    Tue, Jan 9, 2024 at 12:00 AM
To: John Gherini <John.Gherini@ucop.edu>

I'm sorry if the way I speak can be unpleasant.  I would largely attribute that to the
unpleasantness of not being heard for three years and playing gotcha.  Here is a set of
responses to the email you sent outlining the several points which we discussed
today. You have witnessed how I am quick not to take legal advice, but please try to put
yourself in my shoes because I just have too many "procedural and substantive"
reasons to question even my own lawyer in that case.

1. Amd XI: The text of the amendment reads "The judicial power of the US shall not be construed to extend to any
suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by
citizens or subjects of any foreign state."  The keywords potentially barring the jurisdiction of federal courts in my case
seem to be "another State" and "foreigner" because I am a citizen of this State.  If current precedent is misconstruing
the amendment, there is simply too large of a body of overturned precedents of a like manner that demonstrate the
possibility for human errors to occur by means of judicial power as much as in any other place in society.  For
example, Reed v. Reed (1971) established for the first time that the scope of the 14th Amendment is not limited to
race relations, but in fact includes other matters of equal protections such as gender equality.  I am interested to see
how the language of Amd. XI has been substituted in cases or otherwise modified in the precedents you
mentioned, so I will get back to you on that, but the amendment nevertheless cannot say red if it actually says blue.

2. Exhaustion: Several characteristics of my case make federal courts the court of record: a) a case arising under the
US Constitution, b) a notice of attachment on land of a trademark federal subsidiary, and c) a case affecting a public
minister.  First and foremost, the State of California has criminalized due process in the form of authentic record-
keeping under certain conditions by conflating "private person" and "official duties."  If a State criminalizes laws made
under the authority of the United States, Article III would logically be the initial source of my standing.  Imagine
my reasonable expectations of the outcome of such a trial in State courts as a filer if I had to go there first in this case,
paired with the politics where it doesn't belong that I experienced.  If it were not for the due process area, what else
can someone in my position be expected to think of how to identify the correct venue based on the characteristics I
highlighted in this paragraph?

3A. No Cognizable Theory:  Our discussion on this topic today was not particularly focused on what I am missing when
I asked that question.  For example, the plain meaning of Arroyo Vista housing duties, as well as the duties of 99% of
other university offices and other functions of society, *do not include* certified power to make a medical diagnosis.
Medical diagnostics amounts to a serious, exclusive authority, does it not?  The repercussions of the inverse are
absurdly defective and insane.  Is the opposing argument that the topic has never been the focus of a judicial
determination before?  Because that is also untrue.  As a student who is fairly well-tested in my own experiments in
the field of deception detection, I cannot imagine our discussions on this topic today were anything but a kind of test.
The story kept changing when our conversation was focused on unconscionability.  It morphed from "you've never
heard of it" to "it's not a legal theory" to "I don't see how it applies" to "it doesn't effect damages."  If you didn't
mean what you said, what do you want me to expect?  I could illustrate a similar story of changing stories I like to
illustrate about a "face-tattoo guy" because it is really funny.  The truth is there are several established theories that I
named as well as the two main, directly proportional past cases against the same university which I cited in my
initiating documents, and it showed when I mentioned it today.  Will you please tell me what I am missing if you
maintain your opinion?

3B. Implausible Undeniability: I'm sorry, but if I understand your objection correctly, I am not merely "reciting the
elements of a cause of action" and then "supporting them" with "conclusory statements" like some kind of prejudicial
investigation, like the one I have demonstrated.  But seriously?  Did you not pick up on the "unofficial medical
diagnosis?"  How about the level of harassment for an undiscovered-in-whole intent throughout the student conduct
process?  Have you gotten a chance to look over the whistleblower materials I sent much?  I find your characterization
ironically offensive.  There are also a lot of materials related to discovery which we haven't really gotten into yet, like
that part where the case affects a public minister.  As for the notice of attachment, you are still busy with the rest so
we haven't gotten there yet.  But I will mention in advance how funny it would be to insist that the state of particular
aspects of our economy will not provide a body of evidence showing that my rights are injured as well as those of
many others, in a way that can be characterized as "feudalism."

3C. Lack of Clarity: You got me, in the sense that my filings are not well organized.  I am a student, this is complex
litigation, and it shows.  That does *not* mean it is *not* a huge stretch to predictably say that my case lacks a cognizable
theory and plausibility in the face of everything I have filed.  In fact, to say my case lacks injury and cause while at the
same time saying it is not clear seems like far more of a stretch because it is a contradiction.  Kind of like "a naked
assertion devoid of further factual enhancement."  I have submitted the evidence, and I can articulate it's depth, in

more than half an hour, so now you have to point out what am I missing if your opinion is that my case is not plausible
and has no basis in law.  Knowing this, I clarified and outlined the inquiries from my original complaint in a more
definitive statement filed on 12/22/23.


Today, you said that you did not even know about the "unofficial medical diagnosis" named in verbatim in
my documents when I asked about how much of my case you have looked through.  I responded by
mentioning how hard it is to make serious conclusions without looking at the evidence.  Not knowing about
key elements of the case, and their evidence, *will prove to be a larger contributing factor* to the inability to
"substantively respond" to my complaint than its initial vagueness.  If you say you do not think my case is
plausible and has no basis in law, **we need to schedule a window of time larger than half an hour this
week** to go through the lack of clarity so you can have the opportunity to look through it enough to say that I
don't have a case.

Thank you.  I hope to hear back soon.

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                             Thu, Jan 11, 2024 at 5:08 PM
To: John Gherini <John.Gherini@ucop.edu>

Hi,

Sorry again for the difficulties that come with the difficulties of my case.

Despite you saying you missed a key area, I figured out which notices you are missing relevant to our discussion.

Would you like to schedule another discussion early tomorrow or sometime early next week?

Thank you.
[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                             Fri, Jan 12, 2024 at 3:55 PM
To: John Gherini <John.Gherini@ucop.edu>

Here are the additional laws relevant to the case as well as the remaining whistleblower exhibits I previously asked to
release through the discovery process.

I will look at the case law for Amd. XI today

I'm sorry about how this may affect your response to my complaint.  Identifying missing parts, adjusting accordingly, and
double checking premises will likely be a theme throughout my case.

Hope to hear back soon.
[Quoted text hidden]

**4 attachments**

 **52- Whistleblower Notice II (1-11).pdf**
256K

 **53- UC Notice II (1-11).pdf**
1133K

 **51- Whistleblower Notice I (1-11).pdf**
4245K

 **50- 127B(11-14) (1-11).pdf**
5450K

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                             Sun, Jan 14, 2024 at 11:56 PM
To: John Gherini <John.Gherini@ucop.edu>

7/1/24, 8:59 PM                    University of California, Irvine Mail - Robert Gonzales v. UC
Case 8:23-cv-01788-JVS-KES    Document 100    Filed 07/05/24    Page 35 of 139    Page ID
                                        #:1315

Hey. I looked for those cases and I found the documents for one, but I don't think I found the right one for Mueller v. US. Would you mind sending me a copy of that one? I did find another case that cites it, and another one that's just perfect! I also found it funny that you said Amd. XI is relevant, which makes me wonder what other cases similar to the ones you cited you may have instead.

I did notice that the one you sent and the first one I found is right on topic with our discussion the other day about establishing subject matter jurisdiction (1) according to Art. III S. 1 sources of authority and (2) on a factual basis. I can understand your hesitation and a strong feeling in your foundation over the nature of my due process claim, but to say I do not have a case on a factual basis without an explanation, in the face of the level of evidence I have provided for a complex case in my position, is a facial argument. Another layer is added to the conclusory nature of that side of your objection if you did not pick up on the "unauthorized medical diagnosis."

As for federal standing, **Steffel v. Thompson (415 US 452, 1974)** hits squarely on the button for establishing federal jurisdiction over cases involving a State criminal statute related to an unclear constitutional claim. Federal courts are not precluded, and in fact, the US Supreme Court has found that it is the "paramount duty of the federal courts" to take up such cases involving the constitution and federal laws like mine based on one major test (at 462-462, 473). They also identified past cases on the fairness of placing a plaintiff [normally represented by an attorney] between acts asserted to be constitutional and subjecting themselves to a State criminal proceeding. A criminal statute has been invoked twice, within the university's control over my life and liberty. Like in past cases, Mr. Coronel did know that (1) making substantive lies in a conduct case are not within the scope of his duties, and (2) he would be preventing me from proving any lies by preventing me from keeping authentic records of an official proceeding. Preventing me from swiftly proving lies in a professional setting would not be an act of duty in good faith. Another important distinction is that my challenge is not against the State statute in whole, but only how it is wrongly abused within official duties. Quite commonly in fact. A wide variety of current events exemplify the ripeness for examining the growing, society-wide need to keep "police-like" audio recordings of other officials acting within their duties but in terms of "good evidence." Don't forget, my case also involves an irreparable injury: the destruction of my CalGrant qualifications by permanent disciplinary probation (as demonstrated between the UCI's FAFSA-CalGrant webpage and my cruel and unusual punishment). There are also just too many normal, everyday "theories" from my notes in the last two years for me to go over very easily like duty of care, supervisory liability, and several fundamental principles related to the adverse boundaries of everyday American freedom. There is also the affordable housing issue according to federal statute and two other constitutional provisions, which is what I should have put in my previous email outlining areas of Art. III. exhaustion instead of 'claiming lands under federal grants.'

"Silvey" and "Brooker" provide me with such a level of ironic tools for guiding through establishing my claims that I feel like you knew that when you selected those cases for me to search for. Again, I am sorry for what would amount to incompetence if I had spent my time studying court procedure and university processes. I don't know how busy you are, but I guess I would ask if you would test my authenticity in ways that didn't amount to being so distressing to my focus, still suspended in a state of not knowing where my planned future I worked for most of my life towards is going.

I think these developments will significantly affect the way you have set up your response above.

[Quoted text hidden]



**qual.png**
375K

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                    Tue, Jan 23, 2024 at 12:28 AM
To: John Gherini <John.Gherini@ucop.edu>

Hi, I can also accept all future service by email.

I'm still sorting through the contents of your response.

I also didn't realize that you didn't get documents. I know I sent one pleading doc with a note asking you to view it through the online system for a large document (I think Doc. 16), but that should have only been one. The pleadings for 6 and 16

are listed in my data with the other physically served documents, so I didn't email them. Would you like me to email everything in the original complaint file on my computer?

I've obviously been ahead of myself with discovery because there is a lot going on here. Do you have any time this week to start taking those steps? I know you didn't have an obligation to inform me of relevant laws before making a response, and I've simply made it unpleasant for you. But please understand my situation. And I would also like to have a discussion about State due process in the case that a federal trademark university is exclusively a State instrumentality.

Thanks.

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                      Sun, Jan 28, 2024 at 9:23 PM
To: John Gherini <John.Gherini@ucop.edu>

Hi, I guess I thought I would send the rest when we scheduled another conference, thinking we would have started sooner. Here are the rest of the documents at cause. There are obviously a bunch of administrative documents like Judge's orders to my navigation of the process. Are you getting them mailed to you, or am I supposed to send those too?

Also, your response shows that you may have not even looked through the parts of my case that you did have access to. For example, you confuse Mr. Coronel and Dr. Tau, you conflate "the" investigator Mr. Coronel with "an" investigator from the OAISC, whom you stated I am refusing to talk to even though my emails demonstrate that I have been trying to talk with both for months separately, and you stated that a real event central to and demonstrated by my case is an "allegation."

I understand the almost natural strategy of saying I filed new claims, but do you really not see the correlations between my original documents and my clarifications?   Do I really have 'zero' facts or stated claims that purport the idea of any theory entitling relief?

The 14th day leading up to March 11th is February 26th, and 21 days leading up is February 19th. Given that my, not nonexistent, but disorganized claims are understandably difficult to navigate, it would be a good idea to schedule several conferences this week and next to try to establish the clarity you require.

[Quoted text hidden]

---

**7 attachments**

📄 **6- CV-66 original.pdf**
175K

📄 **16-  9-29 filing.pdf**
1435K

📄 **37- Initial Disclosure & Discovery Plan (12-18).pdf**
97K

📄 **38- Extension and Scheduling Conference (12-18).pdf**
98K

📄 **46- G92 (12-22).pdf**
156K

📄 **42- 127C-D (12-22).pdf**
105K

📄 **56- Steffel v. Thompson (1-15).pdf**
934K

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                      Thu, Feb 8, 2024 at 9:29 PM
To: John Gherini <John.Gherini@ucop.edu>

Hi, do you want to start talking about finalizing a discovery report?

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                                      Sun, Feb 11, 2024 at 11:11 PM
To: John Gherini <John.Gherini@ucop.edu>

Yes, no?

[Quoted text hidden]

---

**John Gherini** <John.Gherini@ucop.edu>                    Mon, Feb 12, 2024 at 8:58 AM
To: Robert Vincent Gonzales <rvgonza1@uci.edu>

Yes,  We can schedule a time to talk this week.

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                    Mon, Feb 12, 2024 at 2:07 PM
To: John Gherini <John.Gherini@ucop.edu>

Alright, cool.

These half hour windows aren't working.  I'm sorry if you feel like I have filed new claims, that well-documented, real-world
events that have fundamentally impacted the course of my life are "allegations," and everything else.

We need to schedule enough time to discuss a discovery plan and probably really, really analyze my pleadings and
exhibits.  What day is best for you to go into more depth?

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                    Tue, Feb 20, 2024 at 11:14 AM
To: John Gherini <John.Gherini@ucop.edu>

Hello

[Quoted text hidden]

---

**John Gherini** <John.Gherini@ucop.edu>                    Wed, Feb 21, 2024 at 10:45 AM
To: Robert Vincent Gonzales <rvgonza1@uci.edu>

Happy to set up a one hour call.  Needs to me next week.  Let me know when you are available.

---

**From:** Robert Vincent Gonzales <rvgonza1@uci.edu>
**Sent:** Tuesday, February 20, 2024 11:15 AM
**To:** John Gherini <John.Gherini@ucop.edu>
**Subject:** Re: Robert Gonzales v. UCI

Hello

On Mon, Feb 12, 2024, 2:07 PM Robert Vincent Gonzales <rvgonza1@uci.edu> wrote:

Alright, cool.

These half hour windows aren't working.  I'm sorry if you feel like I have filed new claims, that well-documented, real-
world events that have fundamentally impacted the course of my life are "allegations," and everything else.

When would you like to meet and confer?

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                    Mon, May 20, 2024 at 4:56 AM
To: John Gherini <John.Gherini@ucop.edu>

Hi,

I've been working on the most recent case documents lately, and I just remembered that you still need to sign the rule 26(f) joint report.

Will you be ready to meet and confer about it so you can sign it?

[Quoted text hidden]

---

 **Rule 26 Joint Report (4853-9932-7127.3).pdf**
225K

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                    Mon, May 20, 2024 at 4:31 PM
To: John Gherini <John.Gherini@ucop.edu>

When do you have time to discuss my new motions?

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                    Mon, May 20, 2024 at 11:46 PM
To: John Gherini <John.Gherini@ucop.edu>

I'm sorry if the facts of my case involving irreparable injuries to my life and procedural due process are as extreme as they sound.

Can we please start moving forward?

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                    Sun, May 26, 2024 at 11:21 PM
To: John Gherini <John.Gherini@ucop.edu>

Here are some more documents.

Are you ready to start discussing the topic of irreparable injury, or any other area of my pleadings or next step?

[Quoted text hidden]

---

**3 attachments**

 **97(1)- Irreparable Order (5-21).pdf**
212K

 **97- Irreparable TRO (5-21).pdf**
887K

 **5-21.pdf**
3823K

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                    Thu, May 30, 2024 at 2:48 AM
To: John Gherini <John.Gherini@ucop.edu>

Hi Mr. Gherini, are you ready to meet and confer?

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                    Sat, Jun 8, 2024 at 5:14 PM

To: John Gherini <John.Gherini@ucop.edu>

Hey, when can we start "meeting and conferring" to schedule a settlement conference and go over more disclosures? To release some pressure from my mind??

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                   Tue, Jun 18, 2024 at 8:02 PM
To: John Gherini <John.Gherini@ucop.edu>

Hi, when can we start "meeting and conferring" to schedule a settlement conference and go over more disclosures?

[Quoted text hidden]

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                   Fri, Jun 21, 2024 at 11:11 AM
To: John Gherini <John.Gherini@ucop.edu>

 CV-66+ (6-20).pdf

[Quoted text hidden]

---

**3 attachments**

 **97(1)- Irreparable Order (5-21).pdf**
212K

 **97- Irreparable TRO (5-21).pdf**
887K

 **96.pdf**
3823K

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                   Sun, Jun 30, 2024 at 6:22 PM
To: John Gherini <John.Gherini@ucop.edu>

Hey. I'm going to appeal things past the deadline. Do you object?

[Quoted text hidden]

---

**John Gherini** <John.Gherini@ucop.edu>                   Mon, Jul 1, 2024 at 9:16 AM
To: Robert Vincent Gonzales <rvgonza1@uci.edu>

Robert,


The University does object and does not agree you can appeal decisions of the district court past the deadline. As I have stated before, I urge you to consider another path other than through litigation.


John

---

**From:** Robert Vincent Gonzales <rvgonza1@uci.edu>
**Sent:** Sunday, June 30, 2024 6:23 PM
**To:** John Gherini <John.Gherini@ucop.edu>
**Subject:** Re: Rule 26 Joint Report (4853-9932-7127.3) (002).docx

Hey.  I'm going to appeal things past the deadline.  Do you object?


On Fri, Jun 21, 2024 at 11:11 AM Robert Vincent Gonzales <rvgonza1@uci.edu> wrote:

[Quoted text hidden]

[Quoted text hidden]

CV 66+ (6.20) .pdf**Error! Filename not specified.**

---

**Robert Vincent Gonzales** <rvgonza1@uci.edu>                    Mon, Jul 1, 2024 at 7:20 PM
To: John Gherini <John.Gherini@ucop.edu>

Woah, you can talk!

Well if the court has a form for appealing a decision past a deadline, and the university rules that it is impossible, may I
ask if that opinion is a modus operandi?

[Quoted text hidden]

---

**2 attachments**

**~WRD0000.jpg**
1K

**~WRD0000.jpg**
1K

Query    Reports    Utilities    Help    Log Out

(KESx),CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
# CIVIL DOCKET FOR CASE #: 8:23-cv-01788-JVS-KES

| | |
|---|---|
| Robert V. Gonzales v. University of California, Irvine et al | Date Filed: 09/25/2023 |
| Assigned to: Judge James V. Selna | Date Terminated: 05/07/2024 |
| Referred to: Magistrate Judge Karen E. Scott | Jury Demand: None |
| Cause: 28:1331 Fed. Question | Nature of Suit: 448 Civil Rights: Education |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Robert V. Gonzales**                      represented by **Robert V. Gonzales**
                                                           PO Box 7804
                                                           South Lake Tahoe, CA 96158
                                                           530-523-3822
                                                           PRO SE

V.

**Defendant**

**University of California, Irvine**
*TERMINATED: 03/25/2024*

**Defendant**

**Christopher Coronel**
*Student Conduct Investigator, official capacity*
*TERMINATED: 03/25/2024*

**Defendant**

**Rameen Talesh**
*Dean of Studen Affairs, official capacity*
*TERMINATED: 03/25/2024*

**Defendant**

**The Regents of The University of**              represented by **John G Gherini**
**California**                                                 University of California
*TERMINATED: 03/25/2024*                                       1111 Franklin St 8th Floor
                                                               Oakland, CA 94607
                                                               415-781-7900
                                                               Fax: 415-781-2635
                                                               Email: john.gherini@ucop.edu
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Janet Nava Cardenas**
*official capacity*

**Defendant**

**Kathie Bakken Allen**
*offical capacity*

**Defendant**

**Kirsten K Quanbeck**
*official capacity*

**Defendant**

**Manny Tau**
*individual*

**Defendant**

**Unknown OAISC Employees**

**Defendant**

**Ahn Pham**
*official capacity*

**Defendant**

**The Regents of The University of
California**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/25/2023 | 1 | COMPLAINT against Defendants Christopher Coronel, Rameen Talesh, University of California, Irvine. Case assigned to Judge James V. Selna for all further proceedings. Discovery referred to Magistrate Judge Karen E. Scott., filed by Plaintiff Robert V. Gonzales. (Attachments: # 1 Civil Cover Sheet) (et) (Entered: 09/28/2023) |
| 09/25/2023 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiff Robert V. Gonzales. (et) (Entered: 09/28/2023) |
| 09/25/2023 | 3 | REQUEST to Proceed In Forma Pauperis with Declaration in Support filed by Plaintiff Robert V. Gonzales. (et) (Entered: 09/28/2023) |
| 09/25/2023 | 4 | APPLICATION for Pro Se Litigant to electronically file documents in a specific case filed by Plaintiff Robert V. Gonzales. (et) (Entered: 09/28/2023) |
| 09/26/2023 | 5 | NOTICE TO FILER OF DEFICIENCIES in Filed Document RE: Complaint - (Discovery) 1 . The following error(s) was/were found: Document lacks required signature. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (et) (Entered: 09/28/2023) |
| 09/26/2023 | 6 | SUPPLEMENTAL to Complaint 1 filed by Plaintiff Robert V. Gonzales. (et) (Entered: 09/28/2023) |
| 09/26/2023 | 7 | EXHIBIT A(3) PLEADING filed by Plaintiff Robert V. Gonzales. (et) (Entered: 09/28/2023) |

| 09/26/2023 | 8 | EXHIBIT B (3-6) PLEADING filed by Plaintiff Robert V. Gonzales. (et) (Entered: 09/28/2023) |
| --- | --- | --- |
| 09/26/2023 | 9 | DECLARATION OF EXHIBIT B (1-7) filed by Plaintiff Robert V. Gonzales. (et) (Entered: 09/28/2023) |
| 09/26/2023 | 10 | DECLARATION OF EXHIBIT A (1-3) filed by Plaintiff Robert V. Gonzales. (et) (Entered: 09/28/2023) |
| 09/28/2023 | 11 | NOTICE OF ASSIGNMENT to District Judge James V. Selna and Magistrate Judge Karen E. Scott. (et) (Entered: 09/28/2023) |
| 09/28/2023 | 12 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (et) (Entered: 09/28/2023) |
| 09/28/2023 | 13 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (et) (Entered: 09/28/2023) |
| 09/28/2023 | 15 | ORDER by Judge James V. Selna: Granting 4 APPLICATION for Pro Se Electronic Filing. The applicant must register to use the Courts CM/ECF System within five (5) days of being served with this order. Registration information is available at the Pro Se Litigant E-Filing web page located on the Courts website. Upon registering, the applicant will receive a CM/ECF login and password that will allow him/her to file non-sealed documents electronically in this case only. Any documents being submitted under seal must be manually filed with the Clerk. (es) (Entered: 09/29/2023) |
| 09/29/2023 | 14 | INITIAL ORDER FOLLOWING FILING OF COMPLAINT ASSIGNED TO JUDGE SELNA. (eva) (Entered: 09/29/2023) |
| 09/29/2023 | 16 | AMENDMENTS IN PART TO COMPLAINT, 1 filed by Plaintiff Robert V. Gonzales. (es) (Entered: 09/29/2023) |
| 09/29/2023 | 17 | CERTIFICATION AND NOTICE OF INTERESTED PARTIES (Local Rule 7.1-1) filed by Plaintiff Robert V. Gonzales (es) (Entered: 10/02/2023) |
| 10/03/2023 | 18 | ORDER by Judge James V. Selna: Denying 3 REQUEST to Proceed in Forma Pauperis with Declaration in Support (CV-60). IT IS FURTHER ORDERED: Within 30 days of the date of this Order, the filer must do the following: Plaintiff must pay the full filing fee of 200.00. (es) (Entered: 10/04/2023) |
| 10/05/2023 | 19 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiff Robert V. Gonzales. (rolm) (Entered: 10/06/2023) |
| 10/05/2023 | 20 | Notice of Procedures of service upon the University of CA filed by Plaintiff Robert V. Gonzales. (es) (Entered: 10/10/2023) |
| 10/25/2023 | 21 | Updated Exhibits A and B(2) After 9/28 Conditional Request Filed filed by Plaintiff Robert V. Gonzales. (es) (Entered: 10/27/2023) |
| 10/25/2023 | 22 | NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS filed by Plaintiff Robert V. Gonzales. (es) (Entered: 10/27/2023) |
| 10/25/2023 | 23 | WAIVER OF SERVICE OF SUMMONS filed by Plaintiff Robert V. Gonzales. (es) (Entered: 10/27/2023) |
| 10/25/2023 | 24 | PROOF OF SERVICE filed by Plaintiff Robert V. Gonzales, re Exhibit (non-trial) 21 , Notice (Other) 23 , Notice (Other) 22 served on 10/25/2023. (es) (Entered: 10/27/2023) |
| 11/03/2023 | 25 | PROOF OF SERVICE Executed by Plaintiff Robert V. Gonzales, upon Defendant University of California, Irvine served on 11/3/2023, answer due 11/24/2023. Service of |

| | | the Summons and Complaint were executed upon The University of CA Office of the General Counsel, who is designated by law to accept service of process on behalf of The Regents of the University of California in compliance with Federal Rules of Civil Procedure by personal service. (es) (Entered: 11/06/2023) |
| --- | --- | --- |
| 11/15/2023 | 26 | FINANCIAL ENTRY: Received $402.00 Final initial partial filing fee from plaintiff Robert Gonzales on $402.00, receipt number Pay.gov Tracking Id:, re: Order on Request to Proceed In Forma Pauperis with Declaration in Support (CV-60), 18 . THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. TEXT ONLY ENTRY. (chs) (Entered: 11/15/2023) |
| 11/20/2023 | 27 | REQUEST to Proceed In Forma Pauperis, Declaration in Support filed by plaintiff Robert V. Gonzales. (lc) (Entered: 11/21/2023) |
| 11/20/2023 | 28 | UP TO DATE FINANCIAL STATEMENT re: REQUEST to Proceed In Forma Pauperis, Declaration in Support 27 filed by Plaintiff Robert V. Gonzales. (lc) Modified on 11/21/2023 (lc). (Entered: 11/21/2023) |
| 11/20/2023 | 29 | AMENDMENT OF NAME OF DEFENDANT ON PREVIOUSLY SUBMITTED CV 30 TO CORRECT DEFENDANT ON OCTOBER 5TH 19 filed by Plaintiff Robert V. Gonzales (lc) (Entered: 11/21/2023) |
| 11/20/2023 | 30 | NOTICE TO CLARITY FEDERAL QUESTION filed by plaintiff Robert V. Gonzales. (lc) (Entered: 11/21/2023) |
| 11/20/2023 | 31 | REQUEST FOR EXTENTION TO SERVE DEFENDANT filed by plaintiff Robert V. Gonzales. (lc) (Entered: 11/21/2023) |
| 11/29/2023 | 32 | MINUTES (IN CHAMBERS): Order Re: Request to Proceed In Forma Pauperis by Judge James V. Selna: Now pending is Plaintiff's second IFP Request, filed on 11/20/2023 27 . The Request is accompanied by an up-to-date financial statement. Because Plaintiff has paid the full fee, his request to proceed in forma pauperis is denied as moot. The denial is without prejudice to Plaintiff requesting a partial refund of filing fees that may have been overpaid. Court Reporter: N/A. (gk) (Entered: 11/30/2023) |
| 12/04/2023 | 33 | Preemptive Notice for CV-004 (Affordable Housing Law) filed by Plaintiff Robert V. Gonzales. (es) (Entered: 12/04/2023) |
| 12/04/2023 | 34 | Notice for Relevant University Policies: Fair Hearing, Disciplinary Probation, Confidentiality filed by Plaintiff Robert V. Gonzales. (es) (Entered: 12/04/2023) |
| 12/04/2023 | 35 | REQUEST for Stipulation filed by Plaintiff Robert V. Gonzales. (es) (Entered: 12/04/2023) |
| 12/14/2023 | 36 | MINUTES (IN CHAMBERS) Order Regarding Request for Extension and Request for Stipulation by Judge James V. Selna: Plaintiff moves for an extension of time to serve the proper Defendant, The Regents of the University of California 31 . Gonzales also moves for a stipulation with Defendants 35 . Because Gonzales simply seeks to name the Regents as the proper defendant, and is doing so within three months of filing his Complaint, the Court finds there is no evidence of undue delay, bad faith, or dilatory motive. Therefore, the Court GRANTS Gonzales leave to amend his Complaint. Having granted Gonzales leave to amend, the Court finds that his request for an extension of time and stipulation are moot because the party Gonzales seeks to name as a defendant, the Regents, were not privy to his filings. See document for further details. Court Reporter: Not Present. (gk) (Entered: 12/15/2023) |
| 12/18/2023 | 37 | DERAILED INITIAL REQUESTS FOR DISCLOSURE/DISCOVERY PLAN filed by Plaintiff Robert V. Gonzales.(es) (Entered: 12/18/2023) |

| | | |
|---|---|---|
| 12/18/2023 | 38 | Definite Extension, Returned Waiver of Service of Summons, Scheduling Conference filed by Plaintiff Robert V. Gonzales. (es) (Entered: 12/18/2023) |
| 12/21/2023 | 39 | STIPULATION Extending Time to Answer the complaint as to The Regents of The University of California answer now due 1/19/2024, filed by Defendant The Regents of The University of California.(Attorney John G Gherini added to party The Regents of The University of California(pty:dft))(Gherini, John) (Entered: 12/21/2023) |
| 12/22/2023 | 40 | DECLARATION of Exhibits A(6-8) filed by Plaintiff Robert V. Gonzales. (es) (Entered: 12/26/2023) |
| 12/22/2023 | 41 | DECLARATION of Exhibits A(9-12) and B(9-10) filed by Plaintiff Robert V. Gonzales. (es) (Entered: 12/26/2023) |
| 12/22/2023 | 42 | DECLARATION of Exhibits C-D, Request for Extension to File Exhibits for Complex Litigation by a Student filed by Plaintiff Robert V. Gonzales. (es) (Entered: 12/26/2023) |
| 12/22/2023 | 43 | NOTICE OF APPLICATION AND HEARING FOR WRIT TO ATTACH ORDER filed by Plaintiff Robert V. Gonzales. (es) Modified on 12/27/2023 (es). (Entered: 12/26/2023) |
| 12/22/2023 | 44 | [PROPOSED] RIGHT TO ATTACH ORDER AND ORDER FOR ISSUANCE OF WRIT OF ATTACHMENT AFTER HEARING filed by Plaintiff Robert V. Gonzales. (es) Modified on 12/27/2023 (es). (Entered: 12/26/2023) |
| 12/22/2023 | 45 | NOTICE OF LODGING [Proposed] Writ of Attachment After Hearing filed by Plaintiff Robert V. Gonzales re Notice (Other) 44 (es) Modified on 12/27/2023 (es). (Entered: 12/26/2023) |
| 12/22/2023 | 46 | NOTICE of Manual Filing filed by Plaintiff Robert V. Gonzales of In addition to the four audio recordings previously listed for lodging (Exhibits B(3-6)): SEE DOCUMENT FOR FURTHER INFORMATION. (es) (Entered: 12/26/2023) |
| 12/27/2023 | 47 | NOTICE TO FILER OF DEFICIENCIES in Filed Document RE: Declaration 40 , Declaration 41 , Declaration 42 . The following error(s) was/were found: Document lacks required signature. Other error(s) with document(s): Application for a Right to Attach Order (CV-4F) is missing. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (es) (Entered: 12/27/2023) |
| 12/27/2023 | 48 | MINUTES (IN CHAMBERS) ORDER Denying Without Prejudice Plaintiff's Motion to Compel Initial Disclosures (Dkt. 37.) by Magistrate Judge Karen E. Scott: The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. For the reasons stated below, Plaintiff's Motion is DENIED without prejudice. Denying 37 Request for Discovery. [SEE DOCUMENT FOR FURTHER INFORMATION.] (es) (Entered: 12/27/2023) |
| 12/27/2023 | 49 | MINUTES (IN CHAMBERS) ORDER Denying Plaintiff's Motion for a Writ of Attachment (Dkt. 43.) by Magistrate Judge Karen E. Scott: The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. For the reasons stated below, Plaintiffs Writ Motion is DENIED. Denying 43 Motion for Writ. [SEE DOCUMENT FOR FURTHER INFORMATION.] (es) (Entered: 12/27/2023) |
| 01/11/2024 | 50 | DECLARATION OF EXHIBIT B(11-14) Filed filed by Plaintiff Robert V. Gonzales. (es) (Entered: 01/11/2024) |
| 01/11/2024 | 51 | Notice of US Whistleblower Policies Part I filed by Plaintiff Robert V. Gonzales. (es) (Entered: 01/11/2024) |

| 01/11/2024 | [52](#) | Notice of US Whistleblower Policies Part II filed by Plaintiff Robert V. Gonzales. (es) (Entered: 01/11/2024) |
|---|---|---|
| 01/11/2024 | [53](#) | Notice of US Policies for Abusive Conduct, Harassment, Discrimination (Line of Inquiry B) filed by Plaintiff Robert V. Gonzales. (es) (Entered: 01/11/2024) |
| 01/12/2024 | [54](#) | NOTICE TO FILER OF DEFICIENCIES in Filed Document RE: Notice (Other) [53](#) , Notice (Other) [52](#) , Notice (Other) [51](#) . The following error(s) was/were found: Other error(s) with document(s): Fed. R. Civ. P. 5 no proof of service attached. L.R. 11-1 All documents, except declarations, shall be signed by the attorney for the party or the party appearing pro se. The name of the person signing the document shall be clearly typed below the signature line. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (es) (Entered: 01/12/2024) |
| 01/12/2024 | [55](#) | Written Notice of Proof of Service of Process filed by Plaintiff Robert V. Gonzales, served on 1/12/2024. (es) (Entered: 01/16/2024) |
| 01/15/2024 | [56](#) | Notice Outlining the Full Identification of Federal Subject Matter Jurisdiction filed by Plaintiff Robert V. Gonzales. (es) (Entered: 01/16/2024) |
| 01/16/2024 | [57](#) | NOTICE OF MOTION AND MOTION to Dismiss Case *DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS COMPLAINT PURSUANT TO RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* filed by Defendant The Regents of The University of California. Motion set for hearing on 3/11/2024 at 01:30 PM before Judge James V. Selna. (Gherini, John) (Entered: 01/16/2024) |
| 01/16/2024 | [58](#) | DECLARATION of John Gherini in support of NOTICE OF MOTION AND MOTION to Dismiss Case *DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS COMPLAINT PURSUANT TO RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* [57](#) *DECLARATION OF JOHN GHERINI IN SUPPORT OF DEFENDANTS MOTION TO DISMISS PLAINTIFFS COMPLAINT PURSUANT TO RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE* filed by Defendant The Regents of The University of California. (Gherini, John) (Entered: 01/16/2024) |
| 01/16/2024 | [59](#) | PROOF OF SERVICE filed by Defendant The Regents of The University of California, re Declaration (Motion related),, [58](#) , NOTICE OF MOTION AND MOTION to Dismiss Case *DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS COMPLAINT PURSUANT TO RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* [57](#) served on 1/16/2024. (Gherini, John) (Entered: 01/16/2024) |
| 01/16/2024 | [60](#) | ORDER SETTING RULE 26(f) SCHEDULING CONFERENCE by Judge James V. Selna. Scheduling Conference set for 3/11/2024 at 1:30 PM before Judge James V. Selna. Counsel shall file the Joint Rule 26 Meeting Report, with the completed Exhibit A, by 3/04/24 (7 days before). (ev) (Entered: 01/16/2024) |
| 01/18/2024 | [61](#) | RESPONSE BY THE COURT TO NOTICE TO FILER OF DEFICIENCIES IN FILED DOCUMENT RE: Notice (Other) [53](#) , Notice (Other) [52](#) , Notice (Other) [51](#) by Judge James V. Selna. Filer shall consult the Notice of Deficiency and comply with all federal and local rules when filing any future documents. (es) (Entered: 01/18/2024) |
| 01/18/2024 | [62](#) | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Document RE: NOTICE OF MOTION AND MOTION to Dismiss Case *DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS COMPLAINT PURSUANT TO RULE 12(b) OF* |

| | | |
|---|---|---|
| | | *THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* 57 . The following error(s) was/were found: Local Rule 7-1.1 no notice of interested parties. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (es) (Entered: 01/18/2024) |
| 01/19/2024 | 63 | RESPONSE BY THE COURT TO NOTICE TO FILER OF DEFICIENCIES IN FILED DOCUMENT RE: NOTICE OF MOTION AND MOTION to Dismiss Case *DEFENDANTS NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS COMPLAINT PURSUANT TO RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF* 57 by Judge James V. Selna. A notice of interested parties shall be filed no later than 5 days from entry of this Order. (es) (Entered: 01/19/2024) |
| 01/19/2024 | 64 | NOTICE of Interested Parties filed by Defendant The Regents of The University of California, (Gherini, John) (Entered: 01/19/2024) |
| 02/15/2024 | 65 | Response to Request for Sanction 57 filed by Plaintiff Robert V. Gonzales. (es) (Entered: 02/15/2024) |
| 03/04/2024 | 66 | STATUS REPORT *Joint Rule 26(f) Report* filed by Defendant The Regents of The University of California. (Gherini, John) (Entered: 03/04/2024) |
| 03/07/2024 | 67 | MINUTES [IN CHAMBERS] Order Regarding Motion to Dismiss 57 by Judge James V. Selna: Before the Court is Defendant Regents of the University of California's ("Regents") motion to dismiss. (Mot., Dkt. No. 57 .) Plaintiff Robert V. Gonzales ("Gonzales") did not timely file an opposition. For the following reasons, the Court GRANTS the motion without prejudice.Gonzales is granted twenty days to replead. [SEE DOCUMENT FOR FURTHER INFORMATION.] (es) (Entered: 03/07/2024) |
| 03/07/2024 | 68 | Proposed Dates and Unusual Type of Harassment by Defense Counsel filed by Plaintiff Robert V. Gonzales. (es) (Entered: 03/07/2024) |
| 03/07/2024 | 69 | [IN CHAMBERS] ORDER by Judge James V. Selna: In light of the Court's order at Docket No. 67 , the Scheduling Conference currently set on March 11, 2024, at 1:30 p.m., is CONTINUED to April 15, 2024 at 10:30 a.m. The Parties shall review and comply with: (a) the Court's Order setting Scheduling Conference 60 , including on the issue of timely filing the Joint Rule 26(f) Report with the completed Exhibit A, by April 8, 2024. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (eva) TEXT ONLY ENTRY (Entered: 03/07/2024) |
| 03/25/2024 | 70 | CORRECTIONS TO REVERSE MOTION to Dismiss Case 57 filed by Plaintiff Robert V. Gonzales. (ts) (Entered: 03/26/2024) |
| 03/25/2024 | 72 | FIRST AMENDED COMPLAINT 1 against Defendants Janet Nava Cardenas, Kathie Bakken Allen, Kirsten K Quanbeck, Manny Tau, Ahn Pham and Unknown OAISC Employees filed by Plaintiff Robert V. Gonzales. (lom) (Entered: 03/27/2024) |
| 03/25/2024 | 73 | [STRICKEN BY ORDER OF THE COURT SEE DKT. 76 ] APPLICATION FOR TEMPORARY PROTECTIVE ORDER filed by Plaintiff Robert V. Gonzales. (lom) Modified on 4/2/2024 (es). (Entered: 03/27/2024) |
| 03/25/2024 | 74 | [DOCUMENT STRICKEN SEE DKT 46 ] APPLICATION [No. 2] FOR TEMPORARY PROTECTIVE ORDER filed by Plaintiff Robert V. Gonzales. (lom) Modified on 4/2/2024 (es). (Entered: 03/27/2024) |

| 03/27/2024 | 71 | NOTICE TO FILER OF DEFICIENCIES in Filed Document re: Corrections to Reverse Motion to Dismiss 70 . The following error was found: Case number missing from document. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (ts) (Entered: 03/27/2024) |
|---|---|---|
| 03/27/2024 | 75 | NOTICE TO FILER OF DEFICIENCIES in Filed Documents RE: APPLICATIONS for Temporary Restraining Order 74 73 . The following errors were found: No proposed order provided for either Application. Plaintiff added headers to the Applications. Headers are auto-generated via CM/ECF; do not manually add headers. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (ts) (Entered: 03/27/2024) |
| 03/28/2024 | 76 | RESPONSE BY THE COURT TO NOTICE TO FILER OF DEFICIENCIES IN FILED DOCUMENT RE: APPLICATION for Temporary Restraining Order 74 , APPLICATION for Temporary Restraining Order 73 by Judge James V. Selna. The document is STRICKEN. See document for further information. (es) (Entered: 04/02/2024) |
| 04/07/2024 | 77 | JOINT REPORT Rule 26(f) Discovery Plan filed by Plaintiff Robert V. Gonzales. (es) (Entered: 04/08/2024) |
| 04/08/2024 | 78 | [AMENDMENT TO] RULE 26(f) REPORT filed by Defendant The Regents of The University of California. (Gherini, John) Modified on 4/9/2024 (es). (Entered: 04/08/2024) |
| 04/09/2024 | 79 | MINUTES [IN CHAMBERS] ORDER TO SHOW CAUSE RE DISMISSAL FOR LACK OF PROSECUTION by Judge James V. Selna: Response to Order to Show Cause due by 4/15/2024. The Scheduling Conference set for April 15, 2024 at 10:30 a.m. is CONTINUED to April 29, 2024 at 10:30 a.m. for an in person hearing. SEE DOCUMENT FOR FURTHER INFORMATION. (es) Modified on 4/9/2024 (es). (Entered: 04/09/2024) |
| 04/10/2024 | 80 | NOTICE OF MOTION AND MOTION to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure filed by Defendant The Regents of The University of California. Motion set for hearing on 5/13/2024 at 01:30 PM before Judge James V. Selna. (Gherini, John) (Entered: 04/10/2024) |
| 04/10/2024 | 81 | DECLARATION of John Gherini in support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint NOTICE OF MOTION AND MOTION to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure 80 filed by Defendant The Regents of The University of California. (Gherini, John) (Entered: 04/10/2024) |
| 04/10/2024 | 82 | PROOF OF SERVICE filed by Defendant The Regents of The University of California, re Declaration (Motion related), 81 , NOTICE OF MOTION AND MOTION to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure 80 served on 4/10/2024. (Gherini, John) (Entered: 04/10/2024) |
| 04/12/2024 | 83 | Supplement RESPONSE to Order to Show Cause, 79 filed by Plaintiff Robert V. Gonzales (es) (Entered: 04/15/2024) |
| 04/12/2024 | 84 | APPLICATION for Temporary Protective Order filed by Plaintiff Robert V. Gonzales. (es) (Entered: 04/15/2024) |
| 04/12/2024 | 85 | APPLICATION TEMPORARY PROTECTIVE ORDER filed by Plaintiff Robert V. Gonzales. (es) (Entered: 04/15/2024) |

| 04/12/2024 | 86 | NOTICE OF LODGING TEMPORARY PROTECTIVE ORDER filed by Plaintiff Robert V. Gonzales re APPLICATION for Temporary Protective Order Order 84 , APPLICATION for Order 85 (es) (Entered: 04/15/2024) |
|---|---|---|
| 04/15/2024 | 87 | JOINT REPORT Rule 26(f) Discovery Plan filed by Plaintiff Robert V. Gonzales. (es) (Entered: 04/16/2024) |
| 04/24/2024 | 88 | JOINT REPORT Rule 26(f) Report filed by Plaintiff Robert V. Gonzales. (es) (Entered: 04/25/2024) |
| 04/26/2024 | 89 | OBJECTIONS to APPLICATION for Order 84 , APPLICATION for Order 85 *Defendants' Opposition to Plaintiff's Applications for Temporary Restraining Orders; Memorandum of Points and Authorities in Support of Same* filed by Defendant The Regents of The University of California. (Gherini, John) (Entered: 04/26/2024) |
| 04/26/2024 | 90 | JOINT RULE 26(f) REPORT filed by Plaintiff Robert V. Gonzales. (es) (Entered: 04/26/2024) |
| 04/26/2024 | 91 | Response to Doc. #80, Supplemental OSC (2) 80 filed by Plaintiff Robert V. Gonzales. (es) (Entered: 04/26/2024) |
| 04/29/2024 | 92 | MINUTES OF SCHEDULING CONFERENCE held before Judge James V. Selna. Counsel state their appearances. The Court DIRECTS the parties to follow Local Rule 7-3 before filing any motions. A separate trial scheduling order to issue. Court Reporter: Sharon Seffens; Courtroom Deputy: Elsa Vargas; Plaintiff: Robert Gonzales, Pro Se; Attorney for Defendant: John Gherini; Time in Court: 00:20. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. TEXT ONLY ENTRY. (eva) (Entered: 04/29/2024) |
| 04/29/2024 | 93 | [IN CHAMBERS] ORDER RE SCHEDULING DATES by Judge James V. Selna: The Court has read and considered the Rule 26(f) Report and sets the following dates: Jury Trial October 28, 2025 at 8:30 a.m. Final PreTrial Conference October 6, 2025 at 11:00 a.m. Discovery Cut-off July 18, 2025. Expert Discovery Cut-off September 5, 2025. Law and Motion Cut-off August 25, 2025 at 1:30 p.m. The Court orders that any settlement discussions shall be completed not later than July 1, 2025. [SEE DOCUMENT FOR FURTHER DETAILS AND DEADLINES.] (es) (Entered: 04/29/2024) |
| 04/29/2024 | 94 | ORDER FOR JURY TRIAL SETTING DATES; PREPARATION FOR TRIAL; AND GOVERNING ATTORNEY AND PARTY CONDUCT AT TRIAL before Judge James V. Selna. (See Document for Details and Deadlines) (eva) (Entered: 04/29/2024) |
| 05/07/2024 | 95 | MINUTES [IN CHAMBERS] Order Regarding Motion to Dismiss 80 , Applications for Temporary Restraining Orders [84, 85] by Judge James V. Selna: Before the Court are three motions. For the following reasons, the Court GRANTS the Motion to Dismiss without prejudice and DENIES the Applications as moot. Granting 80 Motion to Dismiss; Denying 84 Application for Order; Denying 85 APPLICATION for Order. [SEE DOCUMENT FOR FURTHER INFORMATION.] (MD JS-6. Case Terminated) (es) (Entered: 05/07/2024) |
| 05/21/2024 | 96 | Corrections to Reverse Motion to Dismiss in Doc. 95 filed by Plaintiff Robert V. Gonzales. (es) (Entered: 05/21/2024) |
| 05/23/2024 | 97 | APPLICATION for Right to Attach Order, Temporary Protective Order, Etc filed by Plaintiff Robert V. Gonzales. (Attachments: # 1 Proposed Order) (es) (Entered: 05/23/2024) |

## PACER Service Center

### Transaction Receipt

06/30/2024 18:45:38

| PACER Login: | farCENTER | Client Code: | 7680168 |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 8:23-cv-01788-JVS-KES Start date: 9/19/2023 End date: 11/19/2024 |
| Billable Pages: | 8 | Cost: | 0.80 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-01788-JVS-KES | Date | March 7, 2024 |
| Title | Robert V. Gonzales v. Regents of the University of California | | |

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:     **[IN CHAMBERS] Order Regarding Motion to Dismiss [57]**

Before the Court is Defendant Regents of the University of California's ("Regents") motion to dismiss.  (Mot., Dkt. No. 57.)  Plaintiff Robert V. Gonzales ("Gonzales") did not timely file an opposition.

For the following reasons, the Court **GRANTS** the motion without prejudice. Gonzales is granted twenty days to replead.

## I. BACKGROUND

The following comes from Gonzales's Complaint, as well as a number of filings with the Court designated as amendments or supplements to his Complaint.  (See Dkt. Nos. 1, 6, 16, 30.)

Gonzales was a student at the University of California, Irvine, but he has "become the subject of an 'effective expulsion' without being officially expelled."  (Dkt. No. 1.) Gonzales's university account was deleted, preventing him from registering for classes, utilizing university resources, and pursuing his intended profession in criminology.  (Id.) University officials told Gonzales that if he seeks to reverse the deletion of his student account, he would need to contact a university investigator who is "evading [his] questions" and "running the clock out."  (Id.)  Gonzales has "documented up to 50 incidences of harassment, discrimination, retaliation, confidentiality issues, unofficial expulsion, employment law issues, fraud, and bold pattern behavior."  (Id.)

In one filing, Gonzales seeks relief in the form of (1) "[e]xpedited reversal of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:23-cv-01788-JVS-KES                    Date  March 7, 2024

Title  Robert V. Gonzales v. Regents of the University of California

[Office of Information Technology] decision to delete my university account," (2) "expedited processing of my academic hold," (3) "restoration of my 'Handshake' account to apply for jobs," (4) "inquiry into faintly relevant matter about 'affordable housing' and 'feudalism,'" and (5) "inquiry by university into '50 unusual coincidences.'"  (Dkt. No. 6.)  Although the specific claims or laws under which they are brought are not clearly stated, the Court endeavors to decipher the pleadings, including the civil cover sheet, as education civil rights and due process claims.

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach.  First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'"  Id. at 678–80 (quoting Twombly, 550 U.S. at 555).  Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  Id.

Especially in civil rights cases, a *pro se* plaintiff's pleadings are liberally construed to afford the plaintiff "the benefit of any doubt."  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)) (internal quotation marks omitted).  If, however, a court finds that a *pro se* complaint has failed to state a claim, dismissal may be with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126–30 (9th Cir. 2000) (en banc).  *Pro se* plaintiffs should be granted leave to amend unless it is absolutely clear that the complaint's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:23-cv-01788-JVS-KES          Date    March 7, 2024

Title    Robert V. Gonzales v. Regents of the University of California

deficiencies cannot be cured.  Id. at 1130–31.

### III. DISCUSSION

#### A.    *Failure to File a Timely Opposition*

Gonzales failed to file a timely opposition.[1]  Under Local Rule 7-12, "[t]he Court may decline to consider any memorandum or other paper not filed within the deadline set by order or local rule," and the failure to timely file any paper "may be deemed consent to the granting or denial of the motion."  Under Local Rule 7-9, a party must file its opposition papers "not later than twenty-one (21) days before the date designated for the hearing of the motion."  The Local Rules apply to all litigants, including those proceeding pro se.  Boles v. Merscorp, Inc., No. CV 08-1989 PSG (Ex), 2008 WL 5225866, at *2 (C.D. Cal. Dec. 12, 2008).

Although the Court could grant Regents' motion on this basis, the Court has discretion in determining whether to dismiss an action for failure to comply with the Local Rules.  Id.  Furthermore, public policy favors the disposition of motions on the merits.  Accordingly, the Court will not deem Gonzales's failure to timely file his opposition as consent to the granting of the motion.

#### B.    *Motion to Dismiss*

Regents argue that the claims must be dismissed because the Complaint and related pleadings allege "acts performed within the course and scope of official duties of the University."  (Mot. at 3.)  Regents contend that Gonzales's filings do not allege "any facts constituting a cause of action under any cognizable legal theory" but rather "a series of vague, confusing, nondescript two-page documents."[2]  The Court agrees.  The

---

[1] Gonzales filed a document with the caption "Response to Request for Sanction."  (Dkt. No. 65.)  While it is not explicitly an opposition, the filing refers to legal issues and arguments raised in Regents' motion to dismiss.  To the extent that it can be construed as an opposition, the Court finds the document vague and difficult to follow such that it does not affect the merits of the instant motion.

[2] Regents also argue that sovereign immunity bars Gonzales's claims because the University of California is an instrumentality of the State of California and immune from suits for injunctive relief in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01788-JVS-KES | Date | March 7, 2024 |
|---|---|---|---|

| Title | Robert V. Gonzales v. Regents of the University of California |
|---|---|

allegations and the relief sought are unclear to the Court.  See L.R. 7-4 (requiring a
motion to contain "a concise statement of the relief or Court action the Movant seeks");
Fed. R. Civ. P. 8(a), (d) (requiring a "short and plain statement of the claim showing that
the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and
direct").

Gonzales may be seeking civil rights and due process claims, but it is not entirely
clear.  The factual allegations are difficult to follow, conclusory, and fall short of
supporting plausible claims.  Gonzales appears to acknowledge the deficiency of the
pleading in the final sentence of the Complaint, stating, "I am not ready to bring my full
case."

Accordingly, the Court grants the motion to dismiss.

**IV.  CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the motion without prejudice.
Gonzales is granted twenty days to replead.

**IT IS SO ORDERED.**

The Court finds that oral argument would not be helpful in this matter.  Fed. R.
Civ. P. 78; L.R. 7-15.  Accordingly, the Court VACATES the March 11, 2024, hearing.

---

federal court under the Eleventh Amendment.  (Mot. at 9.)  Because Gonzales's claims and remedies are
so unclear, they fail on independent grounds.  The Court thus does not reach Regents' sovereign
immunity argument or any others it makes in its motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.    8:23-cv-01788-JVS(KESx)                          Date    April 9, 2024

Title    Robert V. Gonzales v. University of California, Irvine et al

Present: The Honorable    **James V. Selna, US District Court Judge**

|  Elsa Vargas  |  Not Present  |
|---|---|
|  Deputy Clerk  |  Court Reporter  |

Attorneys Present for Plaintiffs:                 Attorneys Present for Defendants:

Not Present                                        Not Present

**Proceedings:**    (In Chambers)          ORDER TO SHOW CAUSE RE DISMISSAL
FOR LACK OF PROSECUTION

     The Court, on its own motion, hereby ORDERS plaintiff(s) to Show Cause (OSC) in writing no later than **April 15, 2024,** why sanctions should not be imposed and this action be dismissed for lack of prosecution for failure to participate in and file a <u>single Joint Rule 26 meeting report</u>.  The Court will consider the filing of the following, as an appropriate response to this OSC, on or before the above date:

**X**    **Joint** Rule 26(f) Report with the Court's Attached Exhibit A

     It is the plaintiff's responsibility to respond promptly to all orders and to prosecute the action diligently, including filing proofs of service and stipulations extending time under Rule 55 remedies promptly upon default of any defendant.  All stipulations affecting the progress of the case must be approved by the Court.  Local Rule 7-1.

     **The Scheduling Conference set for April 15, 2024 at 10:30 a.m. is CONTINUED to April 29, 2024 at 10:30 a.m. for an in person hearing.**

| | |
|---|---|
| 1 | Name: Robert V. Gonzales |
| 2 | Address: PO BOX 7804 |
| 3 | SLT, CA 96158 |
| 4 | Phone: 530-523-3822 |
| 5 | Fax: |
| 6 | In Pro Per |

FILED
CLERK, U.S. DISTRICT COURT
1/11/24
CENTRAL DISTRICT OF CALIFORNIA
BY: EB DEPUTY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Robert V. Gonzales

Plaintiff

v.

The Regents of the University of California

Defendant(s).

CASE NUMBER:

8:23-cv-01788-JVS(KESx)

**Declaration of Exhibits B(11-14)**

In my CV-127 A(6-8), I misidentify the following exhibits as "A(11-14)." Exhibit B(11) consists of an audio recording of my conversation with a UCI contact tracing employee on December 4th, 2020. Exhibit B(12) consists of the three whistleblower complaints I filed as well as the timeline of events I kept from 2020 submitted with them. I have a word document version of this timeline unaltered since January 2021. Exhibit B(13) consists of all of my communications with my Arroyo Vista Resident Life Coordinator, Janet Cardenas. Exhibit B(14) consists of all of my communications with the mental health counselor assigned to me, Thais Boucherou, as well as other officials I communicated with on the topic of the confidentiality, retaliation, and then quarantine issues. I thoroughly describe the events demonstrated by Exhibits B(11-14) in my whistleblower meeting with, Kathie Allen, on November 17th (Exhibit A(13)) and the first and second conference with defense counsel, John Gherini, on December 15th and 22nd (Exhibits A (9)). The following exhibits demonstrate an administrative decision to assign me a mental health counselor as an alternative to investigating the original "weird confidentiality issue:" the photo of

1   my former ski-resort warehouse, federal employee boss on the UCI Law School Career Office

2   webpage.  This former employer promised to retaliate "against my future" if I reported him to the ski

3   resort's HR department for revealing the true intent of his suspension and termination of my

4   employment, which is demonstrated by a different timeline.  Instead of investigating the suspected

5   break-ins and the evidence I provided, another highly unusual, confidentiality issue occurred.  In

6   place of an investigation, a prejudicial conclusion for student housing officials to frankly diagnose

7   me as generally mentally ill occurred, and this is even more strange because it follows a pattern from

8   my former community college.  The strength of the prejudicial conclusion made against me is

9   demonstrated by the length of time which Janet dragged her feet to somewhat acknowledge my

10  humanity, like as seen when trying to schedule my suspension appeal, whistleblower processes, and

11  threat assessment.  At the end of Exhibit B(12) are screenshots showing that I did not receive an

12  automatic "out of office" reply from her inbox in late November, when I was emailing her to

13  intervene in the housing food safety issue, during the week I got in the fight that led to my

14  suspension.  I did receive one from her at the start of everything, when she may have already had a

15  conclusion, and I have gotten several of these automatic emails from Mr. Coronel.  At Lake Tahoe

16  Community College, I was the subject of retaliation for writing political or historical statements on

17  publicly visible whiteboards, and I was the subject of two other isolated and absurdly baseless

18  student conduct issues in seven years.  The pattern at LTCC was to ignore my evidence by

19  concluding that I am "crazy."  These abuses at my former community college are described in detail

20  in the audio timeline for Exhibits A(9 & 13).  As a result of the original failure to investigate but to

21  instead take an acutely "coincidental" action, I was the subject of so many unexplainably

22  "coincidental" and bold abuses by campus officials that the burden of proving "what is and isn't a

23  conicidence" has practically already shifted!  Whether or not the otherwise unexplainable events in

24  2020 can be explained by a breach of privacy thought to be permitted under PACAOS 130.722(i),

25  the personally-sensitive information from my former community college must be examined through

26  discovery or a subpoena because the substance in question does not indicate danger.  The only real

27  purpose of the information in question used as legal leverage for "danger," and for a result of

28  nothing other than harassment against a perceived, unknown mental illness, is politically motivated.

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-01788-JVS-KES | Date | May 7, 2024 |

| | |
|---|---|
| Title | Robert V. Gonzales v. Regents of the University of California et al. |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings:      **[IN CHAMBERS]** <u>Order Regarding Motion to Dismiss [80],
Applications for Temporary Restraining Orders [84, 85]</u>

Before the Court are three motions.

Defendant Regents of the University of California ("Regents") move to dismiss. (Mot., Dkt. No. 80.) Plaintiff Robert V. Gonzales ("Gonzales") opposed. (Dismiss Opp'n, Dkt. No. 91.)

Gonzales files two Applications for Temporary Restraining Orders ("TRO"). (TRO Appl. I, Dkt. No. 84; TRO Appl. II, Dkt. No. 85.) The Regents opposed. (TRO Opp'n, Dkt. No. 89.)

For the following reasons, the Court **GRANTS** the Motion to Dismiss without prejudice and **DENIES** the Applications as moot.

## I. BACKGROUND

This case largely derives from administrative actions surrounding Gonzales's suspension from the University of California, Irvine. (Dkt. No. 1.) The Court previously dismissed Gonzales's Complaint because its "factual allegations are difficult to follow, conclusory, and fall short of supporting plausible claims." (Dkt. No. 67.) On March 25, 2024, Gonzales filed a civil rights complaint, referred to here as the First Amended Complaint ("FAC"). (FAC, Dkt. No. 72.) Gonzales has also filed with the Court a number of documents designated as amendments or supplements. (See, e.g., Dkt. Nos. 16, 42, 65, 70.) The following allegations come from Gonzales's FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01788-JVS-KES | Date | May 7, 2024 |
|---|---|---|---|

| Title | Robert V. Gonzales v. Regents of the University of California et al. |
|---|---|

The FAC makes its civil rights claims pursuant to 42 U.S.C. § 1983, and it lists twelve civil rights violations:

> (1) undue term of disciplinary probation and therefore destruction of my financial aid qualifications in part; (2) several undue denials to investigate improper governmental activity; (3) undue delay of academic probation procedures; (4) undue denial of my right to gather authentic evidence of legal wrongdoing when I have no other way to prove the wrongdoing; (5) threat of the use of force of criminal law to intimidate and coerce; (6) improper use of student conduct procedure to harass, retaliate, or discriminate against a student; (7) undue delay of student conduct procedure to harass, retaliate, and/or discriminate against a student; (8) undue third-party denial of several employment and time-sensitive life opportunities; (9) inappropriate university discipline for actions committed while under duress; (10) use of quarantine procedure to harass, retaliate, and/or discriminate against a student; (11) dereliction of duty to intervene in student housing food safety issue; and (12) destruction of financial aid qualifications by means of a prejudicial, unauthorized medical diagnosis.

(FAC at 5.)

The FAC states that while a grievance procedure is available, it was not completed because Gonzales has "been restricted by defendants from completing two separate grievance procedures as would normally be completed." (Id. at 2 (citing Dkt. Nos. 10, 21).) The FAC names four defendants sued in their official capacities—Janet Nava Cardenas ("Cardenas"), Kathie Bakken Allen ("Allen"), Kirsten K. Quanbeck ("Quanbeck"), and Ahn Pham ("Pham")—and one sued in an individual capacity, Manny Tau ("Tau"). (Id. at 3–4.) The FAC briefly describes how each acted under color of law with respect to Gonzales's claims. (Id.) Cardenas acted under color of law by "[u]sing her judgment to assign me to a mental health counselor as an alternative to directing me to the Whistleblower Office and to not intervene in a student housing food safety issue in the role of her official duties." (Id. at 3.) Allen "[used] her judgment to provide me with the first given reason not to investigate my whistleblower case and then forward it to a secondary university compliance office in the role of her official duties." (Id.) Quanbeck "[used] her judgment to provide me with the second given reason not to investigate my whistleblower case in the role of her official duties." (Id.) Tau "[used]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01788-JVS-KES | Date | May 7, 2024 |
|---|---|---|---|

| Title | Robert V. Gonzales v. Regents of the University of California et al. |
|---|---|

private business policies to attempt to prohibit students at a public university from keeping audio recordings in all circumstances regardless of their nature." (Id. at 4.) Pham "[used] evasive means of communication in part to delay a 2021 appeal proceeding for seven months." (Id.)

Gonzales seeks injunctive relief including the reversal of his disciplinary probation, an investigation into "matters covered by Exhibits B-D regardless of whether they touch on student conduct matters," an expedited lifting of his academic hold, and the development and implementation of "systemwide policies on keeping unpermitted recordings of university officials and on rejecting sufficient corroborating evidence of improper governmental activity." (Id. at 6.) Gonzales also seeks to recover damages in the amount of his CalGrant financial aid and "representative of the hardship [Gonzales has] experienced." (Id.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678–80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

Especially in civil rights cases, a *pro se* plaintiff's pleadings are liberally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-01788-JVS-KES | Date | May 7, 2024 |

| | |
|---|---|
| Title | Robert V. Gonzales v. Regents of the University of California et al. |

construed to afford the plaintiff "the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)) (internal quotation marks omitted). If, however, a court finds that a *pro se* complaint has failed to state a claim, dismissal may be with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126–30 (9th Cir. 2000) (en banc). *Pro se* plaintiffs should be granted leave to amend unless it is absolutely clear that the complaint's deficiencies cannot be cured. Id. at 1130–31.

## II. DISCUSSION

### A. Motion to Dismiss

#### 1. Procedural Grounds for Dismissal

In their Motion, the Regents note that the FAC does not name any of the three defendants listed in the original Complaint: the Regents (named University of California, Irvine in the pleading), Christopher Coronel ("Coronel"), and Ramen Talesh ("Talesh"). (Mot. at 7–8.) The Regents argue that because the FAC does not name these defendants, they must be considered dismissed from the case. (Id.) The Court agrees. The FAC names five individuals, none of whom were parties to the original Complaint. As such, the Regents, Coronel, and Talesh are dismissed.

#### 2. Substantive Grounds for Dismissal

Although the Court previously dismissed Gonzales's Complaint because "[t]he allegations and the relief sought [were] unclear to the Court," the FAC is only marginally clearer. See L.R. 7-4 (requiring a motion to contain "a concise statement of the relief or Court action the Movant seeks"); Fed. R. Civ. P. 8(a), (d) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct").

The pleading now states that Gonzales is bringing a civil rights action under § 1983. Gonzales lists twelve "civil rights violations." Gonzales does not specify, however, which constitutional rights have been violated or how these enumerated violations make up a cognizable legal theory. The FAC makes threadbare and conclusory allegations that are, on their own, difficult to decipher without additional

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01788-JVS-KES | Date | May 7, 2024 |
|---|---|---|---|

| Title | Robert V. Gonzales v. Regents of the University of California et al. |
|---|---|

context and facts. The facts underlying the twelve enumerated violations, to the extent they are scattered across the various supplements and amendments Gonzales has filed on the docket, are not clear, organized, or concise enough to even suggest a legal theory or plausible claim.

In addition to the grounds discussed below, the lack of plausible factual allegations and a legal theory on which to base the claims is an independent ground for dismissing the FAC.

3.    Judicial Exhaustion

The Regents argue that Gonzales's claims must be dismissed because he did not exhaust his judicial remedies by "first overturning the agency's decision through a writ of mandamus." (Mot. at 15.) Although the Court declined to reach Regents' arguments pertaining to the Eleventh Amendment and judicial exhaustion in its prior Order because the Complaint was unclear, the Court deems it prudent to address them here.

Under the standard set forth in United States v. Utah Construction and Mining Co., 384 U.S. 394 (1966) and adopted by California, federal courts give preclusive effect to state administrative decisions if California courts would do so. Miller v. Cty. of Santa Cruz, 39 F.3d 1030, 1032–33 (9th Cir. 1994). California Code of Civil Procedure § 1094.5 sets forth the process for review of administrative orders or decisions, which commences with a plaintiff seeking a writ of mandate (or "mandamus"). See Cal. Civ. Proc. Code § 1094.5. "A party must exhaust judicial remedies by filing a § 1094.5 petition, the exclusive and 'established process for judicial review' of an agency decision." Johnson v. City of Loma Linda, 24 Cal. 4th 61 (2000) (citing Westlake Cmty. Hosp. v. Super. Ct., 17 Cal. 3d 465 (1976) (en banc)). Courts have held that the suspension of a student by a University of California campus "is the sort of 'adjudicatory, quasi-judicial decision' that is subject to the judicial exhaustion requirement." Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1155 (9th Cir. 2018) (quoting Y.K.A. Indus. Inc. v. Redev. Agency of San Jose, 174 Cal. App. 4th 339 (2009)).

In Doe, a student at the University of California, Santa Barbara brought claims under Title IX, § 1983, and other state law claims against the Regents, "alleging that the [university's adjudicatory] committee had 'no basis' for its decision" to suspend the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-01788-JVS-KES | Date | May 7, 2024 |

| | |
|---|---|
| Title | Robert V. Gonzales v. Regents of the University of California et al. |

student for sexual assault.  Id. at 1150–51.  The student alleged, among other things, that the university "discriminated against him" and "prevent[ed] him from presenting character evidence."  Id. at 1151.  The Ninth Circuit held that the student's claims "alleging that his suspension is invalid because [the University of California, Santa Barbara] did not grant him a fair hearing, exceeded its jurisdiction, and 'committed a prejudicial abuse of discretion,'" must first be adjudicated through the filing a § 1094.5 petition.  Id. at 1155.  The student had, in fact, filed a § 1094.5 petition, but did so in an amended complaint in federal court.  Id. at 1153.  The court held that the Eleventh Amendment barred the § 1094.5 writ petition—a state law claim—from being filed in federal court because "the [Ex parte] Young exception does not apply when a suit seeks relief under state law, even if the plaintiff names an individual state official rather than a state instrumentality."  Id. at 1153.  Because the student did not file the § 1094.5 petition in state court, the student had not exhausted his judicial remedies, and the court gave preclusive effect to the university's administrative decision because California courts would do the same.  Id. at 1155.  Thus, the Ninth Circuit reversed and "remanded [the case] to the district court with instructions to dismiss [the student's] § 1094.5 writ claim with prejudice, but without prejudice to refiling in state court, and his § 1983, Title IX, and declaratory relief claims without prejudice."  Id.

Here, Gonzales appears to challenge the administrative decision of the University of California, Irvine to suspend him and the procedures the administrators took to do so.  Like the student in Doe, Gonzales's claims, albeit still largely scattershot and unclear to the Court, are of the type properly adjudicated through a § 1094.5 writ petition.  Because Gonzales has not filed a § 1094.5 petition, Gonzales has not exhausted his judicial remedies.  Under Utah Construction, the Court gives preclusive effect to the university's administrative decision.  Thus, Gonzales must pursue his claims by first filing a § 1094.5 petition which, under the Eleventh Amendment, must be filed in state court.  See Doe, 891 F.3d at 1153.

Accordingly, the Court dismisses the claims without prejudice.

### 4.    Eleventh Amendment

The Regents argue that, despite the FAC not naming the Regents as a defendant, the claims against individuals acting in their official capacity are nevertheless barred by sovereign immunity.  (Mot. at 11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-01788-JVS-KES | Date | May 7, 2024 |
|---|---|---|---|

| Title | Robert V. Gonzales v. Regents of the University of California et al. |
|---|---|

The Eleventh Amendment immunizes states from suits in federal court without their consent. <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984). The Ninth Circuit "has repeatedly held that the Regents are an arm of the state entitled to Eleventh Amendment immunity." <u>Feied v. Regents of the Univ. of Cal.</u>, 188 F. App'x 559, 561 (9th Cir. 2006). That immunity "extends to the individual defendants acting in their official capacities." <u>Hirsh v. Justices of Sup. Ct. of State of Cal.</u>, 67 F.3d 708, 715 (9th Cir. 1995).

Here, the FAC clearly indicates that the defendants—with one exception—are sued in their official capacity because boxes for "official capacity" are marked on the form complaint. The box for "individual" rather than "official capacity" is checked next to Tau's name. (FAC at 4.) Thus, Gonzales's claims brought against the Defendants in their official capacities are barred by the Eleventh Amendment. To the extent that Cardenas, Allen, Quanbeck, and Pham are sued in their individual capacities, the FAC fails to state a claim.

### B.   *Applications for Temporary Restraining Order*

Having found that Gonzales has not exhausted his judicial remedies, and he must first file a § 1094.5 writ petition, Gonzales's Applications for Temporary Restraining Orders are moot.

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss without prejudice and **DENIES** the Applications as moot.

### IT IS SO ORDERED.

The Court finds that oral argument would not be helpful in this matter. Fed. R. Civ. P. 78; L.R. 7-15. Accordingly, the Court **VACATES** the May 13, 2024, hearing.

1   Robert V. Gonzales
    PO BOX 7804
2   SLT, CA 96158
    Telephone:   530-523-3822
3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   ROBERT V. GONZALES,                  CASE NO.  8:23-CV-01788-JVS(KESx)

12              Plaintiff,

13        v.                              Response to Doc. #80, Supplemental OSC (2)

14   THE REGENTS OF THE UNIVERSITY
     OF CALIFORNIA, Et. Al.
15
                Defendants.
16

17   As mentioned to me by courtroom deputy Elsa Vargas over email, the Monday hearing may be

18   rescheduled if a rule 26(f) joint report was successfully submitted by today.  As shown in the

19   most recent Exhibit A(9) filings including the newest version attached to the joint report

20   submitted today, and in my other recent attempts to file a rule 26(f) report, Mr. Gherini left out a

21   signature as well as a proposed schedule as some kind of joke.  He then sent a version of the

22   exhibit A proposed schedule that I could not edit without red markings this morning.  If Mr.

23   Gherini throws a pick off to first base, I will throw the bat at the ball in attempt to swing.  I do not

24   have the focus to notice his joke until he points it out, and I have been operating at limited

25   capacity for more than three years now.  I would love to "have my brain back" without a dark

26   cloud floating over my education.  Furthermore, Doc. #80 contains more compounded distortions

27   that amount to an "understanding" of the pleadings that once again demonstrate a lack of

28   familiarity "way off" from important documents, highlighted facts, and the simplest of elements

                                        - 1 -

of law at times.  I will give a rundown of each distortion in Doc. #80 as simply, concisely, and directly as I can below.  To make the legal issues at cause in Doc. #70 more vivid, I would also list "Due Process" as expressed in Docs. 30 & 56 as point B(e) and "Sovereign Immunity" as expressed between Docs. 65 & 70 as point B(f) separately from point B(a) therein.

First and foremost, I am not sure how Mr. Gherini suddenly decided that I am making Amd. I complaints throughout Doc. #80.  He has previously acknowledged my Amd. V complaints, and he admits he somewhat understands their nature while simultaneously repeating that I have made zero statements of law.  Several times in the same document he contradicts his own positions, from 'he does not understand the legal claims (pg. 7)' to 'he'll only admit he kind of gets what is being said, but no (pg. 10).'  On page ten, he exclaims I "finally" state "the legal issue" as if the entirety of Doc. #70 is not a standardized set of these statements, and as if the one he highlighted was the first one he noticed!  His foundation to draw this conclusion to suddenly jump to Amd. I will show whether the intent of this distortion is to exploit the "endeavoring upon" of my pleadings, likely in an attempt to see if I will agree with him because he is a professional.  Many of my claims amount to undue breaches of life, liberty, and property, mentioned in name. Removing the parties rather central to my case requested by the defense (pg. 12-13) would remove many of the most significant facts at cause, university policies mentioned in Docs. 34 & 53, and due process claims.  I submitted another CV-66 form to make these corrections shortly after noticing that these defendants had been removed as shown in my "Submission Confirmation" email from the Civil Intake department included below, but this document did not seem to be filed.  Mr. Gherini's presentation of his reading of my "factless, lawless" corrections document and so-called "FAC" complaint in Docs. 70 & 72 illustrates exactly what I mean when I say I want to crossexamine his reading skills (pg. 9-10).  He focuses on whether or not I list facts in those documents themselves, and he speaks of the enumeration of documents cited therein where the facts in question are enumerated in my case like they have no bearing on any of the many given, individual subject matters.  He repeatedly complains that Doc. #70 does not list

"any" relevant injury, cause, or redressability while it is in fact the most organized "guideline" of law and fact in my case, modeled after a rubric for standardized paragraphs to cover a complete explanation for both parts in CV-66 Section D.  He even exclaims that I did not attach all of the exhibits to Doc #70 which were already attached to those very relevant documents cited therein, which is extreme.  While I did miss an instruction at the bottom of the page of the CV-66 form, I have still provided many, many facts explaining the basis upon which I am bringing many complicated claims.  A set of direct communications with an alleged wrongdoer, often expressing admissions to the wrongdoing, among other forms of exhibits, are certainly "more than labels, conclusions, and a formulaic recitation of the elements of a cause of action (pg. 12)."  Such a quality of direct evidence is not "merely conclusory (pg. 13) stopping short of plausible (pg. 14)."  It is much "more" than just plausible.  I have now organized the grounds upon which my claims rest, and Mr. Gherini may never admit it (pg. 14).  If a reasonably informed intelligent species came to Earth to witness these professional legal strategies, they would probably shake their heads because this navigation of documents is absurd.  As I said before, a reasonably informed enough kindergartener can navigate their way through more than one connected document at a time like Mr. Gherini is purporting that he cannot.  On page 16 of Doc. #80, Mr. Gherini presents a second argument that would render 42 U.S.C. 1983 ineffective.  Mr. Gherini's argument about the word "person" could be made out of pure plain meaning, with no consideration for defect, absurdity, elements of humanity, or other "mischief."  However, the construction of the language used in the statute is written to largely encompass the daily acts of public officials within the scope of their duties, i.e.: 'person acting under color of law,' and nothing therein excludes public officials.  In fact, the totality of all possible acts that could fall under the scope of the language would be dominated by public acts, and any interpretation limited to private acts would not be considering this totality of meaning.  If the defense sites past cases which have found that university officials are not persons within the definition of 42 U.S.C. 1983, such interpretations are procedural substitutions to remove redressability like that which the defense is invoking under Amd. XI as described in Doc. #65.  While public officials are acting on behalf of the state, they

are persons acting on behalf of the state, and they certainly retain their personhood when they act outside of the scope of their official duties.  This second argument which cuts the total meaning of the statute by possibly 85% really exemplifies Mr. Gherini's studied but consequentially defective understanding of constitutional federalism.  Furthermore, a similar argument could be made for private institutions on the same grounds, rendering the same "ineffective" result as "Amd. XI immunity."  What other kind of "mischief" is legally enabled and has been building up in scale for decades by these defenses invoked by the defense?  Justice Marshal had a lot to say about how fundamental to our constitutional system the removal of redressability of real-world hardship based on procedural substitutions is to what does and does not define it, as mentioned in Doc. #70.  On page 17 of Doc. #80, Mr. Gherini discusses exhaustion of remedies in normal cases against the University of California.  I acknowledge the fact that normal cases would require normal exhaustion if the University of California is in fact not a federal trademark university.  However, normal university cases do not frequently involve the wrongful invocation of State criminal law in university proceedings like mine does, and such exceptional cases illustrate the difficulties of trying to exhaust remedies like normal rather directly, as demonstrated in Steffel v. Thompson (Doc. #56).  I repeat that normal rules for exhausting claims against a university do not apply in the exceptional case when they wrongly threaten the use of criminal law, such as to undermine their own processes as a means to intimidate and coerce me not to gather authentic evidence after I have already been subject to their wrongdoing early on.  Please do not exploit my crippled position on procedural grounds.

Therefore, I request for the court to (a) reinstate the defendants I previously submitted to reinstate in an additional CV-66 form that was somehow not filed on 4/11/24; (b) revive any case documents made ineffective by the approval of the motion to dismiss and amendments to the complaint; and (c) please permit me to attend all hearings remotely because I do not have $600+ x? to spend on travel expenses for Mr. Gherini's costly jokes.  Thank you.

- 4 -

1

2    April 26, 2024

3                                            By: *Bobby Gonzales*
                                                 Robert V. Gonzales

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS RULE 26 DISCLOSURES

 **Gmail**

bobby gonzales <bgfarcenter@gmail.com>

---

## Submission Confirmation
1 message

---

**Civil Intake** <do-not-reply@cacd.uscourts.gov>                                   Fri, Apr 12, 2024 at 11:49 PM
To: bgfarcenter@gmail.com

Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-240412-001-2020
**Date:** 4/12/2024 11:49:07 PM

Uploaded files:

- **CV-4F Records.pdf**
  *Temporary Protective Order 4F "Conduct"*
- **CV-4F Evidence.pdf**
  *Temporary Protective Order 4F "Whistleblower"*
- **CV-127 4-15.pdf**
  *Supplemental Response to OSC*
- **CV-66 4-15.pdf**
  *Reinstatement of Terminated Defendants*
- **CV-4M Records & Evidence.pdf**
  *Temporary Protective Orders 4M*

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS should be processed within 1-2 business days of receipt. However, the date of EDSS submission will be considered the filing date for any documents received through EDSS and later filed into CM/ECF.

If you are registered for electronic service of documents and receiving e-service in this case, you will receive a Notice of Electronic Filing ("NEF") from the CM/ECF System as soon as each document listed above has been filed. (Click here for information about registering for electronic service or to add e-service in this case.) If you are not registered for electronic service, you may check the status of your documents by checking the docket for your case on PACER (https://pacer.uscourts.gov). Please wait at least two business days after receiving this email and check the docket for your case on PACER before contacting the Court regarding the status of documents submitted through EDSS.

If you are trying to file a document in a case pending before the United States Bankruptcy Court, or in any case pending in any court other than the United States District Court for the Central District of California, your document will not be filed and you will not receive any response to your EDSS submission. Likewise, if you are an attorney required by the local rules to file your documents electronically using the Court's CM/ECF System, your document(s) will not be filed if submitted through EDSS, and you will not receive any further communication from the Court about your EDSS submission.

Please include the tracking number listed above as your reference on any communications with the Court about this submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535

---

FULL NAME

Robert V. Gonzales

COMMITTED NAME (if different)

PO BOX 7804

FULL ADDRESS INCLUDING NAME OF INSTITUTION

SLT, CA 96158

PRISON NUMBER (if applicable)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Robert V. Gonzales      PLAINTIFF, <br><br> v. <br><br> The Regents of the University of California <br><br>      DEFENDANT(S). | **CASE NUMBER** <br> 8:23-cv-01788-JVS(KESx) <br> *To be supplied by the Clerk* <br><br> **CIVIL RIGHTS COMPLAINT** <br> **PURSUANT TO** *(Check one)* <br> ☒ 42 U.S.C. § 1983 <br> ☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

**A. PREVIOUS LAWSUITS**

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes  ☒ No

2. If your answer to "1." is yes, how many? _____

   Describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a.   Parties to this previous lawsuit:
Plaintiff _____

_____

Defendants _____

_____

b.   Court _____

_____

c.   Docket or case number _____

d.   Name of judge to whom case was assigned _____

e.   Disposition (For example:  Was the case dismissed?  If so, what was the basis for dismissal?  Was it appealed?  Is it still pending?) _____

f.   Issues raised: _____

_____

_____

g.   Approximate date of filing lawsuit: _____

h.   Approximate date of disposition _____

## B.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.   Is there a grievance procedure available at the institution where the events relating to your current complaint occurred?  ☒ Yes   ☐ No

2.   Have you filed a grievance concerning the facts relating to your current complaint?  ☒ Yes   ☐ No

If your answer is no, explain why not _____

_____

_____

3.   Is the grievance procedure completed?  ☐ Yes   ☒ No

If your answer is no, explain why not  Have been prevented by Christopher Coronel and unknown OAISC staff from moving forward with two separate grievance procedures (Ex. A(1&5) Docs. 10 & 21).

4.   Please attach copies of papers related to the grievance procedure.

## C.   JURISDICTION

This complaint alleges that the civil rights of plaintiff  Robert V. Gonzales
(print plaintiff's name)

who presently resides at  PO BOX 7804 SLT, CA 96158                              ,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
the University of California, Irvine
(institution/city where violation occurred)

**CIVIL RIGHTS COMPLAINT**

on (date or dates) _____12/4/20_____, _____12/14/20_____, _____12/19/20_____.
                              (Claim I)              (Claim II)             (Claim III)

**NOTE:**   You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.   Defendant   Christopher Coronel _____ resides or works at
                 (full name of first defendant)

     Office of Academic Integrity and Student Conduct, Irvine, CA 92697-5135
     (full address of first defendant)

     Assistant Manager of Office of Academic Integrity and Student Conduct
     (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Unfairly investigating student conduct matters, wrongfully influence a punishment, assign punishment unfree of duress, and

assign punishments against university policy in the role of his official duties (Ex. A(1&5) B(1&3) Docs. 9, 10, 21)

2.   Defendant   Dean Rameen Talesh _____ resides or works at
                 (full name of first defendant)

     426 Aldrich Hall Irvine CA 92697-5180
     (full address of first defendant)

     Dean of Students, Assistant Vice Chancellor of Student Life & Leadership
     (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Instructing me to obey student conduct punishment unfree of duress against university policy (Doc. #53), or failure of duty

to intervene in student conduct punishment against university policy (Ex. B(9) in Doc. # 41).

3.   Defendant   The Regents of the University of California _____ resides or works at
                 (full name of first defendant)

     1111 Franklin St, Oakland, CA 94607
     (full address of first defendant)

     Office of General Counsel, Office of the President
     (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

UC Regents "Office of President General Counsel" website contains document which directs service of legal documents for

a "subsumed university" to be directed to Regents (Doc. #20).  Repeated over the phone by several UCI officials.

---

4.  Defendant  John Gherini _____ resides or works at
                (full name of first defendant)

        1111 Franklin St, Oakland, CA 94607
        (full address of first defendant)

        Principal Counsel, Core Litigation (Office of General Counsel)
        (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Failure of duties of competency to the public at large demonstrated by defense hostile to constitutional federalism

(Ex. A(9) in Docs. 41, 57, 65, 68, 77, 83/84).

5.  Defendant  _____ resides or works at
                (full name of first defendant)

        _____
        (full address of first defendant)

        _____
        (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☐ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

FULL NAME

Robert V. Gonzales
COMMITTED NAME (if different)

PO BOX 7804
FULL ADDRESS INCLUDING NAME OF INSTITUTION

SLT, CA 96158

530-523-3822
PRISON NUMBER (if applicable)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  | CASE NUMBER |
|---|---|
|  | *To be supplied by the Clerk* |
| Robert V. Gonzales          PLAINTIFF, | |
| v. | **CIVIL RIGHTS COMPLAINT** |
| The Regents of the University of California; Et. Al. | **PURSUANT TO** *(Check one)* |
| DEFENDANT(S). | ☒ 42 U.S.C. § 1983 |
|  | ☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner:  ☐ Yes   ☒ No

2. If your answer to "1." is yes, how many? _____

    Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:

Plaintiff _____

_____

Defendants _____

_____

b. Court _____

_____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example:  Was the case dismissed?  If so, what was the basis for dismissal?  Was it appealed?  Is it still pending?) _____

f. Issues raised: _____

_____

_____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred?  ☒ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint?  ☒ Yes   ☐ No

   If your answer is no, explain why not _____

   _____

   _____

3. Is the grievance procedure completed?  ☐ Yes   ☒ No

   If your answer is no, explain why not  Have been prevented by defendant Christopher Coronel and unknown OAISC

    employees from moving forward with two separate grievance procedures (see Ex. A(1, 3, 10) Doc. #96 Part 2).

4. Please attach copies of papers related to the grievance procedure.

## C.  JURISDICTION

This complaint alleges that the civil rights of plaintiff  Robert V. Gonzales

(print plaintiff's name)

who presently resides at  PO BOX 7804 SLT, CA 96158                                            ,

(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at the University of California, Irvine

(institution/city where violation occurred)

on (date or dates) _____10/7/20_____, _____11/22/20_____, _____11/27/20_____.
(Claim I)                    (Claim II)                   (Claim III)

**NOTE**: You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant   Christopher Coronel _____ resides or works at
(full name of first defendant)

Office of Academic Integrity and Student Conduct Irvine, CA 92697-5135
(full address of first defendant)

OAISC Assistant Director
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Unfairly investigated conduct matters, prevented me from proving lies, assigned cruel and unusual punishments, unequitable

delays of university proceedings (Doc. #96 pg. 11, 15, 20, 24-29, 32).

2. Defendant   Dean Rameen Talesh _____ resides or works at
(full name of first defendant)

426 Aldrich Hall Irvine, CA 92697-5180
(full address of first defendant)

Dean of Students, Assistant Vice Chancellor of Life & Leadership
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Instructing me to obey terms of university punishment for acts committed while under duress in violation of PACAOS

171.11 on its face (Doc. #96 pg. 30).

3. Defendant   Janet Nava Cardenas _____ resides or works at
(full name of first defendant)

1000 Arroyo Vista Dr. Irvine, CA 92617
(full address of first defendant)

Resident Life Coordinator, Arroyo Vista, Irvine Campus Housing Authority
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Discriminating against a perceived protected class (PACAOS 102.09) and failing to intervene in forseeable

harassment or danger (GDH G(4)(a) Doc. #96 pg. 34).

4.  Defendant   Kirsten K. Quanbeck _____ resides or works at
                (full name of first defendant)

    103 Multipurpose Science and Technology (MTSB) Irvine, CA 92697-1130
    (full address of first defendant)

    Vice Chancellor, Division of Equal Opportunity and Compliance
    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Denying anonymous whistleblower investigation on grounds other than insufficient corroborating evidence (WPP IV(E)(4))

and assigning a whistleblower investigation by conflict of interest (UWP IV(G)(7)) (Doc. #96 pg. 12, 16-18, 33).

5.  Defendant   Dr. Manny Tau _____ resides or works at

                (full name of first defendant)

    1001 Avienda Pico, Suite C-527 San Clemente, CA 92673
    (full address of first defendant)

    Private University Threat Assessor
    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both):  ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

Collaborating with public officials to delay university grievance procedures (PACAOS 171.12) and denying my liberty to

prove possible injuries to my life or property (Doc. #96 pg. 19-23).

on (date or dates) _____10/7/23_____, _____11/29/23_____, _____12/12/23_____.
                        (Claim I)                    (Claim II)                   (Claim III)

**NOTE:**    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.  Defendant   Anh Pham_____ resides or works at
                (full name of first defendant)
                Office of Academic Integrity and Student Conduct Irvine, CA 92697-5135
                (full address of first defendant)
                OAISC Policy Analyst
                (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:
Prolonging a circular conversation to schedule my appeal for seven months while I only had seven days to respond to the decision before it was final (Doc. #96 pg. 26).

2.  Defendant   Unknown OAISC Employees_____ resides or works at
                (full name of first defendant)
                Office of Academic Integrity and Student Conduct Irvine, CA 92697-5135
                (full address of first defendant)

                (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:
Insisting to conduct a whistleblower investigation by conflict of interest (UWP IV(G)(7)).

3.  Defendant   John Gherini_____ resides or works at
                (full name of first defendant)
                1111 Franklin St. Oakland, CA 94607
                (full address of first defendant)
                Principal Counsel, Core Litigation, UC Office of General Counsel
                (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:
Prevented me from proving compounded injuries to my focus, motivation, and well-being; collaborated with university officials to delay university proceedings (Doc. #96 pg. 19).

4.  Defendant   The Regents of the University of California _____ resides or works at
                (full name of first defendant)
                1111 Franklin St. Oakland, CA 94607 _____
                (full address of first defendant)
                Office of General Counsel, UC Regents Office of the President ____
                (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

UC Regents Office of General Counsel website contains document which directs service on subsumed universities to be directed at regents (Doc. #20).  Repeated over the phone by UCI officials.

5.  Defendant   _____ resides or works at
                (full name of first defendant)

                _____
                (full address of first defendant)

                _____
                (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

**D.  CLAIMS***

**CLAIM I**

The following civil right has been violated:

1. Unfair, imprompt, unequitable delays of university grievance proceedings (PACAOS 103.11(b) & 171.12, Doc. 96 Ex. A(1,3,5,9,10,11) & B(2&8)); 2. Denial of anonymous whistleblower investigation of sufficient corroborating evidence of improper governmental activity (UWP IV(E)(4), Doc. 96 Ex. A(1,2,5-8) & B(12)); 3. General and permanent term of disciplinary probation (PACAOS 105.03, 105.04, 171.11, Doc. 96 Ex. A(3) & B(3&13)); 4. Interference in a whistleblower investigation (UWP IV(G)(7), Doc. 96 Ex. A(1, 5-9) & B(12)); 5. Omission, distortion, and generalization of whistleblower reports (WPP III(D)(1)(c) & (III)(D)(4)(d), Doc. 96 Ex. A(6-8) & B(12)); 6. Collaboration to delay threat assessment except as an exchange in litigation (PACAOS103.11(b) & 171.12, Doc. 96 Ex. A(9-11)); 7. Denial of liberty to prove possible injuries to life or property (Amd. XIV & PACAOS 103.10 & 103.11(b), Doc 96 Ex. A(9&12)); 8. Lying to influence a student conduct decision and preventing me from proving those lies (Amd. XIV & PACAOS 103.10, 103.11(b), Doc. 96 Ex. B(1, 3-5, 7)); 9. Delaying student conduct appeal for 7 months while only giving me 7 days to respond (PACAOS 103.10, 103.11(b), 171.12, Doc. 96 Ex. A(3) & B(2&10)); 10. Denial of several young-adult life opportunities and outcomes by an irreparable injury (Amd. XIV, Doc. 96 Ex. A(3) & B(8&13)); 11. Destruction of financial aid qualifications by an irreparable injury (Amd. XIV, Doc. 96 Ex. A(3);& B(13)); 12. University punishment for acts committed while under duress (Amd. VIII & PACAOS 171. 09, Doc. 96 Ex. A(3) & B(9)); 13. Absense/inaction to invervene in forseeable harassment/danger (GDH

Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

Please see hundreds of individual facts in Part 2 of Doc. #96 and pages below.

CONTINUATION OF "CLAIMS" ABOVE:

G(4)(a), Doc. 96 Ex. B(13)); 14 Discrimination against a perceived protected class (PACAOS 102.09, Doc. 96 Ex. B(13));

15. [FINAL CONCLUSIONS FROM SUBPOENAD FINDINGS WITHIN CONTEXT OF CLAIMS 2 & 10 ABOVE].

*\*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

**E.  REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

(1) Order the UCI Office of Academic Integrity and Student Conduct or other appropriate authority to expedite my academic hold by lifting it immediately and reverse the term of my disciplinary probation in full; (2) order the UCI Whistleblower Office or or other appropriate authority to investigate the matters covered by Exhibits B-D as articulated in Doc. #42 immediately upon a trial ruled in my favor; (3) revive my claims related to affordable housing if the opportunity to launch a class action arises before September 28th of 2025, and instead release to me all materials from my "course wishlist;" (4) order the University of California Office of the President, Office of the General Counsel, or other appropriate authority to compensate me a recovery equal to the value of the damages to "CalGrant" financial aid that I qualified for before the events of 2020; (5) order the University of California Office of the President, Office of the General Counsel or other appropriate authority to compensate me a recovery equal to a value representative of the damages as a result of the outcomes of the hardship I have experienced as articulated in the joint report as submitted; and (6) Revive and grant my TRO applications in Docs. 84, 85, 86, 97(s) to:

I) order the Regents of the University of California, UC Office of the President, or other appropriate authority to develop and implement a systemwide PACAOS policy a) permitting the keeping of video and audio recordings of non-class-related official university activities; and b) prohibiting the use, threat of use, or implied invocation of criminal statutes in bad faith in official university proceedings;

II) order the Regents of the University of California, UC Office of the President, or other appropriate authority to develop and implement systemwide general Whistleblower Policy evidentiary standards based on Whistleblower Protection Policy Section III(E)(1) that abolish unlimited power not to investigate a) circumstances that have already produced negligent outcomes in all cases, b) any vague but possible legal issue that consist of a significant hardship, and c) sufficient corroborating evidence of improper governmental activity in all cases; and

III) order the UCI Office of Academic Integrity and Student Conduct, Regents of the University of California, or other Appropriate authority to immediately lift my academic hold and reverse the term of my disciplinary probation in full before the final judgment.

(7) Declaratory judgment that the denial of a person's ability to gather authentic evidence of wrongdoing is a form of denying one's liberty to prove an injury to life or property in court at a later time.

June 20th, 2024
_____
*(Date)*

*Bobby Gonzales*
_____
*(Signature of Plaintiff)*

Robert V. Gonzales
PO BOX 7804
SLT, CA 96158
530-523-3822

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert V. Gonzales | CASE NUMBER: |
| PLAINTIFF(S) | 8:23-cv-01788-JVS(KESx) |
| v. | |
| The Regents of the University of California; Et. Al. | **NOTICE OF MANUAL FILING OR LODGING** |
| DEFENDANT(S). | |

PLEASE TAKE NOTICE:

Pursuant to Local Rule 5-4.2, the following document(s) or item(s) are exempt from electronic filing, and will therefore be manually ☐ Filed ☑ Lodged: (**List Documents**)

All trial exhibits declared throughout case documents organized in Doc. #96 "points and authorities," (Exhibits A(1-12) & B(1-14) including all possible audio exhibits), and evidence declared or initially disclosed herein (subpoena exhibits, damage Exhibits C(1-4), potential class action Exhibits C, and Exhibits D):

i) did not have a corresponding lodging form in pursuance of Local Rule 5-1 until now; and
ii) will be released in the totality of their depth in correspondence with pretrial disclosures.

**Reason:**

☑ Under Seal
☐ In Camera
☑ Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)
☐ Per Court order dated: _____
☐ Other:

June 19th, 2024
Date

_Bobby Gonzales_
Attorney Name

_____
Party Represented

*Note:   File one Notice of Manual Filing or Lodging in each case, each time you manually submit a document(s).*

1 | Robert V. Gonzales
2 | PO BOX 7804
  | SLT, CA 96158
3 | Telephone:   530-523-3822

4

5 | **UNITED STATES DISTRICT COURT**

6 | **CENTRAL DISTRICT OF CALIFORNIA**

7

8 | ROBERT V. GONZALES,         **CASE NO.  8:23-CV-01788-JVS(KESx)**

9 |        Plaintiff,      Motion for Cease and Desist, Motion for
  |                                                  Inability to Plead on Certain Matters,
10|      v.                Declarations of Evidence of Damages

11| THE REGENTS OF THE UNIVERSITY  **Date & Time: Hearing w/ no**
  | OF CALIFORNIA, Et. Al.
12|                     **Appearance by Parties Requested**
  |       Defendants.
13|                     **Dept: 10C**

14|                     **Judge: Hon. James Selna**

15

16| CONTENTS

17| 1. CV-66 w/ G-92 Complete           PG. 1-9
18| 2. Motion for Cease and Desist Order    PG. 11-13
19| 3. Motions for Protected Trial-Prep Materials  PG. 13-15
20| 4. Declaration of Exhibit C(1)       PG. 15-19, 27-129
21| 5. Declaration of Exhibit C(2)       PG. 20-22, 130-199
22| 6. Declaration of Exhibit C(3)       PG. 22, 200-205
23| 7. Declaration of Exhibit C(4)       PG. 23-24
24| 8. Declaration of Exhibits A(9)      PG. 25-26, 206-245

- 1 -

## 2. MOTION FOR CEASE AND DESIST ORDER

In pursuance **of Federal Rule 8(c)**, for the following reasons, I move for the court to order the defense counsel to cease and desist all avoidance, impeding, and impairing of my various meet and confer efforts to move forward with scheduling a settlement conference, engaging in discovery, projecting his own errors or my own inherent and obvious disadvantages back at me, and otherwise avoiding the process.  As demonstrated throughout the pleadings, Mr. Gherini avoided, impaired, and impeded almost all of my previous "meet and confer efforts" using dirty tricks to wrongly cast the blame on me.  Mr. Gherini has demonstrated a deep lack of understanding of the nature of my claims, although understandable given their previous disorganization.  His lack of understanding was demonstrated best in my third conference with him on January 8th of 2024 when he said he did not know about the "unauthorized medical diagnosis" line of inquiry until that moment (*see Ex. A(9) at [incomplete]*), as well as in several emails (*Doc. #96 pg. 72 & 74*).  Mr. Gherini has only given me three half-hour windows to try to establish our disputes between such a volume of complicated facts, and then 'forgot' to schedule a fourth during the month when he ignored me (*Doc. #96 pg. 53-59*).  Mr. Gherini vaguely proposed to schedule a fourth conference "later in the week" during February of 2023 (*Doc. #96 pg. 59*), but not until after one month of me trying to schedule one with him and until widely-televised weather in the sierras (*Doc. #68 pg. 3-8*).  Leading up to the "weather" incident articulated in *Doc. #68*, Mr. Gherini had been avoiding my efforts to meet and confer for other one month (see Doc. #96 *pg. 53-59*).  When I suddenly had a lot of snow to shovel to try to make some money, televised all over local California news, and I became fed up with Mr. Gherini's dirty tricks, Mr. Gherini projected my fatigue back at me as if I had not been actively prosecuting my case and I was the one avoiding meet and confer efforts (*Doc. #96 pg. 59-63*).  He then proceeded to mostly ignore me again except to inform me of updates in a gloating manner (*Doc. #96 pg. 64-70*).  During our conferences, we would discuss key lines of inquiry such as the elements of the irreparable injury, only for Mr. Gherini to project to have no knowledge about those given topics in his responses later on (*Doc. #96 pg. 72 & 74*).  Not only did we never

schedule a fourth conference, he joined the pattern of other university officials in refusing to speak to me for large periods of time (*Doc. #96 pg. 53-59*).  Most recently, he refused to sign the rule 26(f) joint report himself by asking me to sign it on his behalf (*Doc. #96 pg. 66-72*), and then he began ignoring me again when the court granted his latest motion (*Doc. #96 pg. 72-74*).  The factual contentions in the defense's responses to my pleadings are reasonably based on a lack of information (*Fed. R. 11(b)(4)*).  While the context of the pleadings may not capture every last, minute detail possible that may come into question, Doc. #96 recites the elements of the causes, provides key details, cites the locations in the exhibits where a given subject matter can be observed, and I have already provided all of the relevant conversations and other exhibits showing exactly where and when the improper activity occurred in real time.  I did not provide anything close to professional-grade pleadings partly due to the overwhelming volume and magnitude of the totality of my case.  The argument that "I stop short of plausibility with possibility" was a matter of me still having to correlate the injuries at cause with their actual support.  The substance of my case shows that it "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery (*Fed. R. 11(b)(3)*)."  The defense is avoiding observable information between the pleadings and exhibits after being admonished about them, specifically during our meet and confer efforts, as his best strategy for having no better answer.  Mr. Gherini's collaboration with Mr. Coronel and Dr. Tau not to move forward with university proceedings except as an exchange in litigation has not only thrown a wrench in the whole process, but it violates university policy (*Doc. #96 see Ex. A(9)*).  The defense already caused me to miss normal deadlines as described above, and Mr. Gherini's factual contentions do not fairly deny the substance of the allegations (*Fed. R. 8(b)(2)*) because they are exclusively, admittingly based on a lack of information (*Fed. R. 8(b)(5)*).  So far, the substance has been "disguised" by a disorganized volume of complex case documents (*Doc. #57 pg. 14*).  All of Mr. Gherini's dirty tricks detracted my initial engagement with the court rules.  Affirmative defenses for new matters on topics which arise in the pleadings of a case include avoidance and duress, and I have declared evidence in defense of the sloppiness of my own pleadings and objections to Mr.

Gherini's "dirty" approach (*Doc #96 see Ex. A(9), pg. 244-245 below*).  When I first viewed the rule for affirmative defenses, I did not think to try my best to apply it to Mr. Gherini's avoidance and my duress.  My compounded stress and lack of focus and motivation prevented me from sharply articulating the issues raised in this motion when we appeared in court (*Docs. 41, 55, 65, 68, 83, 91*).  I have been actively prosecuting my case for months, except for increasing moments of lapse after so many failed efforts (*Doc. 68 & 83*).  Except as far as court rules can make a difference, a pro se plaintiff with life at stake who has to spend more time to complete simple tasks for a professional defense attorney with less stake in the outcome of the case are at a severe, inherent disadvantage.  Such a pro se party at the disadvantage of helplessly falling victim to dirty tricks that jeopardize the case as a matter of damage to focus and motivation cannot possibly consist of equal footing.  Mr. Gherini's activities since he received my initial complaint in October of 2023 have compounded the **injury** to my focus, motivation, ability to impact whether special interests destroy my hometown, and probably more (*see Part 3(D) on page 41-42 below*).

## 3. MOTIONS FOR PROTECTED TRIAL-PREP MATERIALS

I have repeatedly mentioned the "cryptic" nature of Exhibits D.  If I could prove the totality of connections between other possible, related inquiries in my hometown I have documented, I would have a lot more "federal agent" context to make clear, but I cannot make those connections, so I'd tend to avoid the problems associated with trying (*Docs. 50&51*).  No reasonable person is physically capable of pleading on matters for which they do not have the evidence, and a great volume of material facts in my case especially relevant to Exhibits D are not in my possession and require subpoenas.  As a student, I will have a hard enough time with issuing subpoenas like normal if it were not for the added layer of an avoidant defense attorney.  How can I possibly try to plead on the nature of possibly the world's most unusual exhibits I do not yet have, and will have a hard time obtaining, for an untapped line of inquiry based on the most coincidentally absurd and limited piece of information I do have?  In pursuance of **Federal Rule 26(b)(5)**, I have described the nature of the physical evidence relative to the protected trial-

- 4 -

prep materials for their assessment of the quality of the claim to protect those materials (*Docs. 50&51*).  Furthermore, the nature of that description reveals a highly tedious and intimidating matter that is undoubtedly "hard to look at" for me, its victim.  The volume of information adds to the complexity of the case, but if tediousness is a warrant to dismiss a case, then any conspired set of "tedious so-called coincidences to unlawfully ruin a life" have suddenly found a new defective immunity whenever an absurd volume of bold instances are still "unclear."  A great volume of material facts were disguised by the disorganization of my case before my "points and authorities" document/.  Years of real, well-documented events in my life which have already cost me life opportunity and a great deal of stress are absolutely more than plausible or the mere possibility of wrongdoing.  Going through the factual totality of a complex case early in the discovery [**otherwise**] would be for especially good cause for a pro se filing, which is one of the purposes of the discovery process for normally represented parties altogether.  Most of all, I am not perfectly certain as a student about how the order to finalize my pleadings in *Doc. #94* fits into the context of pretrial disclosures.  Audio Exhibits B(3-6) certainly contain a great volume of relevant information., but none of the other audio exhibits contain almost any that I know of at this time except maybe that Dr. Tau demanded that I stop recording him in Exhibit A(12).  In pursuance of **Federal Rules 11(b)(3), 16(c)(2)(L), 26(a)(3)(B), 26(b)(1), 26(b)(3)(A)(ii), 26(b)(5), and Local Rule 16-2.3**, I move for permission to file any further disclosures from audio Exhibits A(6), A(12), B(3-6), and B(11) as well as Exhibits D, class-action Exhibits C, subpoena exhibits, all additional exhibits related to damages, or anything I forgot in my position within the scope of the claims above by the discovery cut-off date.  I also moved for the court to order Mr. Gherini to cease and desist in ignoring my efforts to start talking about scheduling a settlement conference above, or previously to hold four well-regulated "pleadings discovery conferences" each with a length of more than one hour for the purposes of exchanging more in-depth disclosures.  Please reconsider a) the difficulties of trying to individually demonstrate all of the incidents in a complex case with the added dimensions of the overwhelming pressure for a pro se party of a clearly "dark," cryptic, "coincidental" university politics scandal "cloud" that has

- 5 -

irreparably damaged my young-adult life; b) the degree of interest of my substantive hardships compared to unwritten procedural traditions to remove redressability; c) the weight of Mr. Gherini's avoidance, impeding, and impairing of my meet and confer efforts and pleadings in any previous decisions by the court; and d) each party's balance of power to injure speedy trial in the decisions throughout this case.  The basis upon which my suspension was founded is corrupted (*Doc. 50 pg. 16-19, 45-46, see Doc. #96 Ex. B(1) & Doc. #41 pg. 12, see Doc. #96 Ex. B(1,3,7)*). In my TRO applications, I intended for the words "expedite" to basically mean to skip the processes normally necessary for returning to the university that have caused so much trouble, but "immediately" after trial.  While I was not asking for a preliminary injunction, my case does in fact consist of irreparable injuries, so I should instead be asking for a preliminary injunction to move forward with the university processes given the irreversible damage to my young-adult life and the building pressure from sickening stress as a result.  My focus or will to make an excellent case is damaged, and Mr. Gherini arguably aims to further injure my focus and motivation, especially if my first try is one of such **extreme** complexity and magnitude.  I would love to have the time and physical capability needed to have already obtained a good lawyer, obtain any other employment sooner after the compounded feeling of too many years of trying, and have due diligence over my case all at the same time.

**4. DECLARATION OF EXHIBIT C(1): Bachelor Job Applications**

Exhibit C(1) consists of 51 compiled confirmation emails for job applications and business plan introductions that I have sent out since 2020.  The **injury** demonstrated by Exhibit C(1) materials in combination with Exhibits A(3), B(8), B(13), C(2) is irreparable damage to my young-adult life opportunities and outcomes in violation of **State due process** as articulated in the joint report as submitted and elsewhere (*Doc. #90 pg. 7*).  Starting sometime after graduating high school in 2013, I was highly motivated to try to land several hundreds of career-type jobs which require a bachelor's degree as a **<u>minimum qualification</u>**.  Since I have not been able to obtain a bachelor's degree in criminology after being suspended for three years due to a **<u>biased</u>** student conduct



**bobby gonzales <bgfarcenter@gmail.com>**

---

## Submission Confirmation
1 message

---

**Civil Intake** <do-not-reply@cacd.uscourts.gov>                     Tue, May 21, 2024 at 5:52 AM
To: bgfarcenter@gmail.com

Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-240521-001-2642
**Date:** 5/21/2024 5:52:33 AM

Uploaded files:

- **5-21.pdf**
  *Reversal Motion w/ Corrections Declaration. Going to Sleep Now.*

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS should be processed within 1-2 business days of receipt. However, the date of EDSS submission will be considered the filing date for any documents received through EDSS and later filed into CM/ECF.

If you are registered for electronic service of documents and receiving e-service in this case, you will receive a Notice of Electronic Filing ("NEF") from the CM/ECF System as soon as each document listed above has been filed. (Click here for information about registering for electronic service or to add e-service in this case.) If you are not registered for electronic service, you may check the status of your documents by checking the docket for your case on PACER (https://pacer.uscourts.gov). Please wait at least two business days after receiving this email and check the docket for your case on PACER before contacting the Court regarding the status of documents submitted through EDSS.

If you are trying to file a document in a case pending before the United States Bankruptcy Court, or in any case pending in any court other than the United States District Court for the Central District of California, your document will not be filed and you will not receive any response to your EDSS submission. Likewise, if you are an attorney required by the local rules to file your documents electronically using the Court's CM/ECF System, your document(s) will not be filed if submitted through EDSS, and you will not receive any further communication from the Court about your EDSS submission.

Please include the tracking number listed above as your reference on any communications with the Court about this submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535



**bobby gonzales <bgfarcenter@gmail.com>**

## Submission Confirmation
1 message

Civil Intake <do-not-reply@cacd.uscourts.gov>                   Thu, May 23, 2024 at 12:41 PM
To: bgfarcenter@gmail.com

### Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-240523-001-2692
**Date:** 5/23/2024 12:41:12 PM

Uploaded files:

- **CV-4M(2).pdf**
  *CV-4M Preliminary TRO Application*
- **CV-4F(2).pdf**
  *CV-4F Focus, Motivation, Well-Being*

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS should be processed within 1-2 business days of receipt. However, the date of EDSS submission will be considered the filing date for any documents received through EDSS and later filed into CM/ECF.

If you are registered for electronic service of documents and receiving e-service in this case, you will receive a Notice of Electronic Filing ("NEF") from the CM/ECF System as soon as each document listed above has been filed. (Click here for information about registering for electronic service or to add e-service in this case.) If you are not registered for electronic service, you may check the status of your documents by checking the docket for your case on PACER (https://pacer.uscourts.gov). Please wait at least two business days after receiving this email and check the docket for your case on PACER before contacting the Court regarding the status of documents submitted through EDSS.

If you are trying to file a document in a case pending before the United States Bankruptcy Court, or in any case pending in any court other than the United States District Court for the Central District of California, your document will not be filed and you will not receive any response to your EDSS submission. Likewise, if you are an attorney required by the local rules to file your documents electronically using the Court's CM/ECF System, your document(s) will not be filed if submitted through EDSS, and you will not receive any further communication from the Court about your EDSS submission.

Please include the tracking number listed above as your reference on any communications with the Court about this submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535



**bobby gonzales <bgfarcenter@gmail.com>**

---

## Submission Confirmation
1 message

---

Civil Intake <do-not-reply@cacd.uscourts.gov>                    Thu, Jun 20, 2024 at 1:33 AM
To: bgfarcenter@gmail.com

Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central
District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-240620-001-3132
**Date:** 6/20/2024 1:33:19 AM

Uploaded files:

- **CV-66+ (6-20).pdf**
  *Motions for Cease and Desist, Declaration of Irreparable Injuries (Full File w/ Photos too Large, Minus 5 Pages at
  200-205), Reverse Dismissal*

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received
through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded
them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS
should be processed within 1-2 business days of receipt. However, the date of EDSS submission will be considered the
filing date for any documents received through EDSS and later filed into CM/ECF.

If you are registered for electronic service of documents and receiving e-service in this case, you will receive a Notice of
Electronic Filing ("NEF") from the CM/ECF System as soon as each document listed above has been filed. (Click here for
information about registering for electronic service or to add e-service in this case.) If you are not registered for electronic
service, you may check the status of your documents by checking the docket for your case on PACER
(https://pacer.uscourts.gov). Please wait at least two business days after receiving this email and check the docket for
your case on PACER before contacting the Court regarding the status of documents submitted through EDSS.

If you are trying to file a document in a case pending before the United States Bankruptcy Court, or in any case pending in
any court other than the United States District Court for the Central District of California, your document will not be filed
and you will not receive any response to your EDSS submission. Likewise, if you are an attorney required by the local
rules to file your documents electronically using the Court's CM/ECF System, your document(s) will not be filed if
submitted through EDSS, and you will not receive any further communication from the Court about your EDSS
submission.

Please include the tracking number listed above as your reference on any communications with the Court about this
submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535



**bobby gonzales <bgfarcenter@gmail.com>**

---

## Submission Confirmation
1 message

---

Civil Intake <do-not-reply@cacd.uscourts.gov>                     Thu, Jun 20, 2024 at 11:43 PM
To: bgfarcenter@gmail.com

### Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-240620-001-3166
**Date:** 6/20/2024 11:43:12 PM

Uploaded files:

- **CV-127 Doc. #98.pdf**
  *Images Intended to be on Pg. 200-205 in Document Submitted Earlier Today 6/20/24.*

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS should be processed within 1-2 business days of receipt. However, the date of EDSS submission will be considered the filing date for any documents received through EDSS and later filed into CM/ECF.

If you are registered for electronic service of documents and receiving e-service in this case, you will receive a Notice of Electronic Filing ("NEF") from the CM/ECF System as soon as each document listed above has been filed. (Click here for information about registering for electronic service or to add e-service in this case.) If you are not registered for electronic service, you may check the status of your documents by checking the docket for your case on PACER (https://pacer.uscourts.gov). Please wait at least two business days after receiving this email and check the docket for your case on PACER before contacting the Court regarding the status of documents submitted through EDSS.

If you are trying to file a document in a case pending before the United States Bankruptcy Court, or in any case pending in any court other than the United States District Court for the Central District of California, your document will not be filed and you will not receive any response to your EDSS submission. Likewise, if you are an attorney required by the local rules to file your documents electronically using the Court's CM/ECF System, your document(s) will not be filed if submitted through EDSS, and you will not receive any further communication from the Court about your EDSS submission.

Please include the tracking number listed above as your reference on any communications with the Court about this submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535

7/1/24, 12:00 AM          Gmail - A message has been posted to your record (EDS-240620-001-3132)
Case 8:23-cv-01788-JVS-KES   Document 100   Filed 07/05/24   Page 94 of 139   Page ID
#:1374

                          **bobby gonzales <bgfarcenter@gmail.com>**

---

### A message has been posted to your record (EDS-240620-001-3132)
1 message

---

**CACD Civil Intake** <no-reply@cacd.uscourts.gov>          Thu, Jun 20, 2024 at 9:37 AM
To: bgfarcenter@gmail.com

Dear Robert Gonzales

A message has been posted to your record.

Tracking #: EDS-240620-001-3132
Date: 6/20/2024 9:37:33 AM

---

Dear Filer, are you attempting to file a new action? or file this as a supplemental complaint? You have attached a
complaint w/out a case number along with the Notice and exhibits. Please advise. Terri Steele 714-338-2886

---

If you have any questions, please let us know.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535

1 | Name: Robert V. Gonzales
2 | Address: PO BOX 7804
3 | SLT, CA 96158
4 | Phone: 530-523-3822
5 | Fax:
6 | In Pro Per

**F I L E D**
CLERK, U.S. DISTRICT COURT

01/15/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

Robert V. Gonzales

Plaintiff

v.

The Regents of the University of California

Defendant(s).

CASE NUMBER:

8:23-cv-01788-JVS(KESx)

**Notice Outlining the Full Identification of**

**Federal Subject Matter Jurisdiction**

On January 4th, 2024, Mr. Gherini informed me of case laws making the Eleventh Amendment relevant to my case in an email. After reading the cases, they did not touch on Amd. XI, but instead other issues related to (1) establishing Article III. jurisdiction of the federal courts, and (2) establishing subject matter jurisdiction on a factual basis. I recognize the need to make one critical clarification. Line of inquiries A and B consist of a mix of university policies and two alleged, identical due process violations. Line of inquiry C, which has been directed for resolution by means other than oral argument, involve a mix of federal statutes and two constitutional provisions. Line of inquiry D involves a federal employee of another kind. Furthermore, the University of California is a federal trademark university, in contrast to California State Universities. Any reasonable person in my position would be led to believe that federal courts are the only constitutional venue for each of the individual lines of inquiry absent of eachother, much more altogether. During my search, I found a squarely relevant case: Steffel V. Thompson, 415 U.S. 452, 1974. This case focuses on establishing federal jurisdiction for claims of a State criminal

759b7d87cc278348

1   statute that is alleged to breach constitutional law.  The key difference with this 1974 case from

2   similar cases is whether there is pending litigation in State court.  Federal courts are precluded when

3   there is pending State litigation, but it is demanded in all other circumstances.  The US Supreme

4   Court has found that it is the "paramount duty of the federal courts" to take up such cases involving

5   the constitution and federal laws (at 462-462, 473).  They also identified past cases on the fairness of

6   placing a plaintiff normally represented by an attorney between acts asserted to be constitutional and

7   subjecting themselves to a State criminal proceeding.  The university is frozen in a state of

8   threatening full use of a State criminal statute within its power in my student conduct case.  Like in

9   past cases, Mr. Coronel did not know that denying the keeping of audio in a university proceeding

10  may deny life, liberty, or property even though I admonished him.  However, he did know that (1)

11  making substantive lies in a conduct case are not within the scope of his duties, and (2) he would be

12  preventing me from proving any lies by preventing me from keeping authentic records of an official

13  proceeding.  Preventing me from swiftly proving lies in a professional setting would not be an act of

14  duty in good faith.  Another important distinction is that my challenge is not against the statute in

15  whole, but only how it is wrongly abused within official duties.  Current events, like the Democratic

16  National Committee's procedural attempts to reject this year's presidential primary election,

17  exemplify the ripeness to examine the growing society-wide need to keep "police-like" audio

18  recordings of other officials acting within their duties but in terms of "good evidence."  Reed v. Reed

19  (1971), where gender equality was first recognized, exemplifies the haphazard of conflating law of

20  the case with the law of the land.  "North-Korean style" university policies that can be identifiably

21  modified played a major role in the university's control over several events directly resulting in my

22  suspension and the forseeability, proximity, and justness of the outcome.  The key difference

23  between Steffel, the cases within it, and mine is that mine involves an irreparable injury: the

24  destruction of my CalGrant qualifications by permanent disciplinary probation (see UCI's FAFSA-

25  CalGrant webpage attached at the end).  I am relatively proficient at navigating a codebook, but do

26  not have access to the search tools of a professional.  I have notebooks with a few cases that touch on

27  elements of this one as well as too many possible theories like supervisory liability, degree of interest

28  and malice.  Saying that I have no injury or evidence without explanation would be a facial attack.



| **Argued:** | **Decided:** | **Granted:** |
|---|---|---|
| November 13, 1973 | March 19, 1974 | February 26, 1973 |

## Annotation

**PRIMARY HOLDING**

A federal court has the authority to hear a case challenging the constitutionality of a state criminal law when no prosecution is pending but merely threatened.

**Read More**

## Syllabus

# U.S. Supreme Court

**Steffel v. Thompson, 415 U.S. 452 (1974)**

**Steffel v. Thompson**

**No. 72-5581**

**Argued November 13, 1973**

**Decided March 19, 1974**

**415 U.S. 452**

**Read More**

## Opinions

**Opinions & Dissents**

Hear Opinion Announcement - March 19, 1974

# U.S. Supreme Court

**Steffel v. Thompson, 415 U.S. 452 (1974)**
**Steffel v. Thompson**

**No. 72-5581**

**Argued November 13, 1973**

**Decided March 19, 1974**

**415 U.S. 452**

*CERTIORARI TO THE UNITED STATES COURT OF APPEALS*

*FOR THE FIFTH CIRCUIT*

*Syllabus*

Petitioner, who had twice been warned to stop handbilling on an exterior sidewalk of a shopping center against American involvement in Vietnam and threatened with arrest by police if he failed to do so, and whose companion continued handbilling and was charged with violating the Georgia criminal trespass law, brought an action for injunctive and declaratory relief in the District Court, claiming that application to him of that law would violate his First and Fourteenth Amendment rights. The District Court dismissed the action, finding that "no meaningful contention can be made that the state has [acted] or will . . . act in bad faith," and therefore "the rudiments of an active controversy between the parties . . . [are] lacking." The Court of Appeals affirmed, being of the view that *Younger v. Harris,* 401 U. S. 37, made it clear that irreparable injury must be measured by bad faith harassment, and such a test must be applied to a request for injunctive relief against threatened, as well as pending, state court criminal prosecution; and that it followed from the reasoning of *Samuels v. Mackell,* 401 U. S. 66, that the same test of bad faith harassment is a prerequisite for declaratory relief with respect to a threatened prosecution.

*Held:*

1. This case presents an "actual controversy" under Art. III of the Constitution and the Federal Declaratory Judgment Act, the alleged threats of prosecution in the circumstances alleged not being "imaginary or speculative" and it being unnecessary for petitioner to expose himself to actual arrest or prosecution to make his constitutional challenge. Whether the controversy remains substantial and continuing in the light of the effect of the recent reduction of the Nation's involvement in Vietnam on petitioner's desire to engage in the handbilling at the shopping center must be resolved by the District Court on remand. Pp. 415 U. S. 458-460.

2. Federal declaratory relief is not precluded when a prosecution based upon an assertedly unconstitutional state statute has been threatened, but is not pending, even if a showing of bad faith

Page 415 U. S. 453

enforcement or other special circumstances has not been made. Pp. 415 U. S. 460-473.

(a) When no state criminal proceeding is pending at the time the federal complaint is filed, considerations of equity, comity, and federalism on which *Younger v. Harris* and *Samuels v. Mackell* both *supra,* were based, have little vitality: federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles. Pp. 415 U. S. 460-462

(b) Even if the Court of Appeals correctly viewed injunctive relief as inappropriate (a question not reached here, petitioner having abandoned his request for that remedy), the court erred in treating the requests for injunctive and declaratory relief as a single issue and in holding that a failure to demonstrate irreparable injury precluded the granting of declaratory relief. Congress plainly intended that a declaratory judgment be available as a milder alternative than the injunction to test the constitutionality of state criminal statutes. Pp. 415 U. S. 462-473.

3. In determining whether it is appropriate to grant declaratory relief when no state criminal proceeding is pending, it is immaterial whether the attack is made on the constitutionality of a state criminal statute on its face

pending, it is immaterial whether the attack is made on the constitutionality of a state criminal statute on its face or as applied. *Cameron v. Johnson,* 390 U. S. 611, distinguished. Pp. 415 U. S. 473-475.

459 F.2d 919, reversed and remanded.

BRENNAN, J., delivered the opinion for a unanimous Court. STEWART, J., filed a concurring opinion, in which BURGER, C.J., joined, *post,* p. 415 U. S. 475. WHITE, J., filed a concurring opinion, *post,* p. 415 U. S. 476. REHNQUIST, J., filed a concurring opinion, in which BURGER, C.J., joined, *post,* p. 415 U. S. 478.

Page 415 U. S. 454

MR. JUSTICE BRENNAN delivered the opinion of the Court.

When a state criminal proceeding under a disputed state criminal statute is pending against a federal plaintiff at the time his federal complaint is filed, *Younger v. Harris,* 401 U. S. 37 (1971), and *Samuels v. Mackell,* 401 U. S. 66 (1971), held, respectively, that, unless bad faith enforcement or other special circumstances are demonstrated, principles of equity, comity, and federalism preclude issuance of a federal injunction restraining enforcement of the criminal statute and, in all but unusual circumstances, a declaratory judgment upon the constitutionality of the statute. This case presents the important question reserved in *Samuels v. Mackell, id.* at 401 U. S. 73-74, whether declaratory relief is precluded when a state prosecution has been threatened, but is not pending, and a showing of bad faith enforcement or other special circumstances has not been made.

Petitioner, and others, filed a complaint in the District Court for the Northern District of Georgia, invoking the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its jurisdictional implementation, 28 U.S.C. § 1343. The complaint requested a declaratory judgment pursuant to 28 U.S.C. § 2201-2202, that Ga.Code Ann. § 26-1603 (1972) [Footnote 1] was being applied in violation of petitioner's

Page 415 U. S. 455

First and Fourteenth Amendment rights, and an injunction restraining respondents -- the solicitor of the Civil and Criminal Court of DeKalb County, the chief of the DeKalb County Police, the owner of the North DeKalb Shopping Center, and the manager of that shopping center -- from enforcing the statute so as to interfere with petitioner's constitutionally protected activities.

The parties stipulated to the relevant facts: on October 8, 1970, while petitioner and other individuals were distributing handbills protesting American involvement in Vietnam on an exterior sidewalk of the North DeKalb Shopping Center, shopping center employees asked them to stop handbilling and leave. [Footnote 2] They declined to do so, and police officers were summoned. The officers told them that they would be arrested if they did not stop handbilling. The group then left to avoid arrest. Two days later, petitioner and a companion returned to the shopping center and again began handbilling. The manager of the center called the police, and petitioner and his companion were once again told that failure to stop their handbilling would result in their arrests. Petitioner left to avoid arrest. His companion stayed, however, continued

Page 415 U. S. 456

handbilling, and was arrested and subsequently arraigned on a charge of criminal trespass in violation of § 26-1503. [Footnote 3] Petitioner alleged in his complaint that, although he desired to return to the shopping center to distribute handbills, he had not done so because of his concern that he, too, would be arrested for violation of § 26-1503; the parties stipulated that, if petitioner returned and refused upon request to stop handbilling, a warrant would be sworn out and he might be arrested and charged with a violation of the Georgia statute. [Footnote 4]

After hearing, the District Court denied all relief and dismissed the action, finding that "no meaningful contention can be made that the state has [acted] or will in the future act in bad faith," and therefore "the rudiments of an active controversy between the parties . . . [are] lacking." 334 F. Supp. 1386, 1389-1390 (1971). Petitioner appealed [Footnote 5] only from the denial of declaratory relief. [Footnote 6] The Court of Appeals for the Fifth Circuit, one judge concurring in the result, affirmed the District Court's

Page 415 U. S. 457

judgment refusing declaratory relief. [Footnote 7] *Becker v. Thompson,* 459 F.2d 919 (1972). The court recognized that the holdings of *Younger v. Harris,* 401 U. S. 37(1971), and *Samuels v. Mackell,* 401 U. S. 66 (1971), were expressly limited to situations where state prosecutions were pending when the federal action commenced, but

was of the view that *Younger v. Harris* "made it clear beyond peradventure that irreparable injury must be measured by bad faith harassment and such test must be applied to a request for injunctive relief against threatened state court criminal prosecution" as well as against a pending prosecution; and, furthermore, since the opinion in *Samuels v. Mackell* reasoned that declaratory relief would normally disrupt the state criminal justice system in the manner of injunctive relief, it followed that "the same test of bad

Page 415 U. S. 458

faith harassment is prerequisite . . . for declaratory relief in a threatened prosecution." 459 F.2d at 922. A petition for rehearing en banc was denied, three judges dissenting. 463 F.2d 1338 (1972). [Footnote 8]

We granted certiorari, 410 U.S. 953 (1973), and now reverse.

I

At the threshold, we must consider whether petitioner presents an "actual controversy," a requirement imposed by Art. III of the Constitution and the express terms of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. [Footnote 9]

Page 415 U. S. 459

Unlike three of the appellees in *Younger v. Harris,* 401 U.S. at 401 U. S. 41, petitioner has alleged threats of prosecution that cannot be characterized as "imaginary or speculative," *id.* at 401 U. S. 42. He has been twice warned to stop handbilling that he claims is constitutionally protected, and has been told by the police that, if he again handbills at the shopping center and disobeys a warning to stop, he will likely be prosecuted. The prosecution of petitioner's handbilling companion is ample demonstration that petitioner's concern with arrest has not been "chimerical," *Poe v. Ullman,* 367 U.S. 497, 367 U. S. 508 (1961). In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional right. *See, e.g., Epperson v. Arkansas,* 393 U. S. 97 (1968). Moreover, petitioner's challenge is to those specific provisions of state law which have provided the basis for threats of criminal prosecution against him. *Cf. Boyle v. Landry,* 401 U.S. 77, 401 U. S. 81 (1971); *Watson v. Buck,* 313 U.S. 387, 313 U. S. 399-400 (1941).

Nonetheless, there remains a question as to the continuing existence of a live and acute controversy that must be resolved on the remand we order today. [Footnote 10] In *Golden v. Zwickler,* 394 U.S. 103 (1969), the appellee sought a declaratory judgment that a state criminal statute prohibiting the distribution of anonymous election-campaign literature was unconstitutional. The appellee's complaint had expressed a desire to distribute handbills during the forthcoming reelection campaign of a Congressman, but it was later learned that the Congressman

Page 415 U. S. 460

had retired from the House of Representatives to become a New York Supreme Court Justice. In that circumstance, we found no extant controversy, since the record revealed that appellee's sole target of distribution had been the Congressman, and there was no immediate prospect of the Congressman's again becoming a candidate for public office. Here, petitioner's complaint indicates that his handbilling activities were directed "against the War in Vietnam and the United States' foreign policy in Southeast Asia." Since we cannot ignore the recent developments reducing the Nation's involvement in that part of the world, it will be for the District Court on remand to determine if subsequent events have so altered petitioner's desire to engage in handbilling at the shopping center that it can no longer be said that this case presents

"a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 312 U. S. 273 (1941); *see Zwickler v. Koota,* 389 U. S. 241, 389 U. S. 244 n. 3 (1967).

II

We now turn to the question of whether the District Court and the Court of Appeals correctly found petitioner's request for declaratory relief inappropriate.

Sensitive to principles of equity, comity, and federalism, we recognized in *Younger v. Harris, supra,* that federal courts should ordinarily refrain from enjoining ongoing state criminal prosecutions. We were cognizant that a pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights, and, in that circumstance, the restraining of an ongoing prosecution would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility,

Page 415 U. S. 461

equally with the federal courts "to guard, enforce, and protect every right granted or secured by the Constitution of the United States. . . ." *Robb v. Connolly,* 111 U. S. 624, 111 U. S. 637 (1884). In *Samuels v. Mackell, supra,* the Court also found that the same principles ordinarily would be flouted by issuance of a federal declaratory judgment when a state proceeding was pending, since the intrusive effect of declaratory relief

"will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid."

401 U.S. at 401 U. S. 72. [Footnote 11] We therefore held in *Samuels* that,

"in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment. . . ."

*Id.* at 401 U. S. 73.

Neither *Younger* nor *Samuels,* however, decided the question whether federal intervention might be permissible in the absence of a pending state prosecution. In *Younger,* the Court said:

"We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun."

401 U.S. at 401 U. S. 41. *See also id.* at 401 U. S. 55 (STEWART and Harlan, JJ., concurring); *id.* at 401 U. S. 57 (BRENNAN, WHITE, and MARSHALL, JJ., concurring). Similarly, in *Samuels v. Mackell,* the Court stated: .

"We, of course, express no views on the propriety

Page 415 U. S. 462

of declaratory relief when no state proceeding is pending at the time the federal suit is begun."

401 U.S. at 401 U. S. 73-74. *See also id.* at 401 U. S. 55 (STEWART and Harlan, JJ., concurring); *id.* at 401 U. S. 75-76 (BRENNAN, WHITE, and MARSHALL, JJ., concurring).

These reservations anticipated the Court's recognition that the relevant principles of equity, comity, and federalism "have little force in the absence of a pending state proceeding." *Lake Carriers' Assn. v. MacMullan,* 406 U. S. 498, 406 U. S. 509 (1972). When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles. In addition, while a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding. *Cf. Dombrowski v. Pfister,* 380 U. S. 479, 380 U. S. 490 (1965).

When no state proceeding is pending, and thus considerations of equity, comity, and federalism have little vitality, the propriety of granting federal declaratory relief may properly be considered independently of a request for injunctive relief. Here, the Court of Appeals held that, because injunctive relief would not be appropriate, since petitioner failed to demonstrate irreparable injury -- a traditional prerequisite to

Page 415 U. S. 463

injunctive relief, *e.g., Dombrowski v. Pfister, supra* -- it followed that declaratory relief was also inappropriate.

Even if the Court of Appeals correctly viewed injunctive relief as inappropriate -- a question we need not reach today, since petitioner has abandoned his request for that remedy, *see* n 6 *supra* [Footnote 12] -- the court erred in treating the requests for injunctive and declaratory relief as a single issue.

"[W]hen no state prosecution is pending and the only question is whether declaratory relief is appropriate[,] . . . the congressional scheme that makes the federal courts the primary guardians of constitutional rights, and the express congressional authorization of declaratory relief, afforded because it is a less harsh and abrasive remedy than the injunction, become the factors of primary significance."

*Perez v. Ledesma,* 401 U. S. 82, 401 U. S. 104 (1971) (separate opinion of BRENNAN, J.).

The subject matter jurisdiction of the lower federal courts was greatly expanded in the wake of the Civil War. A pervasive sense of nationalism led to enactment of the Civil Rights Act of 1871, 17 Stat. 13, empowering the

Page 415 U. S. 464

lower federal courts to determine the constitutionality of actions, taken by persons under color of state law, allegedly depriving other individuals of rights guaranteed by the Constitution and federal law, *see* 42 U.S.C. § 1983, 28 U.S.C. § 1343(3). [Footnote 13] Four years later, in the Judiciary Act of March 3, 1875, 18 Stat. 470, Congress conferred upon the lower federal courts, for but the second time in their nearly century-old history, general federal question jurisdiction subject only to a jurisdictional amount requirement, *see* 28 U.S.C. § 1331. [Footnote 14] With this latter enactment, the lower federal courts

"ceased to be restricted tribunals of fair dealing between citizens of different states and became the *primary* and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States."

F. Frankfurter & J. Landis, The Business of the Supreme Court 65 (1928) (emphasis added). [Footnote 15] These two statutes, together with the Court's decision in *Ex parte Young,* 209 U. S. 123 (1908) -- holding that state officials who threaten to enforce an unconstitutional state statute may be enjoined by a federal court of equity, and that a federal court may, in appropriate circumstances, enjoin

Page 415 U. S. 465

future state criminal prosecutions under the unconstitutional Act -- have "established the modern framework for federal protection of constitutional rights from state interference." *Perez v. Ledesma, supra,* at 401 U. S. 107 (separate opinion of BRENNAN, J.).

A "storm of controversy" raged in the wake of *Ex parte Young,* focusing principally on the power of a single federal judge to grant *ex parte* interlocutory injunctions against the enforcement of state statutes, H. Hart & H. Wechsler, The Federal Courts and the Federal System 967 (2d ed.1973); *see generally Goldstein v. Cox,* 396 U. S. 471 (1970); Hutcheson, A Case for Three Judges, 47 Harv.L.Rev. 795, 804-805 (1934). This uproar was only partially quelled by Congress' passage of legislation, 36 Stat. 557, requiring the convening of a three-judge district court [Footnote 16] before a preliminary injunction against enforcement of a state statute could issue, and providing for direct appeal to this Court from a decision granting or denying such relief. [Footnote 17] *See* 28

Page 415 U. S. 466

U.S.C. §§ 2281, 1253. From a State's viewpoint the granting of injunctive relief -- even by these courts of special dignity -- "rather clumsily" crippled state enforcement of its statutes pending further review, *see* H.Rep. No. 288, 70th Cong., 1st Sess., 2 (1928); H.R.Rep. No. 94, 71st Cong., 2d Sess., 2 (1929); H.R.Rep. No. 627, 72d Cong., 1st Sess., 2 (1932). Furthermore, plaintiffs were dissatisfied with this method of testing the constitutionality of state statutes, since it placed upon them the burden of demonstrating the traditional prerequisites to equitable relief -- most importantly, irreparable injury. *See, e.g., Fenner v. Boykin,* 271 U. S. 240, 271 U. S. 243 (1926).

To dispel these difficulties, Congress, in 1934, enacted the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. That Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction and to be utilized to test the constitutionality of state criminal statutes in cases where injunctive relief would be unavailable is amply evidenced by the legislative history of the Act, traced in full detail in *Perez v. Ledesma, supra,* at 401 U. S. 111-115 (separate opinion of BRENNAN, J.). The highlights of that history, particularly pertinent to our inquiry today, emphasize that:

"[I]n 1934, without expanding or reducing the subject matter jurisdiction of the federal courts or in any way diminishing the continuing vitality of *Ex parte Young* with respect to federal injunctions, Congress empowered the federal courts to grant a new remedy, the declaratory judgment. . . . "

Page 415 U. S. 467

"The express purpose of the Federal Declaratory Judgment Act was to provide a milder alternative to the injunction remedy. . . . Of particular significance on the question before us, the Senate report [S.Rep. No. 1005, 73d Cong., 2d Sess. (1934)] makes it even clearer that the declaratory judgment was designed to be available to test state criminal statutes in circumstances where an injunction would not be appropriate. . . ."

"* * * * *"

"Much of the hostility to federal injunctions referred to in the Senate report was hostility to their use against state officials seeking to enforce state regulatory statutes carrying criminal sanctions; this was the strong feeling that produced the Three-Judge Court Act in 1910, the Johnson Act of 1934, 28 U.S.C. § 1342, and the Tax Injunction Act of 1937, 28 U.S.C. § 1341. The Federal Declaratory Judgment Act was intended to provide an alternative to injunctions against state officials, except where there was a federal policy against federal adjudication of the class of litigation altogether. . . . Moreover, the Senate report's clear implication that declaratory relief would have been appropriate in *Pierce v. Society of Sisters,* 268 U. S. 510 (1925), and *Village of Euclid v. Ambler Realty Co.,* 272 U. S. 365 (1926), both cases involving federal.adjudication of the constitutionality of a state statute carrying criminal penalties, and the report's quotation from *Terrace v. Thompson* which also involved anticipatory federal adjudication of the constitutionality of a state criminal statute, make it plain that Congress anticipated that the declaratory judgment procedure would be used by the federal courts to test the constitutionality

Page 415 U. S. 468

of state criminal statutes."

401 U.S. at 401 U. S. 111-112, 401 U. S. 115. [Footnote 18]

It was this history that formed the backdrop to our decision in *Zwickler v. Koota,* 389 U. S. 241 (1967), where a state criminal statute was attacked on grounds of unconstitutional overbreadth and no state prosecution was pending against the federal plaintiff. There, we found error in a three-judge district court's considering, as a single question, the propriety of granting injunctive and declaratory relief. Although we noted that injunctive relief might well be unavailable under principles of equity jurisprudence canvassed in *Douglas v. City of Jeannette,* 319 U. S. 157 (1943), we held that

"a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction."

389 U.S. at 389 U. S. 254. Only one year ago, we

Page 415 U. S. 469

reaffirmed the *Zwickler v. Koota* holding in *Roe v. Wade,* 410 U. S. 113 (1973), and *Doe v. Bolton,* 410 U. S. 179 (1973). In those two cases, we declined to decide whether the District Courts had properly denied to the federal plaintiffs, against whom no prosecutions were pending, injunctive relief restraining enforcement of the Texas and Georgia criminal abortion statutes; instead, we affirmed the issuance of declaratory judgments of unconstitutionality, anticipating that these would be given effect by state authorities. We said:

"The Court has recognized that *different considerations* enter into a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other. *Zwickler v. Koota,* 389 U. S. 241, 389 U. S. 252-255 (1967); *Dombrowski v. Pfister,* 380 U. S. 479 (1965)."

*Roe v. Wade, supra,* at 410 U. S. 166 (emphasis added). *See Doe v. Bolton, supra,* at 410 U. S. 201.

The "different considerations" entering into a decision whether to grant declaratory relief have their origins in the preceding historical summary. First, as Congress recognized in 1934, a declaratory judgment will have a less intrusive effect on the administration of state criminal laws. As was observed in *Perez v. Ledesma,* 401 U.S. at 401 U. S. 124-126 (separate opinion of BRENNAN, J.):

"Of course, a favorable declaratory judgment may nevertheless be valuable to the plaintiff though it cannot make even an unconstitutional statute disappear. A state statute may be declared unconstitutional *in toto* -- that is, incapable of having constitutional applications; or it may be declared unconstitutionally vague or overbroad -- that is, incapable of being constitutionally applied to the full extent of its purport. In either case, a federal declaration of unconstitutionality reflects the

Page 415 U. S. 470

opinion of the federal court that the statute cannot be fully enforced. If a declaration of total unconstitutionality is affirmed by this Court, it follows that this Court stands ready to reverse any conviction under the statute. If a declaration of partial unconstitutionality is affirmed by this Court, the implication is that this Court will overturn particular applications of the statute, but that, if the statute is narrowly construed by the state courts it will not be incapable of constitutional applications. Accordingly, the declaration does not necessarily bar prosecutions under the statute, as a broad injunction would. Thus, where the highest court of a State has had an opportunity to give a statute regulating expression a narrowing or clarifying construction but has failed to do so, and later a federal court declares the statute unconstitutionally vague or overbroad, it may well be open to a state prosecutor, after the federal court decision, to bring a prosecution under the statute if he reasonably believes that the defendant's conduct is not constitutionally protected and that the state courts may give the statute a construction so as to yield a constitutionally valid conviction. Even where a declaration of unconstitutionality is not reviewed by this Court, the declaration may still be able to cut down the deterrent effect of an unconstitutional state statute. The persuasive force of the court's opinion and judgment may lead state prosecutors, courts, and legislators to reconsider their respective responsibilities toward the statute. Enforcement policies or judicial construction may be changed, or the legislature may repeal the statute and start anew. Finally, the federal court judgment may have some *res judicata* effect, though this point is not free from difficulty, and the governing rules remain to be developed with

Page 415 U. S. 471

a view to the proper workings of a federal system. What is clear, however, is that, even though a declaratory judgment has 'the force and effect of a final judgment,' 28 U.S.C. § 2201, it is a much milder form of relief than an injunction. Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt. [Footnote 19]"

(Footnote omitted.)

Second, engrafting upon the Declaratory Judgment Act a requirement that all of the traditional equitable prerequisites to the issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress' intent to make declaratory relief available in cases where an injunction would be inappropriate.

"Were the law to be that a plaintiff could not obtain a declaratory judgment that a local ordinance was unconstitutional when no state prosecution is pending unless he could allege and prove circumstances justifying a federal injunction of an existing state prosecution, the Federal Declaratory Judgment Act would have been *pro tanto* repealed."

*Wulp v. Corcoran,* 454 F.2d 826, 832 (CA1 1972) (Coffin, J.). *See Perez v. Ledesma,* 401 U.S. at 401 U. S. 116 (separate opinion of BRENNAN, J.). Thus, the Court of Appeals was in error when it ruled that a failure to demonstrate irreparable injury -- a traditional prerequisite to injunctive relief,

Page 415 U. S. 472

having no equivalent in the law of declaratory judgments, *see Aetna Life Ins. Co. v. Haworth,* 300 U. S. 227, 300 U. S. 241 (1937); *Nashville, C. & St. L. R. Co. v. Wallace,* 288 U. S. 249, 288 U. S. 264 (1933) -- precluded the granting of declaratory relief.

The only occasions where this Court has disregarded these "different considerations" and found that a preclusion of injunctive relief inevitably led to a denial of declaratory relief have been cases in which principles of federalism militated altogether against federal intervention in a class of adjudications. *See Great Lakes Co. v. Huffman,* 319 U. S. 293 (1943) (federal policy against interfering with the enforcement of state tax laws); [Footnote 20] *Samuels v. Mackell,* 401 U. S. 66 (1971). In the instant case, principles of federalism not only do not preclude federal

intervention, they compel it. Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head. When federal claims are premised on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) -- as they are here -- we have not required exhaustion of state judicial or administrative remedies,

Page 415 U. S. 473

recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights. *See, e.g., McNeese v. Board of Education,* 373 U. S. 668 (1963); *Monroe v. Pape,* 365 U. S. 167 (1961). But exhaustion of state remedies is precisely what would be required if both federal injunctive and declaratory relief were unavailable in a case where no state prosecution had been commenced.

### III

Respondents, however, relying principally upon our decision in *Cameron v. Johnson,* 390 U. S. 611 (1968), argue that, although it may be appropriate to issue a declaratory judgment when no state criminal proceeding is pending and the attack is upon the facial validity of a state criminal statute, such a step would be improper where, as here, the attack is merely upon the constitutionality of the statute as applied, since the State's interest in unencumbered enforcement of its laws outweighs the minimal federal interest in protecting the constitutional rights of only a single individual. We reject the argument.

In *Cameron v. Johnson,* the appellants sought a declaratory judgment that a Mississippi anti-picketing law was an overly broad and vague regulation of protected expression and an injunction restraining pending prosecutions against them for violations of the statute. We agreed with the District Court that the statute was not overly broad or vague, and that nothing in the record supported appellants' assertion that they were being prosecuted in bad faith. In that circumstance, we held that

"[t]he mere possibility of erroneous application of the statute does not amount 'to the irreparable injury necessary to justify a disruption of orderly state proceedings.' . . . The issue of guilt or innocence is for the state court at the criminal trial; the State was not required to prove appellants guilty in the federal proceeding to

Page 415 U. S. 474

escape the finding that the State had no expectation of securing valid convictions."

*Id.* at 390 U. S. 621. Our holding in *Cameron* was thus that the state courts in which prosecutions were already pending would have to be given the first opportunity to correct any misapplication of the state criminal laws; *Cameron* is plainly not authority for the proposition that, in the absence of a pending state proceeding, a federal plaintiff may not seek a declaratory judgment that the state statute is being applied in violation of his constitutional rights.

Indeed, the State's concern with potential interference in the administration of its criminal laws is of lesser dimension when an attack is made upon the constitutionality of a state statute as applied. A declaratory judgment of a lower federal court that a state statute is invalid *in toto* -- and therefore incapable of any valid application -- or is overbroad or vague -- and therefore no person can properly be convicted under the statute until it is given a narrowing or clarifying construction, *see, e.g., United States v. Thirty-seven Photographs,* 402 U. S. 363, 402 U. S. 369 (1971); *Gooding v. Wilson,* 405 U. S. 518, 405 U. S. 520 (1972) -- will likely have a more significant potential for disruption of state enforcement policies than a declaration specifying a limited number of impermissible applications of the statute. While the federal interest may be greater when a state statute is attacked on its face, since there exists the potential for eliminating any broad-ranging deterrent effect on would-be actors, *see Dombrowski v. Pfister,* 380 U. S. 479 (1965), we do not find this consideration controlling. The solitary individual who suffers a deprivation of his constitutional rights is no less deserving of redress than one who suffers together with others. [Footnote 21]

Page 415 U. S. 475

We therefore hold that, regardless of whether injunctive relief may be appropriate, federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied. [Footnote 22] The judgment of the Court of Appeals is reversed, and the case is

remanded for further proceedings consistent with this opinion.

*It is so ordered.*

[Footnote 1]

This statute provides:

"(a) A person commits criminal trespass when he intentionally damages any property of another without his consent and the damage thereto is $100 or less, or knowingly and maliciously interferes with the possession or use of the property of another person without his consent."

"(b) A person commits criminal trespass when he knowingly and without authority:"

"(1) Enters upon the land or premises of another person, or into any part of any vehicle, railroad car, aircraft, or watercraft of another person, for an unlawful purpose; or (2) Enters upon the land or premises of another person, or into any part of any vehicle, railroad car, aircraft, or watercraft of another person, after receiving, prior to such entry, notice from the owner or rightful occupant that such entry is forbidden; or"

"(3) Remains upon the land or premises of another person, or within the vehicle, railroad car, aircraft, or watercraft of another person, after receiving notice from the owner or rightful occupant to depart."

"(c) A person convicted of criminal trespass shall be punished as for a misdemeanor."

[Footnote 2]

At a hearing in the District Court, petitioner testified that, on another occasion, prior to June, 1970, he had also been threatened with arrest for handbilling at the shopping center. At that time, the police had shown him the statute they intended to enforce, presumably § 26-1503. R. 140-141.

[Footnote 3]

We were advised at oral argument that the trial of petitioner's companion, Sandra Lee Becker, has been stayed pending decision of this case. *See* Tr. of Oral Arg. 31.

[Footnote 4]

At the District Court hearing, counsel for the police officers indicated that arrests, in fact, would be made if warrants sworn out by shopping center personnel were facially proper. R. 134.

[Footnote 5]

The complaint was initially styled as a class action. Named as plaintiffs were petitioner, a minor suing through his father; Sandra Lee Becker, petitioner's handbilling companion against whom a prosecution was pending under the Georgia statute, *see* n 3, *supra,* also a minor suing through her father; and the Atlanta Mobilization Committee. The complaint had also sought to enjoin plaintiff Becker's pending prosecution. Only petitioner appealed from the District Court's decision denying all relief.

[Footnote 6]

Petitioner's notice of appeal challenged the denial of both injunctive and declaratory relief. However, in his appellate brief, he abandoned his appeal from denial of injunctive relief. *Becker v. Thompson,* 459 F.2d 919, 921 (CA5 1972).

[Footnote 7]

Since the complaint had originally sought to enjoin enforcement of the state statute on grounds of unconstitutionality, a three-judge district court should have been convened. *See* 28 U.S.C. § 2281; *Goosby v. Osser,* 409 U. S. 512 (1973); *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U. S. 713, 370 U. S. 715 (1962). A three-judge court is required even if the constitutional attack -- as here -- is upon the statute as applied, *see Department of Employment v. United States,* 385 U. S. 355 (1966); *Query v. United States,* 316 U. S. 486 (1942); *Ex parte Bransford,* 310 U. S. 354, 310 U. S. 361 (1940); *see generally* Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1, 37-50 (1964); and is normally required even if the decision is to

dismiss under *Younger-Samuels* principles, since an exercise of discretion will usually be necessary, *see Jones v. Wade,* 479 F.2d 1176, 1180 (CA5 1973); *Abele v. Markle,* 452 F.2d 1121, 1125 (CA2 1971); *see generally* Note, The Three-Judge District Court: Scope and Procedure Under Section 2281, 77 Harv.L.Rev. 299, 309 (1963). But since petitioner's request for injunctive relief was abandoned on appeal, *see* n 6, *supra,* and only a request for declaratory relief remained, the Court of Appeals did not err in exercising jurisdiction over the appeal. *Cf. Roe v. Wade,* 410 U. S. 113, 410 U. S. 123 (1973); *Mitchell v. Donovan,* 398 U. S. 427 (1970); *Kennedy v. Mendoza-Martinez,* 372 U. S. 144, 372 U. S. 152-155 (1963); *Stratton v. St. Louis S.W. R. Co.,* 282 U. S. 10, 282 U. S. 16 (1930).

[Footnote 8]

Other federal courts have entertained applications for injunctive and declaratory relief in the absence of a pending state prosecution. *See, e.g., Thoms v. Heffernan,* 473 F.2d 478 (CA2 1973), *aff'g* 334 F. Supp. 1203 (Conn.1971) (three-judge court); *Wulp v. Corcoran,* 454 F.2d 826 (CA1 1972); *Crossen v. Breckenridge,* 446 F.2d 833 (CA6 1971); *Lewis v. Kugler,* 446 F.2d 1343 (CA3 1971); *Anderson v. Vaughn,* 327 F. Supp. 101 (Conn.1971) (three-judge court). Even the Court of Appeals for the Fifth Circuit has limited the scope of the instant decision by entertaining an action for declaratory and injunctive relief in the absence of a state prosecution when the federal suit attacked the facial validity of a state statute, rather than the validity of the statute as applied. *See Jones v. Wade, supra,* (Wisdom, J.).

[Footnote 9]

Section 2201 provides:

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Section 2202 further provides:

"Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

[Footnote 10]

The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. *See, e.g., Roe v. Wade,* 410 U.S. at 410 U. S. 125; *SEC v. Medical Comm. for Human Rights,* 404 U. S. 403 (1972); *United States v. Munsingwear, Inc.,* 340 U. S. 36 (1950).

[Footnote 11]

The Court noted that, under 28 U.S.C. § 2202 a declaratory judgment might serve as the basis for issuance of a later injunction to give effect to the declaratory judgment, *see* n 9, *supra,* and that a declaratory judgment might have a *res judicata* effect on the pending state proceeding. 401 U.S. at 401 U. S. 72.

[Footnote 12]

We note that, in those cases where injunctive relief has been sought to restrain an imminent, but not yet pending, prosecution for past conduct, sufficient injury has not been found to warrant injunctive relief, *see Beal v. Missouri Pacific R. Co.,* 312 U. S. 45 (1941); *Spielman Motor Sales Co. v. Dodge,* 295 U. S. 89 (1935); *Fenner v. Boykin,* 271 U. S. 240 (1926). There is some question, however, whether a showing of irreparable injury might be made in a case where, although no prosecution is pending or impending, an individual demonstrates that he will be required to forgo constitutionally protected activity in order to avoid arrest. *Compare Dombrowski v. Pfister,* 380 U. S. 479 (1965); *Hygrade Provision Co. v. Sherman,* 266 U. S. 497 (1925); *and Terrace v. Thompson,* 263 U. S. 197, 263 U. S. 214, 263 U. S. 216 (1923), *with Douglas v. City of Jeannette,* 319 U. S. 157 (1943); *see generally* Note, Implications of the *Younger* Cases for the Availability of Federal Equitable Relief When No State Prosecution is Pending, 72 Col.L.Rev. 874 (1972).

[Footnote 13]

"Sensitiveness to 'states' rights,' fear of rivalry with state courts, and respect for state sentiment were swept aside

by the great impulse of national feeling born of the Civil War. Nationalism was triumphant; in national administration was sought its vindication. The new exertions of federal power were no longer trusted to the enforcement of state agencies."

F. Frankfurter & J. Landis, The Business of the Supreme Court 64 (1928).

[Footnote 14]

In the last days of the John Adams administration, general federal question jurisdiction had been granted to the federal courts by § 11 of the Midnight Judges Act, 2 Stat. 92 (1801). The Act was repealed only one year later by § 1 of the Act of Mar. 8, 1802, 2 Stat. 132.

[Footnote 15]

The histories of the Civil Rights Act of 1871 and the Judiciary Act of 1875 are detailed in *Zwickler v. Koota,* 389 U. S. 241, 389 U. S. 245-247 (1967).

[Footnote 16]

The three-judge court procedure, with expedited review, was modeled after the Expediting Act, 32 Stat. 823, now 15 U.S.C. §§ 28-29; 49 U.S.C. §§ 44-45, requiring that, for certain antitrust cases certified by the Attorney General to be of particular public importance, a three-judge court be convened with direct appeal to the Supreme Court, as well as a 1906 Act, 34 Stat. 584, 592, applying the same procedure to suits brought to restrain, annul, or set aside orders of the Interstate Commerce Commission. *See* Hutcheson, A Case for Three Judges, 47 Harv.L.Rev. 795, 810 (1934).

[Footnote 17]

The three-judge court provision was amended in 1913 to apply also to interlocutory injunctions restraining enforcement of state administrative or commission orders. C. 160, 37 Stat. 1013. It was further amended in 1925 to extend the three-judge requirement and the direct appeal provisions to the final hearing on a permanent injunction, thereby ending the anomalous situation in which a single judge, at the final hearing, could overrule the decision of three judges granting an interlocutory injunction. 43 Stat. 936, 938. When the statute was codified in 1948, it was made applicable to all actions seeking either a preliminary or permanent injunction, *Goldstein v. Cox,* 396 U. S. 471, 396 U. S. 478 n. 3 (1970). *See generally* H. Hart & H. Wechsler, The Federal Courts and the Federal System 967-968 (2d ed.1973); C. Wright, Federal Courts § 50, pp. 188-189 (2d ed.1970).

[Footnote 18]

As Professor Borchard, a principal proponent and author of the Federal Declaratory Judgment Act, said in a written statement introduced at the hearings on the Act:

"It often happens that courts are unwilling to grant injunctions to restrain the enforcement of penal statutes or ordinances and relegate the plaintiff to his option either to violate the statute and take his chances in testing constitutionality on a criminal prosecution, or else to [forgo], in the fear of prosecution, the exercise of his claimed rights. Into this dilemma no civilized legal system operating under a constitution should force any person. The court, in effect, by refusing an injunction, informs the prospective victim that the only way to determine whether the suspect is a mushroom or a toadstool is to eat it. Assuming that the plaintiff has a vital interest in the enforcement of the challenged statute or ordinance, there is no reason why a declaratory judgment should not be issued instead of compelling a violation of the statute as a condition precedent to challenging its constitutionality."

Hearings on H.R. 5623 before a Subcommittee of the Senate Committee on the Judiciary, 70th Cong., 1st Sess., 75-76 (192). *See* E. Borchard, Declaratory Judgments x-xi (2d ed.1941).

[Footnote 19]

The pending prosecution of petitioner's handbilling companion does not affect petitioner's action for declaratory relief. In *Roe v. Wade,* 410 U. S. 113 (1973), while the pending prosecution of Dr. Hallford under the Texas Abortion law was found to render his action for declaratory and injunctive relief impermissible, this did not prevent our granting plaintiff Roe, against whom no action was pending, a declaratory judgment that the statute was unconstitutional. *Id.* at 410 U. S. 125-127, 410 U. S. 166-167; *see Lewis v. Kugler,* 446 F. 2d 1343, 1349 (CA3

was unconstitutional. Id. at 410 U. S. 123-127; 410 U. S. 166-167; see *Lewis v. Kugler,* 446 F.2d 1343, 1349 (CA3 1971).

[Footnote 20]

In *Great Lakes Co. v. Huffman,* employers sought a declaration that a state unemployment compensation scheme imposing a tax upon them was unconstitutional as applied. Although not relying on the precise terms of 28 U.S.C. § 41(1) (1940 ed.), now 28 U.S.C. § 1341, which ousts the district courts of jurisdiction to

"enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State,"

the Court, recognizing the unique effects of anticipatory adjudication on tax administration, held that declaratory relief should be withheld when the taxpayer was provided an opportunity to maintain a refund suit after payment of the disputed tax. "In contrast, there is no statutory counterpart of 28 U.S.C. § 1341 applicable to intervention in state criminal prosecutions." *Perez v. Ledesma,* 401 U. S. 82, 401 U. S. 128 (1971) (separate opinion of BRENNAN, J).

[Footnote 21]

Abstention, a question "entirely separate from the question of granting declaratory or injunctive relief," *Lake Carriers' Assn. v. MacMullan,* 406 U. S. 498, 406 U. S. 509 n. 13 (1972), might be more appropriate when a challenge is made to a state statute as applied, rather than upon its face, since the reach of an uncertain state statute might, in that circumstance, be more susceptible of a limiting or clarifying construction that would avoid the federal constitutional question. *Cf. Zwickler v. Koota,* 389 U.S. at 389 U. S. 249-52, 254; *Baggett v. Bullitt,* 377 U. S. 360, 377 U. S. 375-378 (1964).

[Footnote 22]

Some two years after petitioner attempted to handbill at the shopping center, respondent Hudgens, the owner of the center, commenced an action in the Superior Court of Fulton County seeking a declaration of his rights concerning the center's rules against handbilling and related activities. We were advised at oral argument that the state action had been dismissed by the trial court but that an appeal is pending before the Georgia Supreme Court. Since we do not require petitioner first to seek vindication of his federal rights in a state declaratory judgment action, *see Lake Carriers' Assn. v. MacMullan, supra,* at 406 U. S. 510; *Wisconsin v. Constantineau,* 400 U. S. 433 (1971), consideration of abstention by the District Court would be inappropriate unless the action commenced by respondent Hudgens could be shown to present a substantial and immediate possibility of obviating petitioner's federal claim by a decision on state law grounds. *Cf. Askew v. Hargrave,* 401 U. S. 476, 401 U. S. 478 (1971); *Reetz v. Bozanich,* 397 U. S. 82 (1970).

MR. JUSTICE STEWART, with whom THE CHIEF JUSTICE joins, concurring.

While joining the opinion of the Court, I add a word by way of emphasis.

Page 415 U. S. 476

Our decision today must not be understood as authorizing the invocation of federal declaratory judgment jurisdiction by a person who thinks a state criminal law is unconstitutional, even if he genuinely feels "chilled" in his freedom of action by the law's existence, and even if he honestly entertains the subjective belief that he may now or in the future be prosecuted under it.

As the Court stated in *Younger v. Harris,* 401 U. S. 37, 401 U. S. 52:

"The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision. . . ."

*See also Boyle v. Landry,* 401 U. S. 77, 401 U. S. 80-81.

The petitioner in this case has succeeded in objectively showing that the threat of imminent arrest, corroborated by the actual arrest of his companion, has created an actual concrete controversy between himself and the agents of the State. He has, therefore, demonstrated "a genuine threat of enforcement of a disputed state criminal statute. . . ." * Cases where such a "genuine threat" can be demonstrated will, I think, be exceedingly rare.

* *See ante* at 415 U. S. 475. Whether, in view of "recent developments," the controversy is a continuing one, will be for the District Court to determine on remand. *See ante* at 415 U. S. 460.

MR. JUSTICE WHITE, concurring.

I offer the following few words in light of MR. JUSTICE REHNQUIST's concurrence in which he discusses the impact on a pending federal action of a later filed criminal prosecution against the federal plaintiff, whether a federal court may enjoin a state criminal prosecution under a statute the federal court has earlier declared unconstitutional

Page 415 U. S. 477

at the suit of the defendant now being prosecuted, and the question whether that declaratory judgment is *res judicata* in such a later filed state criminal action.

It should be noted, first, that his views on these issues are neither expressly nor impliedly embraced by the Court's opinion filed today. Second, my own tentative views on these questions are somewhat contrary to my Brother's.

At this writing at least, I would anticipate that a final declaratory judgment entered by a federal court holding particular conduct of the federal plaintiff to be immune on federal constitutional grounds from prosecution under state law should be accorded *res judicata* effect in any later prosecution of that very conduct. There would also, I think, be additional circumstances in which the federal judgment should be considered as more than a mere precedent bearing on the issue before the state court.

Neither can I, at this stage, agree that the federal court, having rendered a declaratory judgment in favor of the plaintiff, could not enjoin a later state prosecution for conduct that the federal court has declared immune. The Declaratory Judgment Act itself provides that a "declaration shall have the force and effect of a final judgment or decree," 28 U.S.C. § 2201; eminent authority anticipated that declaratory judgments would be *res judicata,* E. Borchard, Declaratory Judgments 10-11 (2d ed.1941); and there is every reason for not reducing declaratory judgments to mere advisory opinions. *Toucey v. New York Life Insurance Co.,* 314 U. S. 118 (1941), once expressed the view that 28 U.S.C. 2283 forbade injunctions against relitigation in state courts of federally decided issues, but the section was then amended to overrule that case, the consequence being that

"[i]t is clear that the *Toucey* rule

Page 415 U. S. 478

is gone, and that, to protect or effectuate its judgment, a federal court may enjoin relitigation in the state court."

C. Wright, Federal Courts 180 (2d ed.1970). I see no more reason here to hold that the federal plaintiff must always rely solely on his plea of *res judicata* in the state courts. The statute provides for "[f]urther necessary or proper relief . . . against any adverse party whose rights have been determined by such judgment," 28 U.S.C. § 2202, and it would not seem improper to enjoin local prosecutors who refuse to observe adverse federal judgments.

Finally, I would think that a federal suit challenging a state criminal statute on federal constitutional grounds could be sufficiently far along so that ordinary consideration of economy would warrant refusal to dismiss the federal case solely because a state prosecution has subsequently been filed and the federal question may be litigated there.

MR. JUSTICE REHNQUIST with whom THE CHIEF JUSTICE joins, concurring.

I concur in the opinion of the Court. Although my reading of the legislative history of the Declaratory Judgment Act of 1934 suggests that its primary purpose was to enable persons to obtain a definition of their rights before an actual injury had occurred, rather than to palliate any controversy arising from *Ex parte Young,* 209 U. S. 123 (1908). Congress apparently was aware at the time it passed the Act that persons threatened with state criminal prosecutions might choose to forgo the offending conduct and, instead, seek a federal declaration of their rights. Use of the declaratory judgment procedure in the circumstances presented by this case seems consistent with that congressional expectation.

If this case were the Court's first opportunity to deal with this area of law, I would be content to let the

Page 415 U. S. 479

matter rest there. But, as our cases abundantly illustrate, this area of law is in constant litigation, and it is an area through which our decisions have traced a path that may accurately be described as sinuous. Attempting to accommodate the principles of the new declaratory judgment procedure with other more established principles -- in particular a proper regard for the relationship between the independent state and federal judiciary systems -- this Court has acted both to advance and to limit the Act. *Compare Aetna Life Ins. Co. v. Haworth,* 300 U. S. 227 (1937), and *Zwickler v. Koota,* 389 U. S. 241 (1967), *with Great Lakes Co. v. Huffman,* 319 U. S. 293 (1943), and *Samuels v. Mackell,* 401 U. S. 66 (1971). Because the opinion today may possibly be read by resourceful counsel as commencing a new and less restrictive curve in this path of adjudication, I feel it is important to emphasize what the opinion does and does not say.

To begin with, it seems appropriate to restate the obvious: the Court's decision today deals only with declaratory relief and with threatened prosecutions. The case provides no authority for the granting of any injunctive relief nor does it provide authority for the granting of any relief at all when prosecutions are pending. The Court quite properly leaves for another day whether the granting of a declaratory judgment by a federal court will have any subsequent *res judicata* effect or will perhaps support the issuance of a later federal injunction. But since possible resolutions of those issues would substantially undercut the principles of federalism reaffirmed in *Younger v. Harris,* 401 U. S. 37 (1971), and preserved by the decision today, I feel it appropriate to add a few remarks.

First, the legislative history of the Declaratory Judgment Act and the Court's opinion in this case both

Page 415 U. S. 480

recognize that the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity. [Footnote 2/1] There is nothing in the Act's history to suggest that Congress intended to provide persons wishing to violate state laws with a federal shield behind which they could carry on their contemplated conduct. Thus, I do not believe that a federal plaintiff in a declaratory judgment action can avoid, by the mere filing of a complaint, the principles so firmly expressed in *Samuels, supra.* The plaintiff who continues to violate a state statute after the filing of his federal complaint does so both at the risk of state prosecution and at the risk of dismissal of his federal lawsuit. For any arrest prior to resolution of the federal action would constitute a pending prosecution and bar declaratory relief under the principles of *Samuels.*

Second, I do not believe that today's decision can properly be raised to support the issuance of a federal injunction based upon a favorable declaratory judgment. [Footnote 2/2]

Page 415 U. S. 481

The Court's.description of declaratory relief as *"a milder alternative to the injunction remedy,'" ante at 415 U. S. 467, having a "less intrusive effect on the administration of state criminal laws" than an injunction, ante at 415 U. S. 469, indicates to me critical distinctions which make declaratory relief appropriate where injunctive relief would not be. It would all but totally obscure these important distinctions if a successful application for declaratory relief came to be regarded not as the conclusion of a lawsuit, but as a giant step toward obtaining an injunction against a subsequent criminal prosecution. The availability of injunctive relief must be considered with an eye toward the important policies of federalism which this Court has often recognized.*

If the rationale of cases such as *Younger* and *Samuels* turned in any way upon the relative ease with which a federal district court could reach a conclusion about the constitutionality of a challenged state statute, a preexisting judgment declaring the statute unconstitutional as applied to a particular plaintiff would, of course, be a factor favoring the issuance of an injunction as "further relief" under the Declaratory Judgment Act. But, except for statutes that are *"flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph . . . ,'" Younger v. Harris, supra, at 401 U. S. 53, the rationale of those cases has no such basis. Their direction that federal courts not interfere with state prosecutions does not vary depending on the closeness of the constitutional issue or on the degree of confidence which the federal court possesses in the correctness of its conclusions on the constitutional*

Page 415 U. S. 482

*point. Those decisions instead depend upon considerations relevant to the harmonious operation of separate federal and state court systems, with a special regard for the State's interest in enforcing its own criminal laws,*

*considerations which are as relevant in guiding the action of a federal court which has previously issued a declaratory judgment as they are in guiding the action of one which has not. While the result may be that injunctive relief is not available as "further relief" under the Declaratory Judgment Act in this particular class of cases, whereas it would be in similar cases not involving considerations of federalism, this would be no more a pro tanto repeal of that provision of the Declaratory Judgment Act than was* Younger *a pro tanto repeal of the All Writs Act, 28 U.S.C. § 1651.*

A declaratory judgment is simply a statement of rights, not a binding order supplemented by continuing sanctions. State authorities may choose to be guided by the judgment of a lower federal court, but they are not compelled to follow the decision by threat of contempt or other penalties. If the federal plaintiff pursues the conduct for which he was previously threatened with arrest and is, in fact, arrested, he may not return the controversy to federal court, although he may, of course, raise the federal declaratory judgment in the state court for whatever value it may prove to have. [Footnote 2/3] In any event, the defendant at that point is able to present his case

Page 415 U. S. 483

for full consideration by a state court charged, as are the federal courts, to preserve the defendant's constitutional rights. Federal interference with this process would involve precisely the same concern's discussed in *Younger* and recited in the Court's opinion in this case. [Footnote 2/4]

Third, attempts to circumvent *Younger* by claiming that enforcement of a statute declared unconstitutional by a federal court is *per se* evidence of bad faith should not find support in the Court's decision in this case. As the Court notes, quoting my Brother BRENNAN's separate opinion in *Perez v. Ledesma*, 401 U. S. 82, 401 U. S. 125:

"The persuasive force of the [federal] court's opinion and judgment *may* lead state prosecutors, courts, and legislators to reconsider their respective responsibilities toward the statute. Enforcement policies or judicial construction *may* be changed, or the legislature *may* repeal the statute and start anew."

(Emphasis added.) This language clearly recognizes that continued belief in the constitutionality of the statute by state prosecutorial officials would not commonly be indicative of bad faith, and that such allegations, in the absence of highly unusual circumstances, would not justify a federal

Page 415 U. S. 484

court's departure from the general principles of restraint discussed in *Younger.*

If the declaratory judgment remains, as I think the Declaratory Judgment Act intended, a simple declaration of rights without more, it will not be used merely as a dramatic tactical maneuver on the part of any state defendant seeking extended delays. Nor will it force state officials to try cases time after time, first in the federal courts and then in the state courts. I do not believe Congress desired such unnecessary results, and I do not think that today's decision should be read to sanction them. Rather, the Act, and the decision, stand for the sensible proposition that both a potential state defendant, threatened with prosecution but not charged, and the State itself, confronted by a possible violation of its criminal laws, may benefit from a procedure which provides for a declaration of rights without activation of the criminal process. If the federal court finds that the threatened prosecution would depend upon a statute it judges unconstitutional, the State may decide to forgo prosecution of similar conduct in the future, believing the judgment persuasive. Should the state prosecutors not find the decision persuasive enough to justify forbearance, the successful federal plaintiff will at least be able to bolster his allegations of unconstitutionality in the state trial with a decision of the federal district court in the immediate locality. The state courts may find the reasoning convincing even though the prosecutors did not. Finally, of course, the state legislature may decide, on the basis of the federal decision, that the statute would be better amended or repealed. All these possible avenues of relief would be reached voluntarily by the States, and would be completely consistent with the concepts of federalism discussed above. Other more intrusive forms of relief should not be routinely available.

Page 415 U. S. 485

These considerations should prove highly significant in reaching future decisions based upon the decision rendered today. For the present it is enough to say, as the Court does, that petitioner, if he successfully establishes the existence of a continuing controversy on remand, may maintain an action for a declaratory judgment in the

District Court.

[Footnote 2/1]

The report accompanying the Senate version of the bill stated:

"The procedure has been especially useful in avoiding the necessity, now so often present., of having to act at one's peril or to act on one's own interpretation of his rights, or abandon one's rights because of a fear of incurring damages. So now it is often necessary, in the absence of the declaratory judgment procedure, to violate or purport to violate a statute in order to obtain a judicial determination of its meaning or validity. . . . Persons now often have to act at their peril, a danger which could be frequently avoided by the ability to sue for a declaratory judgment as to their rights or duties."

S.Rep. No. 1005, 73d Cong., 2d Sess., 2-3 (1934). Petitioner in this case, of course, did cease his handbilling activities after the warning of arrest.

[Footnote 2/2]

In *Samuels v. Mackell*, 401 U. S. 66, 401 U. S. 72 (1971), the Court expressed concern that a declaratory judgment issued while a state prosecution was pending "might serve as the basis for a subsequent injunction against those proceedings. . . ." The Court recognized that this chain of litigation would "result in a clearly improper interference with the state proceedings." *Ibid*. As discussed *infra*, I believe that such improper interference would be present even though the declaratory judgment itself were issued prior to the time of the federal plaintiff's arrest.

[Footnote 2/3]

The Court's opinion notes that the possible *res judicata* effect of a federal declaratory judgment in a subsequent state court prosecution is a question "*not free from difficulty.*'" *Ante at 415 U. S. 470.* I express no opinion on that issue here. However, I do note that the federal decision would not be accorded the stare decisis effect in state court that it would have in a subsequent proceeding within the same federal jurisdiction. Although the state court would not be compelled to follow the federal holding, the opinion might, of course, be viewed as highly persuasive.*

[Footnote 2/4]

The Court's opinion says:

"Sensitive to principles of equity, comity, and federalism, we recognized in *Younger v. Harris,* [401 U.S. 37 (1971),] that federal courts should ordinarily refrain from enjoining ongoing state criminal prosecutions. We were cognizant that a pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights, and, in that circumstance, the restraining of an ongoing prosecution would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts 'to guard, enforce, and protect every right granted or secured by the Constitution of the United States. . . .' *Robb v. Connolly,* 111 U. S. 624, 111 U. S. 637 (1884)."

*Ante* at 415 U. S. 460-461.

---

## Materials

### Oral Arguments

# Steffel v. Thompson, 415 U.S. 452 (1974)

Overview  Opinions  Materials

## Search This Case

**Google Scholar**     **Google Books**     **Google Web**

**Google News**

## South Lake Tahoe, California Lawyers

Sponsored Listings

**Raoul J. Severo**

(800) 787-1930

**Sacramento, CA**
Criminal Law, DUI & DWI

PREMIUM

January 15th, 2024

*Bobby Gonzales*

Robert V. Gonzales



## Eligibility Requirements for Federal Student Aid

Federal financial aid programs are subject to regulations that define the criteria students must meet to qualify and maintain eligibility for those programs. The regulations state that a student must:

1. Be a U.S. citizen or an eligible noncitizen of the U.S.;
2. Be accepted for admission to the University;
3. Be enrolled in good standing at the University; units taken through the UCI Division of Continuing Education program are not counted toward half- or full-time enrollment;
4. Demonstrate financial need (except for William D. Ford Federal Direct Unsubsidized Loans and Federal PLUS loans); financial need is the difference between the reasonable, approved expenses of attending UCI and all available resources, including the expected contribution from parents, the student, and any outside aid;
5. Maintain satisfactory academic progress for financial aid, as outlined below;
6. Be registered with the Selective Service if the student is a male at least 18 years old, born after December 31, 1960, and not on active duty with the armed forces;
7. Not owe a refund on a federal grant or be in default on a federal educational loan.

Once a student meets the above criteria, disbursement of financial aid funds is made only if the student does not have outstanding debts owed to UCI.

**California Dream Act Application.** Students who qualify for the AB 540 fee exemption and are not able to file a FAFSA can apply for certain types of financial aid by completing the California Dream Act Application.

The California Dream Acts – AB 130 and AB 131 – extend eligibility for privately funded UC scholarships, other UC scholarships and grants, Cal Grants, Middle Class Scholarships and Dream Loans to students, including undocumented students, who qualify for benefits under another California law – AB 540 – which exempts students from paying nonresident supplemental tuition.

Students who think they might be eligible for an AB 540 nonresident tuition exemption should:

1. Submit a California Dream Act Application as soon as possible after it becomes available on October 1, but no later than March 2.
2. Students who are admitted to the University and intend to enroll should submit a Statement of Legal Residence. Those who receive a nonresident classification from the campus residence deputy should submit a California Nonresident Tuition Exemption Request or a University of California Nonresident Tuition Exemption Application and Affidavit, available at the University Registrar's office or website. Official high school transcripts and proof of high school graduation may be requested.

consist of a significant hardship, and c) sufficient corroborating evidence of improper governmental activity in all cases (same as Ex. A(7-8)).

**Exhibit B(14)**: The email chains between university officials involved with temporarily placing me in quarantine housing and I occurred from December 4th to 10th of 2020 (*Doc. #50 pg. 69-76*). I am not entirely sure whether the content of these emails will show an **injury**, so I decided they should be declared. The communications demonstrated by Exhibit B(14) corroborate the same **cause** as Exhibit B(9) on the topic of whether I was free from punishment for acts committed while under duress in violation of **PACAOS Section 171.11** in *Doc. #53*. I even received another email warning me about my "contact tracing status" on January 6th of 2021, two weeks after I retrieved my property and left campus on December 19th of 2020 (*Doc. #50 pg. 69*). The nature of Gmail software has contributed greatly to the confusing nature of my Exhibit B(14) filing like that for Exhibit B(2) in Doc. #21. The **relief** I am requesting from the court under this line of inquiry is to order the UCI Whistleblower Office or other appropriate authority to investigate the matters covered by Exhibits B-D as articulated in *Doc. #42* immediately upon a trial ruled in my favor, regardless of whether any touch on student conduct matters (same as Ex. A(2)).

**3. SUPPLEMENTAL JUDICIAL NOTICES W/ MOTIONS**

**A. Irreparable Injuries.** I was put in contact with a mental health counselor instead of a university investigator (*Doc. #50 pg. 16-19*), and then a problem roommate who was creating a food safety issue under the control of university student housing resident life coordinators was not separated from me (*Doc. #50 pg. 45-46*). Both of these official university actions by the same university official led to the events resulting in my suspension, and they amount to irreparable injuries involving a new line of inquiry of "effective expulsion" as well as damage to my young-adult **life** opportunities (*Doc. #56 pg. 21*). The possible outcomes as a result of the university's

absence or failure to separate me from a problem roommate were **foreseeable** (*Doc. #50 pg. 45-46*).  As my dorm's assigned resident life coordinator who is more familiar with the norms of her job on topics like harassment than I am, Mrs. Cardenas was in the best position of **proximity** to forward my inquiry to the OEOD (*1947 at 173 p.1*).  The liability against Mrs. Cardenas' for absence or dereliction of duty is **reasonable** because the events in questions have already produced irreparable injuries to my life (*1947 at 172 p.1*).  Mrs. Cardenas tended to **pass on** my other inquiries with the easiest solution for herself (*Doc. #50 pg. 16-19*).  Mrs. Cardenas' **interest** to forward my inquiries to a mental health counselor did not outweigh mine to get to the bottom of the unusual "coincidences" on campus in 2020 (*Docs. 50 & 51*).  I cannot get back the time and stress spent working towards qualifying for financial aid or during the last several years not going to school or being able to obtain a career.  When asked by Mrs. Allen what specific policies have been violated when I was trying to launch a whistleblower inquiry, the damage to my young-adult life opportunities is the first line of inquiry I cited (*Doc. #21 pg. 16, see Ex. B(2) above*).  Also, Dean Talesh had the foreseeability and proximity to determine that my punishment by extension by withholding my property for an unknown period of time would place a student who lives hundreds of miles away in a state of duress, and Mr. Coronel and Dr. Tau also still have control to this day over whether they wrongly use the force of a State criminal statute in my student conduct proceedings.  University officials have far more foreseeability and proximity to control official university proceedings than me.

**B. Exhaustion of State Remedies.**  The Supreme Court unanimously ruled that "exhaustion of state remedies is precisely what would be required if federal injunctive and declaratory relief were unavailable in a case where no state prosecution had been commenced" in a First Amendment case cited in others related to recording private conversations (*Steffel v. Thompson, 415 U.S. 452 (1974) at 472-473*).  The case specifically touches on when State remedies do not have to be exhausted before the FAC qualified for federal subject matter jurisdiction: when State litigation is not pending over an exceptional claim involving a State criminal law and both

- 30 -

injunctive and declaratory relief are available (*at 473 p.1*).  The ruling remarks on the "paramount" role of federal courts, especially in exceptional cases involving a State criminal statute that would not be property adjudicated in State court (*at 462 p.3*).  Mr. Coronel and Dr. Tau are wrongly using the force of a State criminal statute in my student conduct proceedings (*see Ex. A(12) & B(1,3,4,7)*).  *Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1155 (9th Cir. 2018)* involves a State criminal statute, but the nature of the offense was directly punished by student conduct in that case, meanwhile I am not being punished directly for keeping audio recordings but instead by extension through the threat assessment delay and the many other abuses.  My *Doc. #85* TRO application covers the issue of keeping authentic evidence of an official proceeding when there is no other way of doing so, and my *Doc. #84* TRO application covers in depth the issue of the university's obligations to investigate **irreparable injuries** like mine.  I am also asking for a declaratory judgment on the complex, unestablished merits of my case related to due process.  The defense has cited precedent for exhausting remedies in normal student conduct cases (*Doc. #80 pg. 17*), but a majority of the total number of student conduct cases do not **involve** an allegation of criminal law absent of pending litigation in a State court, so the rules for exhausting State remedies like normal are not applicable to cases under *Steffel* like mine (*at 461-462*).

**C. Forms of Sovereign Immunity and State Actors.**  Past cases which have found that university officials are not persons in terms of State authority against federal law are another procedural substitution that alter or go against the law of the land (*Marbury v. Madison, 5 U.S. 137 at 177 p.1-3, 1824*) (*Osborn v. Bank of the US, 22 U.S. 738 at 818-821, 1824*).  Several cases cited by the defense draw on a doctrine which has broadened the scope of the Eleventh Amendment to preclude federal jurisdiction over any State entity whatsoever if taken to the extreme (*Docs. 57, 80, 89*).  However, the language of Amd. XI would only preclude the federal courts from my case if the University of California was controlled by another State or if I were a foreigner.  Three of the following cases acknowledge this fact about the "proscribe[d]" scope of

the amendment's text (*Stanley v. Trustees of California State Univ., 433 F.3d 1129 at 1133 p.1 (9th Cir. 2006)*) (*Mitchell v. Los Angeles Community College District, 861 F.2d 198, at 201 p.4 (9th Cir. 1988)*) (*Vaughn v. Regents of University of California, 504 F.Supp. 1349, at 1351 p.5 (E.D. Cal. 1981)*).  The established theory is that precluding the jurisdiction of federal courts over State bodies in most State law cases follows the same federalist tradition that the amendment was written in the spirit of.  However, denying a case that meets the qualifications for federal jurisdiction on other substantive and procedural grounds based on the defense's argument would arguably render *42 U.S.C. 1983* as an ineffective statute much like a symbolic resolution: that the university cannot be sued in federal court because it is a public entity of the State of California (*Doc. #80 pg. 15*).  The framers of Amd. XI could have included an express statement distinguishing "all" State-related claims if the final intent was to capture what the defense is asking for.  Furthermore, the defense has made a second argument of total immunity (*Doc. #80 pg. 16*).  Mr. Gherini's argument about whether the word "person" as it is used in *42 U.S.C. 1983* applies to university officials could be made out of pure plain meaning, with no consideration for defect, absurdity, elements of humanity, or other "mischief."  The use of the word "person" within the language of the rest of the statute largely encompasses the daily acts of public officials within the scope of their duties: "persons acting under color of State law."   Nothing in the scope of the statute's language excludes public officials, and the totality of all possible acts that could fall under is likely dominated by public acts.  While public officials are acting on behalf of a State, they are persons acting on behalf of a State, and they certainly retain their personhood when they act **outside of the scope of their official duties**.  The **defect** in Mr. Gherini's argument exists in the fact that it can be made by any other public entity as well as private entities, rendering the same result as Amd. XI immunity.  It is hard to grasp what the statute is supposed to encompass if its intent is clearly written for "persons" but Mr. Gherini is arguing that **persons acting under the color of State law** are not persons.  In fact, this federal statute is specifically written to cover "persons" acting under State authority who deprives the rights of another "secured by the constitution and laws."  Any interpretation limiting the scope of the word

- 32 -

"persons" as used in *42 U.S.C. 1983* to exclude persons acting under the color of State law would be removing the totality of meaning of the statute to the extreme.  Nevertheless, my **exceptional** case of **irreparable injury** involving a **State criminal statute** is one of federal law even if it involves a State body, and the defense's theories are an issue of law of the case versus law of the land.  Most of all, Dr. Tau **provides services** to and is **collaborating** with the university to delay my threat assessment hearing (*see Ex. A(9-11) above*).  What other kind of mischief is legally enabled and has been building up in scale for generations by these defenses invoked by the defense?  Removing the redressability of substantive causes of action that would otherwise meet the difficult qualifications for the federal courts based on a procedural technicality would not be in the spirit of the US constitution as the supreme law of the land.   Leading up to his retirement in 1824, Chief Justice Marshal had a lot to say about how fundamental to our constitutional system the removal of the redressability of substantive hardships based on procedural substitutions is to what does and does not define it.

**D. Defense's Response to Directness of Evidence.**  Mr. Gherini has demonstrated a deep lack of understanding of the nature of my claims, although understandable given their volume and complexity.  His lack of understanding was demonstrated best in my third conference with him on January 8th of 2024 when he said he did not know about the "unauthorized medical diagnosis" area until that moment (*see Ex. A(9) at [incomplete]*), as well as in several emails (*see pg. 53-57 below*).  Mr. Gherini has only given me three half-hour windows to try to establish our disputes between such a volume of complicated facts, and then 'forgot' to schedule a fourth (*see pg. 53-59 below*).  During these windows of time, we would discuss key lines of inquiry such as the elements of the irreparable injury, only for Mr. Gherini to project to have no knowledge about those given topics in his responses later on (*see pg. 72 & 74 below*).  Not only did we never schedule a fourth conference, he joined the pattern of other university officials in refusing to speak to me for large periods of time (*see pg. 53-59 below*).  Most recently, he refused to sign the rule 26(f) joint report himself by asking me to sign it on his behalf (*see pg. 66-72 below*), and

then he began ignoring me again when the court granted his latest motion (*see pg. 72-74 below*). My meet and confer efforts with Mr. Gherini also demonstrate a repeated lack of familiarity with admittingly disorganized pleadings (see *pg. 53-57, 72 & 74 below*) and vague proposed scheduling to meet and confer within his control involving widely-televised weather not in my control (*Doc. #68 pg. 3-8*).  Leading up to the "weather" incident articulated in *Doc. #68*, Mr. Gherini had been avoiding my efforts to meet and confer for other one month (see *pg. 53-59 below*), and when I suddenly had other things I had to do in my life that were televised in our region and got fed up with Mr. Gherini's dirty tricks, Mr. Gherini projected my fatigue back at me as if I had not been actively prosecuting my case and I was the one avoiding meet and confer efforts (see *pg. 59-63 below*).  While I have almost inevitably mismanaged my claims in my position, I have not failed to support them.  The denial of factual contentions themselves in the defense's responses to my pleadings are reasonably based on a lack of information (*Fed. R. 11(b)(4)*).  While the context of the pleadings above may not have every last possible fact down, it now recites the elements of the causes, provides key details, cites the locations in the exhibits where a given subject matter can be observed, and I have already provided all of the relevant conversations showing exactly where and when the improper activity occurred in real time.  I did not provide professional-grade pleadings partly due to the overwhelming volume and magnitude of the totality of my case.  The argument that "I stop short of plausibility with possibility" was a matter of me still having to correlate the injuries at cause with their actual support.  The substance of my case shows that it "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery (*Fed. R. 11(b)(3)*)."  The defense is avoiding observable information between the pleadings and exhibits after being admonished about them specifically during our meet and confer efforts as their best strategy for having no better answer.

**E. "Unquestionable" Authority for University to Break its Own Rules.**  Mr. Gherini asserts that all acts alleged in the pleadings are "unquestionably" within the university's authority (*Doc. #57 pg. 3*), so I feel a need to illustrate some of these unquestionable duties demonstrated

throughout my case.  For Arroyo Vista housing staff to assign me a mental health counselor as opposed to investigating claims of retaliation from the beginning.  For Arroyo Vista housing staff to determine that there was no need to intervene in a housing food safety issue.  For OAISC staff to make a determination based on the wrongful invocation of a criminal statute.  For OAISC staff to make substantive lies that influence the outcome of my student conduct case.  For OAISC staff to assign me permanent disciplinary probation.  For OAISC staff to repeatedly avoid my requests to move forward with processes or talk to "a" different investigator.  For OAISC staff to repeatedly refuse to investigate the substantive lies that influenced the outcome of my student conduct case.  For the privately-contracted threat assessor to make a determination based on the wrongful invocation of a criminal statute.  For the Whistleblower office to refuse to investigate repeat improper government activity that has already produced negligent outcomes on bare procedural grounds.  These events certainly stem from either community college politics, possible retaliation against my facemask behavior on campus, or even something much more difficult and evident.  Similarly, it is a stretch to say that I have provided zero facts or cognizable theories, such as "retaliation."  I deeply object to the 'not plausible just because possible argument:' these are real events that have fundamentally impacted the last several years of my life.  The introduction even seems to conflate the student conduct investigator, Mr. Chris Coronel, with the threat assessment expert, Dr. Manny Tau, even if they are both experts, as well as "the" Mr. Coronel investigator and "a" every other OAISC investigator.

**F. Motions.**  I do not have the focus or will to make an excellent case, especially if my first try is one of such great complexity and magnitude.  The causes have been too much pressure building up on me for years.  I would love to have the time possible to obtain a lawyer, obtain any employment after several years, and have due diligence over my case.  However, I must nevertheless resolve the irreparable damage to my young-adult life opportunities and outcomes.  Focusing enough to do effective proofreading has been hard enough for me in recent years.  I also still do not have access to any document-filing function directly through the PACER system.  We

have missed the normal deadlines for the rule 26(f) joint report, the scheduling conference, and Mr. Gherini's factual contentions do not fairly deny the substance of the allegations (*Fed. R. 8(b)(2)*) because they are exclusively, admittingly based on a lack of information (*Fed. R. 8(b)(5)*), i.e.: the substance has so far been "disguised" by disorganized, complex case documents (*Doc. #57 pg. 14*).  All of Mr. Gherini's dirty tricks detracted my initial engagement with the court rules.  Affirmative defenses for new matters on topics which arise in the pleadings of a case include avoidance and duress, and I have declared evidence in defense of the sloppiness of my own pleadings and objections to Mr. Gherini's approach (*see Part 3(D) pg. 48-49 above, pg. 1 & Ex. B(13) above, final rule 26(f) joint report pg. 7-8*).  In pursuance **of Federal Rule 8(c)**, I move for the court to order the defense counsel to cease and desist all avoidance, impeding, and impairing of my meet and confer efforts and pleadings.  When I first viewed this rule, I did not think to try my best to apply an affirmative defense.  Please reconsider a) the difficulties of trying to individually demonstrate all of the incidents in a complex case with the added dimension of the overwhelming pressure for a pro se party of a clearly "dark," cryptic, "coincidental" university politics scandal "cloud" that has irreparably damage my young-adult life; b) the degree of interest of my substantive hardships compared to unwritten procedural traditions to remove redressability; and c) the weight of Mr. Gherini's avoidance, impeding, and impairing of my meet and confer efforts and pleadings in any previous decisions by the court.  I have repeatedly mentioned the "cryptic" nature of Exhibits D.  If I could prove the connections between several other well-documented, possible cases from my hometown I could bring even recently in connection with the timing of my Doc. #68 submission, I would have a lot more "federal agents" context to make clear, but I cannot make those connections, so I'd tend to avoid the problems associated with trying (*Docs. 50&51*).  Going through the factual totality of a complex case early in the discovery would be for especially good cause for a pro se filing, which is one of the purposes of the discovery process for normally represented parties altogether.  I have described the nature of the physical evidence relative to the protected trial-prep materials (*Docs. 50&51*).  In pursuance of **Federal Rules 11(b)(3), 16(c)(2)(L), 26(b)(3)(A)(ii), 26(b)(5), and Local Rule 16-2.3**, I move

1  Name: Robert V. Gonzales

2  Address: PO BOX 7804

3  SLT, CA 96158

4  Phone: 530-523-3822

5  Fax:

6  In Pro Per

7

FILED
CLERK, U.S. DISTRICT COURT

09-29-2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ts _____ DEPUTY

8  **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**

9  Robert V. Gonzales

10

11                                    Plaintiff

12         v.

13  University of California, Irvine; Et. Al.

14

15                                    Defendant(s).

CASE NUMBER:

8:23-cv-01788-JVS(KESx)

**AMENDMENTS IN PART TO COMPLAINT**

16  I asked to file an emergency petition to prevent an unofficial expulsion from my university. I

17  believe I removed the urgency of my situation by resolving the deletion of my online account

18  according to staff of the Office of Information Technology (Exhibit A(4)), so I submitted a request

19  to remove that office in a CV-30 form.  However, my "Handshake" job application software is still

20  shut down, and I found out I would have previously been hired if my access wasn't blocked for the

21  last two years by the software hosted through the Division of Career Pathways website.  I have also

22  been given an undue "disciplinary probation," and denied the ability to move forward with lifting

23  my academic hold or questioning my permanent probation term mentioned in Exhibit A(3).  The

24  second grievance procedure related to the deletion of my account would have been dependent on

25  the OAISC academic hold if the OIT staff did not recognize my situation, according to Registrar

26  and counseling staff (Exhibit A(5)). There are also unusal, cryptic incidents that are not coincidenc

27  involving fraternity members, that I asked to have investigated at that time but never got anywhere,

28  and I am not ready to bring a case in full for.  For example, in my first lengthy message with Mr.

Coronel, I stated "Did I tell you that at least three school officials expressed implicit language that fell within no other context than some kind of awareness on their part to my presumed "defeat" at the hands of my situation on campus?"  A similar set of communications with Mr. Coronel and other university officials in 2020 involves the responses I received when I asked to have the unusual events in question investigated, which I would have to find.  I have summarized the events I experienced on campus in 2020 in many ways including a spy novel, cryptic set of events, and bold university scandal.  The events I documented seriously make me question whether I am the subject of some kind of weird, blind-study campus experiment against scientific ethics for not informing participants, and these events need to be taken seriously.  Why have I been given disciplinary probation for the entire duration of my academic enrollment after a two-year academic hold?  There is also a lack of grievance procedure for a variety of supervisory offices.  There is even an open matter within the context of this case about why I and most students I could survey do not have the same economic opportunities that students 50 years ago had.

I am asking to preserve parts of my C-66 & CV-126 on topics other than the deletion of my online university account, and to revise my statement in the first part of section D in CV-66 on rights violated based on the previous and new exhibits as follows: "undue denial of academic liberties during the entire remainder of my enrollment, of university employment software, of three fair and impartial investigations, and of the intents and purpose of affordable housing laws."  Please prepare questions for any holes in the descriptions I have provided, for I know I do not always describe Things well.

Home  >  **My Request - INC0685377**

Case: 8:23-cv-01788-JVS(KESx)

| | | |
|---|---|---|
| Number | Created | State |
| INC0685377 | 3d ago | **Resolved** |
| | Updated | |
| | 7m ago | |

# Re: Closing your UCI e-mail address

[ Actions ▾ ]

RG | Caller | Urgency | Configuration item | JH | Assigned to
| Robert Gonzales | 4 - Tasks More Difficult | UCInetID Support S... | | Jon Haynes

---

**Activity**      Attachments

---

[ Type your message here... ]

      [ Post ]

---

**Robert Gonzales**
🕐 7m ago  •  Additional comments

Alright thanks. I think it means the incident "will close." This has been bothering me for almost a month now while unable to move forward.

---

**Jon Haynes**
🕐 17m ago  •  Additional comments

it will not close. your email address will not be listed on our closures list.

---

**Robert Gonzales**
🕐 27m ago  •  Additional comments

It "will" close or "will not" close? The email says it will close automatically.

---

**Jon Haynes**



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ROBERT V. GONZALES

               Plaintiff(s),

      v.

UNIVERSITY OF CALIFORNIA, IRVINE , et al.

             Defendant(s).

CASE NO:
8:23−cv−01788−JVS−KES

ORDER SETTING RULE 26(f)
SCHEDULING CONFERENCE

Monday,  March 11, 2024 at  01:30 PM

This case has been assigned to Judge James V. Selna. If plaintiff has not already served the complaint (or any amendment thereto) on all defendants, plaintiff shall promptly do so and shall file proofs of service within three days thereafter. Defendants also shall timely serve and file their responsive pleadings and file proofs of service within three days thereafter.

This matter is set for a scheduling conference on the above date. The conference will be held pursuant to Fed.R.Civ.P., Rule 16(b). The parties are reminded of their obligations under Fed.R.Civ.P., Rule 26(a)(1) to disclose information (without awaiting a discovery request) and under Rule 26(f) to confer

///

on a discovery plan not later than twenty−one (21) days prior to the scheduling conference and to file a Joint Rule 26(f) Report not later than fourteen (14) days after they confer. Failure to comply with the following requirements or to cooperate in the preparation of the Joint Rule 26(f) Report may lead to the timposition of sanctions.

**Unless there is a likelihood that upon motion by a party the Court would order that any or all discovery is premature, it is advisable for counsel to begin to conduct discovery actively <u>before</u> the Scheduling Conference. At the very least, the parties shall comply fully with the letter and spirit of Rule 26(a) and thereby obtain and produce most of what would be produced in the early stage of discovery.**

    1.    <u>**Joint Rule 26(f) Report**</u>.

    The Joint Rule 26(f) Report, which shall be filed not later than one week before the scheduling conference, shall be drafted by plaintiff (unless the parties agree otherwise), but shall be submitted and signed jointly. <u>"Jointly"</u> <u>contemplates a single report, regardless of how many separately−represented</u> <u>parties there are</u>. The Joint Rule 26(f) Report shall report on all matters enumerated below, which include those required to be discussed by Rule 26(f) and Local Rule 26:

    a.   <u>Synopsis</u>: a short synopsis (not to exceed two pages) of the main claims, counterclaims, and/or affirmative defenses.

    b.   <u>Legal issues</u>: a brief description of the key legal issues.

    c.   <u>Damages</u>: the realistic range of provable damages.

///

d. <u>Insurance</u>: whether there is insurance coverage, the extent of coverage, and whether there is a reservation of rights.

e. <u>Motions</u>: a statement of the likelihood of motions seeking to (i) add other parties or claims or (ii) file amended pleadings or (iii) transfer venue.

f. <u>Discovery and experts</u>: pursuant to Rule 26(f), state what, if any, changes in the disclosures under R. 26(a) should be made; the subjects on which discovery may be needed and whether discovery should be conducted in phases or otherwise be limited; what discovery has been conducted thus far; whether applicable limitations should be changed or other limitations imposed; and whether the Court should enter other orders. Please state how many depositions each side will conduct. Also discuss the proposed time of expert witness disclosures under F.R.Civ.P. 26(a)(2).

g. <u>Dispositive motions</u>: a description of the issues or claims that any party believes may be determined by motion for summary judgment or motion *in limine*.

h. <u>Settlement and settlement mechanism</u>: a statement of what settlement discussions and/or written communications have occurred (<u>specifically excluding any statement of the terms discussed</u>) and a statement pursuant to the Local Rule 16−14.4 selecting a settlement mechanism under that rule.

i. <u>Trial estimate</u>: realistic estimate of the time required for trial and whether trial will be by jury or by court. Each side should specify (by number, not by name) how many witnesses it contemplates calling. If the time estimate for trial given in the Rule 26(f) Joint Report exceeds eight court days, counsel shall be prepared to discuss in detail the estimate.

j.  <u>Timetable</u>: complete of the Presumptive Schedule of Pretrial Dates form attached as Exhibit A to this Order and attach it to the Rule 26(f) report. Submission of a completed Exhibit A is mandatory. The current entries in the "Weeks Before Trial" column merely reflect what the Court believes are appropriate for many, if not most, cases; those entries are not necessarily applicable to this case, and the form is designed to enable counsel to request the Court to set different last dates by which the key requirements must be completed. Each side should write in the month, day and year it requests for each event. *E.g.*, for the expert discovery cut−off it might be "10/7/02" for plaintiff and "10/28/02" for defendant, if they cannot agree. At the conference, the Court will review this form with counsel. Each entry proposing dates shall fall on a Monday, except the trial date which is a Tuesday. In appropriate cases the Court will order different dates after it hears from Counsel. The proposed non−expert and expert discovery cut−off date means: the last day by which all depositions must be completed and responses to all previously−served written discovery must be provided. The proposed cut−off date for motions means: the last date on which motions may be heard, not noticed.

k.  <u>Other issues</u>: a statement of any other issues affecting the status or management of the case (*e.g.*, unusually complicated technical or technological issues, disputes over protective orders, extraordinarily voluminous document production, non−English speaking witnesses, discovery in foreign jurisdictions, etc.).

l.  <u>Conflicts</u>: for conflict purposes, corporate parties must identify all subsidiaries, parents and affiliates.

///

///

−4−

m.   <u>Patent cases</u>: propose dates and methodology for claim construction and *Markman* hearings. The Court requires the parties to file concurrent opening briefs and concurrent reply briefs for the hearing. The Court intends to follow the rule for patent cases which have been adopted by the Northern District of California.

n.   <u>Magistrates</u>: Do the parties wish to have a Magistrate Judge preside? Under 28 U.S.C. § 636, the parties may consent to have a Magistrate Judge preside over all the proceedings, not just discovery. They may pick *any* Magistrate Judge (not just the one assigned to this case) from among those Magistrate Judges who accept these designations. (They are identified on the Central District's website, which also contains the consent form.)

The Joint Rule 26(f) Report should set forth the above enumerated information under section headings corresponding to this Order.

**2.   <u>Scheduling Conference</u>.**

Scheduling Conferences will be held in the Ronald Reagan Building, 411 West Fourth Street, Court Room 10C, Santa Ana. Counsel shall comply with the following:

a.   <u>Participation</u>: The lead trial attorney <u>must</u> attend the Scheduling Conference, unless excused for good cause shown in advance of the Scheduling Conference.

b.   <u>Continuance</u>: A continuance of the Scheduling Conference will be granted only for good cause.

///

### 3. **Protective Orders**.

If you seek a protective order, propose it to opposing counsel before the Scheduling Conference, if at all possible. Protective Orders are considered by the Magistrate Judge assigned in this action.

### 4. **Notice to be Provided by Counsel**.

Plaintiff's counsel or, if plaintiff is appearing *pro se*, defendant's counsel, shall provide this Order to any parties who first appear after the date of this Order and to parties who are known to exist but have not yet entered appearances.

### 5. **Disclosures to Clients**.

Counsel are ordered to deliver to their respective clients a copy of this Order and of the Court's Scheduling and Case Management Order, which contains the schedule that the Court sets at the Scheduling Conference.

### 6. **Court's Website**.

Copies of this and all other orders of this Court that may become applicable to this case are available on the Central District of California website, at "www.cacd.uscourts.gov," under "Judge's Procedures and Schedules." Copies of the Local Rules are available on the website.[1]

———————————————————

[1]Local rules may be purchased from the following:

| Los Angeles Daily Journal | West Publishing Co. | Metropolitan News |
|---|---|---|
| 915 East First Street | 50 West Kellogg Boulevard | 210 South Spring Street |
| Los Angeles, CA 90012 | St. Paul MN 55164−9979 | Los Angeles, CA 90012 |

The Court thanks the parties and their counsel for their anticipated

cooperation in carrying out these requirements.

**IT IS SO ORDERED.**

DATED: January 16, 2024

_____
James V. Selna
United States District Judge

Copies to: All Counsel of Record

# EXHIBIT A

### JUDGE JAMES V. SELNA
### PRESUMPTIVE SCHEDULE OF PRETRIAL DATES

| Matter | Time | Weeks before trial | Plaintiff's Request (Insert specific date) | Defendant's Request (Insert specific date) | Court Order |
|---|---|---|---|---|---|
| Trial date (jury) (court) Estimated length: _____ days | 8:30 a.m. (Tuesdays) | | | | |
| [Court trial:] File Findings of Fact and Conclusions of Law and Summaries of Direct Testimony | | −1 | | | |
| Final Pretrial Conference; Hearing on Motions in Limine; File Agreed Upon Set of Jury Instructions and Verdict Forms and Joint Statement re Disputed Instructions and Verdict Forms; File Proposed *Voir Dire* Qs and Agreed−to Statement of Case | 11:00 a.m. (Mondays) | −2 | | | |
| Lodge Pretrial Conf. Order; File Memo of Contentions of Fact and Law; Exhibit List; Witness List; Status Report re Settlement | | −3 | | | |
| Last day for hand−serving Motions in Limine | | −6 | | | |
| Last day for hearing motions | 1:30 p.m. (Mondays) | −7 | | | |
| Last day for hand−serving motions and filing (other than Motions in Limine). | | −11 | | | |
| Non−expert Discovery cut−off | | −15 | | | |

ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

L.R. 16−14 Settlement Choice:  (1) CT/USMJ  (2) Court Mediation Panel  (3) Private ADR

| | | | | | |
|---|---|---|---|---|---|
| Expert discovery cut−off | | | | | |
| Rebuttal Expert Witness Disclosure | | | | | |
| Opening Expert Witness Disclosure [See F.R.Civ.P. 26(a)(2)] | | | | | |
| Last day to conduct Settlement Conference | | | | | |
| Last day to amend pleadings or add parties | | | | | |

Revised 4−14−16

1   JOHN GHERINI #220981
    john.gherini@ucop.edu
2   University of California
    UC Legal - Office of the General Counsel
3   1111 Franklin Street, 8th Floor
    Oakland, CA  94607-5200
4   Telephone: 510-987-9800
    Facsimile:  510-987-9757
5
    Attorney for Defendants
6   THE REGENTS OF THE UNIVERSITY OF
    CALIFORNIA, EMPLOYEE CHRIS
7   CORNELL, EMPLOYEE RMEEN
    TALESH
8
                   UNITED STATES DISTRICT COURT
9
                  CENTRAL DISTRICT OF CALIFORNIA
10

11
    Robert V. Gonzales,              CASE NO.  8:23-CV-01788-JVS(KES)
12
              Plaintiff,             DEFENDANT'S NOTICE OF
13                                   MOTION AND MOTION TO
                                     DISMISS PLAINTIFF'S
14       v.                          COMPLAINT PURSUANT TO
                                     RULE 12(b) OF THE FEDERAL
15  The Regents of the University of RULES OF CIVIL PROCEDURE;
    California et al,                MEMORANDUM OF POINTS AND
16                                   AUTHORITIES IN SUPPORT
              Defendant.             THEREOF
17
                                     Date:      March 11, 2024
18                                   Time:      1:30 p.m.
                                     Dept.:     10 C
19                                   Judge:     Hon. James Selna
20

21

22

23

24

25

26

27

28
                                - 1 -
    DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)

**NOTICE IS HEREBY GIVEN** that on Monday, March 11, 2024 at 1:30 p.m., or as soon thereafter as the matter can be heard, before the Honorable James V. Selna, presiding in Courtroom 10C of the United States District Court for the Central District of California, located at 411 West 4th Street, Room 1053, Santa Ana, California 92701, Defendant The Regents of the University of California (The Regents) will, and hereby does, move to dismiss the Plaintiff's Complaint on the grounds that the court lacks subject matter jurisdiction and the Complaint fails to state a claim upon which relief can be granted, respectively pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This motion is made following the conference of counsel and pro se plaintiff pursuant to L.R. 7-3 which took place on January 5 and 8, 2024. This Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and Authorities, and such further documentation or testimony that may be presented at any hearing of this matter.

**WHEREFORE,** Defendants respectfully request:

1. That the Court grant the Motion to Dismiss;

2. That the Court dismiss Plaintiff's Complaint with prejudice; and

3. Such other relief as the Court deems just and proper.

Dated:  January 16, 2024                    By:  /s/ John Gherini

John Gherini
Attorney for Defendant THE
REGENTS OF THE UNIVERSITY
OF CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

# I.   INTRODUCTION

Plaintiff Robert V. Gonzales was suspended from the University of California, Irvine ("UCI") campus for assaulting another student.  (Declaration of John Gherini ("Gherini Decl."), ¶ 3.)  To be reinstated, Mr. Gonzales was required to pass an interview with a threat assessment specialist.  (*Id.*)  He attended the meeting, but the meeting was not concluded because Mr. Gonzales kept trying to record the interview.  (*Id.*)

Now, Mr. Gonzales seeks to hold The Regents of the University of California ("The Regents") liable for a series of acts and circumstances, many of which are unclear or vague, but are unquestionably acts performed within the course and scope of official duties of the University.  According to the Civil Cover Sheet, Plaintiff is suing over civil rights/education under 5 U.S.C. § 702 (a statute that permits review of certain decisions by federal administrative agencies) and the Fifth Amendment of the U.S. Constitution, presumably the Due Process Clause. (Dkt. 1-1.)  But Plaintiff has also filed a "Supplemental Complaint" on a form titled Civil Rights Complaint indicating that he is filing a claim under 42 U.S.C. § 1983 naming the Student Conduct Investigator and Dean of Student Affairs as Defendants.  He then attempts to amend his "complaint," but none of the documents, even taken together, allege *any* facts constituting a cause of action under *any* cognizable legal theory.  Rather, it is a series of vague, confusing, nondescript two-page documents.  None of these documents allege any legal cause of action; they all fail to identify facts that would support any legal claim; and all

- 3 -



**bobby gonzales <bgfarcenter@gmail.com>**

## Submission Confirmation

2 messages

---

**Civil Intake** <do-not-reply@cacd.uscourts.gov>                      Mon, Jul 1, 2024 at 10:56 PM
To: bgfarcenter@gmail.com

### Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-240701-001-3324
**Date:** 7/1/2024 10:56:57 PM

Uploaded files:

- **98(2) 6-20 7-1.pdf**
  *Filed on Jnue 20, 2024*

The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF"). Documents submitted using EDSS should be processed within 1-2 business days of receipt. However, the date of EDSS submission will be considered the filing date for any documents received through EDSS and later filed into CM/ECF.

If you are registered for electronic service of documents and receiving e-service in this case, you will receive a Notice of Electronic Filing ("NEF") from the CM/ECF System as soon as each document listed above has been filed. (Click here for information about registering for electronic service or to add e-service in this case.) If you are not registered for electronic service, you may check the status of your documents by checking the docket for your case on PACER (https://pacer.uscourts.gov). Please wait at least two business days after receiving this email and check the docket for your case on PACER before contacting the Court regarding the status of documents submitted through EDSS.

If you are trying to file a document in a case pending before the United States Bankruptcy Court, or in any case pending in any court other than the United States District Court for the Central District of California, your document will not be filed and you will not receive any response to your EDSS submission. Likewise, if you are an attorney required by the local rules to file your documents electronically using the Court's CM/ECF System, your document(s) will not be filed if submitted through EDSS, and you will not receive any further communication from the Court about your EDSS submission.

Please include the tracking number listed above as your reference on any communications with the Court about this submission. We recommend that you keep this email for your records.

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535

---

**Civil Intake** <do-not-reply@cacd.uscourts.gov>                      Mon, Jul 1, 2024 at 10:58 PM
To: bgfarcenter@gmail.com

### Dear Robert Gonzales:

This email confirms that the document(s) listed below were received by the United States District Court for the Central District of California at the date and time indicated:

**Name:** Robert Gonzales
**Tracking Number:** EDS-240701-001-3325
**Date:** 7/1/2024 10:58:49 PM

Uploaded files:

- **98 Supplement(2) 6-20 7-1.pdf**
  *Filed on June 20, 2024*

[Quoted text hidden]