1   Robert V. Gonzales
    PO BOX 7804
2   SLT, CA 96158
    Telephone:   530-523-3822
3

FILED
CLERK, U.S. DISTRICT COURT
02/13/2025
CENTRAL DISTRICT OF CALIFORNIA
BY_____DVE_____DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ROBERT V. GONZALES,                **CASE NO.  8:23-cv-01788-JVS(KESx)**

12            Plaintiff,                 Motions and Points of Authority

13       v.                            **Date & Time: Hearing w/ Subsidized**

14  THE REGENTS OF THE UNIVERSITY      **Appearance by Parties Requested**
    OF CALIFORNIA, Et. Al.
15                                     **Dept: 10C**
              Defendants.
16                                      **Judge: Hon. James Selna**

17

18  1. Jurisdictional Statement                                              Pg. 2-3

19  2. Irreparable Injury                                                    Pg. 4

20  3. Defense Avoidance of Jurisdictional and Legal Claims and Factual Substance   Pg. 5-8

21  4. Motion for Protected Trial Prep Materials                             Pg. 8-9

22  5. Judicial Avoidance of Jurisdictional and Legal Claims and Factual Substance  Pg. 9-10

23  6. Judicial Avoidance of Court Procedure                                 Pg. 10-14

24  7. Motions                                                              Pg. 14-16

25  8. Table of Authorities                                                  Pg. 16-27

26

27

28

DEFENDANTS' INITIAL DISCLOSURES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 1. JURISDICTIONAL STATEMENT

Traditionally, a case involving a State-based university is not subject to federal subject matter jurisdiction, even if the common knowledge is that the "UCs" are the federal universities of California while the "CSUs" are the State universities.  However, the US Supreme Court has already ruled on an exception to the normal requirements for exhaustion of judicial remedies for cases involving parties where one wrongfully threatens the use of **State criminal law** but there is **no pending State prosecution** (*Steffel v. Thompson, 415 U.S. 454, 1974*).  Two university officials implemented **CPC 632** into university proceedings for keeping **audio recordings** of the official proceedings by **enhancing** the terms of my suspension from the university and **preventing** me from rescheduling a "threat assessment hearing."  One of the university officials whom I recorded, Mr. Coronel, **lied** at least 10 times to influence my student conduct case (*Doc. #127 pg. 2-9*).  The other university official, Dr. Manny Tau, has required me not to record the threat assessment as a **condition** for rescheduling the hearing (*Doc. #127 pg. 20 at 1:06:40-1:08-19*).  The defense attorney has also invoked the same CA statute for my efforts to prove his **lies**, but he used coercion with the threat of continuing to ignore me instead of using the intimidation of criminal law more like the others (*Doc. #128 pg. 73-78, 79-97, 109-110, 111-113*).  In the *Steffel* precedent, the US Supreme Court found that it is the "**paramount role**" of the federal courts to intervene in such cases where there is no pending State litigation, while they remarked that the circumstances are the opposite in cases where there is pending State litigation (*at 472-473*).  Throughout the case, the US Supreme Court also identified past cases that visit the **constitutionality** of placing a litigant in a position of asserting constitutional claims which the State laws have subjected to criminal proceedings.  My case involves intimidation, coercion, and wrongful use in university proceedings of CPC 632 by two university officials (*Doc. #125 see Ex. A(9-12) & B(3-6)*).  My case also involves **injunctive relief**, **declaratory relief**, and ***irreparable injuries*** by means of secondary and vicarious liability to my ability to **qualify** for the financial aid that my academic enrollment depends on and the academic and free time spent earning a

double major in order to qualify for that financial aid during **my entire twenties** (*Docs. 131-134*). I am challenging the State statute, but only in part, because it is being wrongly interpreted by state actors in an official proceeding in violation of ***State due process***: to deny someone the liberty of proving injuries to life or property **when there is no other way of doing so**.  By preventing someone from keeping an authentic record of state-sponsored proceeding when the facilitators do not provide any other way of doing so, those officials are denying parties to the hearing the **liberty** to prove any other possible, relevant legal injuries.  These cases often involved reasonable expectations of privacy in public spaces.  The difference in my case is that it is an official proceeding not [supposed to be] in a public space [which I did do in one instance by being placed in duress] (*see Ex. B(9)* *Doc. #125 pg. 31-32, Doc. #129 pg. 170-182*), which is not even close to a private conversation in the same way as in someone's home or between two private individuals. The substance of my case does not make any sense in terms of Amd. I, but it makes perfect sense in terms of denying someone the right to possibly prove evidence in a case at a later time.  UC "PACAOS" Section 103.10 even contains a specific subparagraph on the UCI website clarifying that 'preventing someone from proving an allegation' is a matter of "**procedural due process**" (*pg. 21 below)*.  Irreparable injuries **alone** are grounds for standing in federal court (*US v Carroll Towing 159 F.2d 169 (1947)*).  My case also involves arguments about substance vs procedure (*Osborn v. Bank of the US, 22 U.S. 738 at 818-821, 1824*) (*Bivens v. Agents, 403 U.S. 388 at 391 & 396, 1971*).  Among other serious possibilities, I could have landed two related, high-salary housing development positions after contacting LA County officials once they declared a state of emergency for homelessness in the spring of 2023 if I already had a degree that autumn **like I would have had by then**.  I was directly told to come back at a later time when I have a degree by a County Supervisor staffer (*Doc. #98 pg. 27-32*).  Instead of weighing the legality of reasonable force and escalation like student conduct professionals should know very well, Mr. Coronel made **extremely partial** determinations in my student conduct case (*Doc. #127 pg. 5 at 38:13-39:47*).  A student housing coordinator breached a specific **duty of care** related to "the safety of students" in the dorms which directly led to my suspension (*Doc. #129 pg. 235-236; pg.*

*25-26 below*).  There is very little question of legal wrongdoing.  The big question is whether there is federal jurisdiction.  In *Osborn v. Bank*, Chief Justice Marshall remarks on how "there is scarcely any case every part of which depends on the Constitution, laws, or treaties of the United States" (*22 U.S. 738 at 820, 1824*).

## 2. IRREPARABLE INJURY

Why is "effective expulsion due to financial aid qualification" from only one university so much more impactful to my life than just a normal legal injury?  I spent the previous **11+ years** of my life between education and my spare time working towards it (*Doc. #127 pg. 31-33; Doc. #130 pg. 18-21*).  Specifically, I spent my early life working towards attending at UCI to study criminology.  More importantly, I am a criminology major, which is a **specialized, exclusive, and limited** degree program because relatively few colleges facilitate it, and the next-closest top-rated criminology program is in Arizona (*Doc. #130 pg. 77*).  Even more importantly, **my outputs** in life described in my case best in Doc. #111 have earned me the right to attend a top-rated criminology school, but my financial aid **only applies** at the University of California (*Doc. #127 pg. 31-32*).  Most of all, the unlawful terms of my academic probation to "permanent" disciplinary probation **disqualifies** me from the financial aid that my academic enrollment depends on (*Doc. #128 pg. 28*), unofficially expelling me with whispers and shadows again, likewise to the removed line of inquiry from my case (*Doc. #16 pg. 2*).  If half of my life's time and efforts were taken away by bold, "unquestionable" university lawbreaking, I cannot have back **all of the time** during my twenties.  I simply cannot be expected to fully articulate an excellent case or even a very good one if my first try is one of such great magnitude, intimidation, coercion, and **irreparable damage**.  The causes have been too much pressure building up on me for years, where focusing enough to complete everyday tasks, communicate like normal, and even just successfully proofread has become difficult for me.  In terms of health, I don't think my motivation to perform basic functions of life are damaged forever, but I am uncertain how long it will take to regain my **natural ability** to focus on details including basic functions of life.  I have

- 4 -

cause to claim that the legal injuries as a consequence of these manipulations of my life extend **far beyond** my own life (*Doc. #98 pg. 27-120; Doc. # 121 pg. 47, 52, 53, 59*).

**3. DEFENSE AVOIDANCE OF JURISDICTIONAL AND LEGAL CLAMIS AND FACTUAL SUBSTANCE**

After receiving my complaint on the date it was hand-served in October of 2023, the defense counsel A) did not attempt to reach me for any **clarification** until December of 2023 (*Doc. #128 pg. 65)*; B) **avoided** the substance of the pleadings and the meet and confer efforts in defense documents without claiming a lack of **information** on my part under FRCP 8(B)(5) after little apparent effort to obtain any clarity on their part (*Doc. #127 pg. 20-28*); and C) projected that I did wrong after he **ignored** my meet and confer efforts for months (*Doc. #128 pg. 73-97*). During our conferences and emails, we would discuss **key lines of inquiry** such as the elements of irreparable injury (*Doc. #128 pg. 75)*, only for Mr. Gherini to **project** to have no knowledge about the key lines of inquiry in his defense documents later on.  His lack of understanding of key case information was demonstrated best in my third conference with him on January 8th of 2024 when he said he **did not know** about the "unauthorized medical diagnosis" line of inquiry until that moment (*Doc. #127 pg. 25-26 at 5:51-20:26*).  Mr. Gherini has only given me three half-hour windows to try to establish our disputes between such a **volume** of **complicated** facts (*Doc. #127 pg. 20-28*).  Docs. 65 and 70 first organized the elements of the causes, provided theories and key details, cited the locations in the exhibits where a given subject matter can be observed, and I have already demonstrated all of the relevant conversations and other exhibits showing exactly where and when the improper activity occurred in real time.  The defense is **avoiding** observable information between the disclosures after being admonished about them during our meet and confer efforts as his best strategy for having no better answer.  The defense's factual contentions do not fairly deny the substance of the allegations (**Fed. R. 8(b)(2)**) because they are exclusively, admittingly based on a lack of "**understanding**" as opposed to "**information**."  **FRCP 8(b)(5) & 11(b)(4)** are "**based on**" the **disclosures** in my case such as almost 30 exhibits of direct

DEFENDANTS RULE 26 DISCLOSURES

communications with wrongdoers about wrongdoing in real-time, and not "based on" the defense attorney's own lack of "understanding" due to an evident **refusal** to engage with that "information." If Rules 8(b)(5) and 11(b)(4) were written with an **intent** to protect avoidant litigants, all someone would need to do to successfully defend a case is say "I didn't read it, I don't know what it says" in order for it to be dismissed. Furthermore, **FRCP 11(b)(3)** specifically covers when claims brought "will likely have **evidentiary support** after a reasonable opportunity for further investigation or discovery" if specifically so identified. The **substance** of my case wherever it may fall short shows that it will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. There are only so many plausible **explanations** for why someone would conflate how the words "understanding" and "information" are applied to the substance of my case. The only plausible explanations for a lack of "understanding" of "information" which has already been provided to someone is **their own** ignorance or distortion of that information. How can someone repeatedly insist to make a **serious conclusion** about something they admittingly do not "understand" (*Docs. 57-59, 80-82, 89, 104*)? How can a conclusion that is not **credible** be a fair defense? The factual contentions in the defense's responses to my pleadings are not reasonably **based** on a lack of information (*Fed. R. 11(b)(4)*), but instead his own lack of understanding due to avoidance of that disclosed information repeatedly made available to him. The defense's denials are also **conflicting** with themselves in their assertions on the premise that they are admittingly based on a lack of "understanding" while simultaneously making conclusions that cannot be made credibly. The argument that "I stop short of plausibility with possibility" is a matter of avoiding the injuries at cause supported with the relevant disclosures in a **manner** like that demonstrated by the "issue" with the facts section in my CV-66 form on page 10 below. The content of defense documents show the ease of the **defect** of the "I don't know, I can't read" defense highlighted above. Mr. Gherini vaguely proposed to schedule a fourth conference "later in the week" during February of 2023 and then 'forgot' (*Doc. #128 pg. 78*). At the time when I tried to schedule a fourth conference with Mr. Gherini over one month, widely-televised heavy-sierra snowstorms occurred

(*Doc. #68 pg. 3-8*).  When I suddenly had a lot of snow to shovel to try to make some money, televised all over local California news, and I became fatigued by Mr. Gherini's avoidance, and then Mr. Gherini successfully **projected** my fatigue back at me as if I had not been actively prosecuting my case and I was the one avoiding meet and confer efforts (*Doc. #128 pg. 78, 97-101*).  He then proceeded to mostly **ignore** me again except to inform me of updates in a gloating manner (*Doc. #128 pg. 109-110, 111-113*).  Not only did we never schedule a fourth conference, he **joined the pattern** of other university officials in refusing to speak to me for large periods of time.  He also refused to sign the rule 26(f) joint report himself by asking me to sign it on his behalf (*Doc. #128 pg. 107*), and then he ignored me again for two months when the court granted his motion in Doc. #95 (*Doc. #128 pg. 111-113*).  The defense also made excuses to accept service on behalf of two defendants while accepting service on behalf of the other five (*Doc. #125 pg. 15 & 26*).  I have been actively prosecuting my case except for **moments of lapse** after so many failed efforts (*Docs. 68, 77, 83, 87, 90, 91*).  The time between Mr. Gherini's reception of my initial complaint in October of 2023 until our first correspondence was a demonstration of **enough time** to familiarize with the claims more than has been projected in defense documents, and the new counsel after responding promptly was not interested in any kind of precautionary meet and confer effort after to eliminate the possibility of conflating disclosed "information" with personal "understanding" **all over again**.  The new counsel claims that I do not "**indicate**" any constitutional rights, but shortly below highlighted as "point 7" in their own filing the language of due process quoted from my filing is recognizable (*Doc. #104 pg. 6*).  The response goes on to briefly **not even address** the exception to relevant exhaustion requirements in question, two presumptions of total immunity, due process claims, or the context of the facts once again.  The new counsel has **joined the pattern** of avoidance, despite every opportunity not to.  Pretending not to read and playing dumb are the **modus operandi** of a lawyer who has run out of answers and has nothing better to say.  Like screaming "fire" in a movie theatre in many States, similar things are not legal in court, and my overexerted mind already has enough to try to process.  The defense has shown that they have no credibility to **characterize** the content of my documents by

going way out of their way to state I "say nothing about" the federal laws under which my claims fall or even about the disclosed, overt exhibits which I filed in full.  They have instead used **last-resort peripheral strategies** to cast a dark, implicit, subliminal, character-assassinating, incredibly partial, cruel, and unusual shadow over my case, person, and life.  Except as far as court rules can make a difference, a pro se plaintiff with life at stake who has to spend more time to complete simple tasks for a professional defense attorney with less stake in the outcome of the case is at a **severe, inherent disadvantage**, let along a pro se undergrad student whose focus and motivation was already fatigued before the case began.  I previously requested for court-managed meet and confer efforts to cease and desist avoidance in the form of well-regulated "pleadings discovery conferences" under **FRCP 16(c)(2)(L)** each with a length of more than one hour for the purpose of eliminating the conflation of the words "information" and "understanding" as used in the court rules cited above.  **FRCP 8(c)(1)** generally does not seem constructed for a plaintiff motion related to being put into duress by an avoidant defense attorney, but after so many of my motions were ignored, I eventually felt the need to defend simply being an undergrad student in great duress.

## 4. MOTION FOR PROTECTED TRIAL-PREP MATERIALS

Nobody is realistically capable of pleading on matters for which they do not [yet] have the evidence.  Doc. #94 includes an order to finalize my pleadings by June 26th, 2024, but the court has not yet visited the tedious need to protect trial prep materials.  FRCP 26(b)(5) enables the protection of sensitive trial-prep materials if those materials are expressly described for **sufficient assessment** of their sensitivity.  I mentioned that a picture of my former Norcal warehouse boss coincidentally made its way to the university's law school career office page (*Docs. 50 & 51 pg. 1*).  My former boss who happens to be a Marine Corps veteran threatened to retaliate against "**my future**" if I reported him to the company for his reasons for firing me, and this university office happens to be the one I am **most interested in**.  Too many students, faculty, and university employees I've never met before in southern California already had oddly specific information

about me that they could not possibly have had unless it somehow followed me from my community college 600 miles away.  Instead of receiving a whistleblower investigation for "confidentiality issues" like I asked for over and over, I was practically instructed that "everything" is a coincidence, sometimes by the same cryptic persons as in other events or by persons with the authority to make a difference (*Doc. #128 pg. 1-17, 51-62; Doc. #129 pg. 11-166, 170-183, 202-209, 235-236*).  Disclosing "line of inquiry 5" matters prematurely would severely complicate an already complex case for an **undergrad student**.  Furthermore, not only could discoverable defense materials still be useful, but if I cannot **protect** my sensitive materials I cannot "prepare my case and cannot, without undue hardship, obtain the substantial equivalent of the sensitive exhibits by other means," within the scope of FRCP 26(b)(3)(A)(ii).  Please reconsider a) the difficulties of trying to individually demonstrate all of the incidents in a complex case with the added dimensions of the overwhelming pressure for a pro se undergrad student captured in a cryptic set of university politics scandal "coincidences" that has irreparably damaged my young-adult life; b) the degree of interest of hardships in my own life compared to unwritten procedural traditions to remove redressability; c) the weight of Mr. Gherini's avoidance, impeding, and impairing of my pleadings and meet and confer efforts in previous decisions by the court; and d) each party's balance of power in terms of "equal footing."  I have indicated that I have cause to claim that the consequences of these manipulations of my entire young-adult life's time and efforts may be injurious to millions of Americans as well (*Doc. #98 pg. 27-120; Doc. # 121 pg. 47, 52, 53, 59*).

## 5. DISTRICT COURT AVOIDANCE OF JURISDICTIONAL AND LEGAL CLAIMS AND FACTUAL SUBSTANCE

The rulings do not reach any of the precise legal issues directly addressed in *Steffel*, *Carroll*, *Osborn*, Amd. XI, etc. (*Docs. 67, 95, 103, 107, 120*).  Namely, the exception to normal requirements for exhausting remedies in State court raised in the *Steffel* precedent was **never visited** by the court in any of the rulings.  Instead of addressing the merits of my case in any of

the granted defense motions to dismiss, the District Court relies on this reason not to by simply stating that exhaustion of judicial remedies has not been achieved by citing other laws that do not address the **exception** to the normal requirements at all. The first dismissal also omitted lines of inquiry 2-4 while largely focusing on the "effective expulsion due to software access" in line of inquiry 1 (*Doc. #67 pg. 1*), but I removed this line of inquiry from my case altogether very early on (*Doc. #16 pg. 2*). I am being wrongly accused of A) providing "no" evidence in the face of direct communications with wrongdoers about their wrongdoings in real time, audio exhibits, and more; and B) claiming "zero" federal injuries in the face of a ***State due process*** claim as well as the ***irreparable injuries*** and the ***exception*** to normal exhaustion requirements in a case like mine. The university claims to have "**unquestionable**" authority to break its own rules (*Doc. #57 pg. 3*). The District Court has granted all of the defense motions based on avoidance of case facts. What troubles me about the granting of the dismissals the most is the representation that my case is "a threadbare recital of the elements of a cause supported by conclusory statements" or "a mere possibility of wrongdoing" (*Docs. 67, 95, 107, 120*). This is absolutely false, as is demonstrated between the many filed exhibits which sometimes demonstrate **direct communications** with the wrongdoers about their wrongdoing in real time (*Doc. #128 pg. 1-17, 51-62; Doc. #129 pg. 11-166, 170-183, 202-209, 235-236*). These are years of real, well-**documented events** in my life that are absolutely more than "the mere possibility of wrongdoing," they have already cost me life opportunity and a great deal of stress (*see paragraph 2 above*). Years of real, well-documented events in my life which have already cost me life opportunity and a great deal of stress are absolutely more than plausible or the mere possibility of wrongdoing. I already provided enough disclosures to pursue half or one third of my case, and I have highlighted for assessment more sensitive elements not yet disclosed (*Docs. 50 & 51 pg. 1; pg. 8 above*). The **exceptional** and **irreparable** subject matters meet the difficult criteria for federal subject matter jurisdiction (*see paragraph 1 above*). In the second dismissal, the issue made out of the facts section in my civil rights complaint "CV-66" form is omissive to the "context and facts" in the same document (*Doc. #95 pg. 5*). If I could not even fit a brief list of all of my claims in the claims section in the

CV-66 form, what else can possibly be expected of the issue made out of the facts section in that form due to volume? The volume of complicating details relevant to my case due to professionally-simple errors is probably overwhelming for anyone, let alone an undergrad student who is having a hard time focusing enough to restore their **entire young-adult life's** academic and free time and efforts. I have spent my entire young-adult life working towards. Nothing. According to the defendants and the District Court as a result of presumptions of total immunity above all.

## 6. DISTRICT COURT AVOIDANCE OF COURT PROCEDURE

Throughout many declarations which directly demonstrate my meet and confer efforts with the defense counsel over email, I requested several motions to oppose their efforts to project their own **refusal** to engage with case materials back at me. I submitted Doc. #65 on February 15th of 2024, **more than 21 days before** the scheduling hearing previously scheduled for March 11th (*Doc. 69 text only*), but I was punished by the striking of this document for apparently not filing it "**timely**" in (*Doc. #67 pg. 3*). In Doc. #69 text-only entry, and during the scheduling conference on April 29th, 2024, I was given an official warning for Mr. Gherini's **impeding and impairing** of the contents of my pleadings and my meet and confer efforts. On May 7th, 2024, the second dismissal motion made by the defense was granted (*Doc. #95*). The four grounds on which this motion was granted are on A) a presumed technicality based on the named defendants, B) "lack of clarity," C) judicial exhaustion, and D) Amd. XI immunity. On March 7th, 2024, the Doc. #67 dismissal of defendants named in the "Procedural Grounds for Dismissal" section was issued (*Doc. #95 pg. 1-7*). However, on April 26th, 2024, I filed a new CV-66 form to restore all of those named individuals as defendants (*Doc. #91 pg. 1-12*). The first ground in the May 7th order in Doc. #95 was written as if the April 26th filing **did not exist**, much like how the first dismissal omitted claims 2-4 while including claim 1 (*Doc. #67 pg. 1*) which was removed from my case very early on in the process (*Doc. #16 pg. 2*). I filed Doc. #96 amended complaint 14 days after the Doc. #95 order, and I compiled and added evidence of the irreparable injuries before the

deadline to amend the pleadings given in Doc. #94 (*Doc. #98 pg. 27-199*).  Doc. #98 was not filed until July 2nd because I was alleged not to have supplied a case number.  The document does contain the case number many times, but not where it says "**supplied by the clerk**" specifically. I was not notified of the issue with Doc. #98 with a notice of filer deficiency, but instead by email (*Doc. #130 pg. 78-79*).  Doc. #98 was not filed after it was submitted before June 26th, 2024 in accordance with the deadline given in Doc. #94.  By abusing my efforts to meet the deadline in a "closed" case, the actions of District Court officials and the common knowledge about the University of California system convinced me that I must submit an appeal before July 7th of 2024 (*FRAP 4(a)(1)(B)*).  The second ground of the dismissal is addressed in the previous paragraph. The third ground to dismiss my case is addressed in the first paragraph.  The fourth ground of the granted defense motion to dismiss also involves heavy omission of the legal questions I raised.  In Docs. 65, 70, 96, and 98, I first organized my argument about the balance of **administrative prerogatives** when it comes to technical rules that remove jurisdiction from a court over an otherwise redressable case.  I first demonstrated the **defects** in the defense's procedural arguments which have the effect of rendering 28 U.S.C. 1983 to the likeness of a nonbinding symbolic resolution.  Several cases cited by the defense draw on a doctrine which has substituted language in US CONST Amd. XI to preclude federal jurisdiction over any State entity whatsoever **if taken to the extreme** (*Doc. #57 pg. 8-11*).  US Const. Amd. XI precludes suits against State entities by citizens of another State and by foreigners.  Three of the following cases acknowledge this fact about the "proscribe[d]" scope of the amendment's text (*Stanley v. Trustees of California State Univ., 433 F.3d 1129 at 1133 p.1 (9th Cir. 2006)*) (*Mitchell v. Los Angeles Community College District, 861 F.2d 198, at 201 p.4 (9th Cir. 1988)*) (*Vaughn v. Regents of University of California, 504 F.Supp. 1349, at 1351 p.5 (E.D. Cal. 1981)*).  However, nothing in the language of Amd. XI gives State bodies immunity from suit in the federal courts by a citizen of the **same State**.  If the intent of the framers of Amd. XI was to achieve the broad immunity sought by the defense, they would have included an express statement distinguishing "**all**" State-related claims.  Amd. XI would only preclude the federal courts from hearing my case

if the University of California was controlled by another State or if I were a resident of another State or a foreigner, which I am **neither**. Procedural substitutions to remove the redressability of a case that is **substantively** redressable is not constitutional (*Osborn v. Bank of the United States, 22 U.S. 738 at 818-821 (1824)*). The issue is one of law of the case versus law of the land (*US CONST Art. VI P. 2*). Past cases which have found that university officials are not subject to federal law are procedural substitutions that **alter** the law of the land (*Marbury v. Madison, 5 U.S. 137 at 177 p.1-3, 1803*). Furthermore, the defense has made a second argument of total immunity (*Doc. #80 pg. 7 & 16*). Mr. Gherini's argument about whether the word "person" as it is used in 42 U.S.C. 1983 applies to university officials does not consider **defect**, **absurdity**, or other "mischief" such as whether it can even be made out of **pure plain meaning**. The use of the word "person" in the statute encompasses the **daily acts** of public officials within the scope of their duties: "persons acting under color of State law." Clearly, nothing in the scope of the statute's language **excludes** public officials: the totality of all possible acts that could fall under is dominated by public acts. While public officials are acting on behalf of a State, they are persons acting on behalf of a State, and they certainly retain their liability as a person when they act outside of the scope of their official duties. In fact, this federal statute is specifically written to cover "persons" **acting under State authority** who deprive the rights of another "secured by the constitution and laws." The defect in Mr. Gherini's argument exists in the fact that it can be made by any public entity to remove liability under the statute whatsoever, rendering the same result of a "**nonbinding symbolic resolution**" as Amd. XI immunity. Under the defense argument, it is hard to grasp what the **intent** of the statute is if it is clearly written for "persons" acting within the scope of public duties, but the defense is arguing that public officials are not such persons. Past cases which have found that public officials are not persons are another set of procedural substitutions that **alter** the law of the land. Most of all, Dr. Tau provides services to and is collaborating with the university to delay my threat assessment hearing by imposing a condition against ***State due process*** and the university's policy on **procedural due process** (*Doc. #127 pg. 20 at 1:06:40-1:08:19*). As mentioned above, Chief Justice Marshall had a lot to say

about how fundamental to our constitutional system the removal of the redressability of substantive hardships based on procedural substitutions is to what does and does not define it. Removing the redressability of **substantive** causes of action that would otherwise meet the difficult qualifications for the federal courts based on a **procedural** technicality would not be in the spirit of the US constitution as the supreme law of the land.  I am also concerned with the lack of the court's reach to my motions to protect **sensitive, tedious, intimidating** trial prep materials described in paragraph 4 above.  On the date I originally filed my case, September 25th, 2023, I submitted a CV-60 form (*Doc. #3*), and I submitted financial statements on the next day that were instead filed as a duplicate of another document because the financial statements were in their own individual documents (*Doc. 9/10*).  My first application was denied (*Doc. #18*).  In Docs. 27 & 28, I described my finances in a new motion that was denied in Doc, #32, but one can tell that the bank made a typo and gave me a receipt for someone else's account if they look closely at the last four digits of the account numbers "2327" vs "2397" (*Doc. #28 pg. 3-7*).  I am now in possession of little more than one thousand dollars and have been unemployed for two years. Nevertheless, my exemplary motions were denied, and I was never sent back $202 as indicated by the District Court (*Doc. #32*).  On July 8th of 2024, I was terminated from the three-week employment by a private military contracting company because I was misled to apply for an exclusively graveyard shift position and misled about being given three days off upon learning this fact (*Doc. #130 pg. 80*).  I even tried on June 20th, 2024 to submit all the confirmation emails for job applications I have sent out since 2020 in a once-non-existing Doc. #98 (*Doc. #98 pg. 27-199*).  If the option to waive court costs is available, I am having a very hard time understanding what better circumstances exemplify its purpose than mine.  My limited ability to serve volumes of initially disorganized and redundant by law documents except by email was accepted by the defense counsel (*Doc. #127 pg. 20 at 1:20*).  I am also not very capable to spend $600 to travel to southern California every time there may be a hearing.

**7. MOTIONS**

On October 27th of 2024, I filed my third amended complaint in the District Court (*Docs. 117 & 119*).  On November 19th of 2024, the District Court indicated that my third amended complaint is dismissed by "denying" the "motion" (*Doc. #120*).  On December 18th of 2024, the Ninth Circuit Court of Appeals ruled that my third amended complaint is still pending despite the District Court's ruling one month beforehand (*Doc. #123*).  Despite the content of Doc. #123, the defense is using the "denied motion" as an excuse to continue avoiding case materials, refusing to schedule a settlement conference with the court before July 1st of 2025, and ignore me (*Doc. #128 pg. 119-123*).

**THEREFORE, I move for the court to:**

A) *Order* the defense counsel to cease and desist all impeding, impairing, and otherwise avoidant behaviors in pursuance of FRCP 8(b)(2), 8(b)(5), 11(b)(4), 8(c)(1), and Local Rule 7-18(c);

B) *Sanction* appellees with a fine of all fees, taxes, and costs accrued by the plaintiff throughout the length of the case paid to the District Court for repeatedly insisting total and overt avoidance in pursuance of FRCP 11(c)(1) and Local Rule 7-18(c);

C) *Order* the defense counsel to schedule and participate in at least four hour-long conferences to eliminate their own avoidant conflation between case "information" and their "understanding" of it in pursuance of FRCP 8(b)(2), 8(b)(5), 11(b)(3), 11(b)(4), 16(c)(2)(L), and Local Rule 7-18(c);

D) *Reconsider* my motion to protect sensitive trial-prep materials until the discovery cut-off date in pursuance of FRCP 26(a)(3)(B), 26(b)(1), 26(b)(3)(A)(ii), 26(b)(5), and Local Rule 7-18(c); and

E) *Order* the defense counsel to accept service on behalf of Mrs. Janet Cardenas and Dr. Manny Tau in pursuance of University of California Guidelines on Discrimination and Harassment Section G(4)(a) and Rendell-Baker v. Kohn, 457 U.S. 830, 1982 at 840-843 respectively.

1
2
**8. TABLE OF AUTHORITIES w/ ADDENDUM**
3
(1) Federal Subject Matter Jurisdiction- US Const. Amds. XI & XIV; *Steffel v. Thompson, 415*
4
*U.S. 454, 1974; US v. Carroll Towing, 159 F.2d 169, 1947; Osborn v. Bank of the US, 22 U.S.*
5
*738, 1824; Bivens v. Agents, 403 U.S. 388, 1971; Marbury v. Madison, 5 U.S. 137, 1803* (pg. 1-2
6
above).
7
(2) Request for Relief 1 to order the UCI OAISC or other appropriate authority by TRO to
8
expedite my academic hold by lifting it immediately- *UC PACAOS 103.11(b), 171.09, 171.11,*
9
*171.12* (Doc. #125 pg. 13, 15-17, 22-24, 26, 28-30, 32).
10
(3) Request for Relief 2 to Order the UCI OAISC or other appropriate authority by TRO to
11
reverse the term of my disciplinary probation in full immediately- *UC PACAOS 105.03 & 105.04*
12
(Doc. #125 pg. 15-17, 22-24, 26, 28-30, 32).
13
(4) Request for Relief 3 to order the UCI Whistleblower Office or other appropriate authority to
14
initiate an investigation of the sensitive matters mentioned in paragraph 4 above- *UCWP IV(E)(4)*
15
*& IV(G)(7)* (Doc. #125 pg. 14 & 18-21, 33-34).
16
(5) Request for Relief 4 to order the University of California Office of the President, Office of the
17
General Counsel, or other appropriate authority to compensate me a recovery equal to the value
18
of the damages to "CalGrant" financial aid that I qualified for before the events of 2020- *UC*
19
*PACAOS 105.03 & US v. Carroll Towing, 159 F.2d 169, 1947* (Doc. #125 pg. 15-16, 24-25, 27,
20
29-30, 32).
21
(6) Request for Relief 5 to order the University of California Office of the President, Office of the
22
General Counsel, or other appropriate authority to compensate me a recovery equal to a value
23
representative of the damages as a result of the outcomes of the hardship I have experienced
24
as articulated in the joint report- *UC GDH G(4)(a); UC PACAOS 102.09, 104.90, 105.03; US v.*
25
*Carroll Towing, 159 F.2d 169, 1947* (Doc. #125 pg. 34-39).
26
(7) Request for Relief 6 to order the University of California Office of the President, Office of the
27
General Counsel, or other appropriate authority to release to me all academic materials from my
28

- 16 -

"course wishlist"- *UC GDH G(4)(a); UC PACAOS 102.09, 104.90, 105.03; US v. Carroll Towing, 159 F.2d 169, 1947* (Doc. #125 pg. 34-39).

(8) Request for Relief 7 to order the Regents of the University of California, UC Office of the President, or other appropriate authority by TRO to develop and implement a systemwide PACAOS policy a) permitting the keeping of video and audio recordings of non-class-related official university activities; and b) prohibiting the use, threat of use, or implied invocation of criminal statutes in bad faith in official university proceedings- *UC PACAOS 103.10* & *Steffel v. Thompson, 415 U.S. 454, 1974* (Doc. #125 pg. 18-22, 24-26, 28-30).

(9) Request for Relief 8 to order the Regents of the University of California, UC Office of the President, or other appropriate authority by TRO to develop and implement systemwide general Whistleblower Policy evidentiary standards based on Whistleblower Protection Policy Section III(E)(1) that abolish unlimited power not to investigate a) circumstances that have already produced negligent outcomes in all cases, b) any vague but possible legal issue that consist of a significant hardship, and c) sufficient corroborating evidence of improper governmental activity in all cases- *UCWP IV(E)(4) & IV(G)(7); UCWPP III(D)(1)(c) & III(D)(4)(d)* (Doc. #125 pg. 14 & 18-21, 33-34).

(10) Request for Relief 9 to issue declaratory judgment that the denial of a person's ability to gather authentic evidence of wrongdoing in an official proceeding is a form of denying one's liberty to prove an injury to life or property in court at a later time when there is no other way of doing so- *Steffel v. Thompson, 415 U.S. 454, 1974* (pg. 1-2 above).


**US CONST Amd. XIV-** No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**28 U.S.C. 753(f)-** Each reporter may charge and collect fees for transcripts requested by the parties, including the United States, at rates prescribed by the court subject to the approval of the

Judicial Conference. He shall not charge a fee for any copy of a transcript delivered to the clerk for the records of court. Fees for transcripts furnished in criminal proceedings to persons proceeding under the Criminal Justice Act (18 U.S.C. 3006A), or in habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis, shall be paid by the United States out of moneys appropriated for those purposes. Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal. Fees for transcripts furnished in other proceedings to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question). The reporter may require any party requesting a transcript to prepay the estimated fee in advance except as to transcripts that are to be paid for by the United States.

**28 U.S.C. 1915(a)(1)-** Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

**42 U.S.C. 1983-** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress

applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia (*Docs. 57-59, 80-82, 89*).

**FRCP 8(b)-** (2) Denials. Responding to the Substance. A denial must fairly respond to the substance of the allegation.  (5) Lacking Knowledge or Information. A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

**FRCP 8(c)(1)-** In General. In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: [duress].

**FRCP 11(b)-** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

**FRCP 11(c)(1)-** Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

**FRCP 16(c)(2)(L)-** Attendance and Matters for Consideration at a Pretrial Conference.  A represented party must authorize at least one of its attorneys to make stipulations and admissions about all matters that can reasonably be anticipated for discussion at a pretrial conference. If appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement.  At any pretrial conference, the

court may consider and take appropriate action on the following matters: adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.

**FRCP 26(a)(3)(B)-** Time for Pretrial Disclosures.  Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made —except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause.

**FRCP 26(b)(1)-** Discovery Scope and Limits.  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

**FRCP 26(b)(3)(A)(ii)-** Trial Preparation: Materials. Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**FRCP 26(b)(5)-** Claiming Privilege or Protecting Trial-Preparation Materials. Information

Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

**FRCP 62(d)** Injunction Pending an Appeal. While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. If the judgment appealed from is rendered by a statutory three-judge district court, the order must be made either: (1) by that court sitting in open session; or (2) by the assent of all its judges, as evidenced by their signatures.

**CA Central Dist L.R. 7-18-** Motion for Reconsideration. A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered. No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion. Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application.

**US Const. Amd. XI-** The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State (*Docs. 57-59, 80-82, 89*).

**US Const. Art. VI P. 2-** This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be

bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding (*Doc. #1 pg. 89-94, 121-128*, *Docs. 65, 70, 90, 96, 98*).

**UC "PACAOS" 102.09-** Harassment, defined as conduct that is so severe and/or pervasive, and objectively offensive, and that so substantially impairs a person's access to University programs or activities that the person is effectively denied equal access to the University's resources and opportunities. Harassment includes, but is not limited to, conduct that is motivated on the basis of a person's race, color, national or ethnic origin, citizenship, sex, religion, age, sexual orientation, gender identify, pregnancy, marital status, ancestry, service in the uniformed services, physical or mental disability, medical condition, or perceived membership in any of these classifications. Pursuant to section 104.90, sanctions may be enhanced for conduct motivated on the basis of the above classifications. Sexual Harassment is defined by the University of California Policy on Sexual Violence and Sexual Harassment. (*Doc. #53 pg. 32, Doc. #96 Ex. B(13)*).

**UC "PACAOS" 103.10 -** Procedural due process is basic to the proper enforcement of University policies and campus regulations. Chancellors shall establish and publish campus regulations providing for the handling of student conduct cases in accordance with basic standards of procedural due process. Consistent with this requirement, procedures specified in such regulations shall be appropriate to the nature of the case and the severity of the potential discipline (*Doc. #34 pg. 27*). Basic standards of due process include: a. Notice to the accused of the charges and evidence;b. Opportunity of the accused to respond to the evidence.

**UC "PACAOS" 103.11-** When a formal hearing is deemed to be appropriate, campus implementing regulations shall provide the following minimum procedural standards to assure the accused student a fair hearing: a. Written notice, including a brief statement of the factual basis of the charges, the University policies or campus regulations allegedly violated, and the time and place of the hearing, within a reasonable time before the hearing; b. The opportunity for a prompt and fair hearing where the University shall bear the burden of proof, and at which the student shall have the opportunity to present documents and witnesses and to confront and cross-examine witnesses presented by the University; no inference shall be drawn from the silence of the

accused; c. A record of the hearing; an expeditious written decision based upon the

preponderance of evidence, that shall be accompanied by a written summary of the findings of

fact; and d. An appeals process (*Doc. #34 pg. 32*).

**UC "PACAOS" 104.90-** Sanctions [for any violations of Section 102.00, Grounds for

Discipline] may be enhanced where an individual was selected because of the individual's race,

color, national or ethnic origin, citizenship, sex, religion, age, sexual orientation, gender identity,

pregnancy, marital status, ancestry, service in the uniformed services, physical or mental

disability, medical condition, or perceived membership in any of these classifications (*Doc. #53

pg. 32, Doc. #96 Ex. B(13)*).

**UC "PACAOS" 105.03-** Disciplinary Probation: A status imposed for a specified period of time

during which a student must demonstrate conduct that conforms to University standards of

conduct. Conditions restricting the student's privileges or eligibility for activities may be imposed.

Misconduct during the probationary period or violation of any conditions of the probation may

result in further disciplinary action, normally in the form of Suspension or Dismissal (*Doc. #34

pg. 38, Doc. #96 Exs. A(3) & B(10)*).

**UC "PACAOS" 105.04-** Loss of Privileges and Exclusion from Activities: Exclusion from

participation in designated privileges and activities for a specified period of time. Violation of any

conditions in the written Notice of Loss of Privileges and Exclusion from Activities, or violation

of University policies or campus regulations during the period of the sanction may be cause for

further disciplinary action, normally in the form of Probation, Suspension or Dismissal (*Doc. #34

pg. 38, Doc. #96 Exs. A(3) & B(10)*).

**UC PACAOS 130.722-** Any disclosure of personally identifiable information which is permitted

under these policies must meet the following requirements: a. The recipient of the information

must be informed that the information may not be further disclosed without written consent of the

student. Any consent form obtained from the student must be maintained in the student's file.

b. The recipient (including the officers, employees, and agents of the party of the recipient) may

use the information only for the express purposes for which the disclosure was made.  These

requirements do not apply to disclosures made pursuant to court orders or to lawfully issued subpoenas or to disclosures to a student under Section 130.40, Section 130.721(i), Section 130.721(j), Section 130.721(k), or to disclosures of directory information under Section 130.711. Notwithstanding the above, a party that receives a court order or lawfully issued subpoena for personally identifiable information in student records may redisclose that information in compliance with the court order or subpoena, but must provide the notification required under Section 130.721(g).

**UC "PACAOS" 171.07-** As members of the University community students shall have the right to be protected against the improper collection of information on students' political and social views, beliefs, and associations (*Doc. #53 pg. 5*).

**UC "PACAOS" 171.09-** As members of the University community students shall have the right to have all academic decisions affecting their academic standing, including the assignment of grades, based upon academic considerations only, administered fairly and equitably under policies established by the Academic Senate. In professional curricula, such decisions may include consideration of performance according to accepted professional standards. Equitable grievance procedures, established pursuant to Section 114.00 of these Policies, shall be developed in consultation with student representatives and implemented (*Doc. #53 pg. 5, Doc. #96 Exs. A(3) & B(10)*).

**UC "PACAOS" 171.11-** As members of the University community students shall have the right to the extent appropriate to the circumstances, to be free from University discipline for actions committed involuntarily or under duress. However, violations committed under the influence of drugs, alcohol, or illegal substances will be subject to student disciplinary procedures *(Doc. #53 pg. 6, Doc. #96 Ex. B(9))*.

**UC "PACAOS 171.12-** As members of the University community students shall have the right to have access to equitable grievance procedures established pursuant to Sections 111.00 and 112.00 of these Policies (*Doc. #53 pg. 6*).

**UC "UWP" (IV)(E)(4)-** Anonymous whistleblowers must have sufficient corroborating evidence

DEFENDANTS RULE 26 DISCLOSURES

to justify the commencement of an investigation.  An investigation of unspecified wrongdoing or broad allegations will not be undertaken without verifiable evidentiary support.  Because investigators are unable to interview anonymous whistleblowers, it may be more difficult to evaluate the credibility of the allegations and therefore, less likely to cause an investigation to be initiated (*Doc. #51 pg. 14, Doc. #96 Exs. A(2, 6-8) & B(12)*).

**UC "UWP" (IV)(G)(7)-** Subjects have a responsibility not to interfere with the investigation and to adhere admonitions from investigators in this regard.  Evidence shall not be withheld, destroyed or tampered with, and witnesses shall not be influenced, coached, or intimidated (*Doc. #51 pg. 16*), *Doc. #96 Ex. A(1-5))*.

**UC "WPP" (III)(D)(1)(c)**– Required Allegations- The LDO will determine whether the complaint contains the required allegations, as set forth in Section C.1. above. When determining whether a complaint contains the required allegations, the LDO may consult with the location's Investigations Workgroup, as defined under the University's Whistleblower Policy, or an ad hoc workgroup, as needed. If the complaint is not specific or fails to provide sufficient information, the LDO may request that the Complainant amend the complaint to address the deficiencies. If the Complainant does not amend the complaint or otherwise correct the deficiencies within 15 calendar days of the date of the LDO's notice, the LDO may dismiss all or part of the complaint and notify the Complainant in writing of that decision (*Doc. #52 pg. 8, Doc. #96 Exs. A(2, 6-8) & B(12)*).

**UC "WPP" (III)(D)(4)(d)-** Investigation Report- The investigator will prepare a written report containing findings of fact based on the evidence and the investigator's conclusion as to whether retaliation in violation of the policy occurred, using the applicable evidentiary standards set forth in Section E. below. The investigation report will provide sufficient detail to enable the Chancellor to make an independent determination as to whether a policy violation occurred. The investigation report will include the Retaliation Complaint, a list of witnesses interviewed, any accused employee's response to the allegations (if submitted), and any other documents on which the investigator has relied in making findings. If the RCO did not personally conduct the

- 25 -

investigation, the RCO should review the investigation report to determine whether it is complete or is to be returned to the investigator to address the deficiencies. When the investigation report is completed, the RCO will deliver it to the LDO (*Doc. #52 pg. 10, Doc. #96 Exs. A(2, 6-8) & B(12)*).

**UC "WPP" III(E)(1)-** Evidentiary Standards for Retaliation Complaints- Consistent with California Government Code Section 8547.10(e), a Complainant who brings a Retaliation Complaint must demonstrate by a Preponderance of the Evidence that he or she either made a Protected Disclosure or refused to obey an Illegal Order and that such activity was a contributing factor in the alleged Adverse Personnel Action. If the Complainant has met that standard, the burden of proof shifts to the supervisor, manager, or University to demonstrate by Clear and Convincing Evidence that the alleged Adverse Personnel Action would have occurred for legitimate, independent reasons even if the Complainant had not made a Protected Disclosure or refused to obey an Illegal Order. If that burden is not met, the Complainant shall have a complete affirmative defense to the Adverse Personnel Action that was the subject of the complaint. Consistent with California Government Code Section 8547.10(d), nothing in this policy is intended to prevent a manager or supervisor from taking, directing others to take, recommending, or approving any personnel action or from taking or failing to take an Adverse Personnel Action with respect to any employee or applicant for employment if the manager or supervisor reasonably believes any action or inaction is justified on the basis of evidence separate and apart from the fact that the person has made a Protected Disclosure or refused to obey an Illegal Order.

**UC "GDH" (G)(4)(a)-** Overview of Processes- Reports of Prohibited Conduct may be addressed through an Informal Resolution process, Formal Investigation or, a separate employee grievance or complaint process. a. Informal Resolution. After a preliminary assessment of the facts, and, if useful, in consultation with other offices depending on whether the Complainant and Respondent are faculty, other academic appointees, staff, student employees, students, or other persons covered by University policies prohibiting discrimination (for example, applicants), the OEOD may initiate an Informal Resolution process, which may include: mediation; separating the

parties; providing for safety; referring the parties to counseling; referral for disciplinary action; a settlement agreement; conducting targeting preventive educational and training programs; and conducting a follow-up review to ensure that the resolution has been implemented effectively. The Informal Resolution process may be especially useful when: a report is made by a third party or anonymously; a Formal Investigation is not likely to lead to a resolution; both parties prefer an informal process; or the facts as alleged do not appear to amount to a policy violation. The Complainant has the right to request an Informal Resolution process or a Formal Investigation at any time, but the OEOD has final authority for determining whether to initiate a specific resolution process. Both the Complainant and Respondent may be accompanied by an advisor and/or support person throughout the process (*Doc. #53 pg. 32, Doc. #96 Ex. B(13)*).

February 13th, 2025

By: *Bobby Gonzales*

Robert V. Gonzales

DEFENDANTS RULE 26 DISCLOSURES