FULL NAME
Robert V. Gonzales
COMMITTED NAME (if different)
PO BOX 7804
FULL ADDRESS INCLUDING NAME OF INSTITUTION
SLT, CA 91658

PLEASE DO NOT SEPARATE, ALL ONE DOCUMENT
PRISON NUMBER (if applicable)

```
┌─────────────────────────────────────────┐
│               FILED                       │
│                                           │
│      CLERK, U.S. DISTRICT COURT           │
│      ┌─────────────────────────┐          │
│      │      04/10/2025         │          │
│      └─────────────────────────┘          │
│      CENTRAL DISTRICT OF CALIFORNIA       │
│                                           │
│      BY_____EC_____DEPUTY               │
│                                           │
│      DOCUMENT SUBMITTED THROUGH THE       │
│      ELECTRONIC DOCUMENT SUBMISSION SYSTEM│
└─────────────────────────────────────────┘
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PLAINTIFF, | CASE NUMBER<br>8:23-cv-01788-JVS(KESx)<br>*To be supplied by the Clerk* |
| v. |  |
| DEFENDANT(S). | **CIVIL RIGHTS COMPLAINT**<br>**PURSUANT TO** *(Check one)*<br>☒ 42 U.S.C. § 1983<br>☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971) |

## A.  PREVIOUS LAWSUITS

1.  Have you brought any other lawsuits in a federal court while a prisoner:  ☐ Yes   ☒ No

2.  If your answer to "1." is yes, how many? _____

Describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:
   Plaintiff _____

   _____

   Defendants _____

   _____

b. Court _____

   _____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example:  Was the case dismissed?  If so, what was the basis for dismissal?  Was it appealed?  Is it still pending?) _____

f. Issues raised: _____

   _____

   _____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred?  ☒ Yes    ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint?  ☒ Yes    ☐ No

   If your answer is no, explain why not _____

   _____

   _____

3. Is the grievance procedure completed?  ☐ Yes    ☐ No

   If your answer is no, explain why not  Lake Tahoe Community College has refused to send me my final notice which
   provides the school's determination within 15 business days of the final hearing procedure.

4. Please attach copies of papers related to the grievance procedure.

## C.  JURISDICTION

This complaint alleges that the civil rights of plaintiff  Robert V. Gonzales
                                                        (print plaintiff's name)

who presently resides at  PO BOX 7804 SLT, CA 96158                                ,
                          (mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
Lake Tahoe Community College
                          (institution/city where violation occurred)

on (date or dates) _____3/3/25_____, _____3/12/25_____, _____4/7/25_____.
                                    (Claim I)                 (Claim II)             (Claim III)

**NOTE**:    You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.   Defendant  Dr. Michelle Batista _____ resides or works at
                  (full name of first defendant)

                  1 College Dr., South Lake Tahoe, CA 96150
                  (full address of first defendant)

                  LTCC Vice President of Student Services
                  (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual  ☒ official capacity.

Explain how this defendant was acting under color of law:

Mrs. Batista intentionally excluded evidence relevant to the student grievance procedure to prevent it from being reviewed

by the panel of faculty and students who were selected to review the student disciplinary action.

2.   Defendant  Mrs. Keeley Carroll _____ resides or works at
                  (full name of first defendant)

                  1 College Dr., South Lake Tahoe, CA 96150
                  (full address of first defendant)

                  LTCC Dean of Instruction
                  (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual  ☒ official capacity.

Explain how this defendant was acting under color of law:

Mrs. Carroll intentionally and admittingly led a student disciplinary action "without relevant evidence, without relevant

witnesses" and against LTCC policy."

3.   Defendant  Jonathan Watson _____ resides or works at
                  (full name of first defendant)

                  1 College Dr., South Lake Tahoe, CA 96150
                  (full address of first defendant)

                  LTCC Director of Security
                  (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual  ☒ official capacity.

Explain how this defendant was acting under color of law:

Mr. Watson instructed other LTCC security staff to lie about events captured on video camera and used said events to attempt

to conceal separate events related to the intercollegiate student confidentiality issues alleged in this case.

---

4.  Defendant   Lake Tahoe Community College _____ resides or works at
                (full name of first defendant)

        1 College Dr., South Lake Tahoe, CA 96150 _____
        (full address of first defendant)

        _____
        (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:

LTCC staff concealed the factual basis of relevant case information and engaged in retaliatory student disciplinary actions

for my efforts to initiate a grievance procedure (pg. 13-21 below).

5.  Defendant   _____ resides or works at
                (full name of first defendant)

        _____
        (full address of first defendant)

        _____
        (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

**D. CLAIMS\***

**CLAIM I**

The following civil right has been violated:

1. Unfair and inequitable student grievance procedures in violation of established LTCC due process procedures (US Const. Amd. XIV & LTCC AP 5520) (pg. 46-54 below).

2. Jeopardizing my status as a student at LTCC for initiating a grievance procedure (US Const. Amd. XIV & LTCC AP 5520) (pg. 46-54 below).

3. Affirmative actions to attempt to conceal discoverable case information from a reasonable investigation (Urie v. Thompson 337 U.S. 163, 1949; Fox v. Ethicon Endo-Surgery (2005) 35 Cal.4th 797 [27 Cal.Rptr.3d 661, 110 P.3d 914; Bailey v. Glover, 88 U.S. 342, 187; Holmberg v. Ambrecht, 327 U.S. 392, 1946.

Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

1. Mrs. Batista excluded evidence relevant to student grievance procedure after being informed of all of the sources and repeating them back to me during the preliminary hearing (pg. 48-52 below).

2. Mrs. Batista excluded witnesses relevant to student grievance procedure after being informed of all of those witnesses and repeating them back to me during the preliminary hearing (pg. 48-52 below).

3. Mrs. Batista moved forward with an allegation against me which she admitted was misrepresented to her during the preliminary hearing (pg. 49-51 below).

4. Mrs. Batista revised her recommended punishment after I initiated student grievance procedures so that the recommendation jeopardizes my status as a student at LTCC (pg. 51 below).

5. Mrs. Carroll intentionally cut into my already-brief speaking time to present complex student grievance issues (pg. 49-50 below).

6. Mrs. Carroll intentionally reframed her question to deny my right to ask procedural questions about the grievance procedure before the proceeding started (pg. 50 below).

7. Mrs. Carroll concluded the final disciplinary hearing before I could question the witness that was called upon (pg. 51 below).

8. Mrs. Carroll admittingly led a grievance procedure "without all of the relevent evidence, without all of the relevant witnesses, and against LTCC policy (pg. 50 below)."

*\*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

**E.  REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

Order the Lake Tahoe Community College Office of the President or other appropriate LTCC authority to compensate me a

recovery equal to a value representative of:

(A) The irreparable damages to my young-adult life's time, efforts, outcomes, and opportunities as a result of retaliatory student

disciplinary actions that would not have taken place if student confidentiality materials were not shared inappropriately

between two colleges, including but not limited to: (i) unsuccessfully applying for hundreds of jobs that require a bachelor's

degree; (ii) evident 'speculation' on the part of several potential "day job" employers who view my education status on my

resume; (iii) creating unnecessary divides in my personal life based solely on the appearance of being in trouble; (iv) the

seven years I spent earning a double major at LTCC in order to qualify for the financial aid that my academic enrollment at the

University of California, Irvine depends on; and (v) the thirteen years I spent working toward a bachelor's degree to put myself

on a path of life towards initiating and achieving any of my multi-million-dollar business plans.

(B) Damage to my ability to have focus and motivation while completing everyday tasks for the last five years as a result of the

stress that compounds due to the consequences of retaliatory student disciplinary actions that would not have taken place if

student confidentiality materials were not shared inappropiately between two colleges.

(C) Order the LTCC VP of Student Services to release my final disciplinary notice which provides the school's determination

and/or to reverse my enhanced punishment of expulsion from LTCC for initiating a grievance procedure.

_____          _____
         *(Date)*                                              *(Signature of Plaintiff)*

Robert V. Gonzales
PO BOX 7804
SLT, CA 96158
530-523-3822

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert V. Gonzales | CASE NUMBER: |
| PLAINTIFF(S) | 8:23-cv-01788-JVS(KESx) |
| v. | |
| The Regents of the University of California; Et. Al. | **NOTICE OF MANUAL FILING OR LODGING** |
| DEFENDANT(S). | |

PLEASE TAKE NOTICE:

Pursuant to Local Rule 5-4.2, the following document(s) or item(s) are exempt from electronic filing, and will therefore be manually ☐ Filed ☑ Lodged: (**List Documents**)

1. Audio Exhibit D(3) of my preliminary student disciplinary hearing with Dr. Michelle Batista at Lake Tahoe Community College on February 19th of 2025, demonstrated in a timeline in Doc. #142 (pg. 28-33 therein).
2. Audio Exhibit D(4) of my final student disciplinary hearing with Mrs. Keeley Carroll at Lake Tahoe Community College on March 12th of 2025, demonstrated in a timeline in Doc. #142 (pg. 33-37 therein).
3. Audio Exhibit D(6) of my phone conversations with LTCC staff to confirm the employment status of Daniel Gonzales from April 3rd to April 7th of 2025, demonstrated in a timeline in Doc. #142 (pg. 37-38 therein).

**Reason:**

☐    Under Seal

☐    In Camera

☑    Items not conducive to e-filing (i.e., videotapes, CDROM, large graphic charts)

☐    Per Court order dated: _____

☑    Other:

Statement of Consent to Proceed Before a United States Magistrate Judge

_____
Date

_____
Attorney Name

_____
Party Represented

*Note:   File one Notice of Manual Filing or Lodging in each case, each time you manually submit a document(s).*

NAME & CONTACT INFORMATION REQUIRED BY L.R. 11-3.8 OF ATTORNEY(S) OR PRO PER PARTY

Robert V. Gonzales
PO BOX 7804
SLT, CA 96158
530-523-3822

ATTORNEY(S) FOR:

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert V. Gonzales | CASE NUMBER: |
| | 8:23  CV 01788-JVS(KESx) |
| Plaintiff(s) | |
| v. | |
| The Regents of the University of California; Et. Al. | **STATEMENT OF CONSENT TO PROCEED BEFORE A UNITED STATES MAGISTRATE JUDGE** |
| | **(For use in Reassignment of Civil Cases to United States Magistrate Judges on Voluntary Consent List only)** |
| Defendant(s) | |

### *(THIS FORM SHALL BE USED ONLY FOR CASES IN WHICH ALL PARTIES CONSENT TO A VOLUNTARY CONSENT LIST MAGISTRATE JUDGE PURSUANT TO GENERAL ORDER NO. 18-11)*

The parties signing below acknowledge the following: As provided in General Order No. 18-11, the parties may select any Magistrate Judge from the Voluntary Consent List maintained by the Clerk of Court to conduct all further proceedings in this case, pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73(b), if ALL PARTIES consent to the jurisdiction of that Magistrate Judge. Consent to proceed before a Magistrate Judge may be withheld by any party without any adverse consequences. If a case is reassigned to a Magistrate Judge pursuant to General Order No. 18-11, any appeal from a judgment of that Magistrate Judge shall be taken to the United States Court of Appeals in the same manner as an appeal from any other judgment of the District Court, in accordance with 28 U.S.C. § 636(c)(3).

The undersigned party or parties hereby voluntarily **consent** to have the following United States Magistrate Judge, chosen from the Voluntary Consent List maintained by the Clerk of Court, conduct all further proceedings in this case, including trial and final judgment:   Karen E. Scott

*[insert name of selected United States Magistrate Judge]*

| Name of Counsel (**OR** Party if Pro Per) | Signature and date | Counsel for (Name of Party or Parties) |
|---|---|---|
| Robert V. Gonzales | *Bobby Gonzales* | April 9th, 2025        Pro Se |
| | | |
| | | |
| | | |

☐ Party lodging this form shall check this box to confirm that ALL PARTIES have consented to proceed before the selected Magistrate Judge.

*Please note:*   ***Unless the case or filing party is exempt from electronic filing, this completed form must be electronically filed as an attachment to a Notice of Lodging, as required by Local Rule 5-4.4; after the written consent of all parties has been submitted to the Court, this completed form must be e-mailed to the assigned District Judge's generic chambers e-mail address using the CM/ECF System.  If the case or filing party is exempt from electronic filing, the written consent of all parties may be lodged with the Clerk in paper form pursuant to Local Rule 5-1.***

**APPROVAL or DENIAL BY DISTRICT JUDGE**

The written consent of all parties to proceed before a United States Magistrate Judge to conduct all further proceedings is hereby ☐ APPROVED   ☐ DENIED:

_____                    _____
Date                                                                            United States District Judge

**APPROVAL or DENIAL BY MAGISTRATE JUDGE**

The written consent of all parties to proceed before a United States Magistrate Judge to conduct all further proceedings is hereby ☐ APPROVED   ☐ DENIED:

_____                    _____
Date                                                                            United States Magistrate Judge

**NOTICE TO COUNSEL FROM CLERK:**

☐ All parties having consented to proceed before the selected Magistrate Judge, and the parties' consent having been approved by both the District Judge and the Magistrate Judge, this case is hereby reassigned to Magistrate Judge _____ for all further proceedings, pursuant to General Order No. 18-11. Please use the case number _____ on all documents subsequently filed in this case.

☐ The District Judge or Magistrate Judge having denied the consent of all parties to proceed before a Magistrate Judge, this case shall remain assigned to the District Judge.

Robert V. Gonzales
PO BOX 7804
SLT, CA 96158
Telephone:   530-523-3822

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ROBERT V. GONZALES,

        Plaintiff,

      v.

THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA, Et. Al.

       Defendants.

**CASE NO.  8:23-CV-01788-JVS(KESx)**

Declaration in Support of Motions

**Date & Time: Hearing w/out Appearance of Parties Requested**

**Dept: 10C**

**Judge: Hon. James Selna**

CONTENTS

1. CV-66                                                       PG. 1-6

2. G-92                                                            PG. 7

3. Statement of Consent to Proceed Before a Magistrate Judge       PG. 8-9

4. Case Summary                                      PG. 11-13

5. Exhibits D(2-6)                                    PG. 13-21

- 10 -

**CASE SUMMARY**

The theory for an exception to the normal requirements for exhausting judicial remedies derives from the two threats of State prosecution under CPC 632 during university proceedings, without pending State litigation, but with other irreparable injuries relevant to those proceedings (*Steffel v. Thompson*, *415 U.S. 452 (1974)*). My issues with the University of California, Irvine began in 2020 when I was assigned a mental health counselor as opposed to being directed to the whistleblower office to investigate a picture of my former Norcal warehouse boss on the Socal university law school's career office website (s*ee Ex. B(13) in Doc. #127*). The significance of the photo is that this former Marine Corps veteran boss threatened to retaliate against "my future" when he was firing me from that position. After many other unusual incidences on campus demonstrated by Exhibits A(6) and B(12) materials below occurred, the same official who assigned me to a mental health counselor breached a specific duty of care in dorm housing when she ignored my inquiries related to a food safety issue, and the breach of this duty of care directly led to my unusually lengthy suspension (*see Ex. B(13) in Doc. #127*). The student conduct investigator assigned to my case lied up to ten times to make biased determinations as well as to influence those of members of the Student Conduct Review Board during my university appeal proceeding (*see Ex. B(3-6) in Doc. #127*). During my student conduct proceedings, I was removed from student housing, contacted by COVID-19 contact tracing, placed in quarantine housing, removed from quarantine by the student conduct office before the two-week period established by the CDC, and I returned to my dorm in a state of duress (s*ee Ex. B(9) in Doc. #127*). I was expected to study for and take my finals from my car, or either repeatedly drive 600 miles one way in order to retrieve my property when the student conduct office permitted me to retrieve it from my dorm or pay for accommodation expenses for an unknown period at the time while I waited for that permission (*see Ex. B(9) in Doc. #127*). In the terms of my suspension, I was assigned a term of disciplinary probation "for the duration of my academic enrollment" against university policy (*see Ex. A(3) in Doc. #127*). My disciplinary probation is significant because I can only qualify for the financial aid that enables my academic enrollment in the first

place if I am in "good standing" with the University of California, so my suspension against university policy constitutes an irreparable injury to my financial aid qualifications (*see Ex. A(3) in Doc. #127*).  The breach of the duty of care and the biased student conduct proceedings also constitute an irreparable injury to (1) the seven years before attending at UCI where almost all of my academic and free time was spent earning a double major at my community college; (2) the five years where the stresses of the suspension of my young-adult life's time and efforts have been damaging to my focus and motivation (*see Ex. A(9) in Doc. #127*); and (3) the three years since 2022 when I would have graduated with a bachelor's degree and had career opportunities available to me, where I have instead been unemployed after applying to more than 200 jobs at places like Target (*see Ex. C(3) in Doc. #127*).  The theory of irreparable injury derives from *US v. Carroll Towing* (*159 F.2d 169 (2d Cir. 1947)*).  The major object of my claims to federal jurisdiction are the audio recordings of the university proceedings relevant to the *Steffel* precedent (*see Exs. A(6), A(9), A(12), and B(3-6) in Doc. #127*).  Upon trying to return to the university in 2023, I was ignored by the student conduct office for months (*see Ex. A(1) in Doc. #127*); I was told that the student conduct office is responsible for investigating its own wrongdoings (*see Exs. A(5-8) in Doc. #127*); and I was ignored by the university threat assessor for months until he, the student conduct investigator, and the university defense counsel had collaborated to permit me to resume my threat assessment hearing with an unlawful condition (s*ee Exs. A(9-11) in Doc. #127*). The condition for me to return to the university was that I may resume my threat assessment hearing if I do not record the proceeding in violation of State due process and the university's policy on procedural due process (*see Ex. A(10 & 11) in Doc. #127*).  My "willingness" to resume the university threat assessment procedure, as put by the university defense team, is actually based on university official's willingness to impose the wrongful condition, and not on my alleged unwillingness to participate in the process under any circumstances (*see Ex. A(10) in Doc. #127*).  The permanent disciplinary probation (*UC PACAOS 105.03*) upheld by a conflict of interest (*UCWP IV(G)(7)*) disqualifies me from the financial aid which my academic enrollment depends on, so even if I resume the grievance procedure when the condition against university

policy is removed, I still cannot return to the university until the terms of suspension against university policy are reversed (*see Ex. A(3) in Doc. #127*). I have repeatedly raised the concern that the Doc. #57 defense and Doc. #67 order were almost exclusively focused on a line of inquiry removed from my case months beforehand in Doc. #16. Since February of 2025, another set of retaliatory student disciplinary actions to expel me from the school against "due process procedures" have occurred at LTCC (*see Ex. D(1-6) below*). I had not originally planned on filing any claims against LTCC for events that occurred before 2020, but if it was not revealed to me in my 2025 LTCC suspension notice that the student confidentiality issues stem from an event in 2018, I would not have been capable of pursuing the correct incident and factual basis even if I did already file a claim against LTCC (*see Ex. D(6) below*). LTCC personnel's lie about a current employee's employment status at the school and their refusal to allow me to crossexamine him as a witness during the events of 2025 has continued the concealment of a complete factual basis to make an effective claim about these student confidentiality issues (*Fox v. Ethicon Endo-Surgery (2005) 35 Cal.4th 797 [27 Cal.Rptr.3d 661, 110 P.3d 914]*) (*Bailey v. Glover, 88 U.S. 342, 187*) (*Holmberg v. Ambrecht, 327 U.S. 392, 1946*) (*Urie v. Thompson, 337 U.S. 163, 1949*). Such a strange pattern of student disciplinary actions would not have been taken against me at two colleges, and no irreparable injuries would have occurred, if a conversation I had about sensitive topics had not been shared between the two schools or was at least documented by student conduct officials accurately.

**DECLARATION OF EXHIBIT D(2): 2025 LTCC HEARINGS MATERIALS (US CONST Amd. XIV, 35 Cal.4th 797 [27 Cal.Rptr.3d 661, 110 P.3d 914 (2005), US v Carroll Towing 159 F.2d 169 (1947))**

The Lake Tahoe Community College suspension notices were sent to me by the staff of VP of Student Services, Dr. Michelle Batista, on February 18th and March 3rd of 2025 (*Doc. #143 pg. 7-10*). On February 13th of 2025, the LTCC director of security, Jonathan Watson, escorted me off of campus for "alleged threats" they were investigating in November absent of any **specific**

context (*Doc. #143 pg. 2-3*).  I was also told that I was not confronted about my interaction with two LTCC security personnel in November earlier because the security team could not identify me as a student before.  However, I have been at the gym **in the presence** of both security personnel, Jaden and Gabriel, multiple times since January 7th of 2025, but an issue was conveniently not raised until the week of February 13th of 2025 (*see Ex. Below Doc. #143 pg. 2-3*).  The time between the November event and my interactions with both Gabriel and Jaden since January is incredibly **isolated**.  On November 15th of 2024 at around 8:30PM, I went into the LTCC gym to shoot hoops, where I met both Jaden and Gabriel for the first time.  After a few minutes of being in the gym together, Gabriel decided to suddenly tell me that the gym is closed off and I must leave, despite walking in nearly at the same time as him.  Gabriel escalated the situation by **vaguely** accusing me of "threatening violence" and threatening to call law enforcement when I questioned his demand.  In my first LTCC notice, I was accused of fleeing the scene when instructed to wait for law enforcement, when instead I refused to leave when I was told that law enforcement would be called (*Doc. #143 pg. 2*).  Security personnel's **misrepresentation** of the time they were made able to identify me as a student shows a pattern that an attempt was made to use the November event to conceal the incident of retaliatory student disciplinary action against due process procedure in February of 2025 (*Doc. #143 pg. 2-3*).  The fact that security conveniently informed Mrs. Batista of the November event **on the day** I was removed from campus in February as she stated during the preliminary LTCC hearing also shows a pattern of security's attempt to use the November event to conceal the February incident (*Doc. #142 pg. 28 at 5:48-6:42*).  The fact that I was removed in February **allegedly** for an incident that occurred in November **after** the extended January deadline to punish me for it as a student had expired also shows a pattern of security personnel's attempt to use the November event to conceal the February incident (*Doc. #143 pg. 2-5*).  During my preliminary LTCC hearing, Mrs. Batista mentioned that she thinks I already knew the real reason I was removed from campus that she was "already dealing with," even though I did not have enough information to credibly prove the real reason (*Doc. #142 pg. 30 at 24:48-25:58*).  These events are indicative of **widespread awareness**

between different LTCC departments to use the November event to conceal the February incident.  Then, in the following weeks, I initiated a student grievance procedure at LTCC which violated the school's "due process procedure" in a retaliatory manner that was used to jeopardize my status as a student at LTCC (*see Ex. D(2) below, Doc. #143 pg. 6*).  The preliminary LTCC hearing was held on February 19th of 2025 and the final hearing was held on March 12th. According to LTCC Administrative Policy 5520, the school has 15 academic days to provide me with my final decision in writing (*Doc. # 143 pg. 46*).  As of April 10th of 2025, I am yet to receive a notification stating whether my suspension has been enhanced to expulsion or my term of suspension has concluded (*Doc. #143 pg. 28-33*).  The purpose of Exhibit D(2) materials from the LTCC student disciplinary actions in 2025 is to corroborate the same **cause** demonstrated by Exhibits D(3-6) below on the topic of whether actions taken by LTCC later on were used to conceal past wrongdoing that is inconsistent with **State due process** and LTCC AP 5520.  The **relief** I am requesting from the court under this line of inquiry is the same as the second for Exhibit B(13) with the exception of being directed at the appropriate authorities of LTCC (*request for relief 5*).

**DECLARATION OF EXHIBIT D(3): VIDEO OF PRELIMINARY LTCC HEARING 2025 (US CONST Amd. XIV, 35 Cal.4th 797 [27 Cal.Rptr.3d 661, 110 P.3d 914 (2005), US v Carroll Towing 159 F.2d 169 (1947))**

Exhibit D(3) consists of the video recording of the preliminary LTCC disciplinary hearing hosted by Mrs. Batista that I attended on February 19th of 2025 as well as the timeline for that recording (*Doc. #143 pg. 28-33*).  I was effectively suspended from LTCC for talking to someone after not doing so for six years (*Doc. #143 pg. 7*).  After six years of not interacting, trying to interact with someone again in an inexplicit manner is not sexual misconduct or even unreasonable to attempt on its own, especially if they interacted with you in an apparently positive way after the bad interaction six years ago.  I have been going to the LTCC campus to run laps around the soccer field since October, but I did not sign up for the gym until January when it became more difficult

to run laps outside.  During this hearing, Mrs. Batista (1) did her best to **avoid** my questions about school policy on crossexamining witnesses (*at 3:00-3:38 & 15:40-18:36*), (2) insisted that named security personnel could not identify me as a student until mid-February **despite** being in the gym with Jaden almost every day since January 7th of 2025 (*at 3:40-9:12 & 20:45-27:47*), (3) articulated a scope of school policy on "sexual misconduct" **broader** than the allegation that was made of the inexplicit context of notes I left for another student (*at 9:16-14:44 & 27:50-32:57*), (4) admitting that an issue was **misrepresented** to her but **moving forward** with punishing me for the misrepresentation anyway (*at 22:00-22:40 & 27:50-28:23*), (5) stating that I would be accused of retaliation **if I reported** the misrepresentation as retaliatory (*at 33:34-34:54*), and (6) apparently failing to document **all sources of evidence** despite repeating the list of them back to me (*at 35:01-40:53*).  LTCC AP 5520 establishes due process procedures for **fair** and **equitable** student disciplinary action to not be used for **retaliation** (*Doc. #143 pg. 41*), for the **crossexamination** of witnesses (*Doc. #143 pg. 43*), and not to **jeopardize** the status of a student at LTCC for initiating grievance procedures (*Doc. #143 pg. 47*).  Several times during the preliminary LTCC hearing, Mrs. Batista demonstrated a lack of familiarity with relevant facts, down to the notion that I was challenging "all" of the allegations (*Doc. #142 pg. 32 at 37:03*).  Mrs. Batista spoke about the breadth of school policy on sexual misconduct, but the allegation against me is that I left notes and sent texts to someone in an explicit manner, which subpoenaed materials will show is categorically false, and I never even texted the individual (*see Ex. D() below, Doc. #142 pg. 31 at 28:35-32:57*).  The **injuries** that Exhibit D(3) demonstrates is implementation in a student disciplinary action of (1) **misrepresentations** to punish a student; (2) a broader interpretation of policy than one which **correlates** with the accusation against me; and (3) practices to **deny** the review of evidence and the questioning of witnesses relevant to the matters at hand.  The **causes** demonstrated by this video recording in combination with Exhibits D(2 & 4-6) are the six elements of an intent to breach ***State due process*** and LTCC AP 5520 on **fairness** and **equitability**.  The **relief** I am requesting from the court under this line of inquiry is the same as the second for Exhibit B(13) with the exception of being directed at the appropriate

authorities of LTCC (*request for relief 5*).


**DECLARATION OF EXHIBIT D(4): AUDIO OF FINAL LTCC HEARING 2025 (US CONST Amd. XIV, 35 Cal.4th 797 [27 Cal.Rptr.3d 661, 110 P.3d 914 (2005), US v Carroll Towing 159 F.2d 169 (1947))**

Exhibit D(4) consists of the audio recording of the final LTCC disciplinary hearing hosted by LTCC Dean of Instruction, Mrs. Keeley Carrol, that I attended on March 12th of 2025 as well as the timeline for that recording (*Doc. #142 pg. 33-37*).  During the final hearing, I was **prevented** from calling the witness relevant to the matter at hand (*at 30:00-33:47*), and then I was **chased out** of the meeting before I could question the witness that was called upon (*at 20:34-21:07*) for the security personnel matter that was removed from the case for its own questionable reasoning in the updated notice (*Doc. #143 pg. 9-10*).  My speaking time was **cut into** to inform me that this witness was available for questioning as Mrs. Batista had already informed me beforehand (*Doc. #142 pg. 36 at 20:34-21:07*), and this redundant interjection into my speaking time is indicative of a knowing and wilful **intent t**o cut into that time (*Doc. #143 pg. 28*).  Before my speaking time started, Mrs. Carroll even made an intentful **statement** about "making sure I will get all the time that I need" (*Doc. #142 pg. 36 at 14:00-14:06*).  Also, **only ten minutes** were given to speak about a matter that was made more complicated by the use of the November event involving security personnel to conceal the February incident.  I was also not allowed to ask questions **about the process** before the proceeding started.  My questions were related to **verifying** that all of the relevant evidence was included after the feedback I was given during my preliminary hearing indicated that I should double check, but it was projected by Mrs. Carroll that such questions "are not procedural."  The procedure is to **review relevant evidence**, but relevant evidence was excluded for somehow not being "germane" or "part of the process" (*Doc. #142 pg. 34 at 4:22-5:01*).  How is the review of relevant evidence not a part of the process, and how is a question about whether all of the evidence has been included in the process not a procedural question??  In order to project back an appearance that my questions about the procedure were

not procedural and I should be ashamed for asking them, Mrs. Carroll said during the first five minutes of the hearing that she will "only tell me one more time" not to ask her any more procedural questions about the inclusion and exclusion of evidence, even though she had stopped me from asking **any of them**. Mrs. Carroll even reframed her question to ask for questions about the process from being open-ended to a yes-or-no "I understand the process" in order to maintain a position that questions about the breadth of the evidence being reviewed are not procedural questions (*Doc. #142 pg. 34 at 4:22-4:47*). I asked her if the process can still move forward "without relevant evidence, without relevant witnesses, and against LTCC policy," to which she implicitly answered yes (*Doc. #142 pg. 34 at 5:02-5:29*). During the final LTCC hearing, Mrs. Batista spoke with embellishment by projecting to text messages that do not exist, inexplicit notes I left as if they were written with an explicit context, and by naming a set of individual "gifts" all left at once in a way that would lead a listener to perceive several instances (*Doc. #142 pg. 35 at 8:18-8:42*). In my final hearing, I was **prevented** from asking procedural questions to verify whether all sources of **evidence** have been included, my **relatively short** speaking time was c**ut into**, an **ultimately irrelevant** witness was called instead of the relevant witness, and I never even got to ask any witnesses **any questions** (*Doc. #142 pg. 33-37*). The updated LTCC notice of suspension removed the event involving security personnel (*Doc. #143 pg. 7-10*). Both notices recommend interim suspension for the winter quarter, but during the final hearing, Mrs. Batista decided to suddenly recommend expulsion despite her own recommendation in both notices (*Doc. #142 pg. 36 at 13:44-13:57*). The **injuries** that Exhibit D(4) demonstrates are (1) a recommendation for punishment that was enhanced as a result of initiating a grievance procedure; (2) student disciplinary practices to **deny** the review of evidence and the questioning of witnesses relevant to the matters at hand; and (3) a pattern of retaliatory student disciplinary proceedings against the school's due process procedure that jeopardized my status as a student at LTCC. The **cause** demonstrated by this audio recording in combination with Exhibits D(2-3 & 5-6) is that actions taken by LTCC later on were used to intentfully conceal past wrongdoing that is inconsistent with *State due process* and LTCC AP 5520. The **relief** I am requesting from the

court under this line of inquiry is the same as the second for Exhibit B(13) with the exception of being directed at the appropriate authorities of LTCC (*request for relief 5*).

**DECLARATION OF EXHIBIT D(5): EMAILS ABOUT 2025 LTCC HEARINGS (US CONST Amd. XIV, 35 Cal.4th 797 [27 Cal.Rptr.3d 661, 110 P.3d 914 (2005), US v Carroll Towing 159 F.2d 169 (1947***)***)**

The email chain between Mrs. Batista and I occurred from February 18th to March 12th of 2025 (*Doc. #143 pg. 11-39*). On February 19th of 2025 at 9:38AM, Mrs. Batista's secretary first offered to schedule a preliminary hearing for the day after I requested to schedule one, before any reasonable person could expect that I would have completed preparing the relevant materials (*Doc. #143 pg. 13*). Nevertheless, I agreed to start moving forward with the process and began by submitting additional statements at 11:16AM on the same day (*Doc. #143 pg. 14-15*). On February 26th of 2025 at 5:05PM, Mrs. Batista's secretary offered two available times to schedule the final hearing, to which I replied by asking whether both times **will work for all of the witnesses** I listed to Mrs. Batista during the preliminary hearing (*Doc. #143 pg. 20-22*). I asked if all of the witnesses will be included again on February 28th of 2025 at 5:42AM, but my question was **never answered**, and the hearing was nevertheless **scheduled** for a day that the power would go out in the entire city (*Doc. #143 pg. 22-30*). On March 3rd at 4:57PM, Mrs. Batista sent me the updated suspension notice which removed the security matter from the list of allegations (*Doc. #143 pg. 16-17*) and revised the bullet point about "persistent behavior" that she said she would **remove** during the preliminary hearing (*Doc. #142 pg.30 at 22:00-22:40*). Mrs. Batista would not send a zoom link to attend the final hearing until after I had to **repeatedly ask** on March 4th of 2025 (*Doc. #143 pg. 31*). Mrs. Batista also **never got back to me** on whether LTCC has policies for student conduct proceedings for actions taken in duress (*Doc. #143 pg. 18*), which I had asked her about during the preliminary hearing (*Doc. #142 pg. 33 at 42:18-42:50*). I listed a set of sources of the evidence to her during our preliminary hearing which she repeated back to me that she wrote down (*Doc. #142 pg. 32 at 35:01-40:53*), but she

evidently **excluded** and never looked at most of them based on the way she presented them

during the final hearing, namely official records from 2019 that I repeated for her to obtain and

review (*Doc. #142 pg. 34-35 at 5:49-13:57*).  During the final hearing, I never got to ask

**procedural questions** to verify whether any of those sources of evidence were included in the

process (*Doc. #142 pg. 33-34 at 2:16-5:29*).  Mrs. Batista showed herself not to be **familiar** with

the evidence she was speaking about in relation to the allegations against me after repeatedly

confusing important elements such as the relevant dates, times, and numbers of instances (*Doc.*

*#142 pg. 32 at 36:08-37:52*).  Mrs. Batista made several, impactful **distortions** of my statements

made at the preliminary hearing during the final hearing in order to influence the outcome of the

final decision, meanwhile I was prevented from presenting evidence and questioning witnesses.

The **injuries** that Exhibit D(4) demonstrates are (1) student disciplinary practices to **deny** the

review of evidence and the questioning of witnesses relevant to the matters at hand; and (2) a

pattern of retaliatory student disciplinary proceedings against the school's due process procedure

that jeopardized my status as a student at LTCC.  The **cause** demonstrated by this audio recording

is identical to that for Exhibit D(4) above.  The **relief** I am requesting from the court under this

line of inquiry is the same as the second for Exhibit B(13) with the exception of being directed at

the appropriate authorities of LTCC (*request for relief 5*).


**DECLARATION OF EXHIBIT D(6): PATTERN OF FRAUDULENT CONCEALMENT**

**(US CONST Amd. XIV, 35 Cal.4th 797 [27 Cal.Rptr.3d 661, 110 P.3d 914 (2005), US v**

**Carroll Towing 159 F.2d 169 (1947))**

Exhibit D(6) consists of the audio recordings of my three phone calls with LTCC human

resources personnel (*Doc. #142 pg. 37-38*).  While speaking in person, Mrs. Batista stated that an

employee at LTCC who is central to my claims of student confidentiality misconduct while they

were a student in 2018 no longer works at the school.  However, I **saw** the individual in question,

Daniel Gonzalez, entering a room on the campus that is only accessible to school personnel as

recent as September of 2024.  In 2018, I had a sensitive conversation with Mr. Gonzalez about

- 20 -

topics like "school shooters" and "suicide," where I mentioned that a school shooter's actions "are not justifiable nor acceptable, but they are explainable." Apparently, this conversation was documented by LTCC, and **based on** the intercollegiate pattern of retaliatory student conduct proceedings, this conversation was wrongly documented in terms of "justification and acceptability" as opposed to "explanation" (*Doc. #143 pg. 7*). Previously, I had **suspected** that the student confidentiality issues stemmed from a different incident involving a female student in 2019, and I only **discovered** that the issues stem from this incident instead when the fifth bullet point of my first LTCC suspension notice mentioned "2018" instead of "2019." Mrs. Batista even **updated** the bullet point in my suspension notice to reflect that the incident with the female student occurred in 2019, which can be verified with student records which Mrs. Batista also concealed during my final LTCC hearing (*Doc. #143 pg. 9*). LTCC personnel staged my particularized introduction to the female student about "helping others" in 2019, the positioning of suicide awareness materials around campus, and the playing of a Scottish funeral song to **harass** me about the content of the conversation I had with Mr. Gonzalez in 2018 (*Doc. #143 pg. 4*). LTCC personnel even used the **same** female student to stage the 2025 student disciplinary action to violate school due process procedure and jeopardize my status as a student for initiating the grievance procedure (*Doc. #143 pg. 2-4*). If my LTCC suspension notice in 2025 had not indicated to me that the pattern of student confidentiality and retaliation issues **began** in 2018 as opposed to 2019, I would have continued to suspect that the claims would hypothetically arise from a matter outside of the scope of federal jurisdiction on grounds of fraudulent concealment (*Doc. #141 pg. 4-5*). Daniel Gonzalez was employed at LTCC as recently as September, but after the school's initial attempt to **conceal** the real reason for my enhanced suspension in 2025, and after the school's pattern **concealment** of evidence relevant to my enhanced suspension, the school is with all substantial certainty concealing Mr. Gonzalez's current employment status in order to prevent me from conducting a **reasonable investigation** to get to the bottom of the intercollegiate student confidentiality and retaliation issues. In 2019, it was also known to relevant witnesses at LTCC such as Mr. Gonzalez that I was employed by the **Heavenly Ski**

- 21 -

**Resort warehouse** at that time. The refusal of Mrs. Cardenas and Mrs. Quanbeck at UCI to launch a whistleblower investigation in 2020 and 2023 also aided in **concealing** case information from my attempts to get to the bottom of the student confidentiality and retaliation issues (*Doc. #128 pg. 15, 19-22, 35-38*). The **injury** demonstrated by Exhibit D(6) is LTCC's continued concealment of a complete factual basis to make an effective claim about the intercollegiate student confidentiality issues. The **cause** demonstrated by this audio recording in combination with Exhibits D(2-5) is LTCC personnel's lie about Danny's current employment at the school and their refusal to allow me to crossexamine him as a witness during the events of 2025. The **relief** I am requesting from the court under this line of inquiry is the same as the second for Exhibit B(13) with the exception of being directed at the appropriate authorities of LTCC (*request for relief 5*).

April 10th, 2025

By: *Bobby Gonzales*
Robert V. Gonzales