1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Robert V. Gonzales
PO BOX 7804
SLT, CA 96158
Telephone:    530-523-3822

**FILED**

CLERK, U.S. DISTRICT COURT

**04/10/2025**

CENTRAL DISTRICT OF CALIFORNIA

BY_____EC_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT V. GONZALES, | **CASE NO.  8:23-cv-01788-JVS(KESx)** |
| Plaintiff, | Motions and Points of Authority |
| v. | **Date & Time: Hearing w/out Appearance of Parties Requested** |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Et. Al. | **Dept: 10C** |
| Defendants. | **Judge: Hon. James Selna** |

1. Jurisdictional Statement                                    Pg. 2-5

2. Irreparable Injury                                          Pg. 5-6

3. Motion for Protected Trial Prep Materials                   Pg. 6-7

4. Declaration of Subpoena for Student Confidentiality Materials    Pg. 7-8

5. Motions                                                     Pg. 8-9

6. Table of Authorities                                        Pg. 9-20

- 1 -

**1. JURISDICTIONAL STATEMENT**

Traditionally, a case involving a State-based university is not subject to federal subject matter jurisdiction, even if the common knowledge is that the "UCs" are the federal universities of California while the "CSUs" are the State universities.  However, the US Supreme Court has already ruled on an exception to the normal requirements for exhaustion of judicial remedies for cases involving parties where one wrongfully threatens the use of **State criminal law** but there is **no pending State prosecution** (*Steffel v. Thompson, 415 U.S. 454, 1974*).  Two university officials implemented **CPC 632** into university proceedings for keeping **audio recordings** of the official proceedings by **enhancing** the terms of my suspension from the university and **preventing** me from rescheduling a "threat assessment hearing."  One of the university officials whom I recorded, Mr. Coronel, **lied** at least 10 times to influence my student conduct case (*Doc. #142 pg. 2-9*).  The other university official, Dr. Manny Tau, has required me not to record the threat assessment as a **condition** for rescheduling the hearing (*Doc. #142 pg. 20 at 1:06:40-1:08-19*).  The defense attorney has also invoked the same CA statute for my efforts to prove his **lies**, but he used coercion with the threat of continuing to ignore me instead of using the intimidation of criminal law more like the others (*Doc. #130 pg. 73-78, 79-97, 109-110, 111-113*).  In the *Steffel* precedent, the US Supreme Court found that it is the "**paramount role**" of the federal courts to intervene in such cases where there is no pending State litigation, while they remarked that the circumstances are the opposite in cases where there is pending State litigation (*at 472-473*).  Throughout the case, the US Supreme Court also identified past cases that visit the **constitutionality** of placing a litigant in a position of asserting constitutional claims which the State laws have subjected to criminal proceedings.  My case involves intimidation, coercion, and wrongful use in university proceedings of CPC 632 by two university officials (*Doc. #127 see Ex. A(9-12) & B(3-6)*).  My case also involves **injunctive relief**, **declaratory relief**, and ***irreparable injuries*** by means of secondary and vicarious liability to my ability to **qualify** for the financial aid that my academic enrollment depends on and the academic and free time spent earning a double major in order to qualify for that financial aid during **my entire twenties** (*Docs. 131-134*).

I am challenging the State statute, but only in part, because it is being wrongly interpreted by state actors in an official proceeding in violation of ***State due process***: to deny someone the liberty of proving injuries to life or property **when there is no other way of doing so**.  By preventing someone from keeping an authentic record of state-sponsored proceeding when the facilitators do not provide any other way of doing so, those officials are denying parties to the hearing the **liberty** to prove any other possible, relevant legal injuries.  These cases often involved reasonable expectations of privacy in public spaces.  The difference in my case is that it is an official proceeding not [supposed to be] in a public space [which I did do in one instance by being placed in duress] (*see Ex. B(9)* *Doc. #127 pg. 32-33, Doc. #131 pg. 170-182*), which is not even close to a private conversation in the same way as in someone's home or between two private individuals. The substance of my case does not make any sense in terms of Amd. I, but it makes perfect sense in terms of denying someone the right to possibly prove evidence in a case at a later time.  UC "PACAOS" Section 103.10 even contains a specific subparagraph on the UCI website clarifying that 'preventing someone from proving an allegation' is a matter of "**procedural due process**" (*pg. 21 below*).  Irreparable injuries **alone** are grounds for standing in federal court (*US v Carroll Towing 159 F.2d 169 (1947)*).  My case also involves arguments about substance vs procedure (*Osborn v. Bank of the US, 22 U.S. 738 at 818-821, 1824*) (*Bivens v. Agents, 403 U.S. 388 at 391 & 396, 1971*).  Among other serious possibilities, I could have landed two related, high-salary housing development positions after contacting LA County officials once they declared a state of emergency for homelessness in the spring of 2023 if I already had a degree that autumn **like I would have had by then**.  I was directly told to come back at a later time when I have a degree by a County Supervisor staffer (*Doc. #98 pg. 27-32*).  Instead of weighing the legality of reasonable force and escalation like student conduct professionals should know very well, Mr. Coronel made **extremely partial** determinations in my student conduct case (*Doc. #142 pg. 5 at 38:13-39:47*).  A student housing coordinator breached a specific **duty of care** related to "the safety of students" in the dorms which directly led to my suspension (*Doc. #131 pg. 235-236; pg. 25-26 below*).  My claims at the University of California, Irvine largely arose from student

- 3 -

conduct proceedings that followed a retaliatory pattern that took place at Lake Tahoe Community

College.  Since February of 2025, another set of retaliatory student disciplinary actions to expel

me from the school against "due process procedures" have occurred at LTCC (*Doc. #140 pg. 13-*

*21*).  The original incident at LTCC that was evidently leaked to UCI occurred in 2018, but

actions taken by LTCC personnel in 2025 were used to conceal relevant information from my

attempts to uncover the school's records of the past incidents.  Concealment of factual case

information by means of deception tolls any limitations on filing a claim until a time when a

reasonable investigation can reveal the factual basis for that claim (*Urie v. Thompson, 337 U.S.

163, 1949*).  A plaintiff injured by fraud who remains in ignorance of it without any fault or want

of care or diligence is only affected by limitations once the fraud is discovered; a requirement for

special circumstances or efforts by a defendant to conceal the knowledge from the plaintiff would

enable fraudulent defenses in court (*Holmberg v. Ambrecht, 327 U.S. 392 at 397, 1946*).  To

conceal information by fraud long enough so that a limitation period would normally expire

would make the limitation period the means to commit the fraud under the very laws prohibiting

it if not for the tolling of that period based on when the fraud was discovered (*Bailey v. Glover,

88 U.S. 342 at 349, 1874*).  A diligent plaintiff's investigation may only reveal an action for one

type of tort while facts supporting an entirely different tort action may only come to light at a

later date through no fault of the plaintiff (*Fox v. Ethicon Endo-Surgery (2005) 35 Cal.4th 797 at

813*).  In 2023, I had not originally planned on filing any claims against LTCC for events that

occurred before 2020.  If it was not indicated to me in my first LTCC suspension notice sent to

me on February 18th of 2025 that the student confidentiality issues stem from an event in 2018 as

opposed to a different event during the following year, I would not have been capable of pursuing

the correct incident and factual basis for a claim against LTCC even if I did originally make such

claims (*Doc. #143 pg. 7*).  To require a plaintiff to file suit at a time when the evidence available

to them failed to indicate a cause of action, for an already complex matter, would contravene

public policy.  Evidently, the intercollegiate pattern of retaliatory student disciplinary actions

stem from conversations about topics like "school shooters" and "suicide" I had with another

- 4 -

LTCC student in 2018, Danny Gonzalez (*Doc. #143 pg. 7*).  LTCC personnel's lie about Danny's current employment at the school and their refusal to allow me to crossexamine him as a witness during the events of 2025 continues the concealment of a complete factual basis to make an effective claim about these student confidentiality issues (*Doc. #143 pg. 5*).  Back then, it was also known to relevant witnesses at LTCC such as Danny that I was employed by the *Heavenly Ski Resort warehouse* at that time.  The refusal of Mrs. Cardenas and Mrs. Quanbeck at UCI to launch a whistleblower investigation in 2020 and 2023 also aided in concealing case information from my attempts to get to the bottom of the student confidentiality issues (*Doc. #128 pg. 15, 19-22, 35-38*).  There is very little question of legal wrongdoing.  The big question answered above is whether there is federal jurisdiction, on grounds of judicial exhaustion, purported total immunity, and fraudulent concealment.  In *Osborn v. Bank*, Chief Justice Marshall remarks on how "there is scarcely any case every part of which depends on the Constitution, laws, or treaties of the United States" (*22 U.S. 738 at 820, 1824*).

**2. IRREPARABLE INJURY**

Why is "effective expulsion due to financial aid qualification" from only one university so much more impactful to my life than just a normal legal injury?  I spent the previous **11+ years** of my life between education and my spare time working towards it (*Doc. #142 pg. 31-33; Doc. #137 pg. 18-21*).  Specifically, I spent my early life working towards attending at UCI to study criminology.  More importantly, I am a criminology major, which is a **specialized, exclusive, and limited** degree program because relatively few colleges facilitate it, and the next-closest top-rated criminology program is in Arizona (*Doc. #137 pg. 77*).  Even more importantly, **my outputs** in life described in my case best in Doc. #111 have earned me the right to attend a top-rated criminology school, but my financial aid **only applies** at the University of California (*Doc. #142 pg. 31-32*)  Most of all, the unlawful terms of my academic probation to "permanent" disciplinary probation **disqualifies** me from the financial aid that my academic enrollment depends on (*Doc. #130 pg. 28*), unofficially expelling me with whispers and shadows again,

likewise to the removed line of inquiry from my case (*Doc. #16 pg. 2*).  If half of my life's time and efforts were taken away by bold, "unquestionable" university lawbreaking, I cannot have back **all of the time** during my twenties.  Such a strange pattern of student disciplinary actions at **two colleges** would not have produced any irreparable injuries in my life if a conversation I had about sensitive topics had not been **shared** between the two schools or was at least documented by student conduct officials accurately.  I simply cannot be expected to fully articulate an excellent case or even a very good one if my first try is one of such great magnitude, intimidation, coercion, and **irreparable damage**.  The causes have been too much pressure building up on me for years, where focusing enough to complete everyday tasks, communicate like normal, and even just successfully proofread has become difficult for me.  In terms of health, I don't think my motivation to perform basic functions of life are damaged forever, but I am uncertain how long it will take to regain my **natural ability** to focus on details including basic functions of life.  I have cause to claim that the legal injuries as a consequence of these manipulations of my life extend **far beyond** my own life (*Doc. #98 pg. 27-120; Doc. # 121 pg. 47, 52, 53, 59*).

## 3. MOTION FOR PROTECTED TRIAL-PREP MATERIALS

Nobody is realistically capable of pleading on matters for which they do not [yet] have the evidence.  Doc. #94 includes an order to finalize my pleadings by June 26th, 2024, but the court has not yet visited the tedious need to protect trial prep materials.  FRCP 26(b)(5) enables the protection of sensitive trial-prep materials if those materials are expressly described for **sufficient assessment** of their sensitivity.  I mentioned that a picture of my former Norcal warehouse boss coincidentally made its way to the university's law school career office page (*Docs. 50 & 51 pg. 1*).  My former boss who happens to be a Marine Corps veteran threatened to retaliate against "**my future**" if I reported him to the company for his reasons for firing me, and this university office happens to be the one I am **most interested in**.  Too many students, faculty, and university employees I've never met before in southern California already had oddly specific information about me that they could not possibly have had unless it somehow followed me from my

community college 600 miles away.  Instead of receiving a whistleblower investigation for "confidentiality issues" like I asked for over and over, I was practically instructed that "everything" is a coincidence, sometimes by the same cryptic persons as in other events or by persons with the authority to make a difference (*Doc. #130 pg. 1-17, 51-62; Doc. #131 pg. 11-166, 170-183, 202-209, 235-236*).  Disclosing "line of inquiry 5" matters prematurely would severely complicate an already complex case for an **undergrad student**.  Furthermore, not only could discoverable defense materials still be useful, but if I cannot **protect** my sensitive materials I cannot "prepare my case and cannot, without undue hardship, obtain the substantial equivalent of the sensitive exhibits by other means," within the scope of FRCP 26(b)(3)(A)(ii).  Please reconsider a) the difficulties of trying to individually demonstrate all of the incidents in a complex case with the added dimensions of the overwhelming pressure for a pro se undergrad student captured in a cryptic set of university politics scandal "coincidences" that has irreparably damaged my young-adult life; b) the degree of interest of hardships in my own life compared to unwritten procedural traditions to remove redressability; c) the weight of Mr. Gherini's avoidance, impeding, and impairing of my pleadings and meet and confer efforts in previous decisions by the court; and d) each party's balance of power in terms of "equal footing."  I have indicated that I have cause to claim that the consequences of these manipulations of my entire young-adult life's time and efforts may be injurious to millions of Americans as well (*Doc. #98 pg. 27-120; Doc. # 121 pg. 47, 52, 53, 59*).

## 4. DECLARATION OF SUBPOENAED STUDENT CONFIDENTIALITY MATERIALS

At least six discoverable exhibits will corroborate the finer details related to the events on the LTCC campus in 2025 and 2019.  (1) Security footage in the physical education building from November 15th of 2024 at roughly 8:30PM will show me interacting with both LTCC security guards Jaden and Gabriel after I was instructed to leave, where the school initially alleged in the first suspension notice that I was instead instructed to stay (*Doc. #143 pg. 7*).  (2) The time logs or security footage at the LTCC gym of Jaden, Gabriel, and I will show that LTCC security

personnel were capable of identifying me as a student as early as January 7th of 2025.  (3) The

class schedule of the two security personnel at the time of the final hearing may show that Mrs.

Batista misrepresented the availability of both Jaden and Gabriel as witnesses during that hearing.

(4) Relevant notes from security personnel may directly show an intent to use the November

event to conceal the February incident.  (5) The complaints made against me at LTCC will show

that my interaction with someone after six years of not doing so was misrepresented as

"persistent" and "nonstop."  (6) Relevant student records from 2018 until 2020 including the

recording of a 2019 student disciplinary proceeding will show (a) that my interaction with

someone after six years of not doing so was misrepresented as "persistent" and "nonstop;" and (b)

that I expressed a growing state of extreme duress to school officials in 2019.


## 5. MOTIONS

On October 27th of 2024, I filed my third amended complaint in the District Court (*Docs. 117 &
119*).  On November 19th of 2024, the District Court indicated that my third amended complaint is
dismissed by "denying" the "motion" (*Doc. #120*).  On December 18th of 2024, the Ninth Circuit
Court of Appeals ruled that my third amended complaint is still pending despite the District
Court's ruling one month beforehand (*Doc. #123*).  Despite the content of Doc. #123, the defense
is using the "denied motion" as an excuse to continue avoiding case materials, refusing to
schedule a settlement conference with the court before July 1st of 2025, and ignore me (*Doc.
#130 pg. 119-123*).


**THEREFORE, I move for the court to:**

A) *Order* the defense counsel to cease and desist all impeding, impairing, and otherwise
   avoidant behaviors in pursuance of FRCP 8(b)(2), 8(b)(5), 11(b)(4), 8(c)(1), and
   Local Rule 7-18(c);

B) *Sanction* appellees with a fine of all fees, taxes, and costs accrued by the plaintiff
   throughout the length of the case paid to the District Court for repeatedly insisting

total and overt avoidance in pursuance of FRCP 11(c)(1) and Local Rule 7-18(c);

C) *Order* the defense counsel to schedule and participate in at least four hour-long conferences to eliminate their own avoidant conflation between case "information" and their "understanding" of it in pursuance of FRCP 8(b)(2), 8(b)(5), 11(b)(3), 11(b)(4), 16(c)(2)(L), and Local Rule 7-18(c);

D) *Reconsider* my motion to protect sensitive trial-prep materials until the discovery cut-off date in pursuance of FRCP 26(a)(3)(B), 26(b)(1), 26(b)(3)(A)(ii), 26(b)(5), and Local Rule 7-18(c); and

E) *Order* the defense counsel to accept service on behalf of Mrs. Janet Cardenas and Dr. Manny Tau in pursuance of University of California Guidelines on Discrimination and Harassment Section G(4)(a) and Rendell-Baker v. Kohn, 457 U.S. 830, 1982 at 840-843 respectively.

## 6. TABLE OF AUTHORITIES w/ ADDENDUM

(1) Federal Subject Matter Jurisdiction- US Const. Amds. XI & XIV; *Steffel v. Thompson, 415 U.S. 454, 1974; US v. Carroll Towing, 159 F.2d 169, 1947; Osborn v. Bank of the US, 22 U.S. 738, 1824; Bivens v. Agents, 403 U.S. 388, 1971; Marbury v. Madison, 5 U.S. 137, 1803* (pg. 2-3 above).

(2) Request for Relief 1 to order the UCI OAISC or other appropriate authority by TRO to expedite my academic hold by lifting it immediately- *UC PACAOS 103.11(b), 171.09, 171.11, 171.12* (Doc. #126 pg. 13, 15-17, 22-24, 26, 28-30, 32).

(3) Request for Relief 2 to Order the UCI OAISC or other appropriate authority by TRO to reverse the term of my disciplinary probation in full immediately- *UC PACAOS 105.03 & 105.04* (Doc. #127 pg. 16-18, 23-25, 27, 29-31, 33).

(4) Request for Relief 3 to order the UCI Whistleblower Office or other appropriate authority to initiate an investigation of the sensitive matters mentioned in paragraph 4 above- *UCWP IV(E)(4) & IV(G)(7)* (Doc. #127 pg. 15 & 19-22, 34-35).

(5) Request for Relief 4 to order the University of California Office of the President, Office of the General Counsel, or other appropriate authority to compensate me a recovery equal to the value of the damages to "CalGrant" financial aid that I qualified for before the events of 2020- *UC PACAOS 105.03 & US v. Carroll Towing, 159 F.2d 169, 1947* (Doc. #127 pg. 16-17, 25-26, 28, 30-31, 33).

(6) Request for Relief 5 to order the University of California Office of the President, Office of the General Counsel, or other appropriate authority to compensate me a recovery equal to a value representative of the damages as a result of the outcomes of the hardship I have experienced as articulated in Doc. #140 pg. 6- *UC GDH G(4)(a); UC PACAOS 102.09, 104.90, 105.03; US v. Carroll Towing, 159 F.2d 169, 1947* (Doc. #127 pg. 35-40).

(7) Request for Relief 6 to order the University of California Office of the President, Office of the General Counsel, or other appropriate authority to release to me all academic materials from my "course wishlist"- *UC GDH G(4)(a); UC PACAOS 102.09, 104.90, 105.03; US v. Carroll Towing, 159 F.2d 169, 1947* (Doc. #127 pg. 35-40).

(8) Request for Relief 7 to order the Regents of the University of California, UC Office of the President, or other appropriate authority by TRO to develop and implement a systemwide PACAOS policy a) permitting the keeping of video and audio recordings of non-class-related official university activities; and b) prohibiting the use, threat of use, or implied invocation of criminal statutes in bad faith in official university proceedings- *UC PACAOS 103.10 & Steffel v. Thompson, 415 U.S. 454, 1974* (Doc. #127 pg. 19-23, 25-27, 29-31).

(9) Request for Relief 8 to order the Regents of the University of California, UC Office of the President, or other appropriate authority by TRO to develop and implement systemwide general Whistleblower Policy evidentiary standards based on Whistleblower Protection Policy Section III(E)(1) that abolish unlimited power not to investigate a) circumstances that have already produced negligent outcomes in all cases, b) any vague but possible legal issue that consist of a significant hardship, and c) sufficient corroborating evidence of improper governmental activity in all cases- *UCWP IV(E)(4) & IV(G)(7); UCWPP III(D)(1)(c) & III(D)(4)(d)* (Doc. #127 pg. 15

& 19-22, 34-35).

(10) Request for Relief 9 to issue declaratory judgment that the denial of a person's ability to gather authentic evidence of wrongdoing in an official proceeding is a form of denying one's liberty to prove an injury to life or property in court at a later time when there is no other way of doing so- *Steffel v. Thompson, 415 U.S. 454, 1974* (pg. 1-2 above).

(11) Toll limitations related to subpoenaed exhibits from LTCC in 2018-2020- *Fox v. Ethicon Endo-Surgery (2005) 35 Cal.4th 797 [27 Cal.Rptr.3d 661, 110 P.3d 914*; *Bailey v. Glover, 88 U.S. 342, 187*; *Holmberg v. Ambrecht, 327 U.S. 392, 1946*; *Urie v. Thompson, 337 U.S. 163, 1949; LTCC AP 5520* (pg. 4-5 above).


**1. US CONST Amd. XIV-** No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**2. 28 U.S.C. 753(f)-** Each reporter may charge and collect fees for transcripts requested by the parties, including the United States, at rates prescribed by the court subject to the approval of the Judicial Conference. He shall not charge a fee for any copy of a transcript delivered to the clerk for the records of court. Fees for transcripts furnished in criminal proceedings to persons proceeding under the Criminal Justice Act (18 U.S.C. 3006A), or in habeas corpus proceedings to persons allowed to sue, defend, or appeal in forma pauperis, shall be paid by the United States out of moneys appropriated for those purposes. Fees for transcripts furnished in proceedings brought under section 2255 of this title to persons permitted to sue or appeal in forma pauperis shall be paid by the United States out of money appropriated for that purpose if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal. Fees for transcripts furnished in other proceedings to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial

question). The reporter may require any party requesting a transcript to prepay the estimated fee in advance except as to transcripts that are to be paid for by the United States.

**3. 28 U.S.C. 1915(a)(1)-** Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

**4. 42 U.S.C. 1983-** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia (*Docs. 57-59, 80-82, 89*).

**5. FRCP 8(b)-** (2) Denials. Responding to the Substance. A denial must fairly respond to the substance of the allegation.  (5) Lacking Knowledge or Information. A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

**6. FRCP 8(c)(1)-** In General. In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: [duress].

**7. FRCP 11(b)-** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry

reasonable under the circumstances: (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

**8. FRCP 11(c)(1)-** Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

**9. FRCP 16(c)(2)(L)-** Attendance and Matters for Consideration at a Pretrial Conference. A represented party must authorize at least one of its attorneys to make stipulations and admissions about all matters that can reasonably be anticipated for discussion at a pretrial conference. If appropriate, the court may require that a party or its representative be present or reasonably available by other means to consider possible settlement. At any pretrial conference, the court may consider and take appropriate action on the following matters: adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.

**10. FRCP 26(a)(3)(B)-** Time for Pretrial Disclosures. Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made —except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause.

**11. FRCP 26(b)(1)-** Discovery Scope and Limits. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

**12. FRCP 26(b)(3)(A)(ii)-** Trial Preparation: Materials. Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**FRCP 26(b)(5)-** Claiming Privilege or Protecting Trial-Preparation Materials. Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

**13. FRCP 62(d)** Injunction Pending an Appeal. While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights. If the judgment appealed from is rendered by a statutory three-judge district court, the order must be made either: (1) by that court sitting in open session; or (2) by the assent of all its judges, as evidenced by their signatures.

**14. CA Central Dist L.R. 7-18-** Motion for Reconsideration. A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered. No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion. Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application.

**15. US Const. Amd. XI-** The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State (*Docs. 57-59, 80-82, 89*).

**16. US Const. Art. VI P. 2-** This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding (*Doc. #1 pg. 89-94, 121-128*, *Docs. 65, 70, 90, 96, 98*).

**17. UC "PACAOS" 102.09-** Harassment, defined as conduct that is so severe and/or pervasive, and objectively offensive, and that so substantially impairs a person's access to University programs or activities that the person is effectively denied equal access to the University's resources and opportunities. Harassment includes, but is not limited to, conduct that is motivated on the basis of a person's race, color, national or ethnic origin, citizenship, sex, religion, age, sexual orientation, gender identify, pregnancy, marital status, ancestry, service in the uniformed services, physical or mental disability, medical condition, or perceived membership in any of these classifications. Pursuant to section 104.90, sanctions may be enhanced for conduct

motivated on the basis of the above classifications. Sexual Harassment is defined by the University of California Policy on Sexual Violence and Sexual Harassment. (*Doc. #53 pg. 32, Doc. #96 Ex. B(13)*).

**18. UC "PACAOS" 103.10 -** Procedural due process is basic to the proper enforcement of University policies and campus regulations. Chancellors shall establish and publish campus regulations providing for the handling of student conduct cases in accordance with basic standards of procedural due process. Consistent with this requirement, procedures specified in such regulations shall be appropriate to the nature of the case and the severity of the potential discipline (*Doc. #34 pg. 27*). Basic standards of due process include: a. Notice to the accused of the charges and evidence;b. Opportunity of the accused to respond to the evidence.

**19. UC "PACAOS" 103.11-** When a formal hearing is deemed to be appropriate, campus implementing regulations shall provide the following minimum procedural standards to assure the accused student a fair hearing: a. Written notice, including a brief statement of the factual basis of the charges, the University policies or campus regulations allegedly violated, and the time and place of the hearing, within a reasonable time before the hearing; b. The opportunity for a prompt and fair hearing where the University shall bear the burden of proof, and at which the student shall have the opportunity to present documents and witnesses and to confront and cross-examine witnesses presented by the University; no inference shall be drawn from the silence of the accused; c. A record of the hearing; an expeditious written decision based upon the preponderance of evidence, that shall be accompanied by a written summary of the findings of fact; and d. An appeals process (*Doc. #34 pg. 32*).

**20. UC "PACAOS" 104.90-** Sanctions [for any violations of Section 102.00, Grounds for Discipline] may be enhanced where an individual was selected because of the individual's race, color, national or ethnic origin, citizenship, sex, religion, age, sexual orientation, gender identity, pregnancy, marital status, ancestry, service in the uniformed services, physical or mental disability, medical condition, or perceived membership in any of these classifications (*Doc. #53 pg. 32, Doc. #96 Ex. B(13)*).

**21. UC "PACAOS" 105.03-** Disciplinary Probation: A status imposed for a specified period of time during which a student must demonstrate conduct that conforms to University standards of conduct. Conditions restricting the student's privileges or eligibility for activities may be imposed. Misconduct during the probationary period or violation of any conditions of the probation may result in further disciplinary action, normally in the form of Suspension or Dismissal (*Doc. #34 pg. 38, Doc. #96 Exs. A(3) & B(10)*).

**22. UC "PACAOS" 105.04-** Loss of Privileges and Exclusion from Activities: Exclusion from participation in designated privileges and activities for a specified period of time. Violation of any conditions in the written Notice of Loss of Privileges and Exclusion from Activities, or violation of University policies or campus regulations during the period of the sanction may be cause for further disciplinary action, normally in the form of Probation, Suspension or Dismissal (*Doc. #34 pg. 38, Doc. #96 Exs. A(3) & B(10)*).

**23. UC PACAOS 130.722-** Any disclosure of personally identifiable information which is permitted under these policies must meet the following requirements: a. The recipient of the information must be informed that the information may not be further disclosed without written consent of the student. Any consent form obtained from the student must be maintained in the student's file. b. The recipient (including the officers, employees, and agents of the party of the recipient) may use the information only for the express purposes for which the disclosure was made.  These requirements do not apply to disclosures made pursuant to court orders or to lawfully issued subpoenas or to disclosures to a student under Section 130.40, Section 130.721(i), Section 130.721(j), Section 130.721(k), or to disclosures of directory information under Section 130.711. Notwithstanding the above, a party that receives a court order or lawfully issued subpoena for personally identifiable information in student records may redisclose that information in compliance with the court order or subpoena, but must provide the notification required under Section 130.721(g).

**24. UC "PACAOS" 171.07-** As members of the University community students shall have the right to be protected against the improper collection of information on students' political and

social views, beliefs, and associations (*Doc. #53 pg. 5*).

**25. UC "PACAOS" 171.09-** As members of the University community students shall have the right to have all academic decisions affecting their academic standing, including the assignment of grades, based upon academic considerations only, administered fairly and equitably under policies established by the Academic Senate. In professional curricula, such decisions may include consideration of performance according to accepted professional standards. Equitable grievance procedures, established pursuant to Section 114.00 of these Policies, shall be developed in consultation with student representatives and implemented (*Doc. #53 pg. 5, Doc. #96 Exs. A(3) & B(10)*).

**26. UC "PACAOS" 171.11-** As members of the University community students shall have the right to the extent appropriate to the circumstances, to be free from University discipline for actions committed involuntarily or under duress. However, violations committed under the influence of drugs, alcohol, or illegal substances will be subject to student disciplinary procedures *(Doc. #53 pg. 6, Doc. #96 Ex. B(9))*.

**27. UC "PACAOS 171.12-** As members of the University community students shall have the right to have access to equitable grievance procedures established pursuant to Sections 111.00 and 112.00 of these Policies (*Doc. #53 pg. 6*).

**28. UC "UWP" (IV)(E)(4)-** Anonymous whistleblowers must have sufficient corroborating evidence to justify the commencement of an investigation.  An investigation of unspecified wrongdoing or broad allegations will not be undertaken without verifiable evidentiary support. Because investigators are unable to interview anonymous whistleblowers, it may be more difficult to evaluate the credibility of the allegations and therefore, less likely to cause an investigation to be initiated (*Doc. #51 pg. 14, Doc. #96 Exs. A(2, 6-8) & B(12)*).

**29. UC "UWP" (IV)(G)(7)-** Subjects have a responsibility not to interfere with the investigation and to adhere admonitions from investigators in this regard.  Evidence shall not be withheld, destroyed or tampered with, and witnesses shall not be influenced, coached, or intimidated (*Doc. #51 pg. 16), Doc. #96 Ex. A(1-5)*).

- 18 -

**30. UC "WPP" (III)(D)(1)(c)–** Required Allegations- The LDO will determine whether the complaint contains the required allegations, as set forth in Section C.1. above. When determining whether a complaint contains the required allegations, the LDO may consult with the location's Investigations Workgroup, as defined under the University's Whistleblower Policy, or an ad hoc workgroup, as needed. If the complaint is not specific or fails to provide sufficient information, the LDO may request that the Complainant amend the complaint to address the deficiencies. If the Complainant does not amend the complaint or otherwise correct the deficiencies within 15 calendar days of the date of the LDO's notice, the LDO may dismiss all or part of the complaint and notify the Complainant in writing of that decision (*Doc. #52 pg. 8, Doc. #96 Exs. A(2, 6-8) & B(12)*).

**31. UC "WPP" (III)(D)(4)(d)-** Investigation Report- The investigator will prepare a written report containing findings of fact based on the evidence and the investigator's conclusion as to whether retaliation in violation of the policy occurred, using the applicable evidentiary standards set forth in Section E. below. The investigation report will provide sufficient detail to enable the Chancellor to make an independent determination as to whether a policy violation occurred. The investigation report will include the Retaliation Complaint, a list of witnesses interviewed, any accused employee's response to the allegations (if submitted), and any other documents on which the investigator has relied in making findings. If the RCO did not personally conduct the investigation, the RCO should review the investigation report to determine whether it is complete or is to be returned to the investigator to address the deficiencies. When the investigation report is completed, the RCO will deliver it to the LDO (*Doc. #52 pg. 10, Doc. #96 Exs. A(2, 6-8) & B(12)*).

**32. UC "WPP" III(E)(1)-** Evidentiary Standards for Retaliation Complaints- Consistent with California Government Code Section 8547.10(e), a Complainant who brings a Retaliation Complaint must demonstrate by a Preponderance of the Evidence that he or she either made a Protected Disclosure or refused to obey an Illegal Order and that such activity was a contributing factor in the alleged Adverse Personnel Action. If the Complainant has met that standard, the

burden of proof shifts to the supervisor, manager, or University to demonstrate by Clear and Convincing Evidence that the alleged Adverse Personnel Action would have occurred for legitimate, independent reasons even if the Complainant had not made a Protected Disclosure or refused to obey an Illegal Order. If that burden is not met, the Complainant shall have a complete affirmative defense to the Adverse Personnel Action that was the subject of the complaint. Consistent with California Government Code Section 8547.10(d), nothing in this policy is intended to prevent a manager or supervisor from taking, directing others to take, recommending, or approving any personnel action or from taking or failing to take an Adverse Personnel Action with respect to any employee or applicant for employment if the manager or supervisor reasonably believes any action or inaction is justified on the basis of evidence separate and apart from the fact that the person has made a Protected Disclosure or refused to obey an Illegal Order.

**33. UC "GDH" (G)(4)(a)-** Overview of Processes- Reports of Prohibited Conduct may be addressed through an Informal Resolution process, Formal Investigation or, a separate employee grievance or complaint process. a. Informal Resolution. After a preliminary assessment of the facts, and, if useful, in consultation with other offices depending on whether the Complainant and Respondent are faculty, other academic appointees, staff, student employees, students, or other persons covered by University policies prohibiting discrimination (for example, applicants), the OEOD may initiate an Informal Resolution process, which may include: mediation; separating the parties; providing for safety; referring the parties to counseling; referral for disciplinary action; a settlement agreement; conducting targeting preventive educational and training programs; and conducting a follow-up review to ensure that the resolution has been implemented effectively. The Informal Resolution process may be especially useful when: a report is made by a third party or anonymously; a Formal Investigation is not likely to lead to a resolution; both parties prefer an informal process; or the facts as alleged do not appear to amount to a policy violation. The Complainant has the right to request an Informal Resolution process or a Formal Investigation at any time, but the OEOD has final authority for determining whether to initiate a specific resolution process. Both the Complainant and Respondent may be accompanied by an advisor

and/or support person throughout the process (*Doc. #53 pg. 32, Doc. #96 Ex. B(13)*).

**34. LTCC AP 5520-** See Doc. #143 pg. 40-47.

April 10th, 2025

By: _Bobby Gonzales_____

Robert V. Gonzales