Robert V. Gonzales
PO BOX 7804
SLT, CA 96158
Telephone:   530-523-3822

```
FILED
CLERK, U.S. DISTRICT COURT

04/10/2025

CENTRAL DISTRICT OF CALIFORNIA
BY        EC        DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM
```

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ROBERT V. GONZALES,

          Plaintiff,

    v.

THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA, Et. Al.

        Defendants.

**CASE NO.  8:23-CV-01788-JVS(KESx)**

        Exhibits D(2-6)

**Date & Time: Hearing w/out Appearance of
Parties Requested**

**Dept: 10C**

**Judge: Hon. James Selna**

CONTENTS

1. Exhibit D(2) 2025 Request for Formal LTCC Hearing      PG. 2-5

2. Exhibit D(2) 2025 Message to LTCC President      PG. 6

3. Exhibit D(2) Original 2025 LTCC Suspension Notice      PG. 7-8

4. Exhibit D(2) Updated 2025 LTCC Suspension Notice      PG. 9-10

5. Exhibit D(5) 2025 Email Correspondence with Dr. Michelle Batista      PG. 11-39

6. LTCC Administrative Policy 5520      PG. 40-47

April 10th, 2025

By: *Bobby Gonzales*
    Robert V. Gonzales

**FIRST, I was never consulted about the matters in my student complaint attached below for their
further investigation.**

**SECOND, in my interim suspension notice, it is alleged that I fled campus when instructed to wait
for police, which I was not, and I actually had repetitive conversations on camera with both
security personnel involved after the November event where they still did not take the opportunity
to instruct me to wait for police.**
On November 15th of 2024, after running 62 laps around the soccer field, I came into the gym to shoot
hoops.  I met Jaden for the first time. Upon entering the gym, Gabriel introduced himself to me. I
mentioned I know another Gabriel, to which he responded that I now know two "cool" Gabriels and he
"wants to be the president one day."  After a few minutes, Gabriel decided to suddenly tell me that the
gym is closed off and I must leave, despite walking in nearly at the same time as him to a welcoming
interaction.  Stumbled by this contradiction, I challenged his demand as mentioned in point 4 below.  He
quickly escalated the situation by claiming that I am "threatening violence," and he threatened to file a
report with SLTPD.  Shocked by his reasoning, I opposed it by becoming louder.  He quickly got on the
phone and left the room.  Jaden and I laughed about my choice of topics and Gabriel's mode of operation
in response to them. We then had a brief discussion about career aspirations related to law.  I even had
more interactions afterward with both of them in front of a security camera, where I was still not asked
to stay nor leave again.

**THIRD, I was not provided a notice of the November event within the time limit established in AP
5520 (within five days after January 7th, which is when both security personnel involved were
capable of identifying me).**
On February 13th of 2025, I was escorted out of the physical education building and informed that the
November event is the reason.  I was told that LTCC is "investigating threats," and that I was not
confronted about the scenario earlier because the security team could not identify me as a student before.
However, I have been at the gym in the presence of both Jaden and Gabriel multiple times since January
7th of 2025, and an issue was conveniently not raised until the week of February 13th of 2025.  I asked
that the security personnel who escorted me out take note of my side of the story, namely Gabriel's
evident tendency in his line of duty to distort the truth by hiding behind the power of "perceived threats."
The time between the November event and my interactions with both Gabriel and Jaden after January
12th is incredibly isolated.  Security personnel's misrepresentation of the time they were made able to
identify me as a student proves that an attempt was made to use the November event to conceal the
February incident.

**FOURTH, the "disruptive behavior to authority or personnel" is justified due to the one security
personnel's wrongful use of the power of "perceived threats" and the magnitude of everything
that comes along with it in particular lines of duty, and the other security personnel's share in
laughter over that disruption during time of and since the incident (until the issue was suddenly
ripe to be used for fraudulent concealment of the real issue).**
I was suddenly asked to leave the gym for no reason after having an inviting interaction with Gabriel,
after I had entered the gym at the same time as him.  I became loud and spoke about "AI, time travel,
neuralink, and space criminal pirate lawyers" in response to his abuse of discretion inherent in his
sudden demand for me to leave after being there with him for several minutes, then he accused me of
making a threat.  Based on my choice of topics, I made no cognizable threats, and Gabriel would have
filed a false police report if he did file one.  Furthermore, to make a threat to a security guard who
abuses their power would not be a very high level of thought, nor would vaguely accusing me of making
a "threat" absent of any specific context.  Based on Gabriel's mode of operation when walking into the

gym with me, demanding that I leave, and then accusing me of making threats before fleeing himself, he
abused his discretion, and he likely has a degree of confidence when doing so in other instances.

**FIFTH, the verbal reprimand I was given constitutes fraudulent concealment of the real issue
during the week of February 13th of 2025, and without the due diligence of filing my complaint, I
may reasonably would not have discovered the real issue based on the verbal reprimand.**
The fact that security conveniently informed Mrs. Batista of the complaints on the day I was removed
from campus as stated during the preliminary hearing, and the fact that I was removed in February
allegedly for an incident that occurred in November after the extended January deadline to punish me for
it as a student had expired, also show a pattern of security's attempt to use the November event to
conceal the February incident which occurred during the same week I was removed.  There is no doubt
that school policy allows anyone to be removed from campus for any reason under normal conditions,
but all policies everywhere have legal limits such as if they can be used to conceal whether legal
wrongdoing has occurred.  The contents of the "real issue" are directly related to student confidentiality
issues currently being raised with the UC system in federal court.  Mrs. Batista mentioned that she
thinks I already knew the real reason I was removed from campus that she was "already dealing with,"
even though I did not have enough information to credibly prove the real reason.  These events are
indicative of widespread awareness to use the November event to conceal the February incident.

**SIXTH, my interim suspension notice suggests that the real issue extends as far back as 2018,
which is false because it began in 2019, and the representation of these two or three isolated
incidences in the notice falsely projects an ongoing pattern of many incidents over many years as
opposed to the individual, isolated incidences in actuality.**
During my preliminary hearing, Mrs. Batista addressed the issue of "persistent" misconduct by stating
that the issue has been misrepresented to her as a "nonstop" issue, and she agreed that it is not.  In
March of 2019, I met the main witness through warm interactions, evidently not for the first time.  In
April, in my state of increasing fatigue addressed in point 12 below, I approached her in a defeated
manner, with a note.  Basically, after she told me that her career aspirations involved "wanting to help
people," I took that statement way over the top, informed her of my situation, and asked for "friendship"
above all else.  Effectively, I tried to "friend-zone" myself after hearing what she said.  In disgust with
my distress over friendship, she made a complaint about my note before ever telling or indicating her
disgust to me.  Throughout the 2019-2020 academic year, I had multiple classes with the main witness,
where I did not even think about attempting to interact with her on a personal level based on the nature
of point 8 below.  During my preliminary hearing, I indicated that an event where the main witness
initiated interaction with me during a protest in 2020 gave me an impression that I not only could speak
to her in the future, but that refraining from speaking to her during the academic year following the
incident may have been a mistake despite being suspended for talking to her without her first indicating
to me not to.  After six years of not interacting, trying to interact with someone again in a nonsexual way
is not sexual misconduct or even unreasonable on its own, especially if they interacted with you in an
apparently positive way after the bad interaction.  Despite the acknowledgement that my misconduct is
not persistent, Mrs. Batista seemed to insist these events are related to "stalking" during the preliminary
hearing, despite the mechanics of those interactions mentioned in this point as shown by school records.
For the student conduct process to acknowledge the "isolated time between events" alleged as persistent
and then use that notion in the determination would be a severe failure of equity and fairness.

**SEVENTH, the content of the "note" nor any of the other incidences in question consist of a
"sexual" nature, and in fact, are directly related to the exact content of a particularly ripened
nature of the isolated incidences in 2019, as indicated in my original complaint.  Furthermore,
"staring" is embellishment by a party with a motivation to retaliate.**

Evidently, school policy consists of a lopsided redundancy by making any "harassment" characterizable as "sexual." Mrs. Batista stated to me that going to the gym "at the same time, multiple times" as the main witness is considered stalking. My intent at the gym is to have something to do at this time in my life as described in point 12 below, not to play imaginary games with time that I cannot win. This premise could consist of absurd hypotheticals similar to other ones I posed in my preliminary hearing about the definition of sexual misconduct. One of these hypotheticals includes the notion that I can accuse anyone who talks to me if I don't want them to of a sexual offense, and I wouldn't even need to personally tell them not to before the school takes any action based on the events of 2019. I was also accused of "staring" at the main witness. In the gym, she spoke to me twice, once after I tried speaking to her, and we have made eye contact twice since then. In my position, it would be hard for me or anyone else to decide that staring would be helpful at all if I was doing things like leaving inexplicit notes. I raised this point in my response to the interim notice because distorting the facts in this way was likely done with a motivation to add credibility to the "sexual" notion in order to seek harsher punishment of me. Distorting the facts to seek harsher punishment could be considered a form of retaliation. I asked Mrs. Batista about this fact, to which she responded that reporting the likely intent of distorting the facts as retaliation would be retaliation on my part. Mrs. Batista may have only projected the offense back at me due to her having forgotten that I raised that the intent of the main witness' distortion of the facts was likely done in order to seek harsher punishment, I can only hope. This sounds like I can possibly be accused of retaliation for reporting a lie with an evidently retaliatory motive. The fact that the issue was presented to Mrs. Batista as a kind of "nonstop" issue should also be taken into consideration within this scope. The incidence could instead be considered "harassment" out of consideration of the totality of circumstances, not of a sexual nature.

**EIGHTH, in 2019, I was wrongly suspended for acts committed while under duress after being prevented from the opportunity to respond to the evidence, in an evidently retaliatory manner.**
The main witness' filing of her complaint in 2019 led to a sudden, shocking hearing with the former VP of Student Services, Dr. King, where I was not informed of my rights, I did not crossexamine witnesses, and I was suspended for "sexual misconduct" after expressing the same duress expressed in point 12 below that led to a distressed attempt at friendship. I was effectively punished for seeking a friend, blindly without first hearing anything from her. My distress expressed at the time goes much deeper than "friendship," as should be indicated by the 2019 documents. This 'severe misconduct' has led to irreparable injuries to my entire young-adult life and possibly much more, hinted at in my February note and my duress expressed below. The severity of my punishment in 2019 given the single incident and the "highly isolated" and conflicting mechanics of all my interactions with the main witness described in point 6 above should be considered as the controlling issues.

**NINTH, I cannot access the "5500" policies online to review their definitions.**

**TENTH, in the notice I was provided yesterday, it does not inform me that I only have ten days to request a hearing.**

**ELEVENTH, I can prove that the investigation of the alleged November event and possibly more is unfair and inequitable.**
I am effectively being punished for leaving gifts, being in the same place as someone, making eye contact, and lies by security personnel. I made clear that I am challenging four out of five allegations based on the distortion of relevant facts. I asked Mrs. Batista to take more thorough notes of my two complaints and response to the interim notice "down list," based on the lack of feedback from her on their contents during my preliminary hearing. Therefore, I consolidated all of those documents in this

one.  Namely, a review of the nature of my duress when stated to Dr. King in the 2019 documents should also be central to the determination.

**TWELVTH, after spending almost my entire young-adult life's academic and free time working towards a career in helping those who cannot help themselves, and after submitting job applications with sensitive materials to government agencies and national foundations, the pattern of unfair, inequitable student conduct procedures followed me in the University of California system, I cannot get a job at places like target or mcdonalds, and the gym is the only stimulation I have in life right now!**

In 2019, I started becoming overexerted by my efforts and outputs in life after applying for many hundreds of career-type jobs and getting nowhere.  Upon returning after the 2019 incident that following September, new decal around the school was placed in a retaliatory manner related to the specific content of my duress.  On Halloween of 2019, the executive assistant to the LTCC president played a particular song over bagpipe, which is related.  Sometime after these bold activities, I decided to approach a different female within the same constructs, where a similar process took place and I was suspended again.  Upon entering the UC system, a bold pattern of retaliatory behaviors by university officials took place, including wrongfully perceiving me as a protected class in order to deny other student rights, breach of a specific duty of care, retaliatory student conduct proceedings, conflicts of interest, and especially breach of student confidentiality policy that follow a specific pattern which could have only followed me from one other place.  My incredibly short time in the UC system has resulted in irreparable injuries to my entire young-adult life's academic and free time, my ability to continue to qualify for a scholarship I earned over 7 years of efforts, and my job search over the last three years.  Furthermore, I have reason to question whether the pattern of convenient, retaliatory confidentiality issues that followed me from here to the UC system may stem from another incident involving another LTCC personnel member during their time as a student, Danny Gonzalez.  In this instance, I am not sure how my demand for him to 'find opportunities to help others in a dark world' were documented based on the discussion we had at that time.  My time at LTCC involves exemplary academics and these highly isolated student conduct issues, throughout 7 years of attendance.

**THIRTEENTH, based on the duress expressed in my complaint, the disciplinary probation is legally unconscionable for a variety of reasons.**

 **Gmail**

bobby gonzales <bgfarcenter@gmail.com>

## Unfair, Inequitable, or Retaliatory Student Conduct Proceeding
3 messages

---

**bobby gonzales** <bgfarcenter@gmail.com>
To: president@ltcc.edu, shaferl@ltcc.edu, lucas@ltcc.edu

Wed, Mar 12, 2025 at 11:43 PM

Hi, my name is Bobby Gonzales.

I was recently suspended for effectively leaving someone two sets of gifts they didn't want, making eye contact, being in the wrong place at the wrong time apparently, and an attempt by the security team to initially conceal these incidences with lies. Yesterday, this 'severe misconduct' was recommended for expulsion.

**I am contacting you because the process was conducted in a highly lopsided manner.** I was not allowed to call the witness relevant to the matter at hand, and then I was chased out of the meeting before I could question the witness that was called upon for a matter that was removed from the case for its own questionable reasoning. My speaking time was cut into, and the moot reason why is indicative of a knowing and wilful intent to do so. Before I started, the lead of the conduct review board even made a statement about "making sure I will get all the time that I need", evidently with foresight and an alternative intent. Also, [we were] only given ten minutes to speak about a matter that was made more complicated by provable lies on the part of the security team. I was also not allowed to ask questions about the process. My questions were related to verifying that all of the relevant evidence was included, but it was projected by the lead conduct review board member that such questions "are not procedural." The procedure is to review relevant evidence, but relevant evidence was excluded for somehow not being "germaine" or "part of the process," an ultimately irrelevant witness was called instead of the relevant witness, and I still never even got to ask them any questions either. How is the review of evidence not a part of the process, and how is a question about whether all of the evidence has been included in the process not a procedural question?? In order to project back an appearance that my questions about the procedure were not procedural and I should be ashamed for asking them, the lead member said during the first five minutes of the hearing that she will "only tell me one more time" to not ask her any more procedural questions about the inclusion and exclusion of evidence, though she had stopped me from asking **any** of them. I asked her if the process can still move forward "without relevant evidence, without relevant witnesses, and against LTCC policy," to which she implicitly answered yes. These elements directly contravene LTCC AP 5520 and due process rights.

VP of Student Services, Mrs. Batista, showed herself not to be familiar with the evidence she was speaking about after repeatedly confusing or possibly even intentionally distorting important elements such as the relevant dates, times, and numbers of instances. She spoke with embellishment by projecting to text messages that do not exist, "spoken" contexts that do not exist, and by naming a set of individual "gifts" all left at once in a way that would lead a listener to perceive several instances. She made several, impactful distortions of my statements made at the preliminary hearing during the final hearing, meanwhile I was prevented from presenting evidence. She would not send a zoom link to attend the hearing until after I had to repeatedly ask, as shown in our email correspondence. She also never got back to me on whether LTCC has policies for student conduct proceedings for actions taken in duress. I listed a set of sources of the evidence to her during our preliminary hearing which she repeated back to me that she wrote down, but she evidently excluded and never looked at most of them based on the way she presented them yesterday, namely official records that I repeated for her to obtain and review. I never got to ask procedural questions to verify whether any of those sources of evidence were included in the process. I am being accused specifically of speaking in a nature that is sexual misconduct, staring, and stalking. I have been going to campus to run laps around the soccer field since October, where I had seen the main witness at the gym, but I did not sign up for the gym until January when it became more difficult to run laps outside. Not only are the notes I've left inexplicit and strictly nonsexual, but this alleged 'serious misconduct' related to seeking a friend in 2019 has caused irreparable harm to my entire young adult life's academic time and efforts by means of unlawful handling of student confidentiality materials between different colleges.

**How can a student conduct proceeding make a fair or equitable determination if, at the very least, I was prevented from including all of the relevant evidence?** I am asking for the possibility of a 'retrial' where all of the evidence is included and LTCC policies are followed. Please review the *recording of the proceeding* when you are available. I would also like to be informed of the scope of evidence that was included, which I was not able to ask of the process.

Thank you for your time.

---

**3 attachments**

📄 **LTCCconsolidated.pdf**
88K

📄 **Updated Notice 3.3.pdf**
50K

📄 **NoticeOfViolationIntSusp(Email).pdf**
52K

---

**bobby gonzales** <bgfarcenter@gmail.com>
To: lucas@ltcc.edu

Fri, Mar 21, 2025 at 7:03 AM

I found this and thought I should share it also.

https://www.facebook.com/reel/1415204406158583/
[Quoted text hidden]

---

**postmaster@mailltcc.onmicrosoft.com** <postmaster@mailltcc.onmicrosoft.com>

Fri, Mar 21, 2025 at 7:04 AM



CELEBRATING 50 YEARS OF EXCELLENCE

February 18, 2025

Robert Gonzales
Sent electronically to rvgonzales@mail.ltcc.edu, bgfarcenter@gmal.com

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2024004901

Re: Notice of Violation of Student Code of Conduct, Immediate Interim Suspension

Dear Robert Gonzales:

Based on the Lake Tahoe Community College (LTCC) Student Conduct Standards and Policies noted in the 2024-25 Catalog, Board Policy (BP) 5500, BP 5520, and Administrative Procedure (AP) 5520, this communication serves as official notice that you are in violation of LTCC Student Conduct Standards.

The following conduct is outlined in BP 5500 and shall constitute good cause for discipline. Students who engage in any of the activities outlined in this policy are subject to the procedures outlined in AP 5520:

- Conduct - Disruptive behavior to authority or personnel
  - Fled the campus on November 11, 2024, when asked to wait for police to respond
- Conduct - Harassment or discriminatory behavior
  - Leaving "gifts" on a car such as books and letters
- Conduct - Intimidating conduct or bullying
  - Using the FEC at the same time as the complainant and continuing to stare during their workout session
- Conduct - Sexual harassment
  - Speaking about topics of a sexual nature via phone, text, and in person, even after being asked to stop
- Conduct - Persistent, serious misconduct
  - Behavior is a continuation since 2018 and continues to persist.

Based upon evidence provided and in accordance with student discipline procedures outlined in AP 5520, the administration is recommending an Immediate Interim Suspension. This includes your suspension from all classes, privileges, and activities at LTCC, through the end of the Winter Term of 2025, March 28, 2025. During this suspension you will be prohibited from participating in any LTCC function, be it academic, student work, or extracurricular. This suspension also prohibits you from emailing, calling, and otherwise contacting in any form any college faculty and staff in a way that could be deemed as bullying

or harassing.

This Immediate Interim Suspension carries with it additional requirements. During the Winter Term of 2025, you will continue to be suspended from classes but you may return to LTCC for the limited purposes of:

- You have the right to a meeting with me should you choose, along with any additional individuals I deem appropriate, to discuss the conduct violations.

Any recurrence of behavior in violation of the student conduct standards will result in a recommendation of formal expulsion from the College.

Before any disciplinary action is taken, please be advised of your right to meet with me to discuss these accusations, or to respond in writing. You have five business days from receipt of this notice to request a meeting or to respond to the accusations in writing. Please address any correspondence to my Executive Assistant, Kelsey Magoon, kmagoon@ltcc.edu. A complete explanation of your right to respond, as well as appeal the decision and request a formal hearing, can be found in the 2024-25 Catalog and in Administrative Procedure 5520.

Should you have any questions about your rights or the disciplinary proceedings and process, please contact the Executive Assistant to the VPSS, Kelsey Magoon, kmagoon@ltcc.edu.

Sincerely,

Dr. Michelle Batista
Vice President of Student Services

CC:    Kelsey Magoon, Executive Assistant to Vice President of Student Services



March 3, 2025

Robert Gonzales
Sent electronically to rvgonzales@mail.ltcc.edu, bgfarcenter@gmail.com,

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2024004901

Re: Updated Notice of Violation of Student Code of Conduct, Immediate Interim Suspension

Dear Robert Gonzales:

This is an updated notice to the letter your received on 2/18/2025, to reflect the points of clarification you added during our meeting.

Based on the Lake Tahoe Community College (LTCC) Student Conduct Standards and Policies noted in the 2024-25 Catalog, Board Policy (BP) 5500, BP 5520, and Administrative Procedure (AP) 5520, this communication serves as official notice that you are in violation of LTCC Student Conduct Standards.

The following conduct is outlined in BP 5500 and shall constitute good cause for discipline. Students who engage in any of the activities outlined in this policy are subject to the procedures outlined in AP 5520:

- Conduct - Harassment or discriminatory behavior
  - Leaving "gifts" on a car, such as books and letters
- Conduct - Intimidating conduct or bullying
  - Using the FEC at the same time as the other student, staring during workout sessions
- Conduct - Sexual harassment
  - Speaking about topics of a sexual nature during in person conversations and texts
- Conduct - Persistent, serious misconduct
  - The persistent behavior started in 2019, stopped and then began again throughout this winter quarter of 2025

Based upon evidence provided and in accordance with student discipline procedures outlined in AP 5520, the administration is recommending an Immediate Interim Suspension. This includes your suspension from all classes, privileges, and activities at LTCC, through the end of the winter quarter, March 28, 2025. During this suspension you will be prohibited from participating in any LTCC function, be it academic, student work, or extracurricular. This suspension also prohibits you from emailing, calling, and otherwise contacting in any form any college faculty and staff in a way that could be deemed as bullying

or harassing.

This Immediate Interim Suspension carries with it additional requirements. During the Winter Quarter of 2025, you will continue to be suspended from classes but you may return to LTCC for the limited purposes of:

- Meeting with me, along with any additional individuals I deem appropriate, to discuss the conduct violations. Which we did on February 19th, 2025, where you disclosed you were suspended previously for the same violation in 2019. You felt you were not given due process during the 2019 situation, and requested a hearing verbally. I took that as formal notice and followed up in an email and formal letter.

Any recurrence of behavior in violation of the student conduct standards will result in a recommendation of formal expulsion from the College.

Before any disciplinary action is taken, please be advised of your right to meet with me to discuss these accusations, or to respond in writing. You have five business days from receipt of this notice to request a meeting or to respond to the accusations in writing. Please address any correspondence to kmagoon@ltcc.edu. A complete explanation of your right to respond, as well as appeal the decision and request a formal hearing, can be found in the 2024-25 Catalog and in Administrative Procedure 5520.

Should you have any questions about your rights or the disciplinary proceedings and process, please contact the Executive Assistant to the Vice President of Student Services at kamgoon@ltcc.edu.

Sincerely,

Dr. Michelle Batista
Vice President of Student Services

CC:   Kelsey Magoon, Executive Assistant to Vice President of Student Services
      Robert

 **Gmail**

**bobby gonzales <bgfarcenter@gmail.com>**

## Notice of Violation - Interim Suspension
11 messages

**Magoon, Kelsey - Executive Assistant to the VPSS** <kmagoon@ltcc.edu>        Tue, Feb 18, 2025 at 3:07 PM
To: "rvgonzales@mail.ltcc.edu" <rvgonzales@mail.ltcc.edu>, "bgfarcenter@gmail.com" <bgfarcenter@gmail.com>
Cc: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

February 18, 2025

Robert Gonzales
Sent electronically to rvgonzales@mail.ltcc.edu, bgfarcenter@gmail.com

PERSONAL AND CONFIDENTIAL

Regarding Case Number: 2024004901
Re: Notice of Violation of Student Code of Conduct, Immediate Interim Suspension

Dear Robert Gonzales:

Based on the Lake Tahoe Community College (LTCC) Student Conduct Standards and Policies noted in the 2024-25 Catalog , Board Policy (BP) 5500, BP 5520, and Administrative Procedure (AP) 5520, this communication serves as official notice that you are in violation of LTCC Student Conduct Standards.

The following conduct is outlined in BP 5500 and shall constitute good cause for discipline. Students who engage in any of the activities outlined in this policy are subject to the procedures outlined in AP 5520:

- Conduct - Disruptive behavior to authority or personnel
    - Fled the campus on November 11, 2024, when asked to wait for police to respond
- Conduct - Harassment or discriminatory behavior
    - Leaving "gifts" on a car such as books and letters Conduct - Intimidating conduct or bullying Using the FEC at the same time as the complainant and continuing to stare during their workout session
- Conduct - Sexual harassment
    - Speaking about topics of a sexual nature via phone, text, and in person, even after being asked to stop
- Conduct - Persistent, serious misconduct
    - Behavior is a continuation since 2018 and continues to persist.

Based upon evidence provided and in accordance with student discipline procedures outlined in AP 5520, the administration is recommending an Immediate Interim Suspension. This includes your suspension from all classes, privileges, and activities at LTCC, through the end of the Winter Term of 2025, March 28, 2025. During this suspension you will be prohibited from participating in any LTCC function, be it academic, student work, or extracurricular. This suspension also prohibits you from emailing, calling, and otherwise contacting in any form any college faculty and staff in a way that could be deemed as bullying or harassing.

This Immediate Interim Suspension carries with it additional requirements. During the Winter Term of 2025, you will continue to be suspended from classes but you may return to LTCC for the limited purposes of:

- You have the right to a meeting with me should you choose, along with any additional individuals I deem appropriate, to discuss the conduct violations.

Any recurrence of behavior in violation of the student conduct standards will result in a recommendation of formal expulsion from the College.

Before any disciplinary action is taken, please be advised of your right to meet with me to discuss these accusations, or to respond in writing. You have five business days from receipt of this notice to request a meeting or to respond to the accusations in writing. Please address any correspondence to my Executive Assistant, Kelsey Magoon, kmagoon@ltcc.edu. A complete explanation of your right to respond, as well as appeal the decision and request a formal hearing, can be found in the 2024-25 Catalog and in Administrative Procedure 5520.

Should you have any questions about your rights or the disciplinary proceedings and process, please contact the Executive Assistant to the VPSS, Kelsey Magoon, kmagoon@ltcc.edu.

Sincerely, Dr. Michelle Batista Vice President of Student Services
CC: Kelsey Magoon, Executive Assistant to Vice President of Student Services



**Kelsey Magoon**

Executive Assistant to the Vice President of Student Services

Lake Tahoe Community College

 (530)541-4660    ext   751

   

 Hear my name

 **NoticeOfViolationIntSusp(Email).pdf**
52K

---

**bobby gonzales** <bgfarcenter@gmail.com>                                                Tue, Feb 18, 2025 at 11:00 PM
To: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

I request a hearing on several grounds of unfairness, inequitability, possible retaliation, and potential due process claims especially related to "life."

FIRST, I was never consulted about the matters in my student complaint attached below for their further investigation.

SECOND, in the notice I was provided yesterday, it is alleged that I fled campus when instructed to wait for police, which I was not, and I actually had repetitive conversations with both security personnel involved after the alleged incident in November where they still did not take the opportunity to instruct me to wait for police (visible on camera).

THIRD, I was not provided a notice of the November incident within the time limit established in AP 5520 (within five days after January 7th, which is when both security personnel involved were capable of identifying me).

FOURTH, the "disruptive behavior to authority or personnel" is justified due to the one security personnel's wrongful use of the power of "perceived threats" and the magnitude of everything that comes along with it in particular lines of duty, and

the other security personnel's share in laughter over that disruption during time of and between the incident (until the issue was suddenly ripe to be used for fraudulent concealment of the real issue).

FIFTH, the verbal reprimand I was given constitutes fraudulent concealment of the real issue as indicated by the other matters mentioned in the notice I was sent yesterday, and without the due diligence of filing my complaint, I may reasonably would not have discovered the real issue based on the verbal reprimand.

SIXTH, the notice I was provided yesterday suggests that the real issue extends as far back as 2018, which is false because it began in 2019, and the representation of these two or three isolated incidences in the notice falsely projects an ongoing pattern of many incidents over many years as opposed to the individual, isolated incidences in actuality.

SEVENTH, the content of the "note" nor any of the other incidences in question consist of a "sexual" nature, and in fact, are directly related to the exact content of a particularly ripened nature of the isolated incidences in 2019, as indicated in my complaint.  Furthermore, "staring" is embellishment by a party with a motivation to retaliate.

EIGHTH, in 2019, I was wrongly suspended for acts committed while under duress after being prevented from the opportunity to respond to the evidence, in an evidently retaliatory manner.

NINTH, I cannot access the "5500" policies online to review their definitions.

TENTH, in the notice I was provided yesterday, it does not inform me that I only have ten days to request a hearing.

ELEVENTH, I can prove that the investigation of the alleged November incident and possibly more is unfair and inequitable.

TWELVTH, after spending almost my entire young-adult life's academic and free time working towards a career in helping those who cannot help themselves, and after submitting job applications with sensitive materials to government agencies and national foundations, the pattern of unfair, inequitable student conduct procedures followed me in the University of California system, I cannot get a job at places like target or mcdonalds, and the gym is ALL I HAVE IN LIFE RIGHT NOW!

THIRTEENTH, based on the duress expressed in my complaint, the disciplinary probation is legally unconscionable for a variety of reasons.

[Quoted text hidden]

 **ltcc.pdf**
11K

---

**Magoon, Kelsey - Executive Assistant to the VPSS** <kmagoon@ltcc.edu>                    Wed, Feb 19, 2025 at 9:28 AM
To: bobby gonzales <bgfarcenter@gmail.com>
Cc: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

Good Morning Robert,

If you would like to set up an appointment with Vice President of Student Services, Dr. Michelle Batista to discuss the terms of the suspension, please let me know and I can schedule you a time to meet today. She has availability today at 10:00 a.m., 11:00 a.m., 12:00 p.m. or she is available next Tuesday, February 25th at 1:00p.m., 3:00 p.m. or 4:00 p.m.

Thank you,



**Kelsey Magoon**

Executive Assistant to the Vice

President of Student Services

Lake Tahoe Community College

 (530)541-4660    ext  751

   



---

**From:** bobby gonzales <bgfarcenter@gmail.com>
**Sent:** Tuesday, February 18, 2025 11:00 PM
**To:** Magoon, Kelsey - Executive Assistant to the VPSS <kmagoon@ltcc.edu>
**Subject:** Re: Notice of Violation - Interim Suspension

[Quoted text hidden]

 **ltcc.pdf**
11K

---

**bobby gonzales** <bgfarcenter@gmail.com>                    Wed, Feb 19, 2025 at 9:58 AM
To: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

I don't think I can be expected to prepare myself thoroughly enough to meet today given the magnitude of what has been refused investigation in the past.

Furthermore, I can't imagine that I will be able to crossexamine witnesses on such short notice.

Nevertheless, given my lack of focus and motivation in life, I could meet remotely today, and we'll see how the procedure goes.

[Quoted text hidden]

---

 **Outlook-A button w**
6K

---

**bobby gonzales** <bgfarcenter@gmail.com>                    Wed, Feb 19, 2025 at 10:10 AM
To: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

Noon would be a good time.

[Quoted text hidden]

---

 **Outlook-A button w**
6K

---

**Magoon, Kelsey - Executive Assistant to the VPSS** <kmagoon@ltcc.edu>    Wed, Feb 19, 2025 at 10:24 AM
To: bobby gonzales <bgfarcenter@gmail.com>
Cc: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

Thank you for letting me know your availability. I have scheduled a virtual meeting with you and Dr. Batista to discuss at noon today. You should receive an invitation with a Zoom link shortly.



### Kelsey Magoon

Executive Assistant to the Vice
President of Student Services
Lake Tahoe Community College

 (530)541-4660      ext    751

   



---

**From:** bobby gonzales <bgfarcenter@gmail.com>
**Sent:** Wednesday, February 19, 2025 10:10 AM
[Quoted text hidden]

[Quoted text hidden]

---

**bobby gonzales** <bgfarcenter@gmail.com>                                    Wed, Feb 19, 2025 at 10:25 AM
To: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>
Cc: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

Thank you.

[Quoted text hidden]

 **Outlook-A button w**
6K

---

**bobby gonzales** <bgfarcenter@gmail.com>                                    Wed, Feb 19, 2025 at 11:16 AM
To: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>
Cc: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

I would also like to file an anonymous complaint, with reasons why the online filing system would not be conducive to its sensitive nature.

In 2019, I started becoming overexerted by my efforts and outputs in life after applying for many hundreds of career-type jobs and getting nowhere.

In March of that year, I met the main witness through warm interactions, evidently not for the first time. In April, in my state of increasing fatigue, I approached her in a defeated manner, with a note. Basically, after she told me that her career aspirations involved "wanting to help people," I took that statement way over the top, informed her of my situation, and asked for "friendship" above all else. Effectively, I tried to "friend-zone" myself after hearing what she said.

In disgust with my distress over friendship, she made a complaint about my note before telling or indicating her disgust to me. This led to a sudden, shocking hearing with the former student conduct official, Dr. King, where I was not informed of

my rights, I did not crossexamine witnesses, and I was suspended for "sexual misconduct" after expressing the duress that led to a distressed attempt at friendship. My distress expressed at the time goes much deeper than "friendship," as should be indicated by the 2019 documents.

Upon returning next year in September, new decal around the school was placed in a retaliatory manner related to the specific content of my duress. On Haloween of 2019, the executive assistant to LTCC president played a particular song over bagpipe, which is related. Sometime after these bold activities, I decided to approach a different female within the same constructs, where a similar process took place and I was suspended again.

Throughout the 2019-2020 academic year, I had multiple classes with the main witness where I did not even think about attempting to interact with her on a personal level based on the nature of what I had experienced before. I have received direct expression that refusing interaction was a mistake, despite the nature of being swiftly suspended before receiving direct expression that I did something wrong the year before.

Upon entering the UC system, a bold pattern of retaliatory behaviors by university officials took place, including wrongfully perceiving me as a protected class in order to deny other student rights, breach of a specific duty of care, retaliatory student conduct proceedings, conflicts of interest, and especially breach of student confidentiality policy that follow a specific pattern which could have only followed me from one other place. My time in the UC system has resulted in many irreparable injuries to my entire young-adult life.

This year, the pattern of student confidentiality issues seem to have followed me back here based on the distortion of the relevant facts. This pattern would lead any reasonable person to expect that release of the information without extra consideration would lead to its use for purposes other than what it is intended for.

Furthermore, I suspect that the retaliatory pattern stems from another incident involving another LTCC personnel member during their time as a student, Danny Gonzalez, where the pattern shows how the relevant facts in that instance have also been distorted. My time at LTCC involves exemplary academics and these highly isolated student conduct issues, throughout 7 years of attendance.

Please take the sensitivity of the content of my duress which should be shown in the exhibits into consideration for confidentiality, and please address these issues with a serious inquiry. Thank you.

[Quoted text hidden]

 **Outlook-A button w**
6K

---

**Batista, Michelle - Vice President of Student Services** <batista@ltcc.edu>    Wed, Feb 19, 2025 at 11:38 AM
To: bobby gonzales <bgfarcenter@gmail.com>, "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

Your letter has been received, thank you.



## Michelle Y. Batista, Ed.D.
**(she|hers|ella)**

**Vice President of Student
Services / CSSO
Lake Tahoe Community College**



📞 (530)541-4660    ext   751

   

**TimelyCare: FREE 24/7 Mental Healthcare for Students**
**Emergency? Dial 9-1-1** | Suicide and Crisis Lifeline **988**
**Crisis Text Line: Text "COURAGE" to 741741**



---

**From:** bobby gonzales <bgfarcenter@gmail.com>
**Sent:** Wednesday, February 19, 2025 11:16 AM
**To:** Magoon, Kelsey - Executive Assistant to the VPSS <kmagoon@ltcc.edu>
**Cc:** Batista, Michelle - Vice President of Student Services <batista@ltcc.edu>

[Quoted text hidden]

[Quoted text hidden]

---

**Batista, Michelle - Vice President of Student Services** <batista@ltcc.edu>          Mon, Mar 3, 2025 at 4:57 PM
To: "Gonzales, Robert V" <rvgonzales@mail.ltcc.edu>, "bgfarcenter@gmail.com" <bgfarcenter@gmail.com>
Cc: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

Hi Bobby,

Attached you'll find an updated suspension notice. Per our conversation on 2/19- I removed the first bullet:

- Conduct - Disruptive behavior to authority or personnel

  - Fled the campus on November 11, 2024, when asked to wait for police to respond

You were not a student at that time, so code of conduct does not apply. As I explained, anyone can be asked to leave campus for the rest of the day.

I also clarified the language on the last point to show that the behavior was not on going from 2019 up to 2025:

| | |
|---|---|
| - Conduct- Persistent, serious misconduct | - The persistent behavior started in 2019, stopped and then began again throughout this winter quarter of 2025 |

Thank you,
-Michelle

Michelle Y. Batista, Ed.D.
(she|hers|ella)

**Vice President of Student
Services / CSSO
Lake Tahoe Community College**



 Hear my name

📞 (530)541-4660     ext   751

   

**TimelyCare: FREE 24/7 Mental Healthcare for Students
Emergency? Dial 9-1-1** | Suicide and Crisis Lifeline **988
Crisis Text Line: Text "COURAGE" to 741741**



---

**From:** Magoon, Kelsey - Executive Assistant to the VPSS <kmagoon@ltcc.edu>
**Sent:** Tuesday, February 18, 2025 3:07 PM
**To:** rvgonzales@mail.ltcc.edu <rvgonzales@mail.ltcc.edu>; bgfarcenter@gmail.com
<bgfarcenter@gmail.com>
**Cc:** Batista, Michelle - Vice President of Student Services <batista@ltcc.edu>
**Subject:** Notice of Violation - Interim Suspension

[Quoted text hidden]

---

📄 **Updated Notice 3.3.pdf**
50K

---

**bobby gonzales** <bgfarcenter@gmail.com>                    Wed, Mar 12, 2025 at 2:38 PM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

Were you ever going to get back to me on whether there is a policy for punishing students for acts committed while under duress?

[Quoted text hidden]

 Gmail

**bobby gonzales <bgfarcenter@gmail.com>**

## Video and Links
17 messages

**Batista, Michelle - Vice President of Student Services** <batista@ltcc.edu>    Wed, Feb 19, 2025 at 3:37 PM
To: bobby gonzales <bgfarcenter@gmail.com>
Cc: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

Hi Bobby,

Thank you for meeting with me this afternoon. We will be in touch with you next week about setting up a hearing date. Attached you'll find the recording of our meeting and below are the links that take you to the policies and definitions you asked for:

https://ltcc.elumenapp.com/catalog/2024-2025/student-conduct-standards#mainContent

https://go.boarddocs.com/ca/ltcc/Board.nsf/goto?open&id=CZ5VKE811C76
Stalking is listed at the bottom

🎞️BGonzales21924.mp4
Stream

Thank you,
-Michelle



**Michelle Y. Batista, Ed.D.**
**(she|hers|ella)**

**Vice President of Student Services / CSSO**
**Lake Tahoe Community College**



📞 (530)541-4660    ext    751



**TimelyCare: FREE 24/7 Mental Healthcare for Students**
**Emergency? Dial 9-1-1** | Suicide and Crisis Lifeline **988**
**Crisis Text Line: Text "COURAGE" to 741741**



---

**bobby gonzales** <bgfarcenter@gmail.com>                    Wed, Feb 19, 2025 at 11:23 PM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

Hi.

I noticed that you did not also send a reply to the preliminary hearing today.  That is a good thing, because now you can work from one document instead.  I consolidated my original complaint against security personnel and my second complaint against the main witness in this document under the bullet points from my response to the notice.  I added additional details where it counts.

Please take extra consideration with the level of detail you put in your report.  I have already reviewed the footage.  Thank you!

[Quoted text hidden]



📄 **LTCCconsolidated.pdf**
   88K

---

**Batista, Michelle - Vice President of Student Services** <batista@ltcc.edu>      Wed, Feb 26, 2025 at 5:05 PM
To: bobby gonzales <bgfarcenter@gmail.com>
Cc: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

Hi Bobby,

The Instruction Office has assembled a hearing panel for us to meet over zoom on Wednesday, March 5th. Would 12pm or 2:30pm work best for you?

Once you let me know- I'll send you an official letter with the date and time. Then the Office of Instruction will follow up with both of us letting us know who next steps, who is on the panel, and how to provide evidence for the panel prior to the hearing.

Thanks,
-Michelle



**Michelle Y. Batista, Ed.D.**
(she|hers|ella)

**Vice President of Student Services / CSSO**

**Lake Tahoe Community College**

 Hear my name



📞 (530)541-4660     ext   751

   

**TimelyCare: FREE 24/7 Mental Healthcare for Students**
**Emergency? Dial 9-1-1 | Suicide and Crisis Lifeline 988**
**Crisis Text Line: Text "COURAGE" to 741741**



---

**From:** bobby gonzales <bgfarcenter@gmail.com>
**Sent:** Wednesday, February 19, 2025 11:23 PM
**To:** Batista, Michelle - Vice President of Student Services <batista@ltcc.edu>
**Subject:** Re: Video and Links

[Quoted text hidden]

---

**bobby gonzales** <bgfarcenter@gmail.com>                    Wed, Feb 26, 2025 at 10:39 PM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

Either time would work.  Do both of those times work for all of the witnesses?

And I sent a consolidated version of my documents.  Did you complete the response you mentioned last week, or are you still working on that?

[Quoted text hidden]

---

**3 attachments**


**Outlook-fvmswkbn.png**
1K


**Outlook-v4jntika.png**
212K


**Outlook-ugiar0hm.png**
212K

---

**bobby gonzales** <bgfarcenter@gmail.com>                              Fri, Feb 28, 2025 at 5:42 AM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

Did you coordinate with all of the witnesses?

Or look over the new document I sent before writing a report?

Or go through the sources of evidence I listed during the preliminary hearing?

[Quoted text hidden]

**3 attachments**


**Outlook-v4jntika.png**
212K



**Outlook-ugiar0hm.png**
212K

**Outlook-fvmswkbn.png**
1K

---

**bobby gonzales** <bgfarcenter@gmail.com>                                    Fri, Feb 28, 2025 at 2:01 PM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

Based on my past experience, I have every reason to ask.

[Quoted text hidden]

---

**3 attachments**



**Outlook-ugiar0hm.png**
212K

**Outlook-fvmswkbn.png**
1K



**Outlook-v4jntika.png**
212K

---

**Batista, Michelle - Vice President of Student Services** <batista@ltcc.edu>        Fri, Feb 28, 2025 at 4:28 PM
To: "bgfarcenter@gmail.com" <bgfarcenter@gmail.com>
Cc: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

Hi Bobby,

Apologies for the delay, thank you for your patience. A formal letter is coming to let you know that a hearing has been scheduled on zoom, for Wednesday, March 5th at 2:30pm.

The office of Instruction has put together a panel that is made up of two faculty members, one administrator(not me) and a student. They will hear your side, and mine as a representative of LTCC.

Who would like to call as a witness? Please let me know and we can send out zoom invitations.

I did look over the new document you sent, and I have attached my response. Both of our documents, and sources of evidence will be made available to the panel.

Please let us know if you have any questions before then.

-Michelle



**Michelle Y. Batista, Ed.D.**
**(she|hers|ella)**

**Vice President of Student Services / CSSO**
**Lake Tahoe Community College**



 (530)541-4660      ext   751



**TimelyCare: FREE 24/7 Mental Healthcare for Students**
**Emergency? Dial 9-1-1** | Suicide and Crisis Lifeline **988**
**Crisis Text Line: Text "COURAGE" to 741741**



---

**From:** bobby gonzales <bgfarcenter@gmail.com>
**Sent:** Friday, February 28, 2025 5:42 AM

[Quoted text hidden]

[Quoted text hidden]

---

 **2.28 Response to BGonzales Letter Points.pdf**
66K

---

**bobby gonzales** <bgfarcenter@gmail.com>                         Fri, Feb 28, 2025 at 4:36 PM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

All of the witnesses I listed to you.  Which is basically everyone involved.  Did you not take them down and notify them?

What if the schedule doesn't work for any of them?  It sounds like you are scheduling it before you have set it up.  I'll have to raise that and reschedule at the date you've demanded.  What is the goal of this?

Can we please schedule it when you know that all of the witnesses can attend?

[Quoted text hidden]

---

**8 attachments**



**Outlook-ugiar0hm.png**
212K

 **Outlook-fvmswkbn.png**
1K



**Outlook-v4jntika.png**
212K



**Outlook-pphw1vyw.png**
212K

🎞 **Outlook-fvmswkbn.png**
1K



**Outlook-pphw1vyw.png**
212K



**Outlook-v4jntika.png**
212K



**Outlook-ugiar0hm.png**
212K

---

**bobby gonzales** <bgfarcenter@gmail.com>                                    Mon, Mar 3, 2025 at 7:09 AM

To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

I thought you were listing them as I spoke.  You were asking meabout each witness.  Did you lose the list?

I also listed sources of evidence.  Do you have that list?  Did you already obtain all of the evidence?

What am I going to tell the panel??

[Quoted text hidden]

---

**Batista, Michelle - Vice President of Student Services** <batista@ltcc.edu>       Mon, Mar 3, 2025 at 1:01 PM
To: "bgfarcenter@gmail.com" <bgfarcenter@gmail.com>, "Allen, Kelsey- Executive Assistant to the VP Academic Affairs" <kallen@ltcc.edu>
Cc: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>, "Allen, Kelsey- Executive Assistant to the VP Academic Affairs" <kallen@ltcc.edu>

Hi Bobby,

The hearing must happen with 10 business days of when you requested it. The date is set based on the availability for the student (you) and the panel. I offered two time slots on March 5th and a panel was selected based on your availability. If witnesses are not able to attend, they can submit a written testimony.

Johnathan Watson is available, Gabriel and Jaden are in class at that time and can provide statements. Do you want to go forward with these witnesses?

You can read more HERE about what the hearing process will look like and what it says about witnesses. See below regarding witnesses:

"The college representative and the student may call witnesses and introduce oral and written testimony relevant to the issues of the matter."

"Written statements of witnesses shall not be used unless the witness is unavailable to testify. A witness who refuses to be tape recorded is not considered "unavailable.""

All the sources of evidence that you shared with me in our communication will be offered to the panel. If you have additional evidence, you can send it to kallen@ltcc.edu.

Thank you,
-Michelle



**Michelle Y. Batista, Ed.D.**
(she|hers|ella)

**Vice President of Student Services / CSSO
Lake Tahoe Community College**



 (530)541-4660    ext    751

  

**TimelyCare: FREE 24/7 Mental Healthcare for Students**
**Emergency? Dial 9-1-1** | Suicide and Crisis Lifeline **988**
**Crisis Text Line: Text "COURAGE" to 741741**



---

**From:** bobby gonzales <bgfarcenter@gmail.com>
**Sent:** Monday, March 3, 2025 7:09 AM
[Quoted text hidden]

[Quoted text hidden]

---

**bobby gonzales** <bgfarcenter@gmail.com>                                    Tue, Mar 4, 2025 at 10:47 AM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>
Cc: "Allen, Kelsey- Executive Assistant to the VP Academic Affairs" <kallen@ltcc.edu>, "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

Why do I doubt anything showing they will be in class?  Are you forgetting anything?

[Quoted text hidden]

---

 **Outlook-xsozg14l.png**
212K

**bobby gonzales** <bgfarcenter@gmail.com>                    Tue, Mar 4, 2025 at 1:38 PM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

So if you forgot to include witnesses, and only included witnesses for the removed matter, how does that look?

Do I have credible reasons not to believe LTCC's official records in relation to the security team?

[Quoted text hidden]

---

**Batista, Michelle - Vice President of Student Services** <batista@ltcc.edu>          Tue, Mar 4, 2025 at 2:07 PM
To: bobby gonzales <bgfarcenter@gmail.com>

Hi Bobby,

The witnesses you wanted were called. Johnathan will be present on zoom, and Jaden and Gabriel will provide a written testimony.

My removing the situation/allegation from the letter was clarifying that you were not a student at that time so the student code of conduct did not apply to you. You brought up the November situation during our meeting on zoom, so you are free to reference it during the hearing, that is not a problem.

We (LTCC) will not be calling any additional witnesses; I will only have questions for you.

I hope that helps,
-Michelle



**Michelle Y. Batista, Ed.D.**
(she|hers|ella)

**Vice President of Student Services / CSSO**
**Lake Tahoe Community College**



📞 (530)541-4660      ext   751

   

**TimelyCare: FREE 24/7 Mental Healthcare for Students**
**Emergency? Dial 9-1-1** | Suicide and Crisis Lifeline **988**
**Crisis Text Line: Text "COURAGE" to 741741**



---

**From:** bobby gonzales <bgfarcenter@gmail.com>
**Sent:** Tuesday, March 4, 2025 1:38 PM

[Quoted text hidden]

[Quoted text hidden]

---

**bobby gonzales** <bgfarcenter@gmail.com>                                      Tue, Mar 4, 2025 at 2:57 PM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

I mentioned two other witnesses.  Why would thr mai  witness be excluded?

[Quoted text hidden]

---

**2 attachments**



**Outlook-xsozg14l.png**
212K



**Outlook-obypsixr.png**
212K

---

**bobby gonzales** <bgfarcenter@gmail.com>                                      Tue, Mar 4, 2025 at 3:27 PM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

How about a zoom link?

[Quoted text hidden]

---

**2 attachments**


**Outlook-xsozg14l.png**
212K


**Outlook-obypsixr.png**
212K

---

**bobby gonzales** <bgfarcenter@gmail.com>                    Tue, Mar 4, 2025 at 4:14 PM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

It will be kind of hard without a link.

[Quoted text hidden]

---

**2 attachments**


**Outlook-xsozg14l.png**
212K



**Outlook-obypsixr.png**
212K

---

**bobby gonzales** <bgfarcenter@gmail.com>                    Wed, Mar 5, 2025 at 2:10 PM
To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

Hi.  I thought I should mention that my phone does not receive data.

[Quoted text hidden]

### 2 attachments



**Outlook-obypsixr.png**
212K



**Outlook-xsozg14l.png**
212K



bobby gonzales <bgfarcenter@gmail.com>

---

# Automatic reply: Video and Links
6 messages

---

**Batista, Michelle - Vice President of Student Services** <batista@ltcc.edu>    Wed, Feb 19, 2025 at 11:23 PM
To: bobby gonzales <bgfarcenter@gmail.com>

Thank you for your email, I am currently out of the office and will respond when I return on Tuesday, February 25th, 2025.

If you need further assistance, please feel free to contact my Executive Assistant, Kelsey Magoon at kmagoon@ltcc.edu

Have a great day!

---

**bobby gonzales** <bgfarcenter@gmail.com>    Wed, Feb 19, 2025 at 11:27 PM
To: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

Hi.

I noticed that you did not also send a reply to the preliminary hearing today. That is a good thing, because now you can work from one document instead. I consolidated my original complaint against security personnel and my second complaint against the main witness in this document under the bullet points from my response to the notice. I added additional details where it counts.

Please take extra consideration with the level of detail you put in your report. I have already reviewed the footage. Thank you!

[Quoted text hidden]

 **LTCCconsolidated.pdf**
88K

---

**bobby gonzales** <bgfarcenter@gmail.com>    Thu, Feb 20, 2025 at 11:34 AM
To: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

Hi, can you tell me when Mrs. Batista acknowledges that she has seen this document?

[Quoted text hidden]

---

**Magoon, Kelsey - Executive Assistant to the VPSS** <kmagoon@ltcc.edu>    Thu, Feb 20, 2025 at 11:52 AM
To: bobby gonzales <bgfarcenter@gmail.com>

Hello Robert,

Dr. Batista is out of the office until Tuesday, February 25th, and will be able to respond to all emails at that time. Thank you for sending your consolidated document, I will be sure to include it in our report moving forward.

Thank you,

    **Kelsey Magoon**

Executive Assistant to the Vice

President of Student Services

Lake Tahoe Community College

 (530)541-4660    ext    751

   



---

**From:** bobby gonzales <bgfarcenter@gmail.com>
**Sent:** Thursday, February 20, 2025 11:34 AM
**To:** Magoon, Kelsey - Executive Assistant to the VPSS <kmagoon@ltcc.edu>
**Subject:** Re: Automatic reply: Video and Links

[Quoted text hidden]

---

**bobby gonzales** <bgfarcenter@gmail.com>                              Thu, Feb 20, 2025 at 10:18 PM
To: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>

Alright, thank you.
[Quoted text hidden]

---

**Batista, Michelle - Vice President of Student Services** <batista@ltcc.edu>          Wed, Mar 5, 2025 at 2:11 PM
To: bobby gonzales <bgfarcenter@gmail.com>

## LTCC Alert:

Due to the extended power outage and time needed to restore campus operations, LTCC is closed for the remainder of today and all classes are cancelled. We look forward to seeing you tomorrow for classes as scheduled.

## Lake Tahoe Community College

Have a great day!

 Gmail

bobby gonzales <bgfarcenter@gmail.com>

---

## Rescheduling Hearing
8 messages

---

**Batista, Michelle - Vice President of Student Services** <batista@ltcc.edu>    Wed, Mar 5, 2025 at 12:27 PM
To: "bgfarcenter@gmail.com" <bgfarcenter@gmail.com>
Cc: "Magoon, Kelsey - Executive Assistant to the VPSS" <kmagoon@ltcc.edu>, "Allen, Kelsey- Executive Assistant to the VP Academic Affairs" <kallen@ltcc.edu>

Hello Bobby,

Apologies, we're going to have to reschedule the hearing as there is no power in town. Due to the extended power outage and time needed to restore campus operations, LTCC is closed for remainder of today and all classes are cancelled.

We will be in touch to reschedule.

Thank you,
Michelle



**Michelle Y. Batista, Ed.D.** (she|hers|ella)

**Vice President of Student Services / CSSO**
**Lake Tahoe Community College**

 Hear my name

📞  (530)541-4660    ext   751




**TimelyCare: FREE 24/7 Mental Healthcare for Students**
**Emergency? Dial 9-1-1** | Suicide and Crisis Lifeline **988**
**Crisis Text Line: Text "COURAGE" to 741741**

---

**Allen, Kelsey- Executive Assistant to the VP Academic Affairs** <kallen@ltcc.edu>    Fri, Mar 7, 2025 at 4:09 PM
To: "bgfarcenter@gmail.com" <bgfarcenter@gmail.com>

Hello Bobby,

Are you available on Wednesday, March 12 at 3:30pm for the Zoom hearing?

Thank you,

Kelsey

[Quoted text hidden]

---

**bobby gonzales** <bgfarcenter@gmail.com>    Mon, Mar 10, 2025 at 11:58 AM
To: "Allen, Kelsey- Executive Assistant to the VP Academic Affairs" <kallen@ltcc.edu>

Sure.  But I would like to hear more about how you could possibly be the complainant, and more.

[Quoted text hidden]

---

**bobby gonzales** <bgfarcenter@gmail.com>    Tue, Mar 11, 2025 at 11:24 AM
To: "Allen, Kelsey- Executive Assistant to the VP Academic Affairs" <kallen@ltcc.edu>

I would really like to know more about how the issue was reported as a "nonstop issue," and how that made you the complainant!

[Quoted text hidden]

---

**bobby gonzales** <bgfarcenter@gmail.com>    Tue, Mar 11, 2025 at 11:25 AM
To: "Allen, Kelsey- Executive Assistant to the VP Academic Affairs" <kallen@ltcc.edu>

I didn'r realize who this was being sent to.  Sorry.

[Quoted text hidden]

---

**bobby gonzales** <bgfarcenter@gmail.com>    Tue, Mar 11, 2025 at 11:25 AM

To: "Batista, Michelle - Vice President of Student Services" <batista@ltcc.edu>

[Quoted text hidden]

---

**Allen, Kelsey- Executive Assistant to the VP Academic Affairs** <kallen@ltcc.edu>          Tue, Mar 11, 2025 at 11:48 AM
To: bobby gonzales <bgfarcenter@gmail.com>

Hello,


Thank you. Below is the zoom information for tomorrow at 3:30pm. Please let me know if you run into any issues accessing the link.


Topic: Student Discipline Hearing

Time: Mar 12, 2025 03:30 PM Pacific Time (US and Canada)

Join Zoom Meeting

Https://ltcc-edu.zoom.us/j/83505664157


Meeting ID: 835 0566 4157

---

One tap mobile

+16699006833,,83505664157# US (San Jose)

+16694449171,,83505664157# US

---

Dial by your location

• +1 669 900 6833 US (San Jose)

• +1 669 444 9171 US

• +1 719 359 4580 US

• +1 253 205 0468 US

• +1 253 215 8782 US (Tacoma)

• +1 346 248 7799 US (Houston)

• +1 646 931 3860 US

• +1 689 278 1000 US

• +1 929 205 6099 US (New York)

• +1 301 715 8592 US (Washington DC)

• +1 305 224 1968 US

• +1 309 205 3325 US

• +1 312 626 6799 US (Chicago)

• +1 360 209 5623 US

• +1 386 347 5053 US

• +1 507 473 4847 US

• +1 564 217 2000 US


Meeting ID: 835 0566 4157

Find your local number: https://ltcc-edu.zoom.us/u/kmqxqJ6C7


Thank you,


Kelsey

[Quoted text hidden]

---

**bobby gonzales** <bgfarcenter@gmail.com>                                    Wed, Mar 12, 2025 at 4:14 PM
To: "Allen, Kelsey- Executive Assistant to the VP Academic Affairs" <kallen@ltcc.edu>

Hey, I was chased out of the zoom meeting before I could ask the witnesses any questions.

My speaking time was also cut into, and I was prevented from asking questions about the process.

Is there any recourse for these issues which you can help me with?

[Quoted text hidden]

Apply Now
Academic Calendar
Library and Learning Services
Counseling
Passport



# 2024-2025 Catalog



Student Disciplinary Actions and Procedures

## Student Disciplinary Actions and Procedures

*BP 5520 Student Discipline - Reference: Education Code Sections 66017, 66300, 72122, 76030; Administrative Procedure 5520*

Students of Lake Tahoe Community College (LTCC) by virtue of Board policies, are ensured certain rights and privileges, and at the same time, assume certain responsibilities and standards of personal conduct. Due process procedures have been established to ensure that individual rights and institutional standards are not abridged.

Generally, LTCC jurisdiction and discipline shall be limited to conduct which occurs on the district's college premises, learning sites, or at off-campus activities sponsored by LTCC. Any student found to have committed misconduct as described in this policy is subject to disciplinary sanctions. The Standards of Student Conduct, Board Policy 5500, and accompanying policies are published in the College's catalogs and other relevant print and electronic media.

The student discipline policy and procedures will apply to any student who deliberately prevents, physically or verbally:

- Students from pursuing their authorized curricular or co-curricular interests;
- Faculty and administrators from fulfilling their professional responsibilities;
- Classified employees from fulfilling their prescribed duties;
- Authorized guests from carrying out their prescribed duties;
- The safety of persons or the security of college property.

**Violation of Law and LTCC Discipline**

1. If a student is charged only with an off-campus violation of federal, state, or local laws, but not with any other violation of the Standards of Student Conduct (BP 5500), disciplinary action may be taken and sanctions imposed for grave misconduct, which demonstrated flagrant disregard for the LTCC community, including but not limited to District property, programs, personnel, students and reputation. In such cases, no sanctions may be imposed unless the student has been found guilty in a court of law or has declined to contest such charges, although not actually admitting guilt (e.g., "no contest" or "nolo contendere").

2. LTCC disciplinary proceedings may be instituted against a student charged with violation of a law which is also a violation of the Standards of Student Conduct; for example, if both violations result from the same factual situation, without regard to the pendency of civil litigation in court or criminal

arrest and prosecution. Proceedings under the Standards of Student Conduct may be carried out prior to, simultaneously with, or following civil or criminal proceedings off-campus.

*AP 5520 Student Discipline Procedures - Reference: Education Code Sections 66300, 72122, and 76030; Board Policy 5520*

The purpose of this procedure is to provide a prompt and equitable means to address violations of the Standards of Student Conduct, which guarantees to the student or students involved the due process rights guaranteed them by state and federal constitutional protections. This procedure will be used in a fair and equitable manner, and not for purposes of retaliation. It is not intended to substitute for criminal or civil proceedings that may be initiated by other agencies.

These Administrative Procedures are specifically not intended to infringe in any way on the rights of students to engage in free expression as protected by the state and federal constitutions, and by Education Code Section 76120, and will not be used to punish expression that is protected.

**Removal from Class** (Education Code Section 76032): Any instructor may order a student removed from their class for the day of the removal and the next class meeting. The instructor shall immediately report the removal to the Chief Student Services Officer (CSSO) or designee and the appropriate dean. The appropriate dean shall arrange for a conference between the student and the instructor regarding the removal. If the instructor or the student requests, the appropriate dean shall attend the conference. The student shall not be returned to the class during the period of the removal without the agreement of the instructor. Nothing herein will prevent the appropriate dean from recommending further disciplinary action in accordance with these procedures based on the facts that led to the removal.

**Withdrawal of Consent to Remain on Campus:** The CSSO or designee may notify any person, for whom there is a reasonable belief that the person has willfully disrupted the orderly operation of the campus, that consent to remain on campus has been withdrawn. If the person is on campus at the time, they must promptly leave or be escorted off campus. If consent is withdrawn by the CSSO or designee, a written report must be promptly made to the Superintendent/President.

The person from whom consent has been withdrawn may submit a written request for a hearing on the withdrawal within the period of the withdrawal. The request shall be granted not later than seven (7) business days from the date of receipt of the request. The hearing will be conducted in accordance with the provisions of this procedure relating to interim suspensions.

In no case shall consent be withdrawn for longer than fourteen (14) business days from the date upon which consent was initially withdrawn.

Any person as to whom consent to remain on campus has been withdrawn who knowingly reenters the campus during the period in which consent has been withdrawn, except to come for a meeting or hearing, is subject to arrest (Penal Code Section 626.4).

**Immediate Interim Suspension** (Education Code Section 66017): The CSSO or designee may order immediate interim suspension of a student where they conclude that immediate suspension is required to protect lives or property and to ensure the maintenance of order. In cases where an interim suspension has been ordered, the time limits contained in these procedures shall not apply, and all

hearing rights, including the right to a formal hearing where a long-term suspension or expulsion has been recommended, will be afforded to the student within ten (10) business days.

**Short-term Suspensions, Long-term Suspensions, and Expulsions:** Before any disciplinary action to suspend or expel is taken against a student, the following procedures will apply:

• **Notice** – The CSSO or designee will provide the student with written notice of the conduct warranting the discipline. The written notice will include the following:

  - the specific section of the Standards of Student Conduct that the student is accused of violating;

  - a short statement of the facts supporting the accusation;

  - the right of the student to meet with the CSSO or designee to discuss the accusation, or to respond in writing; and

  - the nature of the discipline that is being considered.

• **Time limits** – The notice must be provided to the student within five (5) business days of the date on which the conduct took place; in the case of continuous, repeated, or ongoing conduct, the notice must be provided within five (5) business days of the date on which conduct occurred which led to the decision to take disciplinary action.

• **Meeting** – If the student chooses to meet with the CSSO or designee, the meeting must occur within five (5) business days after the notice is provided. At the meeting, the student must again be told the facts leading to the accusation and must be given an opportunity to respond verbally or in writing to the accusation.

**Short-term Suspension** – Within five (5) days after the meeting described above (or if no meeting occurs, within ten (10) business days of the notice), the CSSO or designee shall, in consultation with the Vice President, Academic Affairs, decide whether to impose a short-term suspension, whether to impose some lesser disciplinary action, or whether to end the matter. Written notice of the CSSO or designee's decision shall be provided to the student. The notice will include the length of time of the suspension or the nature of the lesser disciplinary action. The CSSO or designee's decision on a short-term suspension shall be final.

**Long-term Suspension** – Within five (5) business days after the meeting described above (or if no meeting occurs, within ten (10) days of the notice), the CSSO or designee shall, in consultation with the Vice President, Academic Affairs, decide whether to impose a long-term suspension. Written notice of the CSSO or designee's decision shall be provided to the student. The notice will include the right of the student to request a formal hearing before a long-term suspension is imposed and a copy of this policy describing the procedures for a hearing.

**Expulsion** – Within five (5) business days after the meeting described above (or if no meeting occurs, within ten (10) days of the notice), the Superintendent/President shall, in consultation with the CSSO and the Vice President, Academic Affairs, decide whether to recommend expulsion to the Board of Trustees (Board). Written notice of the Superintendent/President's decision shall be provided to the student. The notice will include the right of the student to request a formal hearing before expulsion is imposed and a copy of this policy describing the procedures for a hearing.

**Hearing Procedures** – Request for Hearing. Within ten (10) business days after receipt of the CSSO or designee's decision regarding a long-term suspension or the Superintendent/President's decision regarding expulsion, the student may request a formal hearing. The request must be made in writing to the CSSO or designee.

**Schedule of Hearing** – The formal hearing shall be held within ten (10) business days after a formal request for hearing is received.

**Hearing Panel** – The hearing panel for any disciplinary action shall be composed of two (2) faculty, one (1) administrator, and one (1) student.

The Superintendent/President, the president of the Academic Senate, and the president of the Student Senate shall each, at the beginning of the academic year, establish a list of at least five (5) persons who will serve on student disciplinary hearing panels. The Superintendent/President shall appoint the hearing panel from the names on these lists. However, no administrator, faculty member, or

student who has any personal involvement in the matter to be decided, who is a necessary witness, or who could not otherwise act in a neutral manner shall serve on a hearing panel.

**Hearing Panel Chair** – The Superintendent/President shall appoint one member of the panel to serve as the chair. The decision of the hearing panel chair shall be final on all matters relating to the conduct of the hearing unless there is a vote by two or more other members of the panel to the contrary.

**Conduct of the Hearing**

**NOTE:** The hearing must comply with principles of due process, including the right to confront and cross examine witnesses.

The members of the hearing panel shall be provided with a copy of the accusation against the student and any written response provided by the student before the hearing begins.

The facts supporting the accusation shall be presented by a college representative who shall be the CSSO or designee.

The college representative and the student may call witnesses and introduce oral and written testimony relevant to the issues of the matter.

Formal rules of evidence shall not apply. Any relevant supporting documentation shall be admitted.

Unless the hearing panel determines to proceed otherwise, the college representative and the student shall each be permitted to make an opening statement. Thereafter, the college representative shall make the first presentation, followed by the student. The college representative may present rebuttal evidence after the student completes their evidence. The burden shall be on the college representative to prove by the preponderance of the evidence that the facts alleged are true.

The student may represent themself, and may also have the right to be represented by a person of their choice except that the student shall not be represented by an attorney unless, in the judgment of the hearing panel, complex legal issues are involved. If the student wishes to be represented by an attorney, a request must be presented not less than five (5) days prior to the date of the hearing. If the student is permitted to be represented by an attorney, the college representative may request legal assistance. The hearing panel may also request legal assistance; any legal advisor provided to the panel may sit with it in an advisory capacity to provide legal counsel but shall not be a member of the panel nor vote with it.

Hearings shall be closed and confidential unless the student requests that it be open to the public. Any such request must be made no less than five (5) days prior to the date of the hearing.

In a closed hearing, witnesses shall not be present at the hearing when not testifying, unless all parties and the panel agree to the contrary.

The hearing shall be recorded by the District either by tape or digital recording. The official recording shall be the only recording made. No witness who refuses to be recorded may be permitted to give testimony, either in person or in writing. In the event the recording is by tape recording, the hearing panel chair shall, at the beginning of the hearing, ask each person present to identify themselves by name, and thereafter shall ask witnesses to identify themselves by name. Tape recordings shall remain in the custody of the District at all times, unless released to a professional transcribing service.

The student may request a copy of the tape or digital recording; deliberations of the hearing will not be included.

All testimony shall be taken under oath or affirmation; the oath or affirmation shall be administered by the hearing panel chair. Written statements of witnesses shall not be used unless the witness is unavailable to testify. A witness who refuses to be tape recorded is not considered "unavailable."

Within ten (10) days following the close of the hearing, the hearing panel shall prepare and send to the CSSO or designee a written decision. The decision shall include specific factual findings regarding the accusation and shall include specific conclusions regarding whether any specific section of the Standards of Student Conduct were violated. The decision shall also include a specific recommendation regarding the disciplinary action to be imposed, if any. The decision shall be based only on the record of the hearing and not on matter outside of that record. The record consists of the original accusation, the written response, if any, of the student, and the oral and written evidence produced at the hearing.

**CSSO or Designee's Decision:**

**Long-term suspension** – Within ten (10) business days following receipt of the hearing panel's recommended decision, the CSSO or designee shall render a final written decision. The CSSO or designee may accept, modify, or reject the findings, decisions, and recommendations of the hearing panel. If the CSSO or designee modifies or rejects the hearing panel's decision, the CSSO or designee shall review the record of the hearing, and shall prepare a new written decision which contains specific factual findings and conclusions. The decision of the CSSO or designee shall be final.

**Expulsion** – Within ten (10) business days following receipt of the hearing panel's recommended decision, the CSSO, in consultation with the Vice President, Academic Affairs, shall render a written recommended decision to the Superintendent/President. The Superintendent/President may accept, modify, or reject the findings, decisions, and recommendations of the hearing panel. If the Superintendent/President modifies or rejects the hearing panel's decision, they shall review the record of the hearing, and shall prepare a new written decision which contains specific factual findings and conclusions. The Superintendent/President's decision shall be forwarded to the Board of Trustees (Board).

**Board of Trustees Decision:** The Board of Trustees (Board) shall consider any recommendation from the Superintendent/President for expulsion at the next regularly scheduled meeting of the Board after receipt of the recommended decision.

The Board shall consider an expulsion recommendation in closed session, unless the student has requested that the matter be considered in a public meeting in accordance with these procedures (Education Code Section 72122).

The student shall be notified in writing, by registered or certified mail to the address last on file with the District and by email, or by personal service, at least three (3) days prior to the meeting, of the date, time, and place of the Board's meeting.

The student may, within forty-eight (48) hours after receipt of the notice, request that the hearing be held as a public meeting.

Even if a student has requested that the Board consider an expulsion recommendation in a public meeting, the Board will hold any discussion that might be in conflict with the right to privacy of any student other than the student requesting the public meeting in closed session.

The Board may accept, modify, or reject the findings, decisions, and recommendations of the Superintendent/President or the hearing panel. If the Board modifies or rejects the decision, the Board shall review the record of the hearing, and shall prepare a new written decision which contains specific factual findings and conclusions. The decision of the Board shall be final.

The final action of the Board on the expulsion shall be taken at a public meeting and the result of the action shall be a public record of the District.

**Definitions:**

**Day –** Days during which the District is in session and regular classes are held, excluding Saturdays and Sundays.

**District –** The Lake Tahoe Community College District

**Expulsion –** Permanent exclusion of the student by the Board of Trustees (Board) from all colleges in the District.

**Instructor –** Any academic employee of the District in whose class a student subject to discipline is enrolled, or counselor who is providing or has provided services to the student, or other academic employee who has responsibility for the student's educational program.

**Long-term Suspension –** Exclusion of the student by the Chief Student Services Officer (CSSO) or designee for good cause from one or more classes for the remainder of the school term, or from all classes and activities of the college for one or more terms.

**Removal from class –** Exclusion of the student by an instructor for the day of the removal and the next class meeting.

**Short-term Suspension –** Exclusion of the student by the Chief Student Services Officer (CSSO) or designee for good cause from one or more classes for a period of up to ten (10) consecutive days of instruction.

**Student –** Any person currently enrolled as a student at any college or in any program offered by the District.

**Time Limits:** Any times specified in these procedures may be shortened or lengthened if there is mutual concurrence by all parties.

**Withdrawal of Consent to Remain on Campus –** The Chief Student Services Officer (CSSO) or designee may notify any person as to whom there is a reasonable belief that the person has willfully disrupted the orderly operation of the campus that consent to remain on campus has been withdrawn. If the person is on campus at the time, they must promptly leave or be escorted off campus by authorized District personnel. If consent is withdrawn by the CSSO, a written report must be promptly made to the College Superintendent/President. The person from whom consent has been withdrawn may submit a written request for a hearing on the withdrawal within the period of the withdrawal. The request shall be granted not later than ten (10) business days from the date of receipt of the request. The hearing will be conducted in accordance with provisions of this procedure, relating to interim suspensions. In no case shall consent be withdrawn for longer than fourteen (14) business days from the date upon which consent was initially withdrawn. Any person as to whom consent to remain on campus has been withdrawn who knowingly reenters the campus during the period in which consent has been withdrawn, except to come for a meeting or hearing, is subject to arrest. (California Penal Code 626.4)

**Written or verbal reprimand –** An admonition to the student to cease and desist from conduct determined to violate the Standards of Student Conduct. Written reprimands may become part of a student's permanent record at the college. A record of the fact that a verbal reprimand has been given may become part of a student's record at the college for a period of up to one year.

LAKE TAHOE COMMUNITY COLLEGE
One College Drive
South Lake Tahoe, CA 96150
(530) 541-4660

ltcc.edu

© 2022-2023 Copyright, Lake Tahoe Community College

Apply Now
Academic Calendar
Library and Learning Services
Counseling
Passport



# 2024-2025 Catalog

## Student Grievance Procedures

## Student Grievance Procedures

Grievance procedures are initiated by the student. "Grievance" shall mean a statement by a student(s) that one has been treated inequitably by reason of any condition which is contrary to College policy. This grievance procedure is applicable both to matriculation and to all other instances except those covered by the District's Unlawful Discrimination and/or Harassment Plan. Copies of these plans are available in Human Resources and the Library. Further definition can be obtained in the procedures outlined below.

In the following, "day(s)" shall refer to instructional days only.

*Informal Grievance Procedures*

In an effort to satisfactorily resolve grievances without formal hearings, the College has established informal procedures.

The aggrieved student is urged to meet with a counselor in Student Services. Alternatives, implications of various courses of action, and definition of terms can be explored, as well as any other relevant concern.

An informal meeting of the aggrieved student and the object of the grievance can be arranged. No limit is placed on the number of such informal meetings nor upon the time spent in pursuing an informal resolution, so long as both parties feel that satisfactory progress is being made. The parties may schedule an informal meeting with the Vice President, Academic Affairs, or, if the Vice President, Academic Affairs is a party to the charges, with the Superintendent/President.

At any time in the informal attempts at resolution, either party to the grievance or the Vice President, Academic Affairs may conclude that satisfactory progress is not being made, and formal proceedings are then initiated.

A resolution of a grievance in the informal procedures that is acceptable to each party shall be written and signed by the parties to the case, and each shall receive a copy. As well, an institutional copy will be filed in the appropriate College office.

Nothing contained within the informal procedure shall be construed as limiting on the student or the College in the formal procedure.

*Formal Grievance Procedures*

At such time that a decision is made to use formal procedures, the student shall file a written statement of the charges and an appropriate remedy and request a formal hearing by a grievance committee. The written statement of charges and the request for a formal hearing shall be filed with the Vice President, Academic Affairs, or, if the Vice President, Academic Affairs is a party to the

charges, with the Superintendent/President of the College. The hearing by a grievance committee shall be held within fifteen (15) days of the filing of the grievance.

A request for a formal grievance must be filed within ninety (90) days of the alleged offense, or within ten (10) days of the failure of the informal procedure to resolve the grievance.

The person(s) being charged in the grievance statement shall have their rights protected, including their right to receive a copy of the written statement of grievance, the right to counsel and other rights outlined elsewhere in these due process statements. Ample notice will be given of the place, date, and time of the grievance hearing.

The grievance committee shall be comprised of full-time academic personnel and student representation. Persons who are a direct party to a grievance may not sit on the committee for that hearing. The student party to the proceedings may request that students not sit on the grievance committee hearing their case.

A representative of the grievance committee shall either deliver to the student in person or by certified mail a written report of the ruling and accomplish this within two (2) days of the committee's meeting to hear the grievance. A copy of the written ruling shall be filed with the appropriate College office.

### Appeals

Appeals may be taken by either party to the grievance in the following manner: a written appeal shall be directed to the Vice President, Academic Affairs and post-marked not later than five (5) days from the time of receipt of the ruling of the grievance committee. Appeals may be taken from the Vice President, Academic Affairs' office to the Superintendent/President and then to the Board of Trustees (Board), if necessary.

At each level of appeal, except Board level, the same limitations of time prevail: two (2) days from meeting to hand delivery or certified mailing of ruling to the parties, five (5) days from receipt of ruling to request for appeal, an appeal hearing within fifteen (15) days, and two (2) days to delivery of that ruling. All time limits can be extended by mutual agreement of both parties. Cases filed late in a spring quarter will be handled by a committee constituted in the normal manner from available summer staff and students. In any case, the parties to the case are entitled to be present and to have counsel during the hearing. The Board will meet privately in closed session during their actual deliberations leading to their ruling.

The Board will make a report of final action but will not release detailed information unless the student requests and is granted a public hearing.

A student's status at the College shall not be jeopardized in any way because of their initiating grievance procedures. No record of the fact shall be entered into the student's permanent academic record or transcript. If formal proceedings result in a ruling that is adverse to the student, a record may be entered in the student's record according to appropriate College policies.

### Notification of a Complaint

Most complaints, grievances, or disciplinary matters can be resolved at the campus level. Please see the appropriate sections in this catalog for more information on grievance and disciplinary procedures. Issues that cannot be resolved at the campus level may be communicated to the California Community College Chancellor's Office and/or the Accrediting Commission for Community and Junior Colleges (ACCJC). Please refer to https://www.ccccco.edu/About-Us/Chancellors-Office/Divisions/General-Counsel/Programs/College-District-Discrimination-Appeals and/or www.accjc.org/complaint-process for more information.

LAKE TAHOE COMMUNITY COLLEGE
One College Drive
South Lake Tahoe, CA 96150
(530) 541-4660

ltcc.edu

© 2022-2023 Copyright, Lake Tahoe Community College